AMY BISSON HOLLOWAY, State Bar No. 163731
General Counsel
LEN GARFINKEL, State Bar No. 114815
Assistant General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, CA 95814
Telephone: (916) 319-0860
Facsimile: (916) 319-0155
lgarfinkel@cde.ca.gov
Attorneys for Defendant the California Department of Education

*(Defendant is Exempt from Filing Fees Pursuant to Cal. Gov't. Code § 6103)*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIE MARQUES, et al., | Case No: |
| Plaintiffs, | NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441(a) (FEDERAL QUESTION) |
| v. | |
| GUIDING HANDS SCHOOL, INC., et al., Defendants. | |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that defendant California Department of Education (CDE) hereby removes to this Court the state court action described below.

1.      On August 27, 2020, an action was commenced in the Superior Court of the State of California in and for the County of El Dorado, entitled *Louie Marques et al. v. Guiding Hands School, Inc., et al*., designated as Case No. PC 20200429.  The complaint is attached hereto as **Exhibit A**.  This Complaint was not served on moving Defendant or, apparently, on any other named Defendants.  On February 23, 2021, Plaintiffs filed a First Amended Complaint (FAC).  **Exhibit B**.  The FAC was not served on moving Defendant or, apparently, on any other named Defendants.  On November 2, 2021, Plaintiffs filed a Second Amended Complaint (SAC).  **Exhibit C**.

2.      On December 30, 2021, the CDE received a copy of the Summons and SAC via service under Cal Civ. Proc. Code § 415.30.  **Exhibit D**.  The CDE executed the Notice of Acknowledgment provided with that service on January 14, 2022 pursuant to Cal Civ. Proc. Code § 415.30(c), see **Exhibit E**, and therefore, by statute, service was deemed complete on that date.  See *HMS Cornerstone Solutions, Inc. v. Signorelli Co*., 2017 WL 3433203 at *2 (E.D. Cal.).

3.      The CDE received the entire court file from the clerk of the El Dorado County Superior Court on January 18, 2022.  It is attached as **Exhibit F**.

4.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 , and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(a) regarding federal question jurisdiction in that it arises under 42 U.S.C. §12132 and 29 U.S.C. § 794, as alleged in Plaintiffs' SAC.

5.      No other Defendants have joined in this Notice of Removal, nor are they required to, as it is the noticing party's knowledge and understanding that service has not yet been affected upon them.

Dated:  January 25, 2022                                  Respectfully submitted,


                                                  By:     /s/ Len Garfinkel
                                                          LEN GARFINKEL
                                                          Assistant General Counsel
                                                          Attorney for Defendant CDE

1  Seth L. Goldstein, S.B.N. 176882
2  2100 Garden Road, Suite H-8
   Monterey, California, 93940
3  Telephone  (831) 372 9511
   Fax         (831) 372 9611
4
5  Lead-Counsel for Plaintiffs

**EL DORADO CO. SUPERIOR CT.**

**FILED   AUG 27 2020**

BY _____ *SHues* _____
                    Deputy

6

7          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8                      **COUNTY OF EL DORADO**

9  In the Matter of:

10 _____  )   Case No.:
                                     )
11 Louie Andreas MARQUES, Gloria V.M., )   **PC  20200429**
   Thomas V.M., and Jordan V.M.,      )
12                                    )   **COMPLAINT FOR DAMAGES**
                                      )
13              Plaintiffs            )
   vs                                 )   **JURY TRIAL DEMANDED**
14                                    )
   GUIDING HANDS SCHOOL, Inc.(hereinafter )
15 "GHS"),Jennifer GALAS,  Staranne   )
   MEYERS, Cindy KELLER, David        )
16 CHAMBERS, STATE OF CALIFORNIA,     )
   DEPARTMENT OF EDUCATION, PLACER    )
17 COUNTY SELPA, Cara BRUCE, Ashley ROB, )
   Dolores ZUMBURY, Vince ANDERSON,   )
18 POINT QUEST, Inc., ROCKLIN UNIFIED )        Assigned to
19 SCHOOL DISTRICT, Noel COLLIER,     )      Judge Dylan Sullivan
   Patricia DOE, David DOE, Amanda DOE, and )   For all purposes
20 Noelle DOE,                        )
                                      )
21                                    )
                                      )
22              Defendants.           )
   _____  )

23                      **INTRODUCTION**

24    Plaintiffs MARQUES, Thomas and Jordan V.M. attended Guiding Hands School, Inc.

25 (GHS), a non-public school (NPS) as defined by the education code and certified by the

26 California Department of Education (CDE) as such addressing the educational

27 requirements children with disabilities. Each of the Plaintiffs were placed at GHS by
28
   their respective school districts pursuant to an Individual Education Plan (IEP) because

                                                              CMS

                                                   **Exhibit A**

1   the school district determined it was unable to provide a Free Appropriate Public

2   Education.

3   After GHS was closed and sold to Defendant POINT QUEST INC. (POINT QUEST),

4   Thomas and Jordan V.M. attended Defendant POINT QUEST, a non-public school

5   (NPS) as defined by the education code and certified by the California Department of

6   Education (CDE) as such addressing the educational requirements children with

7

8   disabilities.

9   1.      Guiding Hands School staff engaged in a pattern and practice of illegal use of restraints

10  for periods of time that were longer than necessary and with excessive force as a means of

11  punishing children for predictable disability-related behaviors outlined in their individual

12

13  Behavioral Intervention Plans (BIP).

14  2.      Staff members, rather than following the prescribed BIP, would place children in hurtful

15  positions, manipulating and restraining the child's body movement in such a way that to move

16  would cause lasting pain.

17

18  3.      Plaintiff MARQUEZ was a disabled student, placed on March 30, 2006, at GHS because

19  of his emotional disability. He left GHS on March 19, 2008, after an incident that required

20  medical attention as a result of actions of school staff placing him in restraint.

21  4.      Plaintiff Thomas V.M. was a disabled student, placed _____, at GHS because of his

22  diagnosis of Autism. Plaintiff Jordan V.M. was a disabled student, placed _____ , at GHS

23  because of his diagnosis of Autism. All plaintiffs, due to their disabilities, engaged in repetitive

24  conduct that disrupted their educational experience and abilities. Because of the disruption that

25  affected other students, they were frequently placed in such restraints, which included but was

26

27  not limited to, the imposition of restraints that constituted physical child abuse, battery, and

28

- 2 -

**Exhibit A**

1   assault.

2   5.      Referring to these restraints as though they were normal and accepted ways of

3   disciplining plaintiffs, Defendant teachers and assisting staff, as individually identified below,

4   preyed on plaintiffs because of their disability related conduct. These defendants assaulted and

5   battered plaintiffs repeatedly rather than following the BIPs. GHS administrators tasked

6

7   unqualified and inadequately trained staff with supervising plaintiff students, who often failed to

8   document and report incidents of abuse, and failed to take reasonable steps to prevent further

9   abuse.

10  6.      Plaintiffs, like other students who were also subjected to such conduct, would attend

11  class and when a student acted consistently with their predictable behaviors stated in their

12  individual BIP and IEP (and the reason(s) why they were placed at GHS) or failed to follow the

13

14  directions of the GHS staff as individually described below, they would be subjected to painful

15  restraints in full and open view of fellow students. Each plaintiff had specific conduct that was

16  identified in their BIP, for which, each plaintiff had a set of less restrictive measures to be taken

17

18  before a "hands on" physical intervention such as painful restraints would be exercised.

19  7.      Plaintiffs witnessed other students treated in the same way in their respective classes.

20  The observation of such torturous conduct to other students and themselves caused Plaintiffs

21  who were in their immediate presence to experience fear and anxiety such that they were

22  terrorized in anticipation that they too might be hurt in the same way.

23

24  8.      As to MARQUES, the documented abuse occurred from as early as December 18, 2006,

25  when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was

26  removed. For Thomas and Jordan V.M., it began when they first began to attend GHS in August

27  of 2018, and lasted until they were removed in _____ of 2019.

28

**Exhibit A**

9.     Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on October 28, 2019.

10.     No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary. Defendants GHS and POINT QUEST, and their individual staff members as particularly described below carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

11.     The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent the abuse. Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

12.     Plaintiff MARQUES is now an adult and no longer in school. Plaintiffs Thomas and Jordan V.M. are in another school in Washington State. The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant. Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies

- 4 -

**Exhibit A**

available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted. In addition, Plaintiff MARQUES is an adult and outside of the educational system. The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

13.     Due to both the nature of Plaintiffs Thomas and Jordan V.M.'s Autism disabilities, which precluded them from reporting all of the abusive acts at the time of their events, as well the purposeful concealment of the acts by the defendants as further described below, Plaintiffs are at this point unable to describe all of the abusive acts directed at them and the exact length of time the abuse was endured. From records obtained by Plaintiffs, there were restraint incidents involving  Plaintiffs expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

**PARTIES**

14.     At all relevant times, Plaintiff Luis MARQUES (legal name Luis Andreas MARQUES, hereinafter "MARQUES"), who lives in _____ was, at all relevant times herein, a minor child diagnosed as then having Oppositional Defiant Disorder and ADHD.  He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

15.     At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

16.     The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

17.     Plaintiffs Thomas and Jordan V.M. were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in

- 5 -

**Exhibit A**

Sections 12926 and 12926.1 of the Government Code.

18.     Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears as predictable behaviors.

19.     His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

20.     Jordan V.M. had an IEP that identified non0complince, physical aggression (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate gestures and other behavior described as eating crayons and spitting water as predictable behaviors.

21.     His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

22.     Gloria V.M. is the adoptive mother of Thomas and Jordan V.M. and is their Guardian Ad Litem.

## DEFENDANTS

23.     Guiding Hands School Inc., 4900 Windplay Dr., El Dorado Hills, California, and POINT QUEST Inc. (located on the same premises having allegedly bought out GHS) are schools incorporated under the laws of the State of California as for-profit corporations and approved by the State of California as institutions providing for children with mental disabilities.

24.     Presently, and at all times relevant to this Complaint, GHS was and is a business establishment within the meaning of the Unruh Civil Rights Act. Defendant GHS was an independent contractor with Elk Grove Unified Schools, Dry Creek Joint Unified Schools,

- 6 -

**Exhibit A**

1  pursuant to a written contract to perform educational services for Plaintiffs MARQUES,

2  Thomas and Jordan V.M.

3  25.    Presently, and at all times relevant to this Complaint, POINT QUEST is a business

4
   establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT QUEST is
5
6  an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to

7  a written contract to perform educational services for Plaintiffs Thomas and Jordan V.M.

8  26.    Presently, and at all times relevant to this Complaint, Defendant POINT QUEST is and a

9
   business establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT
10
11 QUEST is an independent contractor pursuant to a written contract to perform educational

12 services for Plaintiffs Thomas and Jordan V.M.

13 27.    Presently, and at all times relevant to this Complaint, Defendants ROCKLIN UNIFIED

14 SCHOOLS and PLACER COUNTY SELPA are business establishments within the meaning of

15 the Unruh Civil Rights Act.

16
17 28.    Presently, and at all times relevant to this Complaint, the California Department of

18 Education (CDE) a department of the State of California responsible for inspecting and

19 certifying Non-Public Schools such as GHS and POINT QUEST. It is a business establishment

20 within the meaning of the Unruh Civil Rights Act.

21 29.    Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing against

22 ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA for injuries

23
   incurred on or after March ____ , 2019 and claims herein stated against said public entities.
24
25 **GHS Employees:**

26 30.    At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers

27 (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller

28

- 7 -

**Exhibit A**

1  (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter

2  "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and

3  administrators of defendant GHS, all of whom have authority and control over GHS's programs,

4  and facilities, including policies, practices, procedures, programs, activities, services, training,

5  staff; and all of whom have direct responsibility for ensuring the safety and well-being of their

6

7  students, and for ensuring compliance with state and federal laws. MEYERS, KELLER,

8  RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and

9  unlawfully assault and batter Plaintiff MARQUEZ.

10  31.    At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants

11  MEYERS was the principal and member of the board of GHS, KELLER was the executive

12  director of GHS, RAMSEY was an administrator for GHS, CHRISTENSEN was an

13  administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were

14  officers, directors, and administrators of defendant GHS, all of whom have authority and control

15  over GHS's programs, and facilities, including policies, practices, procedures, programs,

16

17  activities, services, training, staff; and all of whom have direct responsibility for ensuring the

18  safety and well-being of their students, and for ensuring compliance with state and federal laws.

19

20  MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN and unknown DOE defendants

21  allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas

22  and Jordan V.N.

23  32.    At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY

24  (hereinafter "ZOMURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB

25  (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter

26

27  "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter

28

- 8 -

**Exhibit A**

"CHAMBERS") and DOE defendants were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of GHS.

33.    The names and capacities, whether individual, corporate, otherwise, sued herein as DOES 1-10, inclusive, are presently unknown, and Plaintiff will amend the Complaint to insert them when ascertained.

34.    Plaintiff sues all Defendants in El Dorado County because all of the tortious acts occurred at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

35.    Plaintiff is informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and at all times acting and performing, or failing to act or perform, within the course and scope of each similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

36.    Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER COUNTY SELPA have failed to adequately supervise their employees that resulted in the foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that staff who

- 9 -

**Exhibit A**

came into contact with Plaintiffs would provide an environment free of abuse and neglect.

37.     California law, including Cal Const, Art. I § 28, has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations necessary for their protection. Defendants also had a duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting intentionally or negligently.

38.     Defendants have violated their statutory duties to Plaintiff, including their supervisory duties created under California Education Code sections 44807 and 44808.

39.     California Penal Code section 11166 which required them to report any knowledge of a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect to the agency immediately or as soon as is practically possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up report thereof within 36 hours of receiving the information concerning the incident.

40.     Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan V.M., including multiple violations of California Education Code sections 56521.1 and 56521.2 which in pertinent part prohibits the use of any interventions that:

> 1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an amount of force that exceeds that which is reasonable and necessary under the circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma.

41.     Defendants have violated their statutory duty under California Penal Code section 11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."

42.     Defendant GHS violated its statutory duty under California Education Code section 260 by failing to enact an adequate formal or informal policy to ensure that GHS provided a learning

- 10 -

**Exhibit A**

1   environment free from discrimination based on the characteristics provided in California

2   Education Code section 220, specifically disability.

3                              **OPERATIVE FACTS**

4

5   43.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth

6   herein.

7   AS TO PLAINTIFF MARQUES

8   44.   Over a one-and-one-half year period as specifically set forth below in each cause of action,

9   Defendants ZOMURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and

10

11  DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES by grabbing him, pushing

12  or otherwise forcing him to the floor and, in painful positions, pinning all four appendages for

13  various periods of time, immobilizing him, including as punitive measures. All were either for

14  an unnecessarily prolonged period of time or had failed to utilize the less restrictive measures

15  set forth in his BIP for predictable behaviors related to his disability.

16

17  45.   MARQUES was a student at GHS from 2006 to 2008.  He was referred to GHS by Elk

18  Grove School District employees.

19  46.   MARQUES had both an Individual Education Plan (EIP) and a Behavioral Intervention

20  Plan (BIP) at all relevant times herein.

21  47.   Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB,

22  BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants failed to file Behavioral

23

24  Emergency Reports or document injuries as required by law, so all of the dates of assaults all are

25  unknown to MARQUES at the present time.

26  48.   Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16, 2007, April

27  23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March 19, 2008, set forth

28

- 11 -

**Exhibit A**

1   in greater detail below.

2   49.    On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and Ashley

3   Rob, put MARQUES in a restraint for 12 minutes because he failed to stand appropriately and

4   when escorted from the line he was standing in, kicked a student and Bruce. He was restrained

5   "per CPI". Both Dolores ZOMURY and David Chapman participated in the restraint.

6   50.    On December 18, 2006, at 1:45 PM Ashley Rob and Kera Bruce instituted an eight minute

7   restraint after MARQUES had been found to have a toy belonging to another student. What he

8   was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a

9   basket restraint.

10

11  51.    On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by

12  ZOMURY, after he refused to sit down and began throwing pencils and calling children names.

13

14  52.    On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMURY for

15  five minutes after he was told to put a pointer down and had slapped it on the desk of another

16  student. When he was directed to sit down he ran around the room and was restrained.

17

18  53.    On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by

19  Dolores ZOMURY and subsequently by a teacher's aide known only as "Laure", when

20  MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the teacher

21  and was taken to the "corner".

22  54.    On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by ZOMURY

23  after another student had pushed him, rubbing quotes not" on his jacket and in response he

24  pushed that student down.

25

26  55.    On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began swearing

27  and started to run towards another student after he disregarded a request by the instructor to put

28

**Exhibit A**

his head down on his desk. The staff involved were ZOMURY and Chambers.

56.   On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor Vince Anderson, because he failed to follow directions and began yelling in the presence of his mother.

57.   On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

58.   In this restraint, MARQUES was pushed to the ground and placed in a position for an extended period of time, while his arms were pulled behind his back.  GHS staff sat at his back while he was in this position, increasing his pain and making it difficult for him to move.

59.   This incident arose when another child assaulted MARQUES with a rock and MARQUES defended himself.

60.   When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks as a result of these restraints.

61.   MARQUES subsequently suffered panic attacks, night-terrors, startles,  depression and self-loathing as a result of these restraints.

62.   MARQUES was abused on additional occasions while attending GHS.   MARQUES has attempted to get documentation from GHS as to the exact dates of the abuse, but has been unable to obtain any response.  MARQUES will seek leave to allege these dates according to proof when this information becomes available through the discovery process.

63.   At all relevant times, MARQUES.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

64.   The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal

- 13 -

**Exhibit A**

1    Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code

2    Sec. 242), and torture (Penal Code Section 260) prohibited by California law.

3    65.    Without specific details of the restraint and measures taken, Gloria V.M. was informed

4    that Thomas V.M. was restrained by GHS staff on the following dates:

5

6    66.    Without specific details of the restraint and measures taken, Gloria V.M. was informed

7    that Jordan V.M. was restrained by GHS staff on the following dates:

8    67.    Thomas V.M. was again restrained by a staff member named "Jennifer" when attending

9    POINT QUEST and, as a result, his mother immediately withdrew him from the school.

10

11   **FIRST CAUSE OF ACTION**
     AS TO PLAINTIFF MARQUES Against GHS and DOES 1-10
     AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE,

12   PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

13   (Violation of California Civil Code §§ 51, *et seq.*)

14   68.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set

15   forth herein.

16   69.    Defendants' actions described herein violated the Unruh Civil Rights Act, California Civil

17   Code section 51.

18

19   70.    Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code §

20   51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with Attention

21   Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major

22   life activities of learning.

23

24   71.    Plaintiffs THOMAS and JORDAN V.M. are persons with disabilities as defined by Cal.

25   Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  They had been diagnosed as

26   Autistic.

27   72.    Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN

28

- 14 -

**Exhibit A**

1   SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

2   73.   GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse

3   in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

4

5   74.   GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them

6   with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities,

7   privileges, advantages, or accommodations.

8   75.   Plaintiffs were not provided with the services, facilities, privileges, advantages and

9   accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals

10  without disabilities.

11

12  76.   The discipline methods, behavior standards and criteria employed by GHS and POINT

13  QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his

14  disabilities.

15  77.   GHS and POINT QUEST failed to make reasonable modifications to their educational and

16  behavioral intervention methods and staff training that were necessary to afford students with

17

18  disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services,

19  facilities, privileges, advantages and accommodations.

20  78.   The actions and failures to act of GHS and POINT QUEST violated Title III of the

21  Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional

22  violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a

23

24  violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections

25  12181, *et seq.* As such, Defendant's actions also constituted a violation of the Unruh Act under

26  Cal. Civ. Code § 51(f).

27  79.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

28

- 15 -

**Exhibit A**

1  SCHOOLS were the product of joint action between public entities and individual employees.

2  80.   Defendants are liable to Plaintiffs for each and every offense for actual damages and

3  multiple damages of up to three times the actual damages incurred, but in no case less than

4  $4000 per offense pursuant to California Civil Code section 52.

5

6  81.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.

7  **SECOND CAUSE OF ACTION**
Violation of Cal. Civ. 51.7 Ralph Civil Rights Act

8

9  AS TO PLAINTIFF MARQUES Against GHS and DOES 1-10

10  AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE,

11  PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

12  82.   Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth

13

14  herein.

15  83.   Defendants in doing the acts described above violated Plaintiffs' rights under the Ralph Civil

16  Rights Act.

17  84.   Plaintiffs have the right to be free from any violence, or intimidation by threat of violence,

18  committed against their persons or property because of any characteristic listed or defined in

19  subdivision (b) or (e) of Section 51, because another person perceives them to have one or more of

20

21  those characteristics.

22  85.   In committing the acts in paragraphs 50 through 68 above, all defendants have violated

23  Plaintiffs' rights by subjecting them to violence and intimidation.

24  86.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

25  SCHOOLS were the product of joint action between public entities and individual employees.

26

27  87.   Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple

28  damages of up to three times the actual damages incurred, but in no case less than $4000 per offense

- 16 -

**Exhibit A**

1  pursuant to California Civil Code section 52.

2  88.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.

3                            **FOURTH CAUSE OF ACTION**

4                   For Interference with Exercise of Civil Rights in

5                   Violation of California Civil Code Section 52.1

6              AS TO PLAINTIFF MARQUES Against GHS and DOES 1-10

7     AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE,
                PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

8

9  89. Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth
   herein.

10

11 90. California Civil Code 52.1 provides that it is unlawful to interfere with the exercise or

12 enjoyment of any rights under the Constitution and the laws of this state and the United States by

13 attempted use of threats, intimidation or coercion.

14 91.   The California Constitution establishes the right to a free public education to all students on

15 an equal basis. *Butt v. California*, 4 Cal. 4th 668, 685 (1992).

16

17 92.   California Civil Code section 43 guarantees the right of every person to be free from

18 bodily restraint or harm and personal insult.

19 93.   In doing the things herein alleged, Defendants intentionally interfered with and attempted

20 to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

21 94.   Defendants acted violently against Plaintiff, thereby preventing him from exercising his

22 rights.

23

24 95.   Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

25 96.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

26 SCHOOLS were the product of joint action between public entities and individual employees.

27

28

                                    - 17 -

**Exhibit A**

97.   The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA

AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged,

was a substantial factor in causing said harm to Plaintiff.

98.   Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a

physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a

facedown position with the pupil's hands held or restrained behind the pupil's back; and by using

a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed

a clear and present danger of serious physical harm to the pupil or others.

99.   Defendant employees of GHS and POINT QUEST acted with conscious disregard of

Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to

Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT

QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  Plaintiff is

therefore entitled to recover punitive and exemplary damages.

100.  Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys'

fees and costs as set by the Court.

### FIFTH CAUSE OF ACTION
(Violation of California Education Code §§ 200, 201, 220, and 260 et seq. -
Against Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN
SCHOOL DISTRICT MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB,
BRUCE, CORY, BRYNA, CHAMBERS

101.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set

forth herein.

102.  Plaintiffs are individuals with disabilities.

103.  At all times relevant to this complaint, Defendant GHS was an educational institution

providing education to students from kindergarten through twelfth grade and receiving financial

- 18 -

**Exhibit A**

1  assistance from the State of California.

2  104.  Defendants discriminated against Plaintiff on the basis of his disability by subjecting him

3
   to physical and emotional abuse in response to disability-related behavior.
4

5  105.  The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

6  SCHOOLS were the product of joint action between public entities and individual employees.

7  106.  The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA

8  AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged,

9
   was a substantial factor in causing said harm to Plaintiff.
10

11  107.  As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages

12  in an amount according to proof and reasonable attorneys' fees and costs.

13                          **SIXTH CAUSE OF ACTION**
                (Assault and Battery Pursuant to California Penal Code Section 206)
14        i)AS TO PLAINTIFF MARQUES Against MEYERS, KELLER, RAMSEY, ZOMURY,

15          ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOES 1-10

16  AS TO PLAINTIFFS THOMAS AND JORDAN V.M. against defendants MEYERS, KELLER,
17                                    RAMSEY
18  108.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth

19  herein.

20  109.    CORY, BRYNA, CHAMBERS, and DOE defendants , with the intent to cause cruel or

21  extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted

22  significant injury upon Plaintiff by repeatedly assaulted Plaintiff throwing him to the ground and
23
   causing bruises, contusions and lacerations.
24

25  110.    As a result, Plaintiff suffered physical and psychological injuries.

26  111.    Defendants acted with the intent to cause injury and that action and intention was

27  despicable, done with a willful and knowing disregard of the rights of Plaintiff.

28

                                      - 19 -

                                                              **Exhibit A**

112.   Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

113.   Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

114.   Defendants' conduct in intentionally assaulting and restraining Plaintiff knowing of his disability condition is malicious and outrageous such that exemplary damages should be awarded.

115.  WHEREFORE, Plaintiff prays for judgment for damages according to proof.

SEVENTH CAUSE OF ACTION
ASSAULT AND BATTERY
Against Defendants MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB,
BRUCE, CORY, BRYNA, CHAMBERS

116.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

117.  MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, and DOE defendants , with the intent to cause pain, the named defendants significant injury upon Plaintiffs by repeatedly assaulting Plaintiffs.

118.  As a result, Plaintiffs suffered physical and psychological injuries.

119.  Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiff.

120.  Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

121.  Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

122.  Defendants' conduct in intentionally assaulting and restraining Plaintiff knowing of his disability condition is malicious and outrageous such that exemplary damages should be awarded.

- 20 -

**Exhibit A**

1    123. WHEREFORE, Plaintiff prays for judgment for damages according to proof.

2                           EIGHTH CAUSE OF ACTION
3                           ASSAULT AND BATTERY
     Against Defendants MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB,
4                    BRUCE, CORY, BRYNA, CHAMBERS

5    124. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth
6    herein
7
     125. In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs
8
9    MARQUEZ, Thomas and Jordan V.M. to suffer harmful or offensive contact.

10   126. As a result of said conduct of said defendants, Plaintiffs MARQUEZ, Thomas and Jordan

11   V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and

12   in a manner that offended a reasonable sense of personal dignity.

13
     127. In doing the things herein alleged, said defendants threatened to touch MARQUEZ, Thomas
14
15   and Jordan V.M. in a harmful or in an offensive manner.

16   128. At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan

17   V.M. that said defendants were about to carry out the threat.

18
     129. At all times herein mentioned, MARQUEZ, Thomas and Jordan V.M. did not consent to the
19
20   conduct of said defendants.

21   130. MARQUEZ, Thomas and Jordan V.M. suffered harm, as herein alleged.

22   131. The afore-mentioned conduct of said defendants was a substantial factor in causing

23   MARQUEZ, Thomas and Jordan V.M. harm.

24   132. The conduct of said defendants, caused MARQUEZ, Thomas and Jordan V.M. to be

25   apprehensive that said defendants would subject MARQUEZ, Thomas and Jordan V.M. to further

26   intentional invasions of their right to be free from harmful and offensive contact, and demonstrated

27
28   that at all times material herein, said defendants had a present ability to subject MARQUEZ,

                                            - 21 -

                                                                        **Exhibit A**

1    Thomas and Jordan V.M. to an intentional offensive and harmful touching.

2    133.  Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing

3    MARQUEZ, Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical

4    and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

5

6    134.  At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas

7    and Jordan V.M. rights, safety, physical well-being and feelings.  Said defendants also acted with

8    the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause

9    injury and/or humiliation to MARQUEZ, Thomas and Jordan V.M. Said defendants intended to

10   cause fear, physical injury and/or pain and suffering to MARQUEZ, Thomas and Jordan V.M. .  By

11   virtue of the foregoing, the estate of MARQUEZ, Thomas and Jordan V.M. are entitled to recover

12

13   punitive and exemplary damages from individual and non-public entity defendants according to

14   proof at trial. Estate of MARQUEZ, Thomas and Jordan V.M.  make no claim for punitive damages

15   against the named defendants.

16                              **NINTH CAUSE OF ACTION**

17                 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

18             (ASSERTED BY Thomas and Jordan V.M. against all defendants.)

19   135.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth

20   herein

21   136.  In doing the things herein alleged, the conduct of said defendants was outrageous in that it was

22   so extreme as to exceed all bounds of that usually tolerated in a civilized community.

23

24   137.     Said defendants inflicted actual injury and/or acted with reckless disregard of the

25   probability that Plaintiffs Thomas and Jordan V.M. would suffer emotional distress, knowing that

26   the child who was restrained, including Thomas and Jordan V.M., were present when the conduct

27   occurred.

28

                                          - 22 -

                                                    **Exhibit A**

138.  The conduct of said defendants, as herein alleged, was a substantial factor in causing Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

139.  Said defendants knew or should have known that Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be, physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

140.  Said defendants' knowing disregard for the safety of MARQUEZ, Thomas and Jordan V.M. and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as Thomas and Jordan V.M. caused Thomas and Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS.

141.  Said defendants' conduct was extreme and outrageous.

142.  Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Thomas and Jordan V.M. would suffer emotional distress.

143.  The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Thomas and Jordan V.M. As a result, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

**TENTH CAUSE OF ACTION**
FALSE IMPRISONMENT
ASSERTED by Thomas and Jordan V.M. against all defendants

144.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

145.  Said defendants intentionally and unlawfully exercised force, threat, implied threat of force,

- 23 -

**Exhibit A**

1   or duress, to restrain and confine Thomas and Jordan V.M. , and deprive them of their freedom of

2   movement, when said defendants committed the acts described herein.

3   146. The unlawful restraint of Thomas and Jordan V.M. as hereinabove alleged, lasted for an

4   appreciable amount of time.

5

6   147. Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

7   148. As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and

8   emotional harm, as herein alleged.

9   149. That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm

10  to Thomas and Jordan V.M.

11

12  150. The outrageous conduct of the said defendants was willful and wanton, and was performed

13  with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and

14  Jordan V.M. As a result, Thomas and Jordan V.M.  are entitled to punitive or exemplary damages

15  from individual and non-public entity defendants in a sum according to proof at time of trial.

16
                          **ELEVENTH CAUSE OF ACTION**
17                                  NEGLIGENCE
                (ASSERTED BY Thomas and Jordan V.M. against all defendants.)
18

19  151. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth

20  herein.

21  152. Said defendants breached their duty towards Thomas and Jordan V.M. by:

22

23          a.      Failure to develop and maintain effective procedures governing emergency
                    interventions;
24          b.      Failure to obtain proper training for use of behavioral emergency
                    interventions
25          c.      Failure to provide oversight on the use of restraints
26          d.      Failure to develop protocols for use of restraints
            f.      Failure to prohibit restraints on physically disabled children
27          g.      Failure to prohibit prolonged restraints (anything over 15 minutes)
28          h.      Failure to require that Thomas and Jordan V.M. be released from a restraint

**Exhibit A**

at the earliest possible moment.

i. Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

j. Failure to prohibit restraints that constrict the child's ability to breathe.

k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l. Failure to provide for the comfort of Thomas and Jordan V.M. while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M. fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m. Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o. Failure to require immediate and accurate reporting on each restraint

p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q. Failure to provide for:
-primary preventative measures rather than restraint;
-interventions that are less intrusive than restraints;
-effective ways to de-escalate situations to avoid restraints; and
-crisis intervention techniques that utilize alternatives to restraint.

r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t. Allowing use of physical restraints on children which:
- create an aversive environment counterproductive to facilitating learning;
- cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine
- whether the intervention was necessary
- whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v.

w. Failed to document injuries caused by restraint and

x. Failed to get medical attention for a child who was injured while in restraint.

153. As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and

- 25 -

**Exhibit A**

1   Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

2   154.  Breach of said mandatory duties by said defendants was a substantial factor in causing injuries

3   Thomas and Jordan V.M.

4
5   155.  At all times herein mentioned said defendants breached the general duties of due care of

6   educational professionals toward Thomas and Jordan V.M. who were disabled students under their

7   guidance and care.

8   156.  At  all  times  herein  mentioned,  said  defendants  willfully,  knowingly,  intentionally,

9   maliciously, and routinely used or encouraged the use of prone and other restraints on special

10  needs/disabled children, including Thomas and Jordan V.M.  as a form of corporal punishment in

11
12  violation of California law.

13  157.  At  all  times  herein  mentioned,  said  defendants  willfully,  knowingly,  intentionally,

14  maliciously, and routinely used or encouraged the use of prone and other restraints, known by said

15  defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M.  with

16  reckless disregard for the safety of said children.

17
18  158.  At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts,

19  willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone

20  and other restraints, to injure special needs/disabled children and to create a reign of terror within

21  the educational environment, in place and instead of providing educational services for special

22  needs/disabled children, for which they were hired.

23
24  159.  As a direct and foreseeable result of the negligence of said defendants MAX suffered physical

25  injuries and death and, Thomas and Jordan V.M. suffered physical and emotional injuries.

26  160.  The negligence of said defendants was a substantial factor in causing injury Thomas and

27  Jordan V.M.  to suffer physical and emotional injuries.

28

- 26 -

**Exhibit A**

161.  By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

**TWELFTH CAUSE OF ACTION**
NEGLIGENT SUPERVISION
ASSERTED BY Thomas and Jordan V.M.

162.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

163.  Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

164.  Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

165.  Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

166.  As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

**SEVENTEENTH CAUSE OF ACTION**
NEGLIGENCE PER SE
(ASSERTED BY Thomas and Jordan V.M. and against all Defendants)

167.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

- 27 -

**Exhibit A**

168.  In doing the things herein alleged, said defendants violated the mandatory duties toward Thomas and Jordan V.M. as prescribed by state and federal law as referenced in each of the statutes as set forth hereinabove.

169.  Said violations of criminal and civil law were a substantial factor in bringing about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

170.  As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M.  suffered injury, and are entitled to damages according to proof.

**THIRTEENTH CAUSE OF ACTION**
TORTIOUS BREACH OF THE COVENANT
OF GOOD FAITH AND FAIR DEALING
(ASSERTED BY THE PLAINTIFFS MARQUES, Gloria, Thomas and Jordan V.M.
AGAINST DEFENDANTS GHS, MEYERS, KELLER, POINT QUEST and DOE
DEFENDANTS)

171.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

172.  Upon the respective enrollment of Marques, Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants for the education of their children.

173.  At all times herein mentioned, Marques, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants.

174.  As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support.  The GHS handbook also indicated that defendant GHS  would "customize" the system to support student outcomes and  "interact with students in a way that

- 28 -

**Exhibit A**

promotes social proficiency." The GHS handbook states that "social competence is a skill that requires direct teaching." . The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

175. As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST and DOE defendants against any student based on physical or mental disability.

176. As part of said contract, defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and redirecting behavior using a lesson."

177. As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

178. As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants; and the most dangerous type of restraint, a prone restraint,

- 29 -

**Exhibit A**

was described by defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants to each of MARQUES, Thomas and Jordan V.M's parents in innocuous language as a "neutral" restraint.

179.  Plaintiffs, and each of them, did all of the significant things that the contract required them to do.

180.  At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants had occurred.

181.  Defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

182.  Defendant GHS, MEYERS, KELLER, POINT QUEST's and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

183.  By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

184.  By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

185.  By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. has suffered severe emotional and physical distress at having her respective children injured by being placed in

**Exhibit A**

prone and other restraints because of their autism and other disabilities.

186. By virtue of said  bad faith interference with contractual benefits,  all plaintiffs suffered physical and emotional injuries, and future general and special damages as herein alleged.

187. The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

188. In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults. As a consequence, plaintiffs, and each of them, are entitled to punitive damages.

### FOURTEENTH CAUSE OF ACTION
FRAUD
Asserted by Gloria V.M.

189. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

190. On or about the date of enrolling their respective children in defendant GHS, defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, represented to Gloria V.M. that said defendants would not to discriminate in any activity against any student at GHS based on physical or mental disability under Title IX, Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited intimidation or harassment by any employee of defendants GHS and POINT QUEST against any student based on physical or mental disability; that said defendants and their employees would use Positive Behavior Interventions and Supports to correct inappropriate

- 31 -

**Exhibit A**

1   behavior and to interact with students in a way which promotes social proficiency and academic

2   success, including using "positive language and redirecting behavior using a lesson"; that behavior

3   by GHS' staff when correcting a child would be "calm, consistent, brief, immediate and

4   respectful,"; that GHS and POINT QUEST behavior intervention approaches involved a three step

5   prompt "verbal, modeling, hand-over-hand"; and that restraints would be imposed only if the child

6

7   was a danger to himself or others so as to de-escalate and re-integrate into classroom activities.

8   191.  On or about the dates of the respective enrollment of Thomas and Jordan V.M., at GHS and

9   POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and their employees represented

10   to Gloria V.M that they were required to sign a form allowing defendants GHS, MEYERS,

11   KELLER, POINT QUEST, and DOE defendants, to impose restraints on said plaintiffs' respective

12

13   children, with the implied threat that if they did not sign the form their respective children would

14   not be enrolled at GHS, which was the only school available to educate said children, and therefore,

15   the parents would be in violation of California's mandatory education law.

16   192.  That the afore-mentioned representations of defendants, were false, and Gloria V.M. learned

17

18   that they were false on or after November 29, 2018, upon the death of MAX, when they discovered

19   that they did not have to allow or consent to the use of restraints against their disabled children.

20   193.  Said defendants knew that said representations were false when they made them, and/or said

21   defendants made the representations recklessly and without regard for the truth of said

22   representations.

23

24   194.

25   195.  Said defendants intended that GLORIA V.M.  rely on said representations.

26   196.  GLORIA V.M.  reasonably relied on said representations, and enrolled their respective

27   children at defendant GHS to receive an education.

28

- 32 -

**Exhibit A**

197.  GLORIA V.M. were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

198.  GLORIA V.M. reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

199.

200.  At all relevant times, said defendants acted with conscious disregard of the rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs.  By virtue of the foregoing, said  plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial.

## DAMAGES

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

FIRST CAUSE OF ACTION SEVENTH CAUSE OF ACTION
INTERFERENCE WITH THE EXERCISE OF CIVIL RIGHTS UNDER CALIFORNIA CIVIL
CODE SECTIONS 51(b) and  51.7

1.    General damages for in an amount to be determined according to  proof at trial;
2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;
3.    Past and future lost earnings in an amount to be determined by proof at trial;
4.    Impairment of earning capacity for in an amount to be determined by proof at trial;
5.    General damages for severe emotional and psychological distress

- 33 -

**Exhibit A**

6.    Pain and suffering;
7.    Statutory damages;
8.    Attorneys' fees;
8.    Punitive and exemplary damages against all non-public entity Defendants
9.    Costs of this action;
10.   Such other and further relief as the Court deems just and proper.

SECOND CAUSE OF ACTION INTERFERENCE WITH PLAINTIFFS' EXERCISE OF
CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

1.    General damages for in an amount to be determined according to  proof at trial;
2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;
3.    Past and future lost earnings in an amount to be determined by proof at trial;
4.    Impairment of earning capacity for in an amount to be determined by proof at trial;
5.    General damages for severe emotional and psychological distress
6.    Pain and suffering;
7.    Statutory damages;
8.    Attorneys' fees;
8.    Punitive and exemplary damages against all non-public entity Defendants
9.    Costs of this action;
10.   Such other and further relief as the Court deems just and proper.

THIRD CAUSE OF ACTION VIOLATIONS OF CALIFORNIA EDUCATION CODE §§ 200,
201, 220 and 260, et seq.

1.    General damages for in an amount to be determined according to  proof at trial;
2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;
3.    Past and future lost earnings in an amount to be determined by proof at trial;
4.    Impairment of earning capacity for in an amount to be determined by proof at trial;
5.    General damages for severe emotional and psychological distress
6.    Pain and suffering;
7.    Statutory damages;
8.    Attorneys' fees;
8.    Punitive and exemplary damages against all non-public entity Defendants
9.    Costs of this action;
10.   Such other and further relief as the Court deems just and proper.

FOURTH CAUSE OF ACTION ASSAULT AND BATTERY CONSTITUTING TORTURE

1.    General damages for Pain and suffering in an amount to be determined according to  proof at trial;
2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;
3.    Past and future lost earnings in an amount to be determined by proof at trial;
4.    Impairment of earning capacity for in an amount to be determined by proof at trial;
5.    General damages for severe emotional and psychological distress

- 34 -

**Exhibit A**

6.   Pain and suffering;
7.   Statutory damages;
8.   Attorneys' fees;
8.   Punitive and exemplary damages against all non-public entity Defendants
9.   Costs of this action;
10.  Such other and further relief as the Court deems just and proper.

ALL OTHER CAUSES OF ACTION AS PLED ABOVE.


Dated: August 28, 2020                              /s/ Seth L. Goldstein
                                          Seth L. Goldstein, Lead Counsel for Plaintiffs

- 35 -

**Exhibit A**

Seth L. Goldstein, S.B.N. 176882
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone  (831) 372 9511
Fax          (831) 372 9611

**Lead-Counsel for Plaintiffs**

EL DORADO CO. SUPERIOR CT.

FILED   FEB 23 2021

BY _____
                    Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF EL DORADO

In the Matter of:

|  |  |
|---|---|
| Louie Andreas MARQUES, Gloria V.M., Thomas V.M., and Jordan V.M., <br><br>          **Plaintiffs** <br><br> **vs** <br><br> GUIDING HANDS SCHOOL, Inc.(hereinafter "GHS"), Staranne MEYERS, "Star Williams"; Cindy KELLER, David CHAMBERS, Susan Jane BATTLE; "Cory" DOE; Cory QUINCEY; Byrna QUINCEY; Noel COLLIER; STATE OF CALIFORNIA, DEPARTMENT OF EDUCATION (hereinafter CDE); PLACER COUNTY SELPA (hereinafter PLACER SELPA); Troy TICKLE; Kristi GREGERSON; Cara BRUCE, Ashley ROBB, Dolores ZUMBURY, Vince ANDERSON, POINT QUEST, Inc.; Nicole DOE; Jennifer DOE; ROCKLIN UNIFIED SCHOOL DISTRICT (hereinafter RUSD);  , Patricia DOE, David DOE, Amanda DOE, and Noelle DOE, Bruce CHAPMAN; and HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEM, INC. (hereinafter HWC); and DOES 1-100, <br><br>          **Defendants.** | **Case No.: PC20200429** <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES** <br><br> **JURY TRIAL DEMANDED** <br><br><br><br><br> BY FAX |



**Exhibit B**

**PARTIES**

1.  **Plaintiff Louie MARQUES** (legal name Louie Andreas MARQUES, hereinafter "MARQUES"), who lives in Sacramento was, at all relevant times herein, a minor child diagnosed as then having Oppositional Defiant Disorder and ADHD.  He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

2.  At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

3.  The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

4.  **Plaintiffs Thomas and Jordan V.M.** were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

5.  Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears as predictable behaviors.

6.  His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

7.  Jordan V.M. had an IEP that identified non-compliance, physical aggression (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate gestures and other behavior described as eating crayons and spitting water as predictable behaviors.

-2-

**Exhibit B**

8.   His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

9.   **Plaintiff Gloria V.M.** is the adoptive mother of Thomas and Jordan V.M. and is their Guardian Ad Litem.

**DEFENDANTS**

10. **Defendants Guiding Hands School Inc.**, and **Point Quest Inc.** 4900 Windplay Dr., El Dorado Hills, California, located on the same premises having allegedly bought out GHS are non-public schools (hereinafter NPS) incorporated under the laws of the State of California as for-profit corporations and approved by the State of California as institutions providing for children with disabilities.

11. Presently, and at all times relevant to this Complaint, GHS was and is a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant GHS was an independent contractor with Elk Grove Unified Schools, pursuant to a written contract to perform educational services for Plaintiffs MARQUES, Thomas and Jordan V.M.

12. Presently, and at all times relevant to this Complaint, POINT QUEST is a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT QUEST is an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to a written contract to perform educational services for Plaintiffs Thomas and Jordan V.M.

13. Presently, and at all times relevant to this Complaint, Defendant POINT QUEST is and a business establishment within the meaning of the Unruh Civil Rights Act. Defendant POINT QUEST is an independent contractor pursuant to a written contract to

-2-

**Exhibit B**

1  perform educational services for Plaintiffs Thomas and Jordan V.M.

2      14.  Presently, and at all times relevant to this **Complaint, Defendants Rocklin Unified**

3  **Schools** and **Placer County SELPA** are business establishments within the meaning of

4  the Unruh Civil Rights Act.

5

6      15.  **Defendant California Department of Education (CDE),** a department of the State

7  of California Presently, was and at all times relevant to this Complaint,  responsible for

8  inspecting and certifying Non-Public Schools such as GHS and POINT QUEST. It is a

9  business establishment within the meaning of the Unruh Civil Rights Act.

10

11      16.  **Defendants Bruce Chapman** and  **Handle with Care Behavior Management**

12  **System, Inc.** Defendant, HWC was a corporation organized under the laws of the State

13  of New York, and doing business in California, marketing a system of restraint and training

14  California  teachers  to  restrain  special  needs  children  in  prone  and  other  types  of

15  restraints.

16      17.  At  all  times  herein  mentioned,  defendant,  Bruce  Chapman  (hereinafter

17  "CHAPMAN"), was the agent and employee, owner, alter-ego, president and founder of

18  HWC, who developed a patented restraint system marketed through HWC to schools in

19  California for use on "behaviorally challenged" children in California schools, including

20

21  GHS, which lead to the injuries to the student plaintiffs.

22      18.  At all times herein mentioned, defendant, HWC was a corporation organized under

23  the laws of the State of New York, and doing business in California, marketing a system

24  of restraint and training California teachers to restrain special needs children in prone and

25  other types of restraints.

26

27      At  all  times  herein  mentioned,  defendant,  Bruce  Chapman,  was  the  agent  and

28

- 3 -

**Exhibit B**

employee, owner, alter-ego, president and founder of HWC, who developed a patented restraint system marketed through HWC to schools in California for use on "behaviorally challenged" children in California schools, including GHS, which lead to the injuries to student plaintiffs.

19. Chapman is the inventor of the restraint system that was used at GHS. He utilized his own personal skills and experience in marketing the use of the restraint system to school districts in the State of California for use on special needs children within the state. He personally vetted and certified the instructors who taught his methods to GHS. The actual contracts were entered into with the corporation that Chapman runs out of his single family dwelling in rural upstate New York, called Handle With Care Behavioral Management Systems, Inc.. Chapman personally advocates the use of restraints within California for special needs students. Chapman personally was aware that his restraints should not be used on children who suffered the types of disabilities as were suffered by Max Benson.

20. Chapman personally runs a website entitled "thetruthaboutpronerestraint.com". On the first page, whilst haranguing a mother who was upset because her autistic child had been put into a restraint, Chapman wrote:

> "For purpose of introduction, I am a qualified unarmed use of force/physical restraint/crisis intervention/behavior management expert and leading innovator in the creation of safe restraint including safe prone (face down) and supine (face up) physical restraining technology and training. I have offered expert testimony in many jurisdictions throughout the US, both in the prosecution of abuses and in defense of those accused of abuse...."

21. The webpage "the truth about Bruce Chapman". There it is written:

> "Bruce is an expert in the fields of behavior management, unarmed use-of-force and the use of both physical and mechanical restraints. Throughout his 34 years career, Bruce has developed five separate proprietary training programs...He has personally produced many

-4-

**Exhibit B**

thousands of HWC Certified Instructors and HWS users ... Bruce has been described as a true innovator in the field of physical and mechanical restraint....Bruce has testified as a use of force, behavior management, physical and mechanical restraint expert....He has worked for both Plaintiff and Defense counsels as a consultant and expert witness...."

22. At "Category Archives: California" one finds numerous references to incidents of violence in California schools. Chapman stated on page 3 of "truth about":

"If the long term goal is to prepare children to become self-sufficient, productive and law abiding citizens, we submit that expressly permitting the wanton destruction of property is completely contrary to that goal. If destroying property is unacceptable behavior by an adult it makes no sense to set a child up for failure in this way...".

23. Chapman states that killing of a child by a teacher would be "justifiable homicide" because the teacher would be "suppressing a riot" and "preserving peace." Chapman states that he believes that a teacher may use deadly force to protect property.

24. Chapman, personally, is the registrant of the handlewithcare.com website, according to "WHOIS" under which you can determine who is the owner of the website. A copy of the WHOIS page lists Chapman as the registrant, and "Registrant Organization" is left blank. The HWC website is used to promote Bruce Chapman, personally, as an expert witness across the United States, which includes California. Chapman offers his personal expertise to testify in California courts.

25. On July 20, 2011, Jennifer Gollan wrote an article for the Bay Citizen, a newspaper then-existing in the San Francisco area. The article was entitled "Questions are Raised on Restraint Training." The article references both Chapman and the corporation. Again, utilizing the internet, Chapman shot back a response directed to the editor of a California newspaper, posting entitled "Bay Citizen Comment 1."

26. In that letter, which is signed "BC", he writes:

"While I congratulate Bay Citizen for accomplishing the mission of kicking

- 5 -

**Exhibit B**

HWC out of the {San Francisco Unified School} District, it will ultimately

deprive the District's teachers and the special education students they serve

from receiving the best crisis intervention training available, anywhere.....I

would like to arrange a private meeting with the Board so that I may answer

any questions tor concerns they may have about my character and to

personally demonstrate HWC's holding methods and safety protocols for

them.  I will travel to San Francisco at my own expense...."

27. In response to the Bay Citizen's editors' note back to Chapman, Chapman reiterates:

"I sincerely hope that the Board members who were quoted in this article

can find the time to meet with me.  We are sending my request directly to

them."

28. That is signed "BC".  Not BC as President of HWC, rather, it is him personally.

29. Throughout the "back and forth" with the California editor about a California reporter who wrote a story in a California newspaper article on restraints, Chapman repeatedly signs his missives "BC", without reference to HWC.  Chapman used just his initials "BC" again in another letter sent to Bay Citizen.

"Bay Citizen Comment 2. LAST NIGHT'S 'BEHIND THE SCENES' STORY

OF MS. GOLLAN'S SHENANIGANS - THE BACK AND FORTH BETWEEN

HER EDITOR AND MYSELF."

30. Chapman states he was convinced that California Congressman George Miller's office was responsible for passing information about Chapman's activities to Jennifer Golan, the reporter at Bay Citizen.

31. Chapman  personally  undertook  numerous  attempts  to  have  that  California

- 6 -

**Exhibit B**

Congressman investigated by various entities including a complaint to a House Committee, the US Inspector General, and apparently even the entire US Congress. Chapman not only disseminated this via the internet, but he also specifically targeted California residents, including California Congressman Darrell Issa; the NDRN (National Disability Rights Network), which is active in California; P&A. (Protection and Advocacy) "all 50 states" as Chapman writes, the editor of Bay Citizen (the newspaper in California). He signed it:

32.   "Bruce Chapman,

Individually and President of HWC".

33. He also posted on the internet an article about Jennifer Gollan, this time signed as the President of HWC, and he speaks of himself "personally" and in very personal detail. Chapman writes:

"I have been instrumental in derailing legislative efforts by the 'restraint-free movement' in multiple States and jurisdictions...In both submissions to Congress, I cite a constellation of Federal laws, Federal Administrative case law and the laws of all fifty States, including California. {P}. The restraint-free lobbyists who operate in California and throughout the United States will apparently stoop to anything necessary to prevent me from circulating this position paper because they have absolutely no response to it. When you have been as effect as I have been in derailing the dishonest movement - organized by people with no discernible expertise on the subject of restraint - you can expect retaliation.....Did she mention that I told her I was forced to quit school to raise my 9 month old son by myself? I will let my personal history and the integrity of my life's work speak for itself."

**Exhibit B**

34. Chapman also personally wrote and disseminated via the internet an article that he presented to the Virginia Board of Juvenile Justice which his personal website (aboutbrucechapman.wordpress.com) says "was widely disseminated throughout the US." The website page says:

"Bruce's first position paper..."

35. The paper to which it refers is an article supporting the use of force by officers in the juvenile justice system. The aboutbrucechapman.wordpress.com website apparently was established after the filing of the original complaint, when Chapman migrated some of the content of his former personal website "brucechapman.com".

36. Chapman also personally authored an article entitled "How HWC holding methods create a calm mind state-faster". This article is posted on website of the California Evidence Based Clearinghouse for Child Welfare (commonly known as "CEBC"). The article refers extensively to his personal expertise, including such statements as:

"...when I was a young psychiatric technician...I came to realize....I postulated....I also concluded....I later made a distinction between what I call....Some of the holds that I performed with adults....my observations....something I was able to do in making my own anecdotal observations. In my view...."

37. The font is changed at the bottom of the third page where the article begins to tout his "physical intervention method." At the end of the article is the first place he refers to HWC, and he only refers tangentially to the article attached to the website that is used in California as "Information and Resources for Child Professions."

38. Although Chapman's moving papers state that Chapman did not train any GHS staff, that is not "the truth, the whole truth, and nothing but the truth." Subsequent to the

- 8 -

**Exhibit B**

filing of this lawsuit, HWC scrubbed its old website and replaced it with a new version in 2020.

39. In this new website, when navigating around, one comes to a heading entitled "WHY HWC". Within that section it states "24/7 SUPPORT," which reads:

> "Both, (sic) you and your Licensor have direct access to the person who actually created HWC for any technical questions or "how to" questions posed to us by phone or email - 24/7...We can provide expert testimony if it is ever needed..."

40. In the former version of the website, captured when research was being done in preparing the complaint, the HWC website contained an article entitled "Handle With Care Behavioral Management System", which was used to promote the use of their system in, inter alia, in California schools. After stating on page 2 that "Handle With Care is the life's work of Bruce Chapman" it goes on, on page 3 to reassure California schools that what they are buying is Chapman's personal experience. It states:

> "Your program will be conducted by a Handle With Care Master Instructor. They are the best professional trainers in the country, selected from the thousands of agency instructors that Bruce has personally certified over the last 15 years." (Emphasis added.)

41. At the end of that document was a two-page document entitled "Handle With Care Program Outline" A perusal of the program outline - what the trainers were certified by Chapman personally to teach - does not appear to teach anything with respect to children with serious physical disabilities, such as Max Benson had with his fused neck, brain tumor, neurological deficits, low muscle tone and obesity, and for whom a prone hold was completely counter-indicated. If Chapman wants to take credit for personally credentialing

- 9 -

**Exhibit B**

"Master Instructors" who taught GHS the techniques he personally invented, then he must also accept the responsibility when his personal invention and training led directly to a student's death.

42. On page 9, is a one-page document entitled "About Bruce Chapman". This does not say "About HWC", rather "About Bruce Chapman." It states:

> "Bruce Chapman is an inventor and author. ....Bruce created Handle with
> Care technology from 1973 to 1984 on the locked psychiatric unit of
> Pennsylvania Hospital in Philadelphia, where he was regarded as the
> hospital's authority on the prevention and management of aggression and
> suicide. He discovered HWC's proprietary holding method ...in 1974 at the
> age of 21.   ...In 2001, he was granted a groundbreaking U.S. and
> International Patent for the PRT's integrated safeguard to prevent positional
> asphyxiation during a prone restraint.  He created The Tension/Tension
> Reduction Cycle...in 1980.  ...In 1995, Mr. Chapman created "Plus", a
> standalone defensive tactics training program ...He is a certified instructor
> for the New Jersey Police Training Commission and provides expert
> testimony on issues related to the use-of-force. ...In 1999, Bruce began a
> multiyear protect to design and manufacture an innovative line of "modular"
> protection products ....The SoftCircle project has earned him 11 additional
> U.S. patents (9 remain pending more are expected.)"

43. Chapman then lists his professional affiliations, which for reasons of space are not reiterated here. From this it is clear that Chapman markets the restraint system using his own personal experience within the state of California. And from all of the foregoing, it can be seen that Chapman has sufficient minimum contacts, so as to purposefully avail

- 10 -

**Exhibit B**

1   himself of the forum benefits with respect to the use of his restraint system.

2   44.   Chapman originally started HWC as a "dba" in or around 1984.  A true and correct

3   copy of the original trademark for "PRIMARY RESTRAINT TECHNIQUE (PRT), indicates

4   a date of first use in Commerce in 1984.

5   45.   The trademark was registered in 1999.

6

7   46.   Prior to the trademark being registered under the name of Bruce Chapman dba,

8   HWC was organized under the laws of New York.

9   47.   Pages from the New York Department of State show that the initial Department of

10   State filing date was February 23, 1998.

11   48.   The trademark was not cancelled for eight years after Chapman incorporated.

12

13   49.   In 2006, the corporation filed for the trademark.

14   50.   The New York Department of State shows that the Chief Executive Officers are

15   "Bruce Chapman & Hilary Adler" and that the Principal Executive Office is 184 McKinstry

16   Rd., Gardiner, New York 12525.

17   51.   Page 2 shows that the corporation has 200 shares of no par value stock.

18   52.   The location of the "principal executive office" is a single-family residence in rural

19   upstate New York.

20

21   53.   This is a single family dwelling located in an area zoned for rural agriculture.

22   54.   It is not zoned for commercial purposes.

23   55.   The residence and adjoining property is own by Bruce Chapman and Hilary Adler

24   - the two Chief Executive Officers of the corporation.

25   56.   The assessment rolls from ulstercountyny.gov website, showing on page 1, the

26   value of the residence assessed at $503,000 and on page 2, the value of the adjacent

27   vacant land at $111,000.

28

- 11 -

**Exhibit B**

57. Chapman and Adler, who doubles not only as the Vice-President of HWC, both also as Chapman's and HWC's attorney, have filed lawsuits attempting to recover monetary damages on behalf of Bruce Chapman, personally, that normally would be assets of the corporation.

58. In a published decision at 546 F.3d 230 (2008), one finds Chapman as the lead plaintiff, and HWC is also a plaintiff.

59. Chapman filed suit against numerous public and private officials - including such people as the former president of Cornell University - in his individual capacity.  The first paragraph of the court's opinion (page 3 states:

> "Plaintiffs-appellants Bruce Chapman and Handle With Care Behavior
> Management System, Inc., (collectively "HWC") market a training program
> ("Handle With Care") that teaches individuals a safe technique for
> restraining people."

60. In another action, Bruce Chapman filed a qui tam action against various institutions and individuals in connection with his competitor who was the subject of the previous lawsuit.

61. Again he is represented by Adler.

62. It is unknown if the complaint bore a different caption, but the court's opinion lists the plaintiff as "United States ex rel. Bruce Chapman."  Throughout the complaint, the court refers to Chapman and HWC as one and the same entity.

> "Plaintiff-Relator Bruce Chapman ('plaintiff' or 'Chapman') filed this qui tam
> action ...." "Chapman is president of Handle With Care Behavior
> Management System, Inc, ("HWC"), which markets and sells behavior
> management and physical restraint programs.  In the earlier action noted

- 12 -

**Exhibit B**

above, he asserted federal copyright and antitrust causes of action...This alleged policy of requiring all New York State child care providers and juvenile facilities to use the {competitor's} method focused Chapman's HWC method from the market...." .... "In the present lawsuit, Chapman alleges five types of false claims....Chapman alleges....Finally, Chapman alleges...."

63. The action was dismissed.

64. It can be seen that on Bruce Chapman's website (truthaboutbrucechapman.wordpress.com) there is yet another indication that Chapman does not regard HWC to be an entity separate from himself.

65. The GAO Investigation 2 comment posted by Chapman, where he writes on page one:

"We allege that Congressman Miller, individually or through his staff, have, for a second time, abused his/their authority and have engaged in acts of harassment and predatory conduct against a United States citizen, small business owner and taxpayer for having the audacity to exercise my first amendment right to comment on proposed (H.R. 1381) legislation." (Emphasis added.)

66. Chapman identifies the corporation as belonging to him. He continues:

"...Gollan's request for an interview and Gollen's final work product, best characterized as a smear attack is another example of the continued harassment and retaliation to which I and my company have been subjected to by Congressman Miller...."

- 13 -

**Exhibit B**

**JURISDICTION AND VENUE**

67. Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing against CDE, ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA on March 24 , 2019 for injuries and claims herein stated against said public entities.

68. Plaintiffs sue all Defendants in El Dorado County because all of the tortious acts occurred at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

69. Plaintiffs are informed and believe that each of the LEA and NPS Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and at all times acting and performing, or failing to act or perform, within the course and scope of each similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

**GHS EMPLOYEES:**

70. At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs,

- 14 -

**Exhibit B**

activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault and batter Plaintiff MARQUES.

71. At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants MEYERS was the principal and member of the board of GHS, KELLER was the executive director of GHS, RAMSEY was an administrator for GHS, CHRISTENSEN was an administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN, Noel COLLIER (Special Education Teacher),  and unknown DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas and Jordan V.N.

72. At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY (hereinafter "ZOMBURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter "CHAMBERS") Kera BRUCE (Hereinafter "BRUCE" , and DOE defendants were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and

- 15 -

**Exhibit B**

1   control of the classroom, including policies, practices, procedures, facilities, and activities

2   within the classroom. They are sued in their individual capacity and in their capacity as

3   employees of GHS.

4   73. The names and capacities, whether individual, corporate, otherwise, sued herein

5   as DOES 1-100, inclusive, are presently unknown, and Plaintiff will amend the Complaint

6   to insert them when ascertained.

7

8   **POINT QUEST EMPLOYEES**

9   74. Bill Tollestrup, Interim Director of El Dorado Hills, Bill Weber, Director of El Dorado

10  Hills, Nicole DOE, Jennifer DOE and DOE defendants were employed as administrators,

11  teachers, and aides at POINT QUEST, who intentionally and unlawfully assaulted Jordan

12  V.M. and unlawfully inflicted corporal punishment upon him. They had authority and

13  control of the classroom, including policies, practices, procedures, facilities, and activities

14  within the classroom. They are sued in their individual capacity and in their capacity as

15  employees of POINT QUEST.

16

17  **ROCKLIN UNIFIED SCHOOL EMPLOYEES**

18  75. Kristain ROYER, Program Specialist, Beth DAVIDSON, Assistant Director of

19  Special Education, and DOE defendants were employed as administrators at RUSD, who

20  knew or should have known that POINT QUEST staff had intentionally and unlawfully

21  assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had

22  authority and oversight control of the program at POINT QUEST school, including policies,

23  practices, procedures, facilities, and activities within the classroom. They are sued in their

24  individual capacity and in their capacity as employees of RUSD.

25

26

27

28

- 16 -

**Exhibit B**

1

## PLACER COUNTY SELPA EMPLOYEES

2

76. Kristi Gregersen, Program Specialist, Troy TICKLE, Director, Placer County

3

SELPA, and DOE defendants were employed as administrators at Placer County SELPA,

4

who knew or should have known that POINT QUEST staff had intentionally and unlawfully

5

assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had

6

authority and oversight control of the program at POINT QUEST school, including policies,

7

practices, procedures, facilities, and activities within the classroom. They are sued in their

8

individual capacity and in their capacity as employees of RUSD.

9

77. Plaintiffs MARQUES, Thomas, and Jordan V.M. were placed at GHS and POINT

10

QUEST by their respective school districts after representations were made to the minors'

11

parents about both schools special skills, facilities and safe environment appropriate for

12

their children. The placement was pursuant to each student's Individual Education Plan

13

(IEP), as a result of their diagnosis as children with disabilities, because the school

14

districts themselves determined they were unable to provide a Free Appropriate Public

15

Education.

16

78. Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER

17

COUNTY SELPA have failed to adequately supervise their employees that resulted in the

18

foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that

19

staff who came into contact with Plaintiffs would provide an environment free of abuse and

20

neglect.

21

79. California law, including Cal Const, Art. I § 28, has long imposed on school

22

authorities a duty to supervise at all times the conduct of children on school grounds and

23

to enforce those rules and regulations necessary for their protection. Defendants also had

24

25

26

27

28

- 17 -

**Exhibit B**

a duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting intentionally or negligently.

80. Defendants have violated their statutory duties to Plaintiff, including their supervisory duties created under California Education Code sections 44807 and 44808.

81. California Penal Code section 11166 which required them to report any knowledge of a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect to the agency immediately or as soon as is practically possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up report thereof within 36 hours of receiving the information concerning the incident.

82. Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan V.M., including multiple violations of California Education Code sections 56521.1 and 56521.2 (and its predecessor legislation) that, in pertinent parts, suggest alternative interventions and/or prohibits the use of any interventions that:

> 1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an amount of force that exceeds that which is reasonable and necessary under the circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma.

83. Defendants have violated their statutory duty under California Penal Code section 11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."

84. Defendants GHS and POINT QUEST violated its statutory duty under California Education Code section 260 by failing to enact an adequate formal or informal policy to ensure that GHS and POINT QUEST provided a learning environment free from

**Exhibit B**

discrimination based on the characteristics provided in California Education Code section 220, specifically disability.

85. GHS was closed in 2018 after the State of California revoked their license to operate following the death of student Max Benson who was subjected to a restraint that killed him.

86. After GHS was closed it was, allegedly, sold to POINT QUEST, and Jordan V.M. then attended Defendant POINT QUEST.

87. When POINT QUEST took over GHS facilities and educational duties, Gloria V.M. was assured by the Rocklin Unified School staff, Placer County SELPA, and POINT QUEST staff, expressly, by inference, or omission, that the previous policies and practices employed by GHS were, not only no longer employed, she was assured that the GHS employees were gone and would not be rehired at POINT QUEST.

88. For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") -have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for their physical and emotional health.

89. There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to abusive use of restraint systems, such as the Handle With Care system developed by Defendant Bruce Chapman. It is also well-known that restraints are disproportionately used against children with disabilities.

90. Despite this knowledge, nonpublic schools like Defendants GHS and POINT QUEST and their respective staffs continued to use such restraints frequently, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or others, for extended periods of time, on students whose disabilities elevated

- 19 -

**Exhibit B**

1   the risk of using restraints, and with excessive force.

2   91.  They could do so because the CDE, and the Local Educational Agency (LEA)

3   Defendants abdicated their responsibilities to monitor and supervise GHS and POINT

4

5   QUEST and ensure their compliance with state and federal laws prohibiting discrimination

6   and the improper use of restraints.

7   92.   The CDE continued to certify GHS continues to currently certify POINT QUEST,

8   and the LEA Defendants continued to contract with and place their students with

9   disabilities in the respective schools.

10  93.  Plaintiff students with developmental and other disabilities whose local educational

11  agencies placed them at GHS and POINT QUEST pursuant to their Individualized

12

13  Education Plans ("IEP")

14  94.  Each Plaintiff Student attended GHS sometime between 2006 and 2018, where its

15  administrators and staff subjected them to excessive and harmful restraints and other

16  aggressive physical interventions in response to known behaviors associated with their

17  disabilities, resulting in physical and emotional abuse and injury, and in the case of one

18  other student, death.

19

20  95.  GHS was, and POINT QUEST is, a nonpublic school-as that term is defined in Cal.

21  Ed. Code § 56034-which contracted with the LEA Defendants to provide special education

22  services to public school students with disabilities in exchange for state and federal

23  educational funding.

24  96.  As required by law, GHS  and POINT QUEST entered into Master Contracts with

25  the LEA's, as well as an Individual Services Agreement for each student placed there.

26

27  97. Each of the Plaintiff Students' IEP's included a Behavioral Intervention Plan ("BIP")

28  which described the student's known disability-related behaviors and the intervention

-20-

**Exhibit B**

strategies and positive behavioral supports educators should use to prevent or respond to those behaviors.

98. Despite legal requirements (discussed below) and Defendants' knowledge of the dangers associated with restraints to students' physical and emotional health, GHS and POINT QUEST administrators and employees engaged in a policy and practice of using restraints as a substitute for the positive interventions detailed in the students' BIPs in response to predictable behavior that did not pose a clear and present danger of serious physical harm to the student or others. GHS and POINT QUEST used restraints against its students frequently, for periods of time that were longer than necessary, and with excessive force.

99. These restraints-including prone restraints- in which the child is placed face down on the floor with one or more adults applying force from above to keep the child's body immobile-frequently lasted over an hour.

100. Some students were restrained frequently, sometimes more than one time each day.

101. The restraints and other aggressive physical interventions inflicted by GHS and POINT QUEST caused the Plaintiff Students physical and emotional injuries.

102. GHS and POINT QUEST administrators were not only aware of the abuse, but encouraged it and were responsible for the school's policy and practice of using frequent, excessive, harmful and lengthy restraints as a substitute for positive behavioral interventions in response to students' predictable, disability-related behaviors.

103. GHS and POINT QUEST did not provide adequate training in positive behavioral interventions, instead relying on Defendant Bruce Chapman's patented restraint system, Handle With Care Behavioral Management Systems, Inc. which was associated with

- 21 -

**Exhibit B**

numerous abuses by educational professionals on students with behavioral challenges.

104. GHS and POINT QUEST training in the HWC method ignored requirements of state and federal law and did not provide proper warnings regarding the risks associated with restraining students or safeguards for monitoring and responding to signs of distress.

105. Moreover, GHS and POINT QUEST took significant measures to conceal its illegal use of restraints and child abuse from parents and the LEAs with which it contracted by failing to provide required reports to the parents and the State of California.

106. Prior to the children's placement, GHS misrepresented orally, in enrollment documents, and in the children's IEP that the school focused on proactive, positive behavioral interventions and that corrective behavior would be "calm", "brief", and "respectful."

107. The HWC Intervention Statement that parents had to sign as part of the enrollment packet emphasized positive intervention and "the 3-step prompt" which "entails a verbal request, followed by staff modeling and finally hand over hand with children who may have difficulty following directions . . . " It represented that a restraint would be used only if the child appeared to be "a physical danger to themselves or others around them".

108. GHS used the HWC terminology in referring to the most dangerous restraint-a prone restraint-as a "neutral" restraint. *Id.* These misrepresentations were repeated in the students' BIPs developed as part of the IEP process and a part of the agreement between the parent/student, the LEA, and GHS.

109. When a student was restrained, GHS frequently failed to complete a Behavioral Emergency Report ("BER"), place the BER in the student's file, send it to the LEA, or notify the student's parent, as required by law and GHS's Master Contracts with the LEAs. Nor did GHS administrators or staff report the regular, systemic child abuse they

**Exhibit B**

witnessed and participated in at the school, despite the requirement to do so as mandated reporters.

110. GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.

111. However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to place vulnerable students in its care. GHS would still be abusing its students were it not for the death of a 13-year-old student who died after he was held in a prone restraint for almost two hours on November 28, 2018.

112. Plaintiff Thomas V.M. was a disabled student, placed at GHS on August 6, 2018, because of his diagnosis of his disability. Plaintiff Jordan V.M. was a disabled student, placed at GHS on February 22, 2018, because of his diagnosis of disability. All plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their educational experience and abilities.

113. Because of the disruption that affected other students, they were frequently placed in such restraints, which included but was not limited to, the imposition of restraints that constituted physical child abuse, battery, and assault.

114. Referring to these restraints as though they were normal and accepted ways of disciplining plaintiffs, Defendant administrators,  teachers and assisting staff, as individually identified below, preyed on plaintiffs because of their disability related conduct.

115. These defendants assaulted and battered plaintiffs repeatedly rather than following the BIPs.

116. The LEA administrators, by and through their agency with GHS  and POINT

- 23 -

**Exhibit B**

QUEST administrators tasked unqualified and inadequately trained staff with supervising plaintiff students, who often failed to document and report incidents of abuse, and failed to take reasonable steps to prevent further abuse.

117. Plaintiffs, like other students who were also subjected to such conduct, would attend class and when a student acted consistently with their predictable behaviors stated in their individual BIP and IEP (and the reason(s) why they were placed at GHS and POINT QUEST) or failed to follow the directions of the GHS and POINT QUEST staff as individually described below, they would be subjected to painful restraints in full and open view of fellow students.

118. Each plaintiff had specific conduct that was identified in their BIP, for which, each plaintiff had a set of less restrictive measures to be taken before a "hands on" physical intervention such as painful restraints would be exercised.

119. Plaintiffs witnessed other students treated in the same way in their respective classes. The observation of such torturous conduct to other students and themselves caused Plaintiffs who were in their immediate presence to experience fear and anxiety such that they were terrorized in anticipation that they too might be hurt in the same way.

120. As to MARQUES, the documented abuse occurred from as early as December 18, 2006, when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was removed. For Thomas and Jordan V.M., it began when they first began to attend GHS on February 22, 2018, and lasted until they were removed on or about the end of December 2018 and officially, in January, 2019.

121. Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on or about October 1, 2019 and officially October 22, 2019.

- 24 -

**Exhibit B**

122. No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary.

123. Defendants GHS and POINT QUEST, and their individual staff members as particularly described below, carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

124. The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent the abuse.

125. Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

126. Plaintiffs Thomas and Jordan V.M. are in another school in Washington State.

127. The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant.

128. Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted.

129. In addition, Plaintiff MARQUES is an adult and outside of the educational system.

- 25 -

**Exhibit B**

130. The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

131. From records to be obtained by Plaintiffs, there were restraint incidents involving Plaintiffs and they expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

## OPERATIVE FACTS

132. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

### AS TO PLAINTIFF MARQUES

133. Over a one-and-one-half year period as specifically set forth below in each cause of action, Defendants ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES by grabbing him, pushing or otherwise forcing him to the floor and, in painful positions, pinning all four appendages for various periods of time, immobilizing him, including as punitive measures. All were either for an unnecessarily prolonged period of time or had failed to utilize the less restrictive measures set forth in his BIP for predictable behaviors related to his disability.

134. MARQUES was a student at GHS from 2006 to 2008. He was referred to GHS by Elk Grove School District employees.

135. MARQUES had both an Individual Education Plan (EIP) and a Behavioral Intervention Plan (BIP) at all relevant times herein.

136. Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants failed to file

- 26 -

**Exhibit B**

Behavioral Emergency Reports or document injuries as required by law, so all of the dates of assaults all are unknown to MARQUES at the present time.

137.    Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16, 2007, April 23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March 19, 2008, set forth in greater detail below.

138.    On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and Ashley Robb, put MARQUES in a restraint for 12 minutes because he failed to stand appropriately and when escorted from the line he was standing in, kicked a student and Bruce. He was restrained "per CPI". Both Dolores ZOMBURY and David Chapman participated in the restraint.

139.    On December 18, 2006, at 1:45 PM Ashley Robb and Kera Bruce instituted an eight minute restraint after MARQUES had been found to have a toy belonging to another student. What he was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a basket restraint.

140.    On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by ZOMBURY, after he refused to sit down and began throwing pencils and calling children names.

141.    On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMBURY for five minutes after he was told to put a pointer down and had slapped it on the desk of another student. When he was directed to sit down he ran around the room and was restrained.

142.    On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by Dolores ZOMBURY and subsequently by a teacher's aide known only as "Laure", when MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the

- 27 -

**Exhibit B**

1   teacher and was taken to the "corner".

2   143.   On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by

3   ZOMBURY after another student had pushed him, rubbing "snot" on his jacket and in

4   response he pushed that student down.

5

6   144.   On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began

7   swearing and started to run towards another student after he disregarded a request by the

8   instructor to put his head down on his desk. The staff involved were ZOMBURY and

9   Chambers.

10   145.   On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor

11   Vince Anderson, because he failed to follow directions and began yelling in the presence

12   of his mother.

13

14   146.   On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants

15   restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

16   147.   In this restraint, MARQUES was pushed to the ground and placed in a position

17   for an extended period of time, while his arms were pulled behind his back. GHS staff sat

18   at his back while he was in this position, increasing his pain and making it difficult for him

19   to move.

20

21   148.   This incident arose when another child assaulted MARQUES with a rock and

22   MARQUES defended himself.

23   149.   When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises

24   to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks

25   as a result of these restraints.

26   150.   MARQUES subsequently suffered panic attacks, night-terrors, startles,

27   depression and self-loathing as a result of these restraints.

28

- 28 -

**Exhibit B**

151.   MARQUES was abused on additional occasions while attending GHS.

152.   MARQUES will seek leave to allege these dates according to proof when furhter information becomes available through the discovery process.

153.   At all relevant times, MARQUES.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

154.   The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code Sec. 242), and torture (Penal Code Section 260) prohibited by California law.

**AS TO THOMAS V.M.**

155.   Thomas V.M. was restrained by GHS and POINT QUEST staff on many occasions the precise details are neither known to he nor his mother at this time, other than that described below.

156.   Thomas V.M. was restrained by a staff member named "Jennifer" when attending POINT QUEST and, as a result, his mother immediately withdrew him from the school.

157.   Thomas V.M. knows that "Jennifer"was a previous staff member at GHS.

**AS TO JORDAN V.M.**

158.   Jordan V.M. was restrained by GHS staff on many occasions the precise details are neither known to he nor his mother at this time.

---

**FIRST CAUSE OF ACTION**

AS TO PLAINTIFF MARQUES Against GHS;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,

- 29 -

**Exhibit B**

CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;
and DOES 1-100.
(Violation of California Civil Code §§ 51, *et seq.*)

159.   Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

160.   Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major life activities of learning.

161.   Plaintiffs THOMAS and JORDAN V.M. are  persons with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1. They had been diagnosed as Autistic.

162.   Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

163.   GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

164.   GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities, privileges, advantages, or accommodations.

165.   Plaintiffs were not provided with the services, facilities, privileges, advantages and accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals without disabilities.

166.   The discipline methods, behavior standards and criteria employed by GHS and

- 30 -

**Exhibit B**

POINT QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his disabilities.

167.   GHS and POINT QUEST failed to make reasonable modifications to their educational and behavioral intervention methods and staff training that were necessary to afford students with disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services, facilities, privileges, advantages and accommodations.

168.   The actions and failures to act of GHS and POINT QUEST violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections 12181, *et seq.* As such, Defendant's actions also constituted a violation of the Unruh Act under Cal. Civ. Code § 51(f).

169.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

170.   Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

171.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

Violation of Cal. Civ. 51.7 Ralph Civil Rights Act
AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

172.   Plaintiffs incorporate, by reference herein, all preceding paragraphs as though

-31-

**Exhibit B**

fully set forth herein.

173.    Defendants in doing the acts described above violated Plaintiffs' rights under the Ralph Civil Rights Act.

174.    Plaintiffs have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of any characteristic listed or defined in subdivision (b) or (e) of Section 51, because another person perceives them to have one or more of those characteristics.

175.    In committing the acts described above, all defendants have violated Plaintiffs' rights by subjecting them to violence and intimidation.

176.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

177.    Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

178.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION

For Interference with Exercise of Civil Rights in
Violation of California Civil Code Section 52.1
AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

179.    Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth herein.

180.    California Civil Code 52.1 provides that it is unlawful to interfere with the

- 32 -

**Exhibit B**

exercise or enjoyment of any rights under the Constitution and the laws of this state and the United States by attempted use of threats, intimidation or coercion.

181.   The California Constitution establishes the right to a free public education to all students on an equal basis. *Butt v. California*, 4 Cal. 4th 668, 685 (1992).

182.   California Civil Code section 43 guarantees the right of every person to be free from bodily restraint or harm and personal insult.

183.   In doing the things herein alleged, Defendants intentionally interfered with and attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

184.   Defendants acted violently against Plaintiff, thereby preventing him from exercising his rights.

185.   Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

186.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

187.   The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

188.   Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a face down position with the pupil's hands held or restrained behind the pupil's back; and by using a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed a clear and present danger of serious physical harm to the pupil or others.

189.   Defendant employees of GHS and POINT QUEST acted with conscious

- 33 -

**Exhibit B**

disregard of Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  Plaintiff is therefore entitled to recover punitive and exemplary damages.

190.   Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys' fees and costs as set by the Court.

## FOURTH CAUSE OF ACTION

(Violation of California Education Code §§ 200, 201, 220, and 260 et seq. - Against Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS

191.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

192.   Plaintiffs are individuals with disabilities.

193.   At all times relevant to this complaint, Defendant GHS was an educational institution providing education to students from kindergarten through twelfth grade and receiving financial assistance from the State of California.

194.   Defendants discriminated against Plaintiff on the basis of his disability by subjecting him to physical and emotional abuse in response to disability-related behavior.

195.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

- 34 -

**Exhibit B**

196.   The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

197.   As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages in an amount according to proof and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

Assault and Battery Pursuant to California Penal Code Section 206
AS TO PLAINTIFF MARQUES Against MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOES 1-100
AS TO PLAINTIFFS THOMAS AND JORDAN V.M.
against defendants MEYERS, KELLER, RAMSEY, "JENNIFER"DOE

198.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

199.   MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, MEYERS, KELLER, RAMSEY, "JENNIFER"DOE, and DOE defendants , with the intent to cause cruel or extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted significant injury upon Plaintiff by repeatedly assaulted Plaintiff throwing him to the ground and causing bruises, contusions and lacerations.

200.   As a result, Plaintiff suffered physical and psychological injuries.

201.   Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiff.

- 35 -

**Exhibit B**

202.   Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

203.   Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

204.   Defendants' conduct in intentionally assaulting and restraining Plaintiff knowing of his disability condition is malicious and outrageous such that exemplary damages should be awarded.

205.   WHEREFORE, Plaintiff prays for judgment for damages according to proof.

## SIXTH CAUSE OF ACTION

## ASSAULT AND BATTERY

i)Against Defendants MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, "JENNIFER DOE," DOES 1-100

206.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

207.   In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs MARQUEZ, Thomas and Jordan V.M. to suffer harmful or offensive contact.

208.   As a result of said conduct of said defendants, Plaintiffs MARQUEZ, Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

- 36 -

**Exhibit B**

209.   In doing the things herein alleged, said defendants threatened to touch MARQUEZ, Thomas and Jordan V.M. in a harmful or in an offensive manner.

210.   At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan V.M. that said defendants were about to carry out the threat.

211.   At all times herein mentioned, MARQUEZ, Thomas and Jordan V.M. did not consent to the conduct of said defendants.

212.   MARQUEZ, Thomas and Jordan V.M. suffered harm, as herein alleged.

213.   The aforementioned conduct of said defendants was a substantial factor in causing MARQUEZ, Thomas and Jordan V.M. harm. The conduct of said defendants, caused MARQUEZ, Thomas and Jordan V.M. to be apprehensive that said defendants would subject MARQUEZ, Thomas and Jordan V.M. to further intentional invasions of their right to be free from harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a present ability to subject MARQUEZ, Thomas and Jordan V.M. to an intentional offensive and harmful touching.

214.   Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing MARQUEZ, Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

215.   At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas and Jordan V.M. rights, safety, physical well-being and feelings. Said defendants also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury and/or humiliation to MARQUEZ, Thomas and Jordan V.M. Said defendants intended to cause fear, physical injury and/or pain and suffering to MARQUEZ, Thomas and Jordan V.M.

- 37 -

**Exhibit B**

216.   By virtue of the foregoing, the estate of MARQUEZ, Thomas and Jordan V.M. are entitled to recover punitive and exemplary damages from individual and non-public entity defendants according to proof at trial. Estate of MARQUEZ, Thomas and Jordan V.M. make no claim for punitive damages against the named defendants.

### SEVENTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(ASSERTED BY Gloria V.M. against all RUSD, PLACER COUNTY SELPA, GHS AND RUSD ADMINSTRATORS defendants,
Thomas and Jordan V.M. against defendants  David CHAMBERS, Susan Jane BATTLE, "Cory" Doe, Cory QUINCEY, Byrna QUINCEY, Noel COLLIER,  Ashley ROBB, Dolores ZUMBURY, Vince ANDERSON, Nicole Doe, Jennifer Doe.

217.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

218.   In doing the things herein alleged, the conduct of said defendants was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

219.   Said defendants inflicted actual injury and/or acted with reckless disregard of the probability that Plaintiffs Gloria, Thomas and Jordan V.M. would suffer emotional distress, knowing that the children who was restrained, including Gloria, Thomas and Jordan V.M., were present when the conduct occurred.

220.   The conduct of said defendants, as herein alleged, was a substantial factor in causing Gloria, Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

221.   Said defendants knew or should have known that Gloria, Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be,

- 38 -

**Exhibit B**

physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

222.   Said defendants' knowing disregard for the safety of Gloria, Thomas and Jordan V.M. and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as Gloria, Thomas and Jordan V.M. caused Thomas and Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS and POINT QUEST.

223.   Said defendants' conduct was extreme and outrageous.

224.   Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Gloria, Thomas and Jordan V.M. would suffer emotional distress.

225.   The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Gloria, Thomas and Jordan V.M. As a result, Gloria, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

**EIGHTH CAUSE OF ACTION**

FALSE IMPRISONMENT CONSPIRACY TO COMMITT FALSE IMPRISONMENT

ASSERTED by Thomas and Jordan V.M. against all individual defendants

226.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

227.   Said defendants, in concert with one another, did intentionally and unlawfully, and conspired to, exercise force, threat, implied threat of force, or duress, to restraint and

- 39 -

**Exhibit B**

confine Thomas and Jordan V.M. , and deprive them of their freedom of movement, when said defendants committed the acts described herein.

228.    Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

229.    As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and emotional harm, as herein alleged.

230.    That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm to Thomas and Jordan V.M.

231.    The outrageous conduct of the said defendants was willful and wanton, and was performed with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and Jordan V.M.

232.    As a result, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof at time of trial.

## NINTH CAUSE OF ACTION

### NEGLIGENCE

Asserted by Gloria, Thomas and Jordan V.M. against all defendants.

233.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

234.    Said defendants breached their duty towards Thomas and Jordan V.M. by:

a. Failure to develop and maintain effective procedures governing emergency interventions;

b. Failure to obtain proper training for use of behavioral emergency interventions

- 40 -

**Exhibit B**

c. Failure to provide oversight on the use of restraints

d. Failure to develop protocols for use of restraints

f. Failure to prohibit restraints on physically disabled children

g. Failure to prohibit prolonged restraints (anything over 15 minutes)

h. Failure to require that Thomas and Jordan V.M. be released from a restraint at the earliest possible moment.

i. Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

j. Failure to prohibit restraints that constrict the child's ability to breathe.

k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l. Failure to provide for the comfort of Thomas and Jordan V.M. while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M. fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m. Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o. Failure to require immediate and accurate reporting on each restraint

p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q. Failure to provide for:

- 41 -

**Exhibit B**

-primary preventative measures rather than restraint;

-interventions that are less intrusive than restraints;

-effective ways to de-escalate situations to avoid restraints; and

-crisis intervention techniques that utilize alternatives to restraint.

r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t. Allowing use of physical restraints on children which:

- create an aversive environment counterproductive to facilitating learning;

- cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine

- whether the intervention was necessary

- whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v. Failed to document injuries caused by restraint and

w. Failed to get medical attention for a child who was injured while in restraint.

235.   As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

236.   Breach of said mandatory duties by said defendants was a substantial factor

- 42 -

**Exhibit B**

in causing injuries Thomas and Jordan V.M.

237.   At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward Thomas and Jordan V.M. who were disabled students under their guidance and care.

238.   At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints on special needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in violation of California law.

239.   At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints, known by said defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with reckless disregard for the safety of said children.

240.   At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone and other restraints, to injure special needs/disabled children and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for which they were hired.

241.   As a direct and foreseeable result of the negligence of said defendants learning of the death of Max Benson, plaintiffs and their own injuries Thomas and Jordan V.M. suffered physical and emotional injuries.

242.   The negligence of said defendants was a substantial factor in causing injury Thomas and Jordan V.M. to suffer physical and emotional injuries.

- 43 -

**Exhibit B**

243.   By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

## TENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION
### ASSERTED BY Thomas and Jordan V.M.

244.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

245.   Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

246.   Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

247.   Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

248.   As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

## ELEVENTH CAUSE OF ACTION

- 44 -

**Exhibit B**

NEGLIGENCE PER SE
(ASSERTED BY Thomas and Jordan V.M. and against all Defendants)

249.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

250.   In doing the things herein alleged, said defendants violated the mandatory duties toward Thomas and Jordan V.M. as prescribed by state and federal law as referenced in each of the statutes as set forth hereinabove.

251.   Said violations were of the statutes specifically intended to protect the class of plaintiff and to prevent the injuries as those described herein.

252.   Said violations of criminal and civil law were a substantial factor in bringing about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

253.   As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

**TWELFTH CAUSE OF ACTION**

Tortious Breach of the Covenant
Of Good Faith and Fair Dealing
Asserted by the Plaintiffs Marques, Gloria, Thomas and Jordan V.M. Against
Defendants GHS, Meyers, Keller, Point Quest,
Troy Tickle, Kristi Gregerson, Cara Bruce and Doe Defendants

254.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

255.   Upon the respective enrollment of Marques, Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants for the education of their children.

- 45 -

**Exhibit B**

256.   At all times herein mentioned, Marques, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce  and DOE defendants.

257.   As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support.  The GHS handbook also indicated that defendant GHS would "customize" the system to support student outcomes and  "interact with students in a way that promotes social proficiency." The GHS handbook states that "social competence is a skill that requires direct teaching." .  The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

258.   As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce,  and DOE defendants against any student based on physical or mental disability.

259.   As part of said  contract, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to

- 46 -

**Exhibit B**

correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and redirecting behavior using a lesson."

260.   As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants  promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

261.   As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants; and the most dangerous type of restraint, a prone restraint, was described by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants to each of MARQUES, Thomas and Jordan V.M's parents in innocuous language as a "neutral" restraint.

262.   Plaintiffs, and each of them, did all of the significant things that the contract required them to do.

263.   At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS, KELLER, POINT QUEST,Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants had occurred.

- 47 -

**Exhibit B**

264.   Defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

265.   Defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

266.   By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

267.   By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

268.   By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. and the beneficiaries of said contract, Thomas and Jordan V.M., have suffered severe emotional and physical distress at having the respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

269.   By virtue of said  bad faith interference with contractual benefits,  all plaintiffs

- 48 -

**Exhibit B**

suffered physical and emotional injuries, and future general and special damages as herein alleged.

270.   The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

271.   In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults.  As a consequence, plaintiffs, and each of them, are entitled to punitive damages.

## THIRTEENTH CAUSE OF ACTION

### FRAUD
#### Asserted by Gloria V.M.

272.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

273.   On or about the date of enrolling their respective children in defendant GHS, defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, represented to Gloria V.M. that said defendants would not to discriminate in any activity against any student at GHS based on physical or mental disability under Title IX, Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited

- 49 -

**Exhibit B**

intimidation or harassment by any employee of defendants GHS and POINT QUEST

against any student based on physical or mental disability; that said defendants and

their employees would use Positive Behavior Interventions and Supports to correct

inappropriate behavior and to interact with students in a way which promotes social

proficiency and academic success, including using "positive language and redirecting

behavior using a lesson"; that behavior by GHS' staff when correcting a child would be

"calm, consistent, brief, immediate and respectful,"; that GHS and POINT QUEST

behavior intervention approaches involved a three step prompt "verbal, modeling,

hand-over-hand";  and that restraints would be imposed only if the child was a danger

to himself or others so as to de-escalate and re-integrate into classroom activities.

274.    On or about the dates of the respective enrollment of Thomas and Jordan

V.M., at GHS and POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and

their employees represented to Gloria V.M that they were required to sign a form

allowing defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants,

to impose restraints on said plaintiffs' respective children, with the implied threat that if

they did not sign the form their respective children would not be enrolled at GHS,

which was the only school available to educate said children, and therefore, the

parents would be in violation of California's mandatory education law.

275.    That the afore-mentioned representations of defendants, were false, and

Gloria V.M. learned that they were false on or after November 29, 2018, upon the

death of MAX, when they discovered that they did not have to allow or consent to the

use of restraints against their disabled children.

276.    Said defendants knew that said representations were false when they made

them, and/or said defendants made the representations recklessly and without regard

- 50 -

**Exhibit B**

1   for the truth of said representations.

2   277.   Said defendants intended that GLORIA V.M. rely on said representations.

3

4   278.   GLORIA V.M. reasonably relied on said representations, and enrolled their

5   respective children at defendant GHS to receive an education.

6   279.   GLORIA V.M. were harmed by said intentional representations, in that each

7   of said plaintiffs suffered severe emotional distress upon seeing their respective child

8   injured at the hands of GHS and its staff after being placed in prone and other types

9

10  of restraints for known behaviors related to the child's special needs and disability,

11  and which behaviors did not present a clear and present danger to himself or others;

12  and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress

13  when MAX was injured and killed after he had a behavioral outburst as a result of

14  being isolated from the rest of the class with no staff member near him to keep him

15  calm.

16

17  280.   GLORIA V.M. reliance on said representations was a substantial factor in

18  causing the severe emotional distress of said plaintiffs.

19  281.   At all relevant times, said defendants acted with conscious disregard of the

20  rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with

21  reckless disregard for, the fact that their conduct was certain to cause severe

22  emotional distress to said plaintiffs. By virtue of the foregoing, said plaintiffs are

23  entitled to recover punitive and exemplary damages from non-public entity defendants

24

25  according to proof at the time of trial.

26  **DAMAGES**

27  WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

28

- 51 -

**Exhibit B**

## FIRST CAUSE OF ACTION

## INTERFERENCE WITH THE EXERCISE OF
## CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51*et seq*

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.     Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10 Costs of this action;

11.   Such other and further relief as the Court deems just and proper.


SECOND CAUSE OF ACTION INTERFERENCE WITH PLAINTIFFS' EXERCISE OF CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 51.7

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

- 52 -

**Exhibit B**

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.    Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION

### INTERFERENCE WITH PLAINTIFFS' EXERCISE OF CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.    Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**Exhibit B**

# FOURTH CAUSE OF ACTION

## VIOLATIONS OF CALIFORNIA EDUCATION CODE
### §§ 200, 201, 220 and 260, et seq.

1. General damages for in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6.    Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

# FIFTH CAUSE OF ACTION

## ASSAULT AND BATTERY CONSTITUTING TORTURE

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

- 54 -

**Exhibit B**

6.      Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### SIXTH CAUSE OF ACTION

### ASSAULT AND BATTERY

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

- 55 -

**Exhibit B**

1.  General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### EIGHTH CAUSE OF ACTION

### FALSE IMPRISONMENT, CONSPIRACY TO COMMIT FALSE IMPRISONMENT

1.  General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.      Pain and suffering;

**Exhibit B**

7.  Statutory damages;

8.  Attorneys' fees;

8.  Punitive and exemplary damages against all non-public entity Defendants

9.  Costs of this action;

10.  Such other and further relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION

### NEGLIGENCE

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress;

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Costs of this action;

10.  Such other and further relief as the Court deems just and proper.

## TENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION

General damages for Pain and suffering in an amount to be determined according to proof at trial;

- 57 -

**Exhibit B**

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.     Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Costs of this action;

10.  Such other and further relief as the Court deems just and proper.

**ELEVENTH CAUSE OF ACTION**

**NEGLIGENCE *PER SE***

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Costs of this action;

- 58 -

**Exhibit B**

10.  Such other and further relief as the Court deems just and proper.

## TWELFTH CAUSE OF ACTION

### Tortious Breach of the Covenant
### Of Good Faith and Fair Dealing

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION

### FRAUD

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

- 59 -

**Exhibit B**

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

Dated: February 23, 2021

Seth L. Goldstein,
Attorney at Law

- 60 -

**Exhibit B**

**SUM-100**

FIRST AMENDED
# SUMMONS
## (CITACION JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** GUIDING HANDS SCHOOL, INC., (hereinafter "GHS", Staranne
**(AVISO AL DEMANDADO):** MEYERS, "Star Williams", Cindy KELLER, David CHAMBERS,
Susan Jane BATTLE, "Cory" Doe; Cory QUINCEY; Byrna QUINCEY, Noel COLLIER, STATE OF
CALIFORNIA DEPARTMENT OF EDUCATION (hereinafter CDE), PLACER COUNTY SELPA
(hereinafter PLACER SELPA); Troy TICKLE, Kristi GREGERSON; Cara BRUCE; Ashley ROBB; Dolores
ZUMBURY, Vince ANDERSON; POINT QUEST, Inc.; Nicole DOE; Jennifer DOE; ROCKLIN UNIFIED
SCHOOL DISTRICT (hereinafter RUSD); Patricia DOE; David DOE; Amanda Doe; Noelle DOE; Bruce
CHAPMAN, and HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEM, Inc., and Does 1-100

EL DORADO CO. SUPERIOR CT.

FILED FEB 23 2021

BY _____
Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** Louie Andreas Marques;
Gloria V.M.; Thomas V.M.; and Jordan V.M.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
~~Superior Court, County of Sacramento~~ El Dorado
~~720 9th Street~~
~~Sacramento, CA 95814~~
1354 Johnson Blvd.
So. Lake Tahoe, CA 96150

**CASE NUMBER:**
*(Número del Caso):*
PC20200429

BY FAX

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
831-372-9511   831-372-9611

Seth L. Goldstein, SBN 176882
Law Offices of Seth L. Goldstein
Monterey, CA 93940

DATE: FEB 23 2021           Tania G. Ugrin-Capobianco
*(Fecha)*                   Clerk, by _____, Deputy
                            *(Secretario)*              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

**Exhibit B**

1    **Seth L. Goldstein, S.B.N. 176882**
2    2100 Garden Road, Suite H-8
     Monterey, California, 93940
3    Telephone  (831) 372 9511
     Fax      (831) 372 9611
4

5    **Lead-Counsel for Plaintiffs**

6    **Merit Bennett**, *Pro Hac Vice*
     460 St. Michael's Drive, Suite 703
7    Santa Fe, New Mexico 87505
     Telephone: (505) 983-9834
8    Fax: (505) 983-9836

9    Co-Counsel for Plaintiffs

10            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11                  **COUNTY OF EL DORADO**

12    In the Matter of:

13    _____ )  **Case No.: PC20200429**

14    **Louie Andreas MARQUES, Gloria V.M.,** )
     **Thomas V.M., and Jordan V.M.,** )  **SECOND AMENDED**
15                 **Plaintiffs** )  **COMPLAINT FOR DAMAGES**
16    **vs** )
                                       )  **JURY TRIAL DEMANDED**
17    **GUIDING HANDS SCHOOL,** )
     **Inc.(hereinafter "GHS"), ,  Staranne** )
18    **MEYERS, Cindy KELLER, Phylis RAMSEY,** )
     **Jennifer CHRISTENSEN, David** )
19    **CHAMBERS, Noel Doe,  Nicole DOE,** )
     **Roland DOE, Noel COLLIER, Patricia DOE,** )
20    **David DOE, Amanda DOE, Cara BRUCE,** )
     **Ashley ROBB, Dolores ZUMBURY, Vince** )
21    **ANDERSON, Susan Jane BATTLE and** )
     **Noelle DOE; STATE OF CALIFORNIA,** )
22    **DEPARTMENT OF EDUCATION; PLACER** )
     **COUNTY SELPA, Kristi GREGERSEN, Troy** )
23    **TICKLE, POINT QUEST, Inc., Bill** )
     **TOLLESTRUP, Bill WEBBER, Nicole DOE,** )
24    **Jennifer DOE; ROCKLIN UNIFIED**
     **SCHOOL DISTRICT, Kristain ROYER, Beth**
25    **DAVIDSON; HANDLE WITH CARE**
     **BEHAVIOR MANAGEMENT SYSTEMS,**
26    **INC.**

27                **Defendants.**
     _____
28

EL DORADO CO. SUPERIOR CT.

FILED  NOV 0 2 2021

BY _____
       Deputy

N-Court Fax Filing

SCANNED

NOV 1 2 2021

**Exhibit C**

1

## I. PARTIES

2

### Plaintiffs

3    1.    Plaintiff Louie MARQUES (legal name Louie Andreas MARQUES, hereinafter

4        "MARQUES"), who lives in Sacramento was, at all relevant times herein, a minor

5        child diagnosed as then having Oppositional Defiant Disorder and ADHD.  He

6        was a person with a disability as defined by the Unruh Act, with a mental disability

7        as defined in Sections 12926 and 12926.1 of the Government Code.

8    2.    At the relevant times, MARQUES had an IEP that identified predictable

9    behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing,

10   and kicking.

11   3.    The BIP mandated that staff use verbal prompts, proximity changes, and

12   modeling behaviors sought to be learned.

13   4.    **Plaintiffs Thomas and Jordan V.M.** were children with disabilities as defined

14   in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental

15   disability as defined in Sections 12926 and 12926.1 of the Government Code.

16   5.    Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal

17   to participate in activity or follow staff directives, yelling, screaming, grunting or crying

18   with tears as predictable behaviors.

19   6.    His less restrictive corrective measures are identified as monitoring for safety,

20   one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt

21   approach" and reapplication of original direction and follow through with original

22   instruction.

23   7.    Jordan V.M. had an IEP that identified non-compliance, physical aggression

24   (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming,

25   inappropriate gestures and other behavior described as eating crayons and spitting

26   water as predictable behaviors.

27

28

- 2 -

**Exhibit C**

8.      His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

9.      **Plaintiff Gloria V.M.** is the adoptive mother of Thomas and Jordan V.M. and is their Guardian Ad Litem.

## DEFENDANTS

10. **Defendants Guiding Hands School Inc.**, and **Point Quest Inc**. 4900 Windplay Dr., El Dorado Hills, California, located on the same premises having allegedly bought out GHS are non-public schools (hereinafter NPS) incorporated under the laws of the State of California as for-profit corporations and approved by the State of California as institutions providing for children with disabilities.

11.     At all times relevant to this Complaint, GHS was a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant GHS was an independent contractor with Elk Grove Unified Schools, pursuant to a written contract to perform educational services for Plaintiffs MARQUES, Thomas and Jordan V.M.

12.     Presently, and at all times relevant to this Complaint, POINT QUEST is a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT QUEST is an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to a written contract to perform educational services for Plaintiff Jordan V.M.

13.     Presently, and at all times relevant to this **Complaint, Defendants Rocklin Unified Schools** and **Placer County SELPA** are business establishments within the meaning of the Unruh Civil Rights Act.

14.     **Defendant California Department of Education (CDE),** a department of the State of California, presently, was, and at all times relevant to this Complaint, responsible for inspecting and certifying Non-Public Schools such as GHS and POINT QUEST. It is a business establishment within the meaning of the Unruh Civil Rights Act.

- 3 -

**Exhibit C**

directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

## GHS EMPLOYEES:

21.     At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault and batter Plaintiff MARQUES.

22.     At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants MEYERS was the principal and member of the board of GHS, KELLER was the executive director of GHS, RAMSEY was an administrator for GHS, Jennifer CHRISTENSEN was an administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN, Noel COLLIER (Special Education Teacher), and unknown DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas and Jordan V.M.

23.     At all times herein mentioned, "Roland" was a driver for GHS and assisted on campus during the time Thomas V.M. was at GHS. "Roland" was also rehired as staff at Defendant Point Quest.

- 5 -

**Exhibit C**

24.    At all times herein mentioned, there were two secretary/support staff working the "front desk" at GHS. One was known to Thomas V.M. only as "Nicole" and the other's name is unknown at this time. On information and belief, "Nicole" was rehired at Defendant Point Quest.

25.    At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY (hereinafter "ZOMBURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter "CHAMBERS") Kera BRUCE (Hereinafter "BRUCE" , Susan Jane BATTLE, and DOE defendants were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of GHS.

26.    The names and capacities, whether individual, corporate, otherwise, sued herein as DOES 1-100, inclusive, are presently unknown, and Plaintiff will amend the Complaint to insert them when ascertained.

**POINT QUEST EMPLOYEES**

27.    Bill Tollestrup, Interim Director of El Dorado Hills, Bill Weber, Director of El Dorado Hills,  Nicole DOE, Jennifer DOE, Roland Doe, and DOE defendants were employed as administrators, teachers, and aides at POINT QUEST, who intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom.

28.    At all times relevant to this Complaint, Defendant Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, and Noelle DOE were employees of POINT QUEST and were either directly involved in restraining Plaintiff Jordan V.M. or were immediately

- 6 -

**Exhibit C**

present on the premises during the restraints and failed to intercede to protect the plaintiffs.

They are sued in their individual capacity and in their capacity as employees of POINT QUEST.

## ROCKLIN UNIFIED SCHOOL EMPLOYEES

29.    Kristain ROYER, Program Specialist, Beth DAVIDSON, Assistant Director of Special Education, and DOE defendants were employed as administrators at RUSD, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

## PLACER COUNTY SELPA EMPLOYEES

30.    Kristi Gregersen, Program Specialist, Troy TICKLE, Director, Placer County SELPA, and DOE defendants were employed as administrators at Placer County SELPA, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

31.    Plaintiffs MARQUES, Thomas, and Jordan V.M. were placed at GHS and POINT QUEST by their respective school districts after representations were made to the minors' parents about both schools special skills, facilities and safe environment appropriate for their children. The placement was pursuant to each student's Individual Education Plan (IEP), as a result of their diagnosis as children with disabilities, because the school districts themselves determined they were unable to provide a Free Appropriate Public Education.

32.    Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER COUNTY SELPA have failed to adequately supervise their employees that resulted in

- 7 -

**Exhibit C**

the foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that staff who came into contact with Plaintiffs would provide an environment free of abuse and neglect.

33.     California law, including Cal Const, Art. I § 28, has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations necessary for their protection. Defendants also had a duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting intentionally or negligently.

34.     Defendants have violated their statutory duties to Plaintiff, including their supervisory duties created under California Education Code sections 44807 and 44808.

35.     California Penal Code section 11166 which required them to report any knowledge of a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect to the agency immediately or as soon as is practically possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up report thereof within 36 hours of receiving the information concerning the incident.

36.     Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan V.M., including multiple violations of California Education Code sections 56521.1 and 56521.2 (and its predecessor legislation) that, in pertinent parts, suggest alternative interventions and/or prohibits the use of any interventions that:

1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an amount of force that exceeds that which is reasonable and necessary under the circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma.

37.     Defendants have violated their statutory duty under California Penal Code section 11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."

- 8 -

Exhibit C

38.     Defendants GHS and POINT QUEST violated its statutory duty under California Education Code section 260 by failing to enact an adequate formal or informal policy to ensure that GHS and POINT QUEST provided a learning environment free from discrimination based on the characteristics provided in California Education Code section 220, specifically disability.

39.     GHS was closed in 2018 after the State of California revoked their license to operate following the death of student Max Benson who was subjected to a restraint that killed him.

40.     After GHS was closed it was, allegedly, sold to POINT QUEST, and Jordan V.M. then attended Defendant POINT QUEST.

41.     When POINT QUEST took over GHS facilities and educational duties, Gloria V.M. was assured by the Rocklin Unified School staff, Placer County SELPA, and POINT QUEST staff, expressly, by inference, or omission, that the previous policies and practices employed by GHS were, not only no longer employed, she was assured that the GHS employees were gone and would not be rehired at POINT QUEST.

42.     For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") -have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for their physical and emotional health.

43.     There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to abusive use of restraint systems, such as the Handle With Care system developed by Defendant Bruce Chapman. It is also well-known that restraints are disproportionately used against children with disabilities.

44.     Despite this knowledge, nonpublic schools like Defendants GHS and POINT QUEST and their respective staffs continued to use such restraints frequently, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or others, for extended periods of time, on students whose disabilities elevated the risk of using restraints, and with excessive force.

- 9 -

**Exhibit C**

45.     They could do so because the CDE, and the LEA Defendants abdicated their responsibilities to monitor and supervise GHS and POINT QUEST and ensure their compliance with state and federal laws prohibiting discrimination and the improper use of restraints.

46.     The CDE continued to certify GHS continues to currently certify POINT QUEST, and the LEA Defendants continued to contract with and place their students with disabilities in the respective schools.

47.     Plaintiff students with developmental and other disabilities whose local educational agencies placed them at GHS and POINT QUEST pursuant to their Individualized Education Plans ("IEP")

48.     Each Plaintiff Student attended GHS sometime between 2006 and 2018, where its administrators and staff subjected them to excessive and harmful restraints and other aggressive physical interventions in response to known behaviors associated with their disabilities, resulting in physical and emotional abuse and injury, and in the case of one other student, death.

49.     GHS was, and POINT QUEST is, a nonpublic school-as that term is defined in Cal. Ed. Code § 56034-which contracted with the LEA Defendants to provide special education services to public school students with disabilities in exchange for state and federal educational funding.

50.     As required by law, GHS and POINT QUEST entered into Master Contracts with the LEA's, as well as an Individual Services Agreement for each student placed there.

51.     Each of the Plaintiff Students' IEP's included a Behavioral Intervention Plan ("BIP") which described the student's known disability-related behaviors and the intervention strategies and positive behavioral supports educators should use to prevent or respond to those behaviors.

52.     Despite legal requirements (discussed below) and Defendants' knowledge of the dangers associated with restraints to students' physical and emotional health, GHS and POINT QUEST administrators and employees engaged in a policy and practice of using restraints as a substitute for the positive interventions detailed in the students' BIPs in

- 10 -

Exhibit C

response to predictable behavior that did not pose a clear and present danger of serious physical harm to the student or others. GHS and POINT QUEST used restraints against its students frequently, for periods of time that were longer than necessary, and with excessive force.

53. These restraints-including prone restraints- in which the child is placed face down on the floor with one or more adults applying force from above to keep the child's body immobile-frequently lasted over an hour.

54. Some students were restrained frequently, sometimes more than one time each day.

55. The restraints and other aggressive physical interventions inflicted by GHS and POINT QUEST caused the Plaintiff Students physical and emotional injuries.

56. GHS and POINT QUEST administrators were not only aware of the abuse, but encouraged it and were responsible for the school's policy and practice of using frequent, excessive, harmful and lengthy restraints as a substitute for positive behavioral interventions in response to students' predictable, disability-related behaviors.

57. GHS  and POINT QUEST did not provide adequate training in positive behavioral interventions, instead relying on Defendant Bruce Chapman's patented restraint system, Handle With Care Behavioral Management Systems, Inc. which was associated with numerous abuses by educational professionals on students with behavioral challenges.

58. GHS and POINT QUEST training in the HWC method ignored requirements of state and federal law and did not provide proper warnings regarding the risks associated with restraining students or safeguards for monitoring and responding to signs of distress.

59. Moreover, GHS  and POINT QUEST took significant measures to conceal its illegal use of restraints and child abuse from parents and the LEAs with which it contracted by failing to provide required reports to the parents and the State of California.

- 11 -

**Exhibit C**

60.     Prior to the childen's placement, GHS misrepresented orally, in enrollment documents, and in the children's IEP that the school focused on proactive, positive behavioral interventions and that corrective behavior would be "calm", "brief", and "respectful."

61.     The HWC Intervention Statement that parents had to sign as part of the enrollment packet emphasized positive intervention and "the 3-step prompt" which "entails a verbal request, followed by staff modeling and finally hand over hand with children who may have difficulty following directions . . . " It represented that a restraint would be used only if the child appeared to be "a physical danger to themselves or others around them".

62.     GHS used the HWC terminology in referring to the most dangerous restraint-a prone restraint-as a "neutral" restraint. *Id.* These misrepresentations were repeated in the students' BIPs developed as part of the IEP process and a part of the agreement between the parent/student, the LEA, and GHS.

63.     When a student was restrained, GHS frequently failed to complete a Behavioral Emergency Report ("BER"), place the BER in the student's file, send it to the LEA, or notify the student's parent, as required by law and GHS's Master Contracts with the LEAs. Nor did GHS administrators or staff report the regular, systemic child abuse they witnessed and participated in at the school, despite the requirement to do so as mandated reporters.

64.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.

65.     However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to place vulnerable students in its care. GHS would still be abusing its students were it not for the death of a 13-year-old student who died after he was held in a prone restraint for almost two hours on November 28, 2018.

- 12 -

**Exhibit C**

66.     Plaintiff Thomas V.M. was a disabled student, placed at GHS on August 6, 2018, because of his diagnosis of his disability. Plaintiff Jordan V.M. was a disabled student, placed at GHS on February 22, 2018, because of his diagnosis of disability. All plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their educational experience and abilities.

67.     Because of the disruption that affected other students, they were frequently placed in such restraints, which included but was not limited to, the imposition of restraints that constituted physical child abuse, battery, and assault.

68.     Referring to these restraints as though they were normal and accepted ways of disciplining plaintiffs, Defendant administrators,   teachers and assisting staff, as individually identified below, preyed on plaintiffs because of their disability related conduct.

69.     These defendants assaulted and battered plaintiffs repeatedly rather than following the BIPs.

70.     The LEA administrators, by and through their agency with GHS  and POINT QUEST   administrators tasked unqualified and inadequately trained staff with supervising plaintiff students, who often failed to document and report incidents of abuse, and failed to take reasonable steps to prevent further abuse.

71.     Plaintiffs, like other students who were also subjected to such conduct, would attend class and when a student acted consistently with their predictable behaviors stated in their individual BIP and IEP (and the reason(s) why they were placed at GHS and POINT QUEST) or failed to follow the directions of the GHS  and POINT QUEST staff as individually described below, they would be subjected to painful restraints in full and open view of fellow students.

72.     Each plaintiff had specific conduct that was identified in their BIP, for which, each plaintiff had a set of less restrictive measures to be taken before a "hands on" physical intervention such as painful restraints would be exercised.

73.     Plaintiffs witnessed other students treated in the same way in their respective classes. The observation of such torturous conduct to other students and themselves

- 13 -

Exhibit C

caused Plaintiffs who were in their immediate presence to experience fear and anxiety such that they were terrorized in anticipation that they too might be hurt in the same way.

74.    As to MARQUES, the documented abuse occurred from as early as December 18, 2006, when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was removed. For Thomas and Jordan V.M., it began when they first began to attend GHS on February 22, 2018, and lasted until they were removed on or about the end of December 2018 and officially, in January, 2019.

75.    Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on or about October 1, 2019 and officially October 22, 2019.

76.    No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary.

77.    Defendants GHS and POINT QUEST, and their individual staff members as particularly described below, carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

78.    The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent the abuse.

79.    Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

- 14 -

Exhibit C

80.     Plaintiffs Thomas and Jordan V.M. are in another school in Washington State.

81.     The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant.

82.     Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted.

83.     In addition, Plaintiff MARQUES is an adult and outside of the educational system.

84.     The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

85.     From records to be obtained by Plaintiffs, there were restraint incidents involving Plaintiffs and they expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

## OPERATIVE FACTS

86.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

### AS TO PLAINTIFF MARQUES

87.     Over a one-and-one-half year period as specifically set forth below in each cause of action, Defendants ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES by grabbing him, pushing or otherwise forcing him to the floor and, in painful positions, pinning all four appendages for various periods of time, immobilizing him, including as punitive measures. All were either for an unnecessarily prolonged period of time or had failed to utilize the less restrictive measures set forth in his BIP for predictable behaviors related to his disability.

88.     MARQUES was a student at GHS from 2006 to 2008.  He was referred to GHS by Elk Grove School District employees.

- 15 -

**Exhibit C**

89.     MARQUES had both an Individual Education Plan (EIP) and a Behavioral Intervention Plan (BIP) at all relevant times herein.

90.     Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS and DOE defendants failed to file Behavioral Emergency Reports or document injuries as required by law, so all of the dates of assaults all are unknown to MARQUES at the present time.

91.     Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16, 2007, April 23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March 19, 2008, set forth in greater detail below.

92.     On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and Ashley ROBB, put MARQUES in a restraint for 12 minutes because he failed to stand appropriately and when escorted from the line he was standing in, kicked a student and Bruce. He was restrained "per CPI". Both Dolores ZOMBURY and David Chapman participated in the restraint.

93.     On December 18, 2006, at 1:45 PM Ashley ROBB and Kera Bruce instituted an eight minute restraint after MARQUES had been found to have a toy belonging to another student. What he was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a basket restraint.

94.     On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by ZOMBURY, after he refused to sit down and began throwing pencils and calling children names.

95.     On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMBURY for five minutes after he was told to put a pointer down and had slapped it on the desk of another student. When he was directed to sit down he ran around the room and was restrained.

96.     On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by Dolores ZOMBURY and subsequently by a teacher's aide known only as "Laure", when MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the teacher and was taken to the "corner".

- 16 -

**Exhibit C**

97.     On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by ZOMBURY after another student had pushed him, rubbing "snot" on his jacket and in response he pushed that student down.

98.     On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began swearing and started to run towards another student after he disregarded a request by the instructor to put his head down on his desk. The staff involved were ZOMBURY and Chambers.

99.     On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor Vince Anderson, because he failed to follow directions and began yelling in the presence of his mother.

100.    On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

101.    In this restraint, MARQUES was pushed to the ground and placed in a position for an extended period of time, while his arms were pulled behind his back. GHS staff sat at his back while he was in this position, increasing his pain and making it difficult for him to move.

102.    This incident arose when another child assaulted MARQUES with a rock and MARQUES defended himself.

103.    When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks as a result of these restraints.

104.    MARQUES subsequently suffered panic attacks, night-terrors, startles, depression and self-loathing as a result of these restraints.

105.    MARQUES was abused on additional occasions while attending GHS.

106.    MARQUES will seek leave to allege these dates according to proof when furhter information becomes available through the discovery process.

107.    At all relevant times, MARQUES.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

- 17 -

**Exhibit C**

108.   The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code Sec. 242), and torture (Penal Code Section 206) prohibited by California law.

**AS TO THOMAS V.M.**

109.   Thomas V.M. was restrained by GHS and POINT QUEST staff on many occasions the precise details are neither known to he nor his mother at this time, other than that described as follows.

110.   Thomas V.M. was restrained in some fashion on September 5, 2018, for forty (40) minutes by or in the presence of Defendant Noel COLLIER, who left a phone message for Gloria V.M. on that date informing her of the incident where he refused to participate in an art exercise and was restrained as a result of staff intervention.

111.   Thomas V.M. was restrained in some fashion on September 19, 2018, by or in the presence of Defendant Noel COLLIER.

112.   Thomas V.M. was restrained in some fashion on October 3, 2018, by or in the presence of Defendant Noel COLLIER, when he refused to cooperate with staff.

113.   Thomas V.M. was restrained in some fashion on October23, 2018, by or in the presence of Defendant Noel COLLIER and David Chambers, when he would not cooperate with staff and bit one on the leg.

114.   Thomas V.M. was restrained in some fashion on October18, 2018, by or in the presence of Defendant Noel COLLIER  when he would not cooperate with staff.

115.   Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 3, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in Yoga.

116.   Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 5, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would participate in his math lesson and threw a pencil and his book.

- 18 -

**Exhibit C**

117.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 19, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in school work, threw his paper at Noelle DOW and tried to leave the classroom.

118.    Thomas V.M. was restrained by a staff member named "Jennifer" when attending POINT QUEST and, as a result, his mother immediately withdrew him from the school.

119.    Thomas V.M. knows that "Jennifer"was a previous staff member at GHS.

120.    Thomas V.M. was repeatedly assaulted by "Roland" who was a driver for GHS and who had shoved Thomas, face first, into a wall on various occasions, one of which chipped one of Thomas's teeth.

121.    While attending GHS, Thomas was repeatedly refused food and prevented from eating, despite his mother's frequent pleas that he be provided the lunch he was sent to school with or that was to have been provided by the GHS staff. Thomas, at all relevant times, was suffering from a thyroid disorder and provided medication that frequently made him hungry. Various unidentified staff, including Nicole Doe, had taken Thomas's lunch from him before he was finished eating, thereby increasing his discomfort and hunger throughout the day.

**AS TO JORDAN V.M.**

122.    Jordan V.M. was restrained by GHS staff on many occasions the precise details are neither known to he nor his mother at this time,   other than that described as follows:

123.    Jordan V.M. was restrained in a restraint of some fashion on February 26, 2018, by or in the presence of Defendant Amanda Doe, when he would not cooperate on a bus trip home.

- 19 -

Exhibit C

124.    Jordan V.M. was restrained in a restraint of some fashion on October 10, 2018, by or in the presence of Defendant Noel COLLIER, when he was asked to do class work and threw a crayon.

125.    Jordan V.M. was restrained in a restraint of some fashion on October 9, 2018, by an unknown staff member, possibly "Dorian", for an unknown reason.

## FIRST CAUSE OF ACTION

### Violation of California Civil Code §§ 51, *et seq.*

AS TO PLAINTIFF MARQUES Against GHS;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;
and DOES 1-100.

126.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

127.    Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major life activities of learning.

128.    Plaintiffs THOMAS and JORDAN V.M. are persons with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  They had been diagnosed as Autistic.

129.    Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

130.    GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

- 20 -

Exhibit C

131.     GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities, privileges, advantages, or accommodations.

132.     Plaintiffs were not provided with the services, facilities, privileges, advantages and accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals without disabilities.

133.     The discipline methods, behavior standards and criteria employed by GHS and POINT QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his disabilities.

134.     GHS and POINT QUEST failed to make reasonable modifications to their educational and behavioral intervention methods and staff training that were necessary to afford students with disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services, facilities, privileges, advantages and accommodations.

135.     The actions and failures to act of GHS and POINT QUEST violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections 12181, et seq. As such, Defendant's actions also constituted a violation of the Unruh Act under Cal. Civ. Code § 51(f).

136.     The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

137.     Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

138.     Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Cal. Civ. 51.7 Ralph Civil Rights Act**
AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100;

- 21 -

**Exhibit C**

AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, and DOES 1-100

139.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

140.    Defendants in doing the acts described above violated Plaintiffs' rights under the Ralph Civil Rights Act.

141.    Plaintiffs have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of any characteristic listed or defined in subdivision (b) or (e) of Section 51, because another person perceives them to have one or more of those characteristics.

142.    In committing the acts described above, all defendants have violated Plaintiffs' rights by subjecting them to violence and intimidation.

143.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

144.    Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

145.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION

**For Interference with Exercise of Civil Rights in
Violation of California Civil Code Section 52.1**
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, and DOES 1-100

146.    Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth herein.

147.    California Civil Code 52.1 provides that it is unlawful to interfere with the exercise

- 22 -

Exhibit C

or enjoyment of any rights under the Constitution and the laws of this state and the United States by attempted use of threats, intimidation or coercion.

148.     The California Constitution establishes the right to a free public education to all students on an equal basis.  Butt v. California, 4 Cal. 4th 668, 685 (1992).

149.     California Civil Code section 43 guarantees the right of every person to be free from bodily restraint or harm and personal insult.

150.     In doing the things herein alleged, Defendants intentionally interfered with and attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

151.     Defendants acted violently against Plaintiff, thereby preventing him from exercising his rights.

152.      Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

153.     The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

154.     The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

155.     Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a face down position with the pupil's hands held or restrained behind the pupil's back; and by using a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed a clear and present danger of serious physical harm to the pupil or others.

156.     Defendant employees of GHS and POINT QUEST acted with conscious disregard of Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  Plaintiff is therefore entitled to recover punitive and exemplary damages.

- 23 -

**Exhibit C**

157.     Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys' fees and costs as set by the Court.

## FOURTH CAUSE OF ACTION
### Violation of California Education Code §§ 200, 201, 220, and 260 et seq.
AS TO PLAINTIFF MARQUES Against GHS,

AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT,

and DOES 1-100

158.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

159.     Plaintiffs are individuals with disabilities.

160.     At all times relevant to this complaint, Defendant GHS was an educational institution providing education to students from kindergarten through twelfth grade and receiving financial assistance from the State of California.

161.     Defendants discriminated against Plaintiff on the basis of their disability by subjecting them to physical and emotional abuse in response to disability-related behavior.

162.     The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

163.     The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

164.     As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages in an amount according to proof and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### Assault and Battery Pursuant to California Penal Code Section 206
AS TO PLAINTIFFS

MARQUES, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN, CHAMBERS, ROBB, BRUCE, ZOMBURY, ANDERSON, CORY QUINCY, BYRNA QUINCY, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

- 24 -

**Exhibit C**

Thomas V.M. against defendants GHS, CHRISTENSEN, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

165.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

166.    CHAMBERS, CHRISTENSEN, MEYERS, KELLER, RAMSEY, "JENNIFER" DOE, and DOE defendants , with the intent to cause cruel or extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted significant injury upon Plaintiffs by repeatedly assaulting Plaintiffs throwing them to the ground and causing bruises, contusions and lacerations.

167.    As a result, Plaintiffs suffered physical and psychological injuries.

168.    Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiffs.

169.    Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

170.    Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

171.    Defendants' conduct in intentionally assaulting and restraining Plaintiffs knowing of their disabilities was malicious and outrageous such that exemplary damages should be awarded.

172.    WHEREFORE, Plaintiffs pray for judgment for damages according to proof.

- 25 -

**Exhibit C**

### SIXTH CAUSE OF ACTION
ASSAULT AND BATTERY

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT DOES 1-100

173.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

174.    In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs Thomas and Jordan V.M. to suffer harmful or offensive contact.

175.    As a result of said conduct of said defendants, Plaintiffs Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

176.    In doing the things herein alleged, said defendants threatened to touch Thomas and Jordan V.M. in a harmful or in an offensive manner.

177.    At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan V.M. that said defendants were about to carry out the threat.

178.    At all times herein mentioned, Thomas and Jordan V.M. did not consent to the conduct of said defendants.

179.    Thomas and Jordan V.M. suffered harm, as herein alleged.

180.    The aforementioned conduct of said defendants was a substantial factor in causing Thomas and Jordan V.M. harm.The conduct of said defendants, caused Thomas and Jordan V.M. to be apprehensive that said defendants would subject Thomas and Jordan V.M. to further intentional invasions of their right to be free from

Exhibit C

harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a present ability to subject Thomas and Jordan V.M. to an intentional offensive and harmful touching.

181.     Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

182.     At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas and Jordan V.M. rights, safety, physical well-being and feelings. Said defendants also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury and/or humiliation to Thomas and Jordan V.M. Said defendants intended to cause fear, physical injury and/or pain and suffering to Thomas and Jordan V.M.

183.     By virtue of the foregoing, the estate of Thomas and Jordan V.M. are entitled to recover punitive and exemplary damages from individual and non-public entity defendants according to proof at trial. Estate of Thomas and Jordan V.M.  make no claim for punitive damages against the named defendants.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, CHRISTENSEN, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

- 27 -

Exhibit C

EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN
SCHOOL DISTRICT;
DOES 1-100

184.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

185.    In doing the things herein alleged, the conduct of said defendants was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

186.    Said defendants inflicted actual injury and/or acted with reckless disregard of the probability that Plaintiffs Gloria, Thomas and Jordan V.M. would suffer emotional distress, knowing that the children who were restrained, including Gloria, Thomas and Jordan V.M., were present when the conduct occurred.

187.    The conduct of said defendants, as herein alleged, was a substantial factor in causing Gloria, Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

188.    Said defendants knew or should have known that Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be, physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

189.    Said defendants' knowing disregard for the safety of Thomas and Jordan V.M. and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as Thomas and Jordan V.M. caused Thomas and Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS and POINT QUEST.

190.    Said defendants' conduct was extreme and outrageous.

191.    Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Gloria, Thomas and Jordan V.M. would suffer emotional distress.

**Exhibit C**

192.     The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Gloria, Thomas and Jordan V.M. As a result, Gloria, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

**EIGHTH CAUSE OF ACTION**

FALSE IMPRISONMENT CONSPIRACY TO COMMIT FALSE IMPRISONMENT
ASSERTED by
Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN,
COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David
CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR
MANAGEMENT SYSTEMS, INC;
Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN,
NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT
SYSTEMS, INC;
Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE,
GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe,
Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
ROYER, DAVIDSON

193.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

194.     Said defendants, in concert with one another, did intentionally and unlawfully, and conspire to, exercise force, threat, implied threat of force, or duress, to restraint and confine Thomas and Jordan V.M. , and deprive them of their freedom of movement, when said defendants committed the acts described herein.

195.     Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

196.     As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and emotional harm, as herein alleged.

197.     That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm to Thomas and Jordan V.M.

198.     The outrageous conduct of the said defendants was willful and wanton, and was

- 29 -

**Exhibit C**

performed with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and Jordan V.M.

199.     As a result, Thomas and Jordan V.M.  are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof at time of trial.

## NINTH CAUSE OF ACTION
## NEGLIGENCE

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

200.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

201.     Said defendants breached their duty towards Thomas and Jordan V.M. by:

a. Failure to develop and maintain effective procedures governing emergency interventions;

b. Failure to obtain proper training for use of behavioral emergency interventions

c. Failure to provide oversight on the use of restraints

d. Failure to develop protocols for use of restraints

- 30 -

**Exhibit C**

f.  Failure to prohibit restraints on physically disabled children

g. Failure to prohibit prolonged restraints (anything over 15 minutes)

h. Failure to require that Thomas and Jordan V.M. be released from a restraint at the earliest possible moment.

i.  Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

j.  Failure to prohibit restraints that constrict the child's ability to breathe.

k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l.  Failure to provide for the comfort of Thomas and Jordan V.M.  while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M. fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m.      Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.
n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o. Failure to require immediate and accurate reporting on each restraint

p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q. Failure to provide for:
            -primary preventative measures rather than restraint;
            -interventions that are less intrusive than restraints;
            -effective ways to de-escalate situations to avoid restraints; and
            -crisis intervention techniques that utilize alternatives to restraint.

- 31 -

**Exhibit C**

r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t. Allowing use of physical restraints on children which:
    - create an aversive environment counterproductive to facilitating learning;
    - cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine
    - whether the intervention was necessary
    - whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v. Failed to document injuries caused by restraint and

w.    Failed to get medical attention for a child who was injured while in restraint.

202.    As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

203.    Breach of said mandatory duties by said defendants was a substantial factor in causing injuries Thomas and Jordan V.M.

204.    At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward Thomas and Jordan V.M. who were disabled students under their guidance and care.

- 32 -

**Exhibit C**

205.    At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints on special needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in violation of California law.

206.    At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints, known by said defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with reckless disregard for the safety of said children.

207.    At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone and other restraints, to injure special needs/disabled children and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for which they were hired.

208.    As a direct and foreseeable result of the negligence of said defendants learning of the death of Max Benson, plaintiffs and their own injuries Thomas and Jordan V.M. suffered physical and emotional injuries.

209.    The negligence of said defendants was a substantial factor in causing injury Thomas and Jordan V.M. to suffer physical and emotional injuries.

210.    By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

### TENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

- 33 -

**Exhibit C**

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

211.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

212.    Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

213.    Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

214.    Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

215.    As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

**ELEVENTH CAUSE OF ACTION**
**NEGLIGENCE PER SE**

Gloria V.M. against GHS, RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

- 34 -

**Exhibit C**

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

216.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

217.    In doing the things herein alleged, said defendants violated the mandatory duties toward Thomas and Jordan V.M. as prescribed by state and federal law as referenced in each of the statutes as set forth here-in-above.

218.    Said violations were of the statutes specifically intended to protect the class of plaintiff and to prevent the injuries as those described herein.

219.    Said violations of criminal and civil law were a substantial factor in bringing about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

220.    As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M.   suffered injury, and are entitled to damages according to proof.

**TWELFTH CAUSE OF ACTION**
**Tortious Breach of the Covenant**
**Of Good Faith and Fair Dealing**

Asserted by the Plaintiffs Gloria, Thomas and Jordan V.M. Against Defendants GHS, Meyers, Keller, Point Quest, Troy Tickle, Kristi Gregerson, Cara Bruce and Doe Defendants 1-100

221.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

- 35 -

Exhibit C

fully set forth herein.

222.   Upon the respective enrollment of Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants for the education of their children.

223.   At all times herein mentioned, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants.

224.   As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support. The GHS handbook also indicated that defendant GHS would "customize" the system to support student outcomes and "interact with students in a way that promotes social proficiency." The GHS handbook states that "social competence is a skill that requires direct teaching." . The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

225.   As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants against any student based on physical or mental disability.

226.   As part of said contract, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and

- 36 -

Exhibit C

redirecting behavior using a lesson."

227.     As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

228.     As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants; and the most dangerous type of restraint, a prone restraint, was described by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants to each of Thomas and Jordan V.M's parents in innocuous language as a "neutral" restraint.

229.     Plaintiffs, and each of them, did all of the significant things that the contract required them to do.

230.     At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS, KELLER, POINT QUEST,Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants had occurred.

231.     Defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

232.     Defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed

- 37 -

**Exhibit C**

corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

233. By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

234. By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

235. By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. and the beneficiaries of said contract, Thomas and Jordan V.M., have suffered severe emotional and physical distress at having the respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

236. By virtue of said bad faith interference with contractual benefits, all plaintiffs suffered physical and emotional injuries, and future general and special damages as herein alleged.

237. The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

238. In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults. As a consequence, plaintiffs, and each of them,

- 38 -

**Exhibit C**

are entitled to punitive damages.

## THIRTEENTH CAUSE OF ACTION

### FRAUD

Asserted by Gloria V.M. against GHS, POINT QUEST, PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOLS; TICKLE, GREGERSON, BRUCE, RAMSEY, MYERS, KELLY, NARAN,TOLLESTRUP, WEBBER, ROYER, DAVIDSON

239.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

240.    On or about the date of enrolling their respective children in defendant GHS, defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, represented to Gloria V.M. that said defendants would not to discriminate in any activity against any student at GHS based on physical or mental disability under Title IX, Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited intimidation or harassment by any employee of defendants GHS and POINT QUEST against any student based on physical or mental disability; that said defendants and their employees would use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, including using "positive language and redirecting behavior using a lesson"; that behavior by GHS' staff when correcting a child would be "calm, consistent, brief, immediate and respectful,"; that GHS and POINT QUEST behavior intervention approaches involved a three step prompt "verbal, modeling, hand-over-hand";  and that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities.

241.    On or about the dates of the respective enrollment of Thomas and Jordan V.M., at GHS and POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and their employees represented to Gloria V.M that they were required to sign a form allowing defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, to impose restraints on said plaintiffs' respective children, with the implied threat that if they did not sign the form their respective children would not be enrolled at GHS, which was the

- 39 -

**Exhibit C**

only school available to educate said children, and therefore, the parents would be in violation of California's mandatory education law.

242.　That the afore-mentioned representations of defendants, were false, and Gloria V.M. learned that they were false on or after November 29, 2018, upon the death of MAX, when they discovered that they did not have to allow or consent to the use of restraints against their disabled children.

243.　Said defendants knew that said representations were false when they made them, and/or said defendants made the representations recklessly and without regard for the truth of said representations.

244.　Said defendants intended that GLORIA V.M. rely on said representations.

245.　GLORIA V.M. reasonably relied on said representations, and enrolled their respective children at defendant GHS to receive an education.

246.　GLORIA V.M. were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

247.　GLORIA V.M. reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

248.　At all relevant times, said defendants acted with conscious disregard of the rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs.　By virtue of the foregoing, said plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial.

**FOURTEENTH CAUSE OF ACTION**

- 40 -

**Exhibit C**

**Title II of the Americans with Disabilities Act of 1990,
42 U.S.C. Sec's 12101 et seq.**

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

249.    Plaintiffs incorporate by reference all preceding paragraphs.

250.    Title II of the ADA prohibits public entities from denying persons with

disabilities the benefits of its programs, services or activities. 28 U.S.C. § 12132.

251.    Defendants CDE,Rocklin Unified Schools, and Placer County SELPA are

public entities.

252.    Thomas, V.M. and Jordan V.M. were at all relevant times students with

disabilities who had been placed at GHS via their IEPs.

253.         The ADA is violated not only by outright discrimination but also when a

public entity engages in "forms of discrimination which deny disabled persons public

services disproportionately due to their disability."  Crowder v. Kitagawa, 81 F. 3d

1480, 1483 (9th Cir. 1996); see also, Mark H. v. Lemahieu, 513 F.3d 922, 937 (9th

Cir. 2008).  The ADA prohibits governmental agencies from denying persons with

disabilities from "the benefits" of their programs.  Mark H., 513 F.3d at 937.  The

ADA requires more than just some access to governmental services; it requires

"meaningful access". Id.

254.    A public entity, in providing any aid, benefit, or service, may not, directly or

through contractual, licensing, or other arrangements, on the basis of disability:

   a.    Afford a qualified individual with a disability an opportunity to
         participate in or benefit from the aid, benefit, or service that is not
         equal to that afforded others;

   b.    Provide a qualified individual with a disability with an aid, benefit, or
         service that is not as effective in affording equal opportunity to obtain
         the same result, to gain the same benefit, or to reach the same level
         of achievement as that provided to others;

   c.    Aid or perpetuate discrimination against a qualified individual
         with a disability by providing significant assistance to an
         agency, organization, or person that discriminates on the
         basis of  disability in providing any aid, benefit, or service to
         beneficiaries of the  public entity's program;

- 41 -

**Exhibit C**

     d.    Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

       28 C.F.R. § 35.130(b)(1)(ii)(iii)(v) and (vii).

255.    A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration-

     a.    That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

     b.    That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

     c.    That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

       28 C.F.R. § 35.130(b)(3).

256.    A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(6).

257.    A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

258.    A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

259.    The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities.  Through GHS:

     a.    The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that were not equal to those provided to students without disabilities;

- 42 -

Exhibit C

b.      The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that did not afford equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to LEA students without disabilities;

c.      The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans;

d.      The LEA Defendants limited the Plaintiff Students from enjoying their right to a free public education in a safe placement, free from discrimination or abuse; and

e.      The LEA Defendants used administrative methods-specifically the policies and practices of GHS regarding behavioral interventions-that subjected Plaintiff Students to disability discrimination and defeated or substantially impaired the objective of providing a free public education to the Plaintiff Students.

260.     Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement.  The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement.  Nor did it acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students.  As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

- 43 -

Exhibit C

261.    The LEA Defendants failed to make reasonable modifications to their program of providing special education services to children within the LEA, such that LEA students with disabilities would not be subject to discrimination and abuse in their educational placements.  These modifications-meaningful investigations and evaluations of the NPS prior to placing an LEA student there and forceful oversight, investigation, and measures to ensure compliance with state and federal laws during the placement, including site visits and regular review of school and student records and BERs-would not have constituted a fundamental alteration in the LEAs' programs of providing educational services to their students.

262.    GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.  However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

263.    The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

264.    Defendant CDE knew or should have known that:  students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of

- 44 -

**Exhibit C**

students with disabilities in response to behavior that was known to be a

manifestation of the students' disabilities; that the particular disabilities of the

children against whom these restraints were used made the restraints even more

dangerous; and that the restraints were not only ineffective and contrary to the

students' BIPs, but more often than not aggravated the students' behavioral

problems.

265.    Defendant CDE discriminated against Plaintiffs on the basis of their

disabilities by:

a.    Abdicating its duties to supervise, monitor, investigate, train, and
ensure legal compliance of nonpublic schools, including GHS, with
laws designed to protect students with disabilities from
discrimination and abuse;

b.    Failing to take even minimal measures to ensure statewide
compliance with state and federal laws within nonpublic schools,
including GHS;

c.    Administering its licensing program of certifying, monitoring,
investigating and taking corrective action against nonpublic
schools which provide educational services to children with
disabilities in a discriminatory, cursory, and indifferent
manner;

d.    Failing to make reasonable modifications to its policies and
practices regarding certification, monitoring, supervision,
investigation, and legal compliance of nonpublic schools in
light of repeated notifications from the U.S. Department of
Education and other sources regarding the disproportionate
use of restraints on children with disabilities and their tragic
outcomes; and

e.    Completely abandoning its duty to monitor and supervise the use of
emergency behavioral interventions in nonpublic schools under
Cal. Ed. Code § 56521(b).

266.    The CDE knew and was deliberately indifferent to the fact that children with

disabilities were being restrained at far greater rates than children without disabilities

and that the rates of restraint use were significantly higher at "nonpublic" schools

such as GHS than at public schools.  It took no action to strengthen its oversight and

monitoring of nonpublic schools or laws restricting the use of physical interventions.

The CDE knew and was deliberately indifferent to allegations that children with

disabilities being improperly restrained at GHS and failed to conduct an emergency

- 45 -

Exhibit C

site visit when they had a substantial reason to believe that there was an immediate

danger to the health, safety and welfare of students at GHS.  The CDE did not

conduct a real investigation or visit the school until after GHS staff killed a student

by restraining him.

267.    Defendants' actions and failures to act were a substantial factor in causing

physical and emotional injuries to the Plaintiff Students as outlined above.

268.    Plaintiffs seek compensatory damages and attorneys' fees and costs.

### FIFTEENTH CLAIM FOR RELIEF
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

269.    Plaintiffs incorporate by reference all preceding paragraphs

270.    Section 504 prohibits entities that receive federal financial assistance from

denying persons with disabilities the benefits of their programs, services or activities

or otherwise discriminate against them on the basis of their disabilities.  29 U.S.C. §

794; 34 C.F.R. pt. 104.

271.    Thomas V.M. and Jordan V.M. were at all relevant times students with

disabilities who had been placed at GHS by the LEAs in which they resided via their

IEPs.

272.    The CDE and the LEA Defendants receive federal financial assistance to

provide special education services to children with disabilities in California.  20

U.S.C. §§ 1411-1413.

273.    Defendant GHS was a "nonpublic school" that contracted with the LEA

Defendants to provide educational services to students with disabilities, including

the Plaintiff Students, on behalf of the LEA Defendants in exchange for the state

and federal financial assistance provided to the LEA Defendants to perform those

services. Cal. Ed. Code § 56365.  Section 504 therefore applies to GHS.  34 C.F.R.

§ 104.2 ("This part applies to each recipient of Federal financial assistance from the

Department of Education and to the program or activity that receives such

assistance.").

- 46 -

**Exhibit C**

274.   Section 504 prohibits recipients of federal financial assistance from directly or through contractual, licensing, or other arrangements, on the basis of disability:

a.   Denying a qualified person with a disability the opportunity to participate in or benefit from the aid, benefit or service;

b.   Affording a qualified person with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

c.   Providing a qualified person with a disability with an aid, benefit, or service that is not as effective as that provided to others;

d.   Aiding or perpetuating discrimination against a qualified person with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to the beneficiaries of the recipients' program or activity;

e.   Otherwise limiting a qualified person with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

C.F.R. 104.4(b)(1)(i)(ii)(iii)(v) and (vii).

275.   Section 504 prohibits recipients of federal financial assistance from directly or through contractual or other arrangements, utilizing criteria or methods of administration:

a.   That have the effect of subjecting persons with disabilities to discrimination on the basis of their disabilities;

b.   that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to persons with disabilities; or

c.   That perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

C.F.R. § 104.4(b)(4).

276.   GHS engaged in deliberate discrimination against the Plaintiff Students on the basis of their disabilities. GHS and its staff subjected the Plaintiff Students to illegal, excessive and harmful restraints in response to known, disability-related behaviors that did not constitute a clear and present danger to the safety of the students or others and that could have been addressed by less restrictive measures, including

- 47 -

Exhibit C

those outlined in the students' BIPs. GHS discriminated against the Plaintiff Students by:

      a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

      b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

      c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

      d.    Administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

277.    The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities by:

      a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

      b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

      c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

      d.    Using administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

278.    The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans.

- 48 -

**Exhibit C**

279.     Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement.  The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement.  Nor did they acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students.  As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

280.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.  However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

281.     The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

282.     Defendant CDE knew or should have known that:  students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of

- 49 -

Exhibit C

students with disabilities in response to behavior that was known to be a

manifestation of the students' disabilities; that the particular disabilities of the

children against whom these restraints were used made the restraints even more

dangerous; and that the restraints were not only ineffective and contrary to the

students' BIPs, but more often than not aggravated the students' behavioral

problems.

283.     Defendant CDE discriminated against Plaintiffs on the basis of their

disabilities by:

     a.     Abdicating its monitoring, investigation and compliance duties
           with regard to nonpublic schools, including GHS;

     b.     Failing to take even minimal measures to ensure statewide
           compliance with state and federal laws within nonpublic
           schools, including GHS;

     c.     Administering its licensing program of certifying, monitoring,
           investigating and taking corrective action against nonpublic
           schools which provide educational services to children with
           disabilities in a discriminatory, cursory, and indifferent manner;

     d.     Failing to make reasonable modifications to its policies and
           practices regarding certification, monitoring, supervision,
           investigation, and compliance of nonpublic schools in light of
           repeated notifications from the U.S. Department of Education
           regarding the disproportionate use of restraints on children
           with disabilities and their tragic outcomes; and

     e.     Completely abandoning its duty to monitor and supervise the
           use of emergency behavioral interventions in nonpublic
           schools under Cal. Ed. Code § 56521(b).

284.     The CDE knew and was deliberately indifferent to the fact that children with

disabilities were being restrained at far greater rates than children without disabilities

and that the rates of restraint use were significantly higher at "nonpublic" schools

such as GHS than at public schools.  It took no action to strengthen its oversight and

monitoring of nonpublic schools or laws restricting the use of physical interventions.

The CDE knew and was deliberately indifferent to allegations that children with

disabilities were being improperly restrained at GHS and failed to conduct an

emergency site visit when they had a substantial reason to believe that there was an

immediate danger to the health, safety and welfare of students at GHS.  The CDE

**Exhibit C**

did not conduct a real investigation or visit the school until after GHS staff killed a

student by restraining him.

285.     Defendants actions and failures to act were a substantial factor in causing

physical and emotional injuries to the Plaintiff Students as outlined above.

286.     Plaintiffs seek compensatory damages and attorneys' fees and costs.

### SIXTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution

MARQUES, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN, CHAMBERS,

BRUCE, ZOMBURY, ANDERSON,  CORY QUINCY, BYRNA QUINCY, HANDLE

WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER,

ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane

BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSON, NARAN,

Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON,

WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE

WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

DOES 1-100.

287.     Plaintiffs incorporate by reference all preceding paragraphs.

288.     Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND

DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE,

HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT

QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe,

David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, used excessive force against

Marques, Thomas, V.M. and Jordan V.M. when they restrained them in response to

predictable, disability-related behavior that did not constitute a clear and present

danger to Marques, Thomas, V.M. and Jordan V.M. 's or others' safety and that

could have been addressed by less restrictive measures, including those outlined in

their BIPs.  Defendants' use of force was objectively unreasonable in light of

- 51 -

**Exhibit C**

Marques, Thomas, V.M. and Jordan V.M. 's behavior and California law restricting the use of physical interventions. Defendants' use of restraints was also unreasonable in their frequency, duration, pressure and restrictions applied, lack of monitoring of Marques, Thomas, V.M. and Jordan V.M.  health condition, and the pain and injuries caused to Marques, Thomas, V.M. and Jordan V.M.

289.     Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, violated the Plaintiff Students' Fourth Amendment rights when they instituted and maintained a policy and practice at GHS of restraining students in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

290.     Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, were acting under color of state law when they instituted and practiced a policy of restraining students, including the Plaintiff Students, in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

291.     Defendants GHS and POINT QUEST were performing a public function that the LEA Defendants were legally required to provide and for which they were receiving state and federal funds-that of providing free educational services, including special education, to the Plaintiff Students.  If an LEA does not have an

- 52 -

Exhibit C

appropriate special education placement within its district, it may place a student in a nonpublic school.  Cal. Ed. Code § 56365.  In turn, the student "will be deemed to be enrolled in public schools" for the purpose of state and federal funding.  Cal. Ed. Code § 56365(b).   However, the LEAs are to monitor and supervise the placement and transition the student back to the public schools if the NPS is no longer appropriate to meet the student's needs.  Cal. Ed. Code § 56366(a)(2)(B).  The LEA continues to be responsible for the child's placement and special education needs and must participate in their IEP meetings. 20 U.S.C. § 1414(d)(1)(B)(iv).

292.     The Plaintiff Students were placed and kept at GHS by the LEA Defendants pursuant to their IEPs.  GHS had a Master Contract with each of the Defendant LEAs to provide education services to the Plaintiff Students.

293.     GHS and POINT QUEST sent BERs to the LEA Defendants demonstrating the excessive and illegal nature of the restraints, but this information was filed away and ignored.  The IEP teams, in which the LEA Defendants participated, did not review and modify students' BIPs when it was clear they were ineffective or not being followed.  Despite knowing that their students were being illegally restrained by GHS staff, the LEA Defendants left the Plaintiff Students at the school and did not take any action to stop the restraints.  Because they were unable and unwilling to provide the educational services themselves, the LEA Defendants ignored and thereby allowed the violations of Plaintiffs' constitutional rights, knowingly accepting the benefits of GHS's illegal behavior.

294.     At all times relevant to the complaint, the individual GHS and POINT QUEST Defendants were acting in the performance of their official duties to provide educational services, including special education services, to the Plaintiff Students pursuant to state and federal law and GHS's contract with the LEA Defendants.

295.     The GHS and POINT QUEST Defendants knowingly deprived the Plaintiff Students of their Fourth Amendment rights to be free from excessive force.

296.     Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE,

- 53 -

**Exhibit C**

HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, , deprived Plaintiffs Thomas and Jordan V.P. of their Fourth Amendment rights to be free from excessive force. As administrators of the PLACER COUNTY SELPA Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON administrators for ROCKLIN UNIFIED SCHOOLS, were responsible for overseeing the Plan's implementation, which included: 1) coordinating with school districts to ensure that all special education students in the Plan area have equal access to the full continuum of programs and services;   2) working with the school districts to identify unmet student needs and resources to meet those needs; 3) receiving, distributing, and monitoring the use of special education funding; 4) entering into Master Contracts with nonpublic schools, reviewing and monitoring those contracts, issuing and monitoring the assurances for those contracts, and maintaining updated contracts; and 5) submitting for approval to the Superintendents' Council policies and procedures governing regional and District-operated programs, including nonpublic schools. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON adminstrators for ROCKLIN UNIFIED SCHOOLS had a duty to monitor GHS as a nonpublic school with which it had a Master Contract to provide services for students in the Plan area.  They also had a duty to monitor the use of special education funding and ensure that it was not going to programs that used behavioral interventions that violated state or federal law.  Cal. Ed. Code §§ 56521.2, 56523(d).

297.       GHS, MEYER, KELLER, RAMSEY, CHRISTENSEN, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE,  and DOE defendants deprived Plaintiff Marques of his Fourth Amendment rights to be free from excessive force.

- 54 -

**Exhibit C**

298.     Despite widespread knowledge within the educational community about the disproportionate use of excessive, illegal and dangerous restraints on children with disabilities and in nonpublic schools, as administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to the Fourth Amendment rights of students in the YOLO SELPA plan area to be free from excessive force. They maintained a policy and practice within YCOE and YOLO SELPA of ignoring their duties to monitor GHS and ensure that it was complying with state and federal laws prohibiting discrimination and restricting the use of physical behavior interventions.

299.     From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements. Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON failed to supervise and train staff to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOL students to ensure that they were not being subjected to excessive force.

300.     At all times relevant to the complaint, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties as administrators for public entities, PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOLS.

**Exhibit C**

301.    Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON 's actions and failures to act were a substantial factor in causing Thomas and Jordan V.M.'s physical and emotional pain and suffering.

302.    Defendants and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS

303.    Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS deprived Jordan V.M. of their Fourth Amendment rights to be free from excessive force.   RUSD and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS wer responsible for the coordination of special education services and programs within the RUSD and the implementation of the PLACER COUNTY SELPA plan.  This included assuring that the District's programs-including any nonpublic school in which the District has placed a special education student-did not discriminate against children on the basis of disability and followed state and federal education laws, including those prohibiting the use of excessive force against students.  DAVIDSON was the direct supervisor of Defendant ROYER , the RUSD Program Specialist assigned to Jordan V.M..   ROYER was responsible for developing Jordan's IEP, ensuring that Jordan's educational placement at POINT QUEST was appropriate, monitoring the delivery of services to Jordan, and ensuring that the program in which Jordan had been placed complied with state and federal laws, including those related to the use of behavioral interventions and use of physical force.  ROYER was also responsible for coordinating and monitoring the implementation of educational programs and services at nonpublic schools at which RUSD students had been placed.

304.    Throughout Jordan's's placement at POINT QUEST, ROYER and DAVIDSON received information and documents demonstrating that POINT QUEST was subjecting Jordan to excessive force.  Specifically, POINT QUEST staff was placing Jordan in illegal restraints POINT QUEST in response to predictable, disability-related behaviors which did not pose a clear and present

- 56 -

Exhibit C

danger to the safety of the student or others and could have been addressed by less restrictive interventions.  This information included, but was not limited to, Behavior Emergency Reports, information provided by POINT QUEST staff at Jordan's IEP meetings, and documents accompanying Jordan's IEP meetings.

305.     ROYER AND DAVIDSON were deliberately indifferent to the knowledge that POINT QUEST  was subjecting Jordan to excessive force.  Defendants did nothing to investigate POINT QUEST to stop the restraints, or remove to a safe, approved placement.

306.     From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates. As administrators for ROCKLIN UNIFIED SCHOOLS, Kristain ROYER, Beth DAVIDSON, deprived Jordan V.M. was deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements.  DAVIDSON failed to supervise and train the program specialists working under her to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of RUSD students to ensure that they were not being subjected to excessive force.

307.     At all times relevant to the complaint, Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties for public entity RUSD.

308.     Kristain ROYER, Beth DAVIDSON's actions and failures to act were a substantial factor in causing Jordan's physical and emotional pain and suffering.

309.  GHS, MEYER, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS, BRUCE,  and DOE defendants' actions and failures to act were a substantial factor in causing Marques' physical and emotional pain and suffering.

- 57 -

**Exhibit C**

## DAMAGES

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

### FIRST CAUSE OF ACTION
### INTERFERENCE WITH THE EXERCISE OF
### CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51et seq

1.      General damages for in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10      Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION
### INTERFERENCE WITH PLAINTIFFS' EXERCISE OF CIVIL RIGHTS IN VIOLATION
### OF CALIFORNIA CIVIL CODE SECTION 51.7

1.      General damages for in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

- 58 -

**Exhibit C**

6.   Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
## INTERFERENCE WITH PLAINTIFFS' EXERCISE OF
## CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

1.    General damages for in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at trial;

5.    General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF CALIFORNIA EDUCATION CODE
## §§ 200, 201, 220 and 260, et seq.

1.    General damages for in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

- 59 -

**Exhibit C**

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
## ASSAULT AND BATTERY CONSTITUTING TORTURE

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
## ASSAULT AND BATTERY

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

- 60 -

**Exhibit C**

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**FALSE IMPRISONMENT, CONSPIRACY TO COMMIT FALSE IMPRISONMENT**

- 61 -

**Exhibit C**

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

8.      Punitive and exemplary damages against all non-public entity Defendants

9.      Costs of this action;

10.    Such other and further relief as the Court deems just and proper.

### NINTH CAUSE OF ACTION
### NEGLIGENCE

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress;

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.    Such other and further relief as the Court deems just and proper.

**Exhibit C**

## TENTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION

General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
## NEGLIGENCE PER SE

1.      General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

- 63 -

**Exhibit C**

## TWELFTH CAUSE OF ACTION
### Tortious Breach of the Covenant
### Of Good Faith and Fair Dealing

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### FRAUD

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

- 64 -

**Exhibit C**

**FOURTEENTH CAUSE OF ACTION**
**Title II of the Americans with Disabilities Act of 1990,**
**42 U.S.C. Sec's 12101 et seq.**

1. Compensatory Damages

2. Attorneys' fees and costs

**FIFTEENTH CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

1.Compensatory Damages

2. Attorneys' fees and costs

**SIXTEENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution**

1.Compensatory Damages

2. Punitive Damages

c. Attorneys' fees and costs

Dated: October 18, 2021

Seth L. Goldstein,
Attorney at Law

- 65 -

**Exhibit C**

**SUM-100**

## SUMMONS ON SECOND AMENDED COMPLAINT
### (CITACION JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*



**FILED**

NOV 3 0 2021

EL DORADO CO. SUPERIOR COURT

BY _____
(DEPUTY CLERK)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GUIDING HANDS SCHOOL, et al. (*** PLEASE SEE ATTACHMENT 1 ***)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Louis Andres MARQUES, Gloria V.M., Thomas V.M., and Jordan V.M.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California - County of El Dorado
3321 Cameron Park Drive
Cameron Park, CA 95682

| CASE NUMBER: |
|---|
| *(Número del Caso):* |
| PC 20200429 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Beth L. Goldstein, Attorney at Law, 2100 Garden Road, Suite H-8, Monterey, CA 93940 Telephone Number: (831) 372-9511

DATE:   NOV 3 0 2021                Clerk, by _____, Deputy
*(Fecha)*                           *(Secretario)*              *(Adjunto)*
                                    Tapia G. Ugrin-Capobianco

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**
On Second Amended Complaint

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

NOV 3 0 2021
**Exhibit D-1**

LOUIE ANDREASE MARQUES, et al.,          Case Number: PC20200429
vs.
GUIDING HANDS SCHOOL, et al.

SUMMONS ON SECOND AMENDED COMPLAINT
ATTACHMENT 1

**NOTICE TO DEFENDANT:**

GUIDING HANDS SCHOOL, Inc., (hereinafter "GHS"),, Staranne MEYERS, Cindy KELLER, Phylis RAMSEY, Jennifer CHRISTENSEN, David CHAMBERS, Noel Doe, Nicole DOE, Roland DOE, Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, Cara BRUCE, Ashley ROBB, Dellores ZUMBURY, Vince ANDERSON, Susan Jane BATTLE and Noelle DOE; STATE OF CALIFORNIA, DEPARTMENT OF EDUCATION; PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, POINT QUEST, Inc., Bill TOLLESTRUP, Bill WEBBER, Nicole DOE, Jennifer DOE; ROCKLIN UNIFIED SCHOOL DISTRICT, Kristain ROYER, Beth DAVIDSON; HANDLE WITH CARE BEHAVIOR MANAGMENT SYSTEMS, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**

Louie Andreas MARQUES, Gloria V.M., Thomas V.M., and Jordan V.M.

SUMMONS ON SECOND AMENDED COMPLAINT
ATTACHMENT 1

**Exhibit D-1**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Seth L. Goldstein SBN 176882<br>Law Offices of Seth L. Goldstein<br><br>2100 Garden Road, Suite H-8<br>Monterey, Ca. 93940<br>TELEPHONE NO.: 831 372 9511     FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** El Dorado
STREET ADDRESS: 1354 Johnson Blvd.
MAILING ADDRESS:
CITY AND ZIP CODE: South Lake Tahoe, Ca.
BRANCH NAME: Civil

PLAINTIFF/PETITIONER: Jordan V.M., et al

DEFENDANT/RESPONDENT: Guiding Hands School, et al

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Len Garfinkel

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: email: 12-30-21

Seth L. Goldstein                                          *Seth L. Goldstein*
_____                    ►    _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [x] A copy of the summons and of the complaint.
2. [x] Other: *(specify):* Notice of CMC

*(To be completed by recipient):*
Date this form is signed:

_____                    ►    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10 |
|---|---|---|



Legal
Solutions
Plus

**Exhibit D-2**

N-Court Fax Filing

1

Seth L. Goldstein, S.B.N. 176882
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone  (831) 372 9511
Fax        (831) 372 9611

EL DORADO CO. SUPERIOR CT.

FILED  NOV 0 2 2021

BY  Randi Corrasa
Deputy

2

3

4

5

Lead-Counsel for Plaintiffs

6

Merit Bennett, *Pro Hac Vice*
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836

7

8

9

Co-Counsel for Plaintiffs

10

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF EL DORADO

11

12

In the Matter of:

Case No.: PC20200429

13

14

Louie Andreas MARQUES, Gloria V.M.,
Thomas V.M., and Jordan V.M.,

SECOND AMENDED
COMPLAINT FOR DAMAGES

15

Plaintiffs

JURY TRIAL DEMANDED

16

vs

17

GUIDING HANDS SCHOOL,
Inc.(hereinafter "GHS"), , Staranne
MEYERS, Cindy KELLER, Phylis RAMSEY,
Jennifer CHRISTENSEN, David
CHAMBERS, Noel Doe, Nicole DOE,
Roland DOE, Noel COLLIER, Patricia DOE,
David DOE, Amanda DOE, Cara BRUCE,
Ashley ROBB, Dolores ZUMBURY, Vince
ANDERSON, Susan Jane BATTLE and
Noelle DOE; STATE OF CALIFORNIA,
DEPARTMENT OF EDUCATION; PLACER
COUNTY SELPA, Kristi GREGERSEN, Troy
TICKLE, POINT QUEST, Inc., Bill
TOLLESTRUP, Bill WEBBER, Nicole DOE,
Jennifer DOE; ROCKLIN UNIFIED
SCHOOL DISTRICT, Kristain ROYER, Beth
DAVIDSON; HANDLE WITH CARE
BEHAVIOR MANAGEMENT SYSTEMS,
INC.

18

19

20

21

22

23

24

25

26

Defendants.

27

28

**Exhibit D-3**

# I. PARTIES

## Plaintiffs

1.  Plaintiff Louie MARQUES (legal name Louie Andreas MARQUES, hereinafter "MARQUES"), who lives in Sacramento was, at all relevant times herein, a minor child diagnosed as then having Oppositional Defiant Disorder and ADHD.  He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

2.  At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

3.  The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

4.  **Plaintiffs Thomas and Jordan V.M.** were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

5.  Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears as predictable behaviors.

6.  His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

7.  Jordan V.M. had an IEP that identified non-compliance, physical aggression (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate gestures and other behavior described as eating crayons and spitting water as predictable behaviors.

- 2 -

**Exhibit D-3**

8.      His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

9.      **Plaintiff Gloria V.M.** is the adoptive mother of Thomas and Jordan V.M. and is their Guardian  Ad Litem.

### DEFENDANTS

10.  **Defendants Guiding Hands School Inc**., and **Point Quest Inc**. 4900 Windplay Dr., El Dorado Hills, California, located on the same premises having allegedly bought out GHS are non-public schools (hereinafter NPS) incorporated under the laws of the State of California as for-profit corporations and approved by the State of California as institutions providing for children with disabilities.

11.      At all times relevant to this Complaint, GHS was a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant GHS was an independent contractor with Elk Grove Unified Schools, pursuant to a written contract to perform educational services for Plaintiffs MARQUES, Thomas and Jordan V.M.

12.      Presently, and at all times relevant to this Complaint, POINT QUEST is a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT QUEST is an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to a written contract to perform educational services for Plaintiff Jordan V.M.

13.      Presently, and at all times relevant to this **Complaint, Defendants Rocklin Unified Schools** and **Placer County SELPA** are business establishments within the meaning of the Unruh Civil Rights Act.

14.      **Defendant California Department of Education (CDE),** a department of the State of California, presently, was, and at all times relevant to this Complaint, responsible for inspecting and certifying Non-Public Schools such as GHS and POINT QUEST. It is a business establishment within the meaning of the Unruh Civil Rights Act.

- 3 -

**Exhibit D-3**

15.     **Defendant Handle with Care Behavior Management System, Inc.** Defendant, HWC was a corporation organized under the laws of the State of New York, and doing business in California, marketing a system of restraint and training California teachers to restrain special needs children in prone and other types of restraints.

16.     At all times herein mentioned, Bruce Chapman (hereinafter "CHAPMAN"), was the agent and employee, owner, president and founder of HWC, who developed a patented restraint system marketed through HWC to schools in California for use on "behaviorally challenged" children in California schools, including GHS, which lead to the injuries to the student plaintiffs.

17.     At all times herein mentioned, defendant, HWC was a corporation organized under the laws of the State of New York, and doing business in California, marketing a system of restraint and training California teachers to restrain special needs children in prone and other types of restraints.

## JURISDICTION AND VENUE

18.     Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing against CDE, ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA on March 24 , 2019 for injuries and claims herein stated against said public entities. True and correct copies of said claims are attached as **Exhibit A**.

19.     Plaintiffs sue all Defendants in El Dorado County because all of the tortious acts occurred at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

20.     Plaintiffs are informed and believe that each of the Local Educational Agency (LEA) and NPS Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and at all times acting and performing, or failing to act or perform, within the course and scope of each similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated,

- 4 -

**Exhibit D-3**

directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

**GHS EMPLOYEES:**

21.　　At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault and batter Plaintiff MARQUES.

22.　　At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants MEYERS was the principal and member of the board of GHS, KELLER was the executive director of GHS, RAMSEY was an administrator for GHS, Jennifer CHRISTENSEN was an administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN, Noel COLLIER (Special Education Teacher), and unknown DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas and Jordan V.M.

23.　　At all times herein mentioned, "Roland" was a driver for GHS and assisted on campus during the time Thomas V.M. was at GHS. "Roland" was also rehired as staff at Defendant Point Quest.

**Exhibit D-3**

24.    At all times herein mentioned, there were two secretary/support staff working the "front desk" at GHS. One was known to Thomas V.M. only as "Nicole" and the other's name is unknown at this time. On information and belief, "Nicole" was rehired at Defendant Point Quest.

25.    At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY (hereinafter "ZOMBURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter "CHAMBERS") Kera BRUCE (Hereinafter "BRUCE" , Susan Jane BATTLE, and DOE defendants were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of GHS.

26.    The names and capacities, whether individual, corporate, otherwise, sued herein as DOES 1-100, inclusive, are presently unknown, and Plaintiff will amend the Complaint to insert them when ascertained.

**POINT QUEST EMPLOYEES**

27.    Bill Tollestrup, Interim Director of El Dorado Hills, Bill Weber, Director of El Dorado Hills,  Nicole DOE**,** Jennifer DOE, Roland Doe, and DOE defendants were employed as administrators, teachers, and aides at POINT QUEST, who intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom.

28.    At all times relevant to this Complaint, Defendant Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, and Noelle DOE were employees of POINT QUEST and were either directly involved in restraining Plaintiff Jordan V.M. or were immediately

- 6 -

**Exhibit D-3**

present on the premises during the restraints and failed to intercede to protect the plaintiffs.

They are sued in their individual capacity and in their capacity as employees of POINT QUEST.

### ROCKLIN UNIFIED SCHOOL EMPLOYEES

29.     Kristain ROYER, Program Specialist, Beth DAVIDSON, Assistant Director of Special Education, and DOE defendants were employed as administrators at RUSD, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

### PLACER COUNTY SELPA EMPLOYEES

30.     Kristi Gregersen, Program Specialist, Troy TICKLE, Director, Placer County SELPA,  and DOE defendants were employed as administrators at Placer County SELPA, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

31.     Plaintiffs MARQUES, Thomas, and Jordan V.M. were placed at GHS and POINT QUEST by their respective school districts after representations were made to the minors' parents about both schools special skills, facilities and safe environment appropriate for their children. The placement was pursuant to each student's Individual Education Plan (IEP), as a result of their diagnosis as children with disabilities, because the school districts themselves determined they were unable to provide a Free Appropriate Public Education.

32.     Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER COUNTY SELPA have failed to adequately supervise their employees that resulted in

**Exhibit D-3**

the foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that staff who came into contact with Plaintiffs would provide an environment free of abuse and neglect.

33. California law, including Cal Const, Art. I § 28, has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations necessary for their protection. Defendants also had a duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting intentionally or negligently.

34. Defendants have violated their statutory duties to Plaintiff, including their supervisory duties created under California Education Code sections 44807 and 44808.

35. California Penal Code section 11166 which required them to report any knowledge of a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect to the agency immediately or as soon as is practically possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up report thereof within 36 hours of receiving the information concerning the incident.

36. Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan V.M., including multiple violations of California Education Code sections 56521.1 and 56521.2 (and its predecessor legislation) that, in pertinent parts, suggest alternative interventions and/or prohibits the use of any interventions that:

1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an amount of force that exceeds that which is reasonable and necessary under the circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma.

37. Defendants have violated their statutory duty under California Penal Code section 11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."

- 8 -

**Exhibit D-3**

38.     Defendants GHS and POINT QUEST violated its statutory duty under California Education Code section 260 by failing to enact an adequate formal or informal policy to ensure that GHS and POINT QUEST provided a learning environment free from discrimination based on the characteristics provided in California Education Code section 220, specifically disability.

39.     GHS was closed in 2018 after the State of California revoked their license to operate following the death of student Max Benson who was subjected to a restraint that killed him.

40.     After GHS was closed it was, allegedly, sold to POINT QUEST, and Jordan V.M. then attended Defendant POINT QUEST.

41.     When POINT QUEST took over GHS facilities and educational duties, Gloria V.M. was assured by the Rocklin Unified School staff, Placer County SELPA, and POINT QUEST staff, expressly, by inference, or omission, that the previous policies and practices employed by GHS were, not only no longer employed, she was assured that the GHS employees were gone and would not be rehired at POINT QUEST.

42.     For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") -have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for their physical and emotional health.

43.     There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to abusive use of restraint systems, such as the Handle With Care system developed by Defendant Bruce Chapman. It is also well-known that restraints are disproportionately used against children with disabilities.

44.     Despite this knowledge, nonpublic schools like Defendants GHS and POINT QUEST and their respective staffs continued to use such restraints frequently, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or others, for extended periods of time, on students whose disabilities elevated the risk of using restraints, and with excessive force.

- 9 -

**Exhibit D-3**

45.     They could do so because the CDE, and the LEA Defendants abdicated their responsibilities to monitor and supervise GHS and POINT QUEST and ensure their compliance with state and federal laws prohibiting discrimination and the improper use of restraints.

46.     The CDE continued to certify GHS continues to currently certify POINT QUEST, and the LEA Defendants continued to contract with and place their students with disabilities in the respective schools.

47.     Plaintiff students with developmental and other disabilities whose local educational agencies placed them at GHS and POINT QUEST pursuant to their Individualized Education Plans ("IEP")

48.     Each Plaintiff Student attended GHS sometime between 2006 and 2018, where its administrators and staff subjected them to excessive and harmful restraints and other aggressive physical interventions in response to known behaviors associated with their disabilities, resulting in physical and emotional abuse and injury, and in the case of one other student, death.

49.     GHS was, and POINT QUEST is, a nonpublic school-as that term is defined in Cal. Ed. Code § 56034-which contracted with the LEA Defendants to provide special education services to public school students with disabilities in exchange for state and federal educational funding.

50.     As required by law, GHS and POINT QUEST entered into Master Contracts with the LEA's, as well as an Individual Services Agreement for each student placed there.

51.     Each of the Plaintiff Students' IEP's included a Behavioral Intervention Plan ("BIP") which described the student's known disability-related behaviors and the intervention strategies and positive behavioral supports educators should use to prevent or respond to those behaviors.

52.     Despite legal requirements (discussed below) and Defendants' knowledge of the dangers associated with restraints to students' physical and emotional health, GHS and POINT QUEST administrators and employees engaged in a policy and practice of using restraints as a substitute for the positive interventions detailed in the students' BIPs in

Exhibit D-3

response to predictable behavior that did not pose a clear and present danger of serious physical harm to the student or others.  GHS and POINT QUEST  used restraints against its students frequently, for periods of time that were longer than necessary, and with excessive force.

53.     These restraints-including prone restraints- in which the child is placed face down on the floor with one or more adults applying force from above to keep the child's body immobile-frequently lasted over an hour.

54.     Some students were restrained frequently, sometimes more than one time each day.

55.     The restraints and other aggressive physical interventions inflicted by GHS and POINT QUEST caused the Plaintiff Students physical and emotional injuries.

56.     GHS  and POINT QUEST administrators were not only aware of the abuse, but encouraged it and were responsible for the school's policy and practice of using frequent, excessive, harmful and lengthy restraints as a substitute for positive behavioral interventions in response to students' predictable, disability-related behaviors.

57.     GHS   and POINT QUEST did not provide adequate training in positive behavioral interventions, instead relying on Defendant Bruce Chapman's patented restraint system, Handle With Care Behavioral Management Systems, Inc. which was associated with numerous abuses by educational professionals on students with behavioral challenges.

58.     GHS and POINT QUEST  training in the HWC method ignored requirements of state and federal law and did not provide proper warnings regarding the risks associated with restraining students or safeguards for monitoring and responding to signs of distress.

59.     Moreover, GHS  and POINT QUEST took significant measures to conceal its illegal use of restraints and child abuse from parents and the LEAs with which it contracted by failing to provide required reports to the parents and the State of California.

**Exhibit D-3**

60.     Prior to the children's placement, GHS misrepresented orally, in enrollment documents, and in the children's IEP that the school focused on proactive, positive behavioral interventions and that corrective behavior would be "calm", "brief", and "respectful."

61.     The HWC Intervention Statement that parents had to sign as part of the enrollment packet emphasized positive intervention and "the 3-step prompt" which "entails a verbal request, followed by staff modeling and finally hand over hand with children who may have difficulty following directions . . . " It represented that a restraint would be used only if the child appeared to be "a physical danger to themselves or others around them".

62.     GHS used the HWC terminology in referring to the most dangerous restraint-a prone restraint-as a "neutral" restraint. *Id.* These misrepresentations were repeated in the students' BIPs developed as part of the IEP process and a part of the agreement between the parent/student, the LEA, and GHS.

63.     When a student was restrained, GHS frequently failed to complete a Behavioral Emergency Report ("BER"), place the BER in the student's file, send it to the LEA, or notify the student's parent, as required by law and GHS's Master Contracts with the LEAs.  Nor did GHS administrators or staff report the regular, systemic child abuse they witnessed and participated in at the school, despite the requirement to do so as mandated reporters.

64.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.

65.     However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to place vulnerable students in its care. GHS would still be abusing its students were it not for the death of a 13-year-old student who died after he was held in a prone restraint for almost two hours on November 28, 2018.

- 12 -

**Exhibit D-3**

66.      Plaintiff Thomas V.M. was a disabled student, placed at GHS on August 6, 2018, because of his diagnosis of his disability. Plaintiff Jordan V.M. was a disabled student, placed at GHS on February 22, 2018, because of his diagnosis of disability. All plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their educational experience and abilities.

67.      Because of the disruption that affected other students, they were frequently placed in such restraints, which included but was not limited to, the imposition of restraints that constituted physical child abuse, battery, and assault.

68.      Referring to these restraints as though they were normal and accepted ways of disciplining plaintiffs, Defendant administrators,  teachers and assisting staff, as individually identified below, preyed on plaintiffs because of their disability related conduct.

69.      These defendants assaulted and battered plaintiffs repeatedly rather than following the BIPs.

70.      The LEA administrators, by and through their agency with GHS  and POINT QUEST  administrators tasked unqualified and inadequately trained staff with supervising plaintiff students, who often failed to document and report incidents of abuse, and failed to take reasonable steps to prevent further abuse.

71.      Plaintiffs, like other students who were also subjected to such conduct, would attend class and when a student acted consistently with their predictable behaviors stated in their individual BIP and IEP (and the reason(s) why they were placed at GHS and POINT QUEST) or failed to follow the directions of the GHS  and POINT QUEST staff as individually described below, they would be subjected to painful restraints in full and open view of fellow students.

72.      Each plaintiff had specific conduct that was identified in their BIP, for which, each plaintiff had a set of less restrictive measures to be taken before a "hands on" physical intervention such as painful restraints would be exercised.

73.      Plaintiffs witnessed other students treated in the same way in their respective classes. The observation of such torturous conduct to other students and themselves

- 13 -

**Exhibit D-3**

caused Plaintiffs who were in their immediate presence to experience fear and anxiety such that they were terrorized in anticipation that they too might be hurt in the same way.

74.     As to MARQUES, the documented abuse occurred from as early as December 18, 2006, when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was removed. For Thomas and Jordan V.M., it began when they first began to attend GHS on February 22, 2018, and lasted until they were removed on or about the end of December 2018 and officially, in January, 2019.

75.     Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on or about October 1, 2019 and officially October 22, 2019.

76.     No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary.

77.     Defendants GHS and POINT QUEST, and their individual staff members as particularly described below, carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

78.     The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent the abuse.

79.     Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

**Exhibit D-3**

80.     Plaintiffs Thomas and Jordan V.M. are in another school in Washington State.

81.     The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant.

82.     Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted.

83.     In addition, Plaintiff MARQUES is an adult and outside of the educational system.

84.     The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

85.     From records to be obtained by Plaintiffs, there were restraint incidents involving Plaintiffs and they expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

## OPERATIVE FACTS

86.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

### AS TO PLAINTIFF MARQUES

87.     Over a one-and-one-half year period as specifically set forth below in each cause of action, Defendants ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES by grabbing him, pushing or otherwise forcing him to the floor and, in painful positions, pinning all four appendages for various periods of time, immobilizing him, including as punitive measures. All were either for an unnecessarily prolonged period of time or had failed to utilize the less restrictive measures set forth in his BIP for predictable behaviors related to his disability.

88.     MARQUES was a student at GHS from 2006 to 2008.  He was referred to GHS by Elk Grove School District employees.

- 15 -

**Exhibit D-3**

89.     MARQUES had both an Individual Education Plan (EIP) and a Behavioral Intervention Plan (BIP) at all relevant times herein.

90.     Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS and DOE defendants failed to file Behavioral Emergency Reports or document injuries as required by law, so all of the dates of assaults all are unknown to MARQUES at the present time.

91.     Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16, 2007, April 23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March 19, 2008, set forth in greater detail below.

92.     On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and Ashley ROBB, put MARQUES in a restraint for 12 minutes because he failed to stand appropriately and when escorted from the line he was standing in, kicked a student and Bruce. He was restrained "per CPI". Both Dolores ZOMBURY and David Chapman participated in the restraint.

93.     On December 18, 2006, at 1:45 PM Ashley ROBB and Kera Bruce instituted an eight minute restraint after MARQUES had been found to have a toy belonging to another student. What he was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a basket restraint.

94.     On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by ZOMBURY, after he refused to sit down and began throwing pencils and calling children names.

95.     On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMBURY for five minutes after he was told to put a pointer down and had slapped it on the desk of another student. When he was directed to sit down he ran around the room and was restrained.

96.     On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by Dolores ZOMBURY and subsequently by a teacher's aide known only as "Laure", when MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the teacher and was taken to the "corner".

- 16 -

**Exhibit D-3**

97.    On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by ZOMBURY after another student had pushed him, rubbing "snot" on his jacket and in response he pushed that student down.

98.    On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began swearing and started to run towards another student after he disregarded a request by the instructor to put his head down on his desk. The staff involved were ZOMBURY and Chambers.

99.    On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor Vince Anderson, because he failed to follow directions and began yelling in the presence of his mother.

100.    On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

101.    In this restraint, MARQUES was pushed to the ground and placed in a position for an extended period of time, while his arms were pulled behind his back. GHS staff sat at his back while he was in this position, increasing his pain and making it difficult for him to move.

102.    This incident arose when another child assaulted MARQUES with a rock and MARQUES defended himself.

103.    When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks as a result of these restraints.

104.    MARQUES subsequently suffered panic attacks, night-terrors, startles, depression and self-loathing as a result of these restraints.

105.    MARQUES was abused on additional occasions while attending GHS.

106.    MARQUES will seek leave to allege these dates according to proof when furhter information becomes available through the discovery process.

107.    At all relevant times, MARQUES.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

**Exhibit D-3**

108.    The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code Sec. 242), and torture (Penal Code Section 206) prohibited by California law.

**AS TO THOMAS V.M.**

109.    Thomas V.M. was restrained by GHS and POINT QUEST staff on many occasions the precise details are neither known to he nor his mother at this time, other than that described as follows.

110.    Thomas V.M. was restrained in some fashion on September 5, 2018, for forty (40) minutes by or in the presence of Defendant Noel COLLIER, who left a phone message for Gloria V.M. on that date informing her of the incident where he refused to participate in an art exercise and was restrained as a result of staff intervention.

111.    Thomas V.M. was restrained in some fashion on September 19, 2018, by or in the presence of Defendant Noel COLLIER.

112.    Thomas V.M. was restrained in some fashion on October 3, 2018, by or in the presence of Defendant Noel COLLIER, when he refused to cooperate with staff.

113.    Thomas V.M. was restrained in some fashion on October 23, 2018, by or in the presence of Defendant Noel COLLIER and David Chambers, when he would not cooperate with staff and bit one on the leg.

114.    Thomas V.M. was restrained in some fashion on October 18, 2018, by or in the presence of Defendant Noel COLLIER  when he would not cooperate with staff.

115.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 3, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in Yoga.

116.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 5, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would participate in his math lesson and threw a pencil and his book.

- 18 -

**Exhibit D-3**

117.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 19, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in school work, threw his paper at Noelle DOW and tried to leave the classroom.

118.    Thomas V.M. was restrained by a staff member named "Jennifer" when attending POINT QUEST and, as a result, his mother immediately withdrew him from the school.

119.    Thomas V.M. knows that "Jennifer" was a previous staff member at GHS.

120.    Thomas V.M. was repeatedly assaulted by "Roland" who was a driver for GHS and who had shoved Thomas, face first, into a wall on various occasions, one of which chipped one of Thomas's teeth.

121.    While attending GHS, Thomas was repeatedly refused food and prevented from eating, despite his mother's frequent pleas that he be provided the lunch he was sent to school with or that was to have been provided by the GHS staff. Thomas, at all relevant times, was suffering from a thyroid disorder and provided medication that frequently made him hungry. Various unidentified staff, including Nicole Doe, had taken Thomas's lunch from him before he was finished eating, thereby increasing his discomfort and hunger throughout the day.

**AS TO JORDAN V.M.**

122.    Jordan V.M. was restrained by GHS staff on many occasions the precise details are neither known to he nor his mother at this time,  other than that described as follows:

123.    Jordan V.M. was restrained in a restraint of some fashion on February 26, 2018, by or in the presence of Defendant Amanda Doe, when he would not cooperate on a bus trip home.

- 19 -

**Exhibit D-3**

124.      Jordan V.M. was restrained in a restraint of some fashion on October 10, 2018, by or in the presence of Defendant Noel COLLIER, when he was asked to do class work and threw a crayon.

125.      Jordan V.M. was restrained in a restraint of some fashion on October 9, 2018, by an unknown staff member, possibly "Dorian", for an unknown reason.

---

**FIRST CAUSE OF ACTION**

**Violation of California Civil Code §§ 51, *et seq.***

AS TO PLAINTIFF MARQUES Against GHS;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;
and DOES 1-100.

126.      Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

127.      Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major life activities of learning.

128.      Plaintiffs THOMAS and JORDAN V.M. are  persons with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  They had been diagnosed as Autistic.

129.      Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

130.      GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

- 20 -

**Exhibit D-3**

131. GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities, privileges, advantages, or accommodations.

132. Plaintiffs were not provided with the services, facilities, privileges, advantages and accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals without disabilities.

133. The discipline methods, behavior standards and criteria employed by GHS and POINT QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his disabilities.

134. GHS and POINT QUEST failed to make reasonable modifications to their educational and behavioral intervention methods and staff training that were necessary to afford students with disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services, facilities, privileges, advantages and accommodations.

135. The actions and failures to act of GHS and POINT QUEST violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections 12181, et seq. As such, Defendant's actions also constituted a violation of the Unruh Act under Cal. Civ. Code § 51(f).

136. The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

137. Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

138. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Cal. Civ. 51.7 Ralph Civil Rights Act**

AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100;

**Exhibit D-3**

AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT,
and DOES 1-100

139.     Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

140.     Defendants in doing the acts described above violated Plaintiffs' rights under the Ralph Civil Rights Act.

141.     Plaintiffs have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of any characteristic listed or defined in subdivision (b) or (e) of Section 51, because another person perceives them to have one or more of those characteristics.

142.     In committing the acts described above, all defendants have violated Plaintiffs' rights by subjecting them to violence and intimidation.

143.     The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

144.     Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

145.     Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**For Interference with Exercise of Civil Rights in
Violation of California Civil Code Section 52.1**
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT,
and DOES 1-100

146.     Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth herein.

147.     California Civil Code 52.1 provides that it is unlawful to interfere with the exercise

- 22 -

**Exhibit D-3**

or enjoyment of any rights under the Constitution and the laws of this state and the United States by attempted use of threats, intimidation or coercion.

148.    The California Constitution establishes the right to a free public education to all students on an equal basis.  Butt v. California, 4 Cal. 4th 668, 685 (1992).

149.    California Civil Code section 43 guarantees the right of every person to be free from bodily restraint or harm and personal insult.

150.    In doing the things herein alleged, Defendants intentionally interfered with and attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

151.    Defendants acted violently against Plaintiff, thereby preventing him from exercising his rights.

152.    Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

153.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

154.    The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

155.    Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a face down position with the pupil's hands held or restrained behind the pupil's back; and by using a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed a clear and present danger of serious physical harm to the pupil or others.

156.    Defendant employees of GHS and POINT QUEST acted with conscious disregard of Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  Plaintiff is therefore entitled to recover punitive and exemplary damages.

- 23 -

**Exhibit D-3**

157.     Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys' fees and costs as set by the Court.

**FOURTH CAUSE OF ACTION**
**Violation of California Education Code §§ 200, 201, 220, and 260 et seq.**
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT,
and DOES 1-100

158.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

159.     Plaintiffs are individuals with disabilities.

160.     At all times relevant to this complaint, Defendant GHS was an educational institution providing education to students from kindergarten through twelfth grade and receiving financial assistance from the State of California.

161.     Defendants discriminated against Plaintiff on the basis of their disability by subjecting them to physical and emotional abuse in response to disability-related behavior.

162.     The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

163.     The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

164.     As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages in an amount according to proof and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
Assault and Battery Pursuant to California Penal Code Section 206
AS TO PLAINTIFFS
MARQUES, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN,
CHAMBERS, ROBB, BRUCE, ZOMBURY, ANDERSON,  CORY QUINCY, BYRNA
QUINCY, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

- 24 -

**Exhibit D-3**

Thomas V.M. against defendants GHS, CHRISTENSEN, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

165.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

166.    CHAMBERS, CHRISTENSEN, MEYERS, KELLER, RAMSEY, "JENNIFER" DOE, and DOE defendants , with the intent to cause cruel or extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted significant injury upon Plaintiffs by repeatedly assaulting Plaintiffs throwing them to the ground and causing bruises, contusions and lacerations.

167.    As a result, Plaintiffs suffered physical and psychological injuries.

168.    Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiffs.

169.    Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

170.    Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

171.    Defendants' conduct in intentionally assaulting and restraining Plaintiffs knowing of their disabilities was malicious and outrageous such that exemplary damages should be awarded.

172.    WHEREFORE, Plaintiffs pray for judgment for damages according to proof.

- 25 -

**Exhibit D-3**

## SIXTH CAUSE OF ACTION
### ASSAULT AND BATTERY

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT DOES 1-100

173.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

174.    In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs Thomas and Jordan V.M. to suffer harmful or offensive contact.

175.    As a result of said conduct of said defendants, Plaintiffs Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

176.    In doing the things herein alleged, said defendants threatened to touch Thomas and Jordan V.M. in a harmful or in an offensive manner.

177.    At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan V.M.  that said defendants were about to carry out the threat.

178.    At all times herein mentioned, Thomas and Jordan V.M.  did not consent to the conduct of said defendants.

179.    Thomas and Jordan V.M. suffered harm, as herein alleged.

180.    The aforementioned conduct of said defendants was a substantial factor in causing Thomas and Jordan V.M. harm.The conduct of said defendants, caused Thomas and Jordan V.M. to be apprehensive that said defendants would subject Thomas and Jordan V.M.  to further intentional invasions of their right to be free from

- 26 -

**Exhibit D-3**

harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a present ability to subject Thomas and Jordan V.M. to an intentional offensive and harmful touching.

181.    Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

182.    At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas and Jordan V.M. rights, safety, physical well-being and feelings. Said defendants also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury and/or humiliation to Thomas and Jordan V.M. Said defendants intended to cause fear, physical injury and/or pain and suffering to Thomas and Jordan V.M.

183.    By virtue of the foregoing, the estate of Thomas and Jordan V.M. are entitled to recover punitive and exemplary damages from individual and non-public entity defendants according to proof at trial. Estate of Thomas and Jordan V.M.  make no claim for punitive damages against the named defendants.

### SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, CHRISTENSEN, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

**Exhibit D-3**

EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

184.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

185.     In doing the things herein alleged, the conduct of said defendants was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

186.     Said defendants inflicted actual injury and/or acted with reckless disregard of the probability that Plaintiffs Gloria, Thomas and Jordan V.M. would suffer emotional distress, knowing that the children who were restrained, including Gloria, Thomas and Jordan V.M., were present when the conduct occurred.

187.     The conduct of said defendants, as herein alleged, was a substantial factor in causing Gloria, Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

188.     Said defendants knew or should have known that Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be, physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

189.     Said defendants' knowing disregard for the safety of Thomas and Jordan V.M. and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as Thomas and Jordan V.M. caused Thomas and Jordan V.M.  to be repeatedly battered and assaulted by teachers and aides at GHS and POINT QUEST.

190.     Said defendants' conduct was extreme and outrageous.

191.     Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Gloria, Thomas and Jordan V.M.  would suffer emotional distress.

**Exhibit D-3**

192.     The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Gloria, Thomas and Jordan V.M. As a result, Gloria, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

### EIGHTH CAUSE OF ACTION

FALSE IMPRISONMENT CONSPIRACY TO COMMIT FALSE IMPRISONMENT
ASSERTED by
Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; ROYER, DAVIDSON

193.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

194.     Said defendants, in concert with one another, did intentionally and unlawfully, and conspire to, exercise force, threat, implied threat of force, or duress, to restrain and confine Thomas and Jordan V.M. , and deprive them of their freedom of movement, when said defendants committed the acts described herein.

195.     Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

196.     As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and emotional harm, as herein alleged.

197.     That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm to Thomas and Jordan V.M.

198.     The outrageous conduct of the said defendants was willful and wanton, and was

**Exhibit D-3**

performed with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and Jordan V.M.

199.     As a result, Thomas and Jordan V.M.  are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof at time of trial.

**NINTH CAUSE OF ACTION**
**NEGLIGENCE**

<u>Gloria V.M.</u> against GHS,  RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

<u>Thomas V.M.</u> against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

200.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

201.     Said defendants breached their duty towards Thomas and Jordan V.M. by:

a. Failure to develop and maintain effective procedures governing emergency interventions;

b. Failure to obtain proper training for use of behavioral emergency interventions

c. Failure to provide oversight on the use of restraints

d. Failure to develop protocols for use of restraints

- 30 -

**Exhibit D-3**

f.  Failure to prohibit restraints on physically disabled children

g.  Failure to prohibit prolonged restraints (anything over 15 minutes)

h.  Failure to require that Thomas and Jordan V.M. be released from a restraint at the earliest possible moment.

i.  Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

j.  Failure to prohibit restraints that constrict the child's ability to breathe.

k.  Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l.  Failure to provide for the comfort of Thomas and Jordan V.M.  while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M.  fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m.      Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

n.  Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o.  Failure to require immediate and accurate reporting on each restraint

p.  Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q.  Failure to provide for:
>           -primary preventative measures rather than restraint;
>           -interventions that are less intrusive than restraints;
>           -effective ways to de-escalate situations to avoid restraints; and
>           -crisis intervention techniques that utilize alternatives to restraint.

**Exhibit D-3**

r.  Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s.  Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t.  Allowing use of physical restraints on children which:
        - create an aversive environment counterproductive to facilitating learning;
        - cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine
        - whether the intervention was necessary
        - whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v. Failed to document injuries caused by restraint and

w.      Failed to get medical attention for a child who was injured while in restraint.

202.      As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

203.      Breach of said mandatory duties by said defendants was a substantial factor in causing injuries Thomas and Jordan V.M.

204.      At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward Thomas and Jordan V.M. who were disabled students under their guidance and care.

**Exhibit D-3**

205.     At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints on special needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in violation of California law.

206.     At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints, known by said defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with reckless disregard for the safety of said children.

207.     At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone and other restraints, to injure special needs/disabled children and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for which they were hired.

208.     As a direct and foreseeable result of the negligence of said defendants learning of the death of Max Benson, plaintiffs and their own injuries Thomas and Jordan V.M. suffered physical and emotional injuries.

209.     The negligence of said defendants was a substantial factor in causing injury Thomas and Jordan V.M. to suffer physical and emotional injuries.

210.     By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

## TENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

**Exhibit D-3**

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

211.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

212.     Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

213.     Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M.  when they suffered the abuse as described herein.

214.     Said defendants breached their duties to Thomas and Jordan V.M.  when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

215.     As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M.  suffered injury, and are entitled to damages according to proof.

### ELEVENTH CAUSE OF ACTION
### NEGLIGENCE PER SE

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

**Exhibit D-3**

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

216.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

217.     In doing the things herein alleged, said defendants violated the mandatory duties toward  Thomas and Jordan V.M. as prescribed by state and federal law as referenced in each of the statutes as set forth here-in-above.

218.     Said violations were of the statutes specifically intended to protect the class of plaintiff and to prevent the injuries as those described herein.

219.     Said violations of criminal and civil law were a substantial factor in bringing about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

220.     As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M.   suffered injury, and are entitled to damages according to proof.

**TWELFTH CAUSE OF ACTION**
**Tortious Breach of the Covenant**
**Of Good Faith and Fair Dealing**

Asserted by the Plaintiffs Gloria, Thomas and Jordan V.M. Against Defendants GHS, Meyers, Keller, Point Quest,Troy Tickle, Kristi Gregerson, Cara Bruce and Doe Defendants 1-100

221.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

- 35 -

**Exhibit D-3**

fully set forth herein.

222.    Upon the respective enrollment of Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce  and DOE defendants for the education of  their children.

223.    At all times herein mentioned, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce  and DOE defendants.

224.    As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support.  The GHS handbook also indicated that defendant GHS would "customize" the system to support student outcomes and  "interact with students in a way that promotes social proficiency."  The GHS handbook states that "social competence is a skill that requires direct teaching." .  The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

225.    As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce,  and DOE defendants against any student based on physical or mental disability.

226.    As part of said  contract, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and

**Exhibit D-3**

redirecting behavior using a lesson."

227.     As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants  promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

228.     As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants; and the most dangerous type of restraint, a prone restraint, was described by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants to each of Thomas and Jordan V.M's parents in innocuous language as a "neutral" restraint.

229.     Plaintiffs, and each of them, did all of the significant things that the contract required them to do.

230.     At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS, KELLER, POINT QUEST,Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants had occurred.

231.     Defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

232.     Defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed

**Exhibit D-3**

corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

233.     By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

234.     By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

235.     By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. and the beneficiaries of said contract, Thomas and Jordan V.M., have suffered severe emotional and physical distress at having the respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

236.     By virtue of said  bad faith interference with contractual benefits,  all plaintiffs suffered physical and emotional injuries, and future general and special damages as herein alleged.

237.     The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

238.     In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults. As a consequence, plaintiffs, and each of them,

**Exhibit D-3**

are entitled to punitive damages.

**THIRTEENTH CAUSE OF ACTION**

**FRAUD**

Asserted by Gloria V.M. against GHS, POINT QUEST, PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOLS; TICKLE, GREGERSON, BRUCE, RAMSEY, MYERS, KELLY, NARAN,TOLLESTRUP, WEBBER, ROYER, DAVIDSON

239.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

240.    On or about the date of enrolling their respective children in defendant GHS, defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, represented to Gloria V.M. that said defendants would not to discriminate in any activity against any student at GHS based on physical or mental disability under Title IX, Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited intimidation or harassment by any employee of defendants GHS and POINT QUEST against any student based on physical or mental disability; that said defendants and their employees would use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, including using "positive language and redirecting behavior using a lesson"; that behavior by GHS' staff when correcting a child would be "calm, consistent, brief, immediate and respectful,"; that GHS and POINT QUEST behavior intervention approaches involved a three step prompt "verbal, modeling, hand-over-hand";  and that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities.

241.    On or about the dates of the respective enrollment of Thomas and Jordan V.M., at GHS and POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and their employees represented to Gloria V.M that they were required to sign a form allowing defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, to impose restraints on said plaintiffs' respective children, with the implied threat that if they did not sign the form their respective children would not be enrolled at GHS, which was the

- 39 -

**Exhibit D-3**

only school available to educate said children, and therefore, the parents would be in violation of California's mandatory education law.

242.    That the afore-mentioned representations of defendants, were false, and Gloria V.M. learned that they were false on or after November 29, 2018, upon the death of MAX, when they discovered that they did not have to allow or consent to the use of restraints against their disabled children.

243.    Said defendants knew that said representations were false when they made them, and/or said defendants made the representations recklessly and without regard for the truth of said representations.

244.    Said defendants intended that GLORIA V.M.  rely on said representations.

245.    GLORIA V.M.  reasonably relied on said representations, and enrolled their respective children at defendant GHS to receive an education.

246.    GLORIA V.M.  were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

247.    GLORIA V.M.  reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

248.    At all relevant times, said defendants acted with conscious disregard of the rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs.  By virtue of the foregoing, said  plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial.

**FOURTEENTH CAUSE OF ACTION**

**Exhibit D-3**

**Title II of the Americans with Disabilities Act of 1990,**
**42 U.S.C. Sec's 12101 et seq.**

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

249. Plaintiffs incorporate by reference all preceding paragraphs.

250. Title II of the ADA prohibits public entities from denying persons with disabilities the benefits of its programs, services or activities. 28 U.S.C. § 12132.

251. Defendants CDE,Rocklin Unified Schools, and Placer County SELPA are public entities.

252. Thomas, V.M. and Jordan V.M. were at all relevant times students with disabilities who had been placed at GHS via their IEPs.

253. The ADA is violated not only by outright discrimination but also when a public entity engages in "forms of discrimination which deny disabled persons public services disproportionately due to their disability."  Crowder v. Kitagawa, 81 F. 3d 1480, 1483 (9th Cir. 1996); see also, Mark H. v. Lemahieu, 513 F.3d 922, 937 (9th Cir. 2008).  The ADA prohibits governmental agencies from denying persons with disabilities from "the benefits" of their programs.  Mark H., 513 F.3d at 937.  The ADA requires more than just some access to governmental services; it requires "meaningful access". Id.

254. A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability:

    a.    Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

    b.    Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

    c.    Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of  disability in providing any aid, benefit, or service to beneficiaries of the  public entity's program;

- 41 -

**Exhibit D-3**

      d.      Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

28 C.F.R. § 35.130(b)(1)(ii)(iii)(v) and (vii).

255.      A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration-

    a.      That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

    b.      That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

    c.      That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

28 C.F.R. § 35.130(b)(3).

256.      A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(6).

257.      A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

258.      A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

259.      The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities.  Through GHS:

    a.      The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that were not equal to those provided to students without disabilities;

- 42 -

**Exhibit D-3**

b.      The LEA Defendants provided the Plaintiff Students with educational

aid, benefits and services that did not afford equal opportunity to obtain the same

result, to gain the same benefit, or to reach the same level of achievement as that

provided to LEA students without disabilities;

c.      The LEA Defendants aided and perpetuated disability discrimination

against the Plaintiff Students by providing significant state and federal financial

assistance to GHS, which discriminated against LEA students on the basis of their

disabilities by subjecting them to repeated physical and emotional abuse in

response to predictable, disability-related behavior which did not constitute a clear

and present danger to the safety of the students or others and which could have

been addressed by less restrictive measures, including those outlined in the

students' behavioral intervention plans;

d.      The LEA Defendants limited the Plaintiff Students from enjoying their

right to a free public education in a safe placement, free from discrimination or

abuse; and

e.      The LEA Defendants used administrative methods-specifically the

policies and practices of GHS regarding behavioral interventions-that subjected

Plaintiff Students to disability discrimination and defeated or substantially impaired

the objective of providing a free public education to the Plaintiff Students.

260.    Moreover, the LEA Defendants directly discriminated against the Plaintiff

Students by administering their public education program and local plans in a

manner that resulted in placing and keeping students with disabilities in an unsafe,

abusive educational placement.  The LEA Defendants did not sufficiently-if at

all-investigate, monitor, or supervise the placement.  Nor did it acknowledge or direct

GHS to correct its known violations of state and federal law against the Plaintiff

Students.  As a result, the Plaintiff Students were not afforded education services

equal to those afforded to other students and were subject to disability

discrimination and repeated physical and emotional abuse.

**Exhibit D-3**

261.     The LEA Defendants failed to make reasonable modifications to their program of providing special education services to children within the LEA, such that LEA students with disabilities would not be subject to discrimination and abuse in their educational placements.  These modifications-meaningful investigations and evaluations of the NPS prior to placing an LEA student there and forceful oversight, investigation, and measures to ensure compliance with state and federal laws during the placement, including site visits and regular review of school and student records and BERs-would not have constituted a fundamental alteration in the LEAs' programs of providing educational services to their students.

262.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.  However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

263.     The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

264.     Defendant CDE knew or should have known that:  students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of

**Exhibit D-3**

students with disabilities in response to behavior that was known to be a manifestation of the students' disabilities; that the particular disabilities of the children against whom these restraints were used made the restraints even more dangerous; and that the restraints were not only ineffective and contrary to the students' BIPs, but more often than not aggravated the students' behavioral problems.

265.     Defendant CDE discriminated against Plaintiffs on the basis of their disabilities by:

a.     Abdicating its duties to supervise, monitor, investigate, train, and ensure legal compliance of nonpublic schools, including GHS, with laws designed to protect students with disabilities from discrimination and abuse;

b.     Failing to take even minimal measures to ensure statewide compliance with state and federal laws within nonpublic schools, including GHS;

c.     Administering its licensing program of certifying, monitoring, investigating and taking corrective action against nonpublic schools which provide educational services to children with disabilities in a discriminatory, cursory, and indifferent manner;

d.     Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, investigation, and legal compliance of nonpublic schools in light of repeated notifications from the U.S. Department of Education and other sources regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes; and

e.     Completely abandoning its duty to monitor and supervise the use of emergency behavioral interventions in nonpublic schools under Cal. Ed. Code § 56521(b).

266.     The CDE knew and was deliberately indifferent to the fact that children with disabilities were being restrained at far greater rates than children without disabilities and that the rates of restraint use were significantly higher at "nonpublic" schools such as GHS than at public schools.  It took no action to strengthen its oversight and monitoring of nonpublic schools or laws restricting the use of physical interventions. The CDE knew and was deliberately indifferent to allegations that children with disabilities being improperly restrained at GHS and failed to conduct an emergency

- 45 -

**Exhibit D-3**

site visit when they had a substantial reason to believe that there was an immediate danger to the health, safety and welfare of students at GHS.  The CDE did not conduct a real investigation or visit the school until after GHS staff killed a student by restraining him.

267.     Defendants' actions and failures to act were a substantial factor in causing physical and emotional injuries to the Plaintiff Students as outlined above.

268.     Plaintiffs seek compensatory damages and attorneys' fees and costs.

**FIFTEENTH CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

269.     Plaintiffs incorporate by reference all preceding paragraphs

270.     Section 504 prohibits entities that receive federal financial assistance from denying persons with disabilities the benefits of their programs, services or activities or otherwise discriminate against them on the basis of their disabilities.  29 U.S.C. § 794; 34 C.F.R. pt. 104.

271.     Thomas V.M. and Jordan V.M. were at all relevant times students with disabilities who had been placed at GHS by the LEAs in which they resided via their IEPs.

272.     The CDE and the LEA Defendants receive federal financial assistance to provide special education services to children with disabilities in California.  20 U.S.C. §§ 1411-1413.

273.     Defendant GHS was a "nonpublic school" that contracted with the LEA Defendants to provide educational services to students with disabilities, including the Plaintiff Students, on behalf of the LEA Defendants in exchange for the state and federal financial assistance provided to the LEA Defendants to perform those services. Cal. Ed. Code § 56365.  Section 504 therefore applies to GHS.  34 C.F.R. § 104.2 ("This part applies to each recipient of Federal financial assistance from the Department of Education and to the program or activity that receives such assistance.").

- 46 -

**Exhibit D-3**

274.     Section 504 prohibits recipients of federal financial assistance from directly or through contractual, licensing, or other arrangements, on the basis of disability:

    a.    Denying a qualified person with a disability the opportunity to participate in or benefit from the aid, benefit or service;

    b.    Affording a qualified person with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

    c.    Providing a qualified person with a disability with an aid, benefit, or service that is not as effective as that provided to others;

    d.    Aiding or perpetuating discrimination against a qualified person with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to the beneficiaries of the recipients' program or activity;

    e.    Otherwise limiting a qualified person with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

    C.F.R. 104.4(b)(1)(i)(ii)(iii)(v) and (vii).

275.     Section 504 prohibits recipients of federal financial assistance from directly or through contractual or other arrangements, utilizing criteria or methods of administration:

    a.    That have the effect of subjecting persons with disabilities to discrimination on the basis of their disabilities;

    b.    that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to persons with disabilities; or

    c.    That perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

    C.F.R. § 104.4(b)(4).

276.   GHS engaged in deliberate discrimination against the Plaintiff Students on the basis of their disabilities.  GHS and its staff subjected the Plaintiff Students to illegal, excessive and harmful restraints in response to known, disability-related behaviors that did not constitute a clear and present danger to the safety of the students or others and that could have been addressed by less restrictive measures, including

**Exhibit D-3**

those outlined in the students' BIPs. GHS discriminated against the Plaintiff Students by:

      a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

d.    Administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

277.    The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities by:

a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

d.    Using administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

278.    The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans.

**Exhibit D-3**

279.     Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement.  The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement.  Nor did they acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students.  As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

280.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.  However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

281.     The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

282.     Defendant CDE knew or should have known that:  students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of

- 49 -

**Exhibit D-3**

students with disabilities in response to behavior that was known to be a manifestation of the students' disabilities; that the particular disabilities of the children against whom these restraints were used made the restraints even more dangerous; and that the restraints were not only ineffective and contrary to the students' BIPs, but more often than not aggravated the students' behavioral problems.

283.     Defendant CDE discriminated against Plaintiffs on the basis of their disabilities by:

a.     Abdicating its monitoring, investigation and compliance duties with regard to nonpublic schools, including GHS;

b.     Failing to take even minimal measures to ensure statewide compliance with state and federal laws within nonpublic schools, including GHS;

c.     Administering its licensing program of certifying, monitoring, investigating and taking corrective action against nonpublic schools which provide educational services to children with disabilities in a discriminatory, cursory, and indifferent manner;

d.     Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, investigation, and compliance of nonpublic schools in light of repeated notifications from the U.S. Department of Education regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes; and

e.     Completely abandoning its duty to monitor and supervise the use of emergency behavioral interventions in nonpublic schools under Cal. Ed. Code § 56521(b).

284.     The CDE knew and was deliberately indifferent to the fact that children with disabilities were being restrained at far greater rates than children without disabilities and that the rates of restraint use were significantly higher at "nonpublic" schools such as GHS than at public schools.  It took no action to strengthen its oversight and monitoring of nonpublic schools or laws restricting the use of physical interventions. The CDE knew and was deliberately indifferent to allegations that children with disabilities were being improperly restrained at GHS and failed to conduct an emergency site visit when they had a substantial reason to believe that there was an immediate danger to the health, safety and welfare of students at GHS.  The CDE

**Exhibit D-3**

did not conduct a real investigation or visit the school until after GHS staff killed a student by restraining him.

285.    Defendants actions and failures to act were a substantial factor in causing physical and emotional injuries to the Plaintiff Students as outlined above.

286.    Plaintiffs seek compensatory damages and attorneys' fees and costs.

### SIXTEENTH CLAIM FOR RELIEF

**42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution**

<u>MARQUES</u>, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN, CHAMBERS, BRUCE, ZOMBURY, ANDERSON,  CORY QUINCY, BYRNA QUINCY, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Thomas V.M.</u> against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against defendants GHS, Susan Jane BATTLE, CHRISTENSON, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

DOES 1-100.

287.    Plaintiffs incorporate by reference all preceding paragraphs.

288.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, used excessive force against Marques, Thomas, V.M. and Jordan V.M. when they restrained them in response to predictable, disability-related behavior that did not constitute a clear and present danger to Marques, Thomas, V.M. and Jordan V.M. 's or others' safety and that could have been addressed by less restrictive measures, including those outlined in their BIPs.  Defendants' use of force was objectively unreasonable in light of

**Exhibit D-3**

Marques, Thomas, V.M. and Jordan V.M. 's behavior and California law restricting the use of physical interventions. Defendants' use of restraints was also unreasonable in their frequency, duration, pressure and restrictions applied, lack of monitoring of Marques, Thomas, V.M. and Jordan V.M.  health condition, and the pain and injuries caused to Marques, Thomas, V.M. and Jordan V.M.

289.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, violated the Plaintiff Students' Fourth Amendment rights when they instituted and maintained a policy and practice at GHS of restraining students in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

290.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, were acting under color of state law when they instituted and practiced a policy of restraining students, including the Plaintiff Students, in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

291.    Defendants GHS and POINT QUEST were performing a public function that the LEA Defendants were legally required to provide and for which they were receiving state and federal funds-that of providing free educational services, including special education, to the Plaintiff Students.  If an LEA does not have an

**Exhibit D-3**

appropriate special education placement within its district, it may place a student in a nonpublic school.  Cal. Ed. Code § 56365.  In turn, the student "will be deemed to be enrolled in public schools" for the purpose of state and federal funding.  Cal. Ed. Code § 56365(b).   However, the LEAs are to monitor and supervise the placement and transition the student back to the public schools if the NPS is no longer appropriate to meet the student's needs.  Cal. Ed. Code § 56366(a)(2)(B).  The LEA continues to be responsible for the child's placement and special education needs and must participate in their IEP meetings. 20 U.S.C. § 1414(d)(1)(B)(iv).

292.    The Plaintiff Students were placed and kept at GHS by the LEA Defendants pursuant to their IEPs.  GHS had a Master Contract with each of the Defendant LEAs to provide education services to the Plaintiff Students.

293.    GHS and POINT QUEST sent BERs to the LEA Defendants demonstrating the excessive and illegal nature of the restraints, but this information was filed away and ignored.  The IEP teams, in which the LEA Defendants participated, did not review and modify students' BIPs when it was clear they were ineffective or not being followed.  Despite knowing that their students were being illegally restrained by GHS staff, the LEA Defendants left the Plaintiff Students at the school and did not take any action to stop the restraints.  Because they were unable and unwilling to provide the educational services themselves, the LEA Defendants ignored and thereby allowed the violations of Plaintiffs' constitutional rights, knowingly accepting the benefits of GHS's illegal behavior.

294.    At all times relevant to the complaint, the individual GHS and POINT QUEST Defendants were acting in the performance of their official duties to provide educational services, including special education services, to the Plaintiff Students pursuant to state and federal law and GHS's contract with the LEA Defendants.

295.    The GHS and POINT QUEST Defendants knowingly deprived the Plaintiff Students of their Fourth Amendment rights to be free from excessive force.

296.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE,

**Exhibit D-3**

HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, , deprived Plaintiffs Thomas and Jordan V.P. of their Fourth Amendment rights to be free from excessive force. As administrators of the PLACER COUNTY SELPA Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON administrators for ROCKLIN UNIFIED SCHOOLS, were responsible for overseeing the Plan's implementation, which included: 1) coordinating with school districts to ensure that all special education students in the Plan area have equal access to the full continuum of programs and services;   2) working with the school districts to identify unmet student needs and resources to meet those needs; 3) receiving, distributing, and monitoring the use of special education funding; 4) entering into Master Contracts with nonpublic schools, reviewing and monitoring those contracts, issuing and monitoring the assurances for those contracts, and maintaining updated contracts; and 5) submitting for approval to the Superintendents' Council policies and procedures governing regional and District-operated programs, including nonpublic schools. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON adminstrators for ROCKLIN UNIFIED SCHOOLS had a duty to monitor GHS as a nonpublic school with which it had a Master Contract to provide services for students in the Plan area.  They also had a duty to monitor the use of special education funding and ensure that it was not going to programs that used behavioral interventions that violated state or federal law.  Cal. Ed. Code §§ 56521.2, 56523(d).

297.     GHS, MEYER, KELLER, RAMSEY, CHRISTENSEN, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE,  and DOE defendants deprived Plaintiff Marques of his Fourth Amendment rights to be free from excessive force.

**Exhibit D-3**

298.    Despite widespread knowledge within the educational community about the disproportionate use of excessive, illegal and dangerous restraints on children with disabilities and in nonpublic schools, as administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to the Fourth Amendment rights of students in the YOLO SELPA plan area to be free from excessive force. They maintained a policy and practice within YCOE and YOLO SELPA of ignoring their duties to monitor GHS and ensure that it was complying with state and federal laws prohibiting discrimination and restricting the use of physical behavior interventions.

299.    From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements. Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON failed to supervise and train staff to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOL students to ensure that they were not being subjected to excessive force.

300.    At all times relevant to the complaint, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties as administrators for public entities, PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOLS.

**Exhibit D-3**

301.    Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON 's actions and failures to act were a substantial factor in causing Thomas and Jordan V.M.'s physical and emotional pain and suffering.

302.    Defendants and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS

303.    Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS deprived Jordan V.M. of their Fourth Amendment rights to be free from excessive force.   RUSD and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS wer responsible for the coordination of special education services and programs within the RUSD and the implementation of the PLACER COUNTY SELPA plan.  This included assuring that the District's programs-including any nonpublic school in which the District has placed a special education student-did not discriminate against children on the basis of disability and followed state and federal education laws, including those prohibiting the use of excessive force against students.  DAVIDSON was the direct supervisor of Defendant ROYER , the RUSD Program Specialist assigned to Jordan V.M..   ROYER was responsible for developing Jordan's IEP, ensuring that Jordan's educational placement at POINT QUEST was appropriate, monitoring the delivery of services to Jordan, and ensuring that the program in which Jordan had been placed complied with state and federal laws, including those related to the use of behavioral interventions and use of physical force.  ROYER was also responsible for coordinating and monitoring the implementation of educational programs and services at nonpublic schools at which RUSD students had been placed.

304.    Throughout Jordan's's placement at POINT QUEST, ROYER and DAVIDSON received information and documents demonstrating that POINT QUEST was subjecting Jordan to excessive force.  Specifically, POINT QUEST staff was placing Jordan in illegal restraints POINT QUEST in response to predictable, disability-related behaviors which did not pose a clear and present

**Exhibit D-3**

danger to the safety of the student or others and could have been addressed by less restrictive interventions.  This information included, but was not limited to, Behavior Emergency Reports, information provided by POINT QUEST staff at Jordan's IEP meetings, and documents accompanying Jordan's IEP meetings.

305.    ROYER AND DAVIDSON were deliberately indifferent to the knowledge that POINT QUEST  was subjecting Jordan to excessive force.  Defendants did nothing to investigate POINT QUEST to stop the restraints, or remove to a safe, approved placement.

306.    From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates. As administrators for ROCKLIN UNIFIED SCHOOLS, Kristain ROYER, Beth DAVIDSON, deprived Jordan V.M. was deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements.  DAVIDSON failed to supervise and train the program specialists working under her to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of RUSD students to ensure that they were not being subjected to excessive force.

307.    At all times relevant to the complaint, Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties for public entity RUSD.

308.    Kristain ROYER, Beth DAVIDSON's actions and failures to act were a substantial factor in causing Jordan's physical and emotional pain and suffering.

309.  GHS, MEYER, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS, BRUCE,  and DOE defendants' actions and failures to act were a substantial factor in causing Marques' physical and emotional pain and suffering.

- 57 -

**Exhibit D-3**

**DAMAGES**

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

**FIRST CAUSE OF ACTION**
**INTERFERENCE WITH THE EXERCISE OF**
**CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51et seq**

1.      General damages for in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10      Costs of this action;

11.      Such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**INTERFERENCE WITH PLAINTIFFS' EXERCISE OF CIVIL RIGHTS IN VIOLATION**
**OF CALIFORNIA CIVIL CODE SECTION 51.7**

1.      General damages for in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

**Exhibit D-3**

6.   Pain and suffering;

7.   Statutory damages;

8.   Attorneys' fees;

9.   Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**INTERFERENCE WITH PLAINTIFFS' EXERCISE OF**
**CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1**

1.   General damages for in an amount to be determined according to  proof at trial;

2.   Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.   Past and future lost earnings in an amount to be determined by proof at trial;

4.   Impairment of earning capacity for in an amount to be determined by proof at trial;

5.   General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.   Statutory damages;

8.   Attorneys' fees;

9.   Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA EDUCATION CODE**
**§§ 200, 201, 220 and 260, et seq.**

1.   General damages for in an amount to be determined according to  proof at trial;

2.   Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.   Past and future lost earnings in an amount to be determined by proof at trial;

**Exhibit D-3**

4.         Impairment of earning capacity for in an amount to be determined by proof at trial;

5.         General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.         Statutory damages;

8.         Attorneys' fees;

9.         Punitive and exemplary damages against all non-public entity Defendants

10.        Costs of this action;

11.        Such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**ASSAULT AND BATTERY CONSTITUTING TORTURE**

1.         General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.         Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.         Past and future lost earnings in an amount to be determined by proof at trial;

4.         Impairment of earning capacity for in an amount to be determined by proof at trial;

5.         General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.         Statutory damages;

8.         Attorneys' fees;

9.         Punitive and exemplary damages against all non-public entity Defendants

10.        Costs of this action;

11.        Such other and further relief as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**ASSAULT AND BATTERY**

1.         General damages for Pain and suffering in an amount to be determined according to  proof at trial;

- 60 -

**Exhibit D-3**

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**FALSE IMPRISONMENT, CONSPIRACY TO COMMIT FALSE IMPRISONMENT**

**Exhibit D-3**

1.     General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.     Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.     Past and future lost earnings in an amount to be determined by proof at trial;

4.     Impairment of earning capacity for in an amount to be determined by proof at trial;

5.     General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.     Statutory damages;

8.     Attorneys' fees;

8.     Punitive and exemplary damages against all non-public entity Defendants

9.     Costs of this action;

10.    Such other and further relief as the Court deems just and proper.

**NINTH CAUSE OF ACTION**
**NEGLIGENCE**

1.     General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.     Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.     Past and future lost earnings in an amount to be determined by proof at trial;

4.     Impairment of earning capacity for in an amount to be determined by proof at trial;

5.     General damages for severe emotional and psychological distress;

6.   Pain and suffering;

7.     Statutory damages;

8.     Attorneys' fees;

9.     Costs of this action;

10.    Such other and further relief as the Court deems just and proper.

**Exhibit D-3**

## TENTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION

General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
## NEGLIGENCE PER SE

1.      General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

**Exhibit D-3**

**TWELFTH CAUSE OF ACTION**
**Tortious Breach of the Covenant**
**Of Good Faith and Fair Dealing**

1. General damages for Pain and suffering in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

**THIRTEENTH CAUSE OF ACTION**
**FRAUD**

1. General damages for Pain and suffering in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

**Exhibit D-3**

## FOURTEENTH CAUSE OF ACTION
### Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. Sec's 12101 et seq.

1. Compensatory Damages

2. Attorneys' fees and costs

## FIFTEENTH CLAIM FOR RELIEF
### Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

1.Compensatory Damages

2. Attorneys' fees and costs

## SIXTEENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution

1.Compensatory Damages

2. Punitive Damages

c. Attorneys' fees and costs

Dated: October 18, 2021

Seth L. Goldstein,
**Attorney at Law**

**Exhibit D-3**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Seth L. Goldstein SBN 176882<br>Law Offices of Seth L. Goldstein<br><br>2100 Garden Road, Suite H-8<br>Monterey, Ca. 93940<br>TELEPHONE NO.: 831 372 9511   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
  STREET ADDRESS: 1354 Johnson Blvd.
  MAILING ADDRESS:
  CITY AND ZIP CODE: South Lake Tahoe, Ca.
  BRANCH NAME: Civil

PLAINTIFF/PETITIONER: Jordan V.M., et al

DEFENDANT/RESPONDENT: Guiding Hands School, et al

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Len Garfinkel

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: email: 12-30-21

Seth L. Goldstein
_____
(TYPE OR PRINT NAME)

▶  *Seth L. Goldstein*
_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [x] A copy of the summons and of the complaint.
2. [x] Other: *(specify):* Notice of CMC

*(To be completed by recipient):*
Date this form is signed: January 14, 2022           *Len Garfinkel*

Len Garfinkel, Assistant General Counsel ▶     *Assistant General Counsel*
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,         (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)             ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

California Department of Education     *California Department of Education*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Legal<br>Solutions<br>Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |
|---|---|---|---|

Page 1 of 1

**Exhibit E**

## SETH L. GOLDSTEIN

Attorney and Counselor At Law

2100 Garden Road, Suite H-8
Monterey, California 93940
Ph. (831) 372 9511
Fax (831) 372 9611

August 28, 2020

El Dorado Superior Court Clerk
495 Main Street
Placerville, CA 95667
Attn: Randi

Re:     Rejected Filing August 28, 2020
        Marquez, et al v. Guiding Hands School, et al

Dear Randi,

        Per our discussion filed herewith is the complaint, summons, civil cover sheet and fax
cover sheet we submitted yesterday at 3:45 pm and which was rejected as not properly formatted
as well as not having the summons, civil and fax cover sheets.

        All documents were filed in one file, which may be the problem.

        Also, the formatting had been lost in transferring from our Word program to our
WordPerfect program leaving the complaint single spaced.

        Yesterday was the end of the Statute of Limitations and the complaint was filed to
preserve that statute.

        Please file the document as it was submitted at the proper time with yesterday's date.

        If there are any questions, please call my cell number: 707 815 2231 as I am not in the
office today and it is closed.

        Thank you.

        *Seth L. Goldstein*\*
        Seth L. Goldstein

\*My scanner is not functioning at home,
please accept my electronic signature.

per Judge Sullivan
file as of 8-27-2020
SHowe

**Exhibit F**

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:** Guiding Hands School,
*(AVISO AL DEMANDADO):* Inc. (hereinafter "GHS", Jennifer
GALAS, Staranne MEYERS, Cindy KELLER, David CHAMBERS,
STATE OF CALIFORNIA, DEPARTMENT OF EDUCATION, PLACER
COUNTY SELPA, Cara BRUCE, Ashley ROB, Dolores ZUMBURY,
Vince ANDERSON, POINT QUEST, Inc., ROCKLIN UNIFIED
SCHOOL DISTRICT, Noel COLLIER, Patricia DOE, David
DOE, Noelle DOE, and Amanda DOE

**YOU ARE BEING SUED BY PLAINTIFF:** Louie Andreas Marques,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* Gloria V.M., Thomas
V.M., and Jordan V.M.

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| EL DORADO CO. SUPERIOR CT. |
| FILED AUG 27 2020 |
| BY _____ S Hawi _____ |
| Deputy |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Superior Court, County of El Dorado<br>3321 Cameron Park Drive<br><br>Cameron Park, CA 95682 | PC 20 20 0 4 29 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

831-372-9511    831-372-9611

Seth L. Goldstein
Law Offices of Seth L. Goldstein
Monterey, CA 93940

| DATE: AUG 2 7 2020 *(Fecha)* | Clerk, by _____ S Hawi _____ *(Secretaria)* | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Assigned to
Judge Dylan Sullivan
For all purposes

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Legal Solutions Plus | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|

Page 1 of 1

**Exhibit F**

N cover Fax Filing



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Seth L. Goldstein<br>Seth L. Goldstein<br>Law Offices of Seth L. Goldstein<br>2100 Garden Rd., Ste. H-8<br>Monterey, CA 93940 | |

TELEPHONE NO.: 831-372-9511   FAX NO.: 831-372-9611

ATTORNEY FOR *(Name)*: Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado

STREET ADDRESS: 3321 Cameron Park Drive

MAILING ADDRESS:

CITY AND ZIP CODE: Cameron Park, CA 95682

BRANCH NAME: Civil

**EL DORADO CO. SUPERIOR CT.**

**FILED   AUG 27 2020**

BY   _S Huw_
                    Deputy

CASE NAME:   Marques, et al. vs. Guiding Hands School, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:   PC  20200429 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | | JUDGE:   Assigned to<br>DEPT:   Judge Dylan Sullivan<br>For all purposes |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [X] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [X] Other PI/PD/WD (23) | | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [X] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties   d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel   e. [X] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action *(specify)*: x14

5. This case [ ] is   [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 27, 2020

Seth L. Goldstein
_____
(TYPE OR PRINT NAME)            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
& Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**Exhibit E**

CMS



1   Seth L. Goldstein, S.B.N. 176882
2   2100 Garden Road, Suite H-8
    Monterey, California, 93940
3   Telephone  (831) 372 9511
    Fax        (831) 372 9611
4
5   Lead-Counsel for Plaintiffs

EL DORADO CO. SUPERIOR CT.

FILED   AUG 27 2020

BY _____ S Huss _____
              Deputy

6

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                    COUNTY OF EL DORADO

9   In the Matter of:

10  _____
                                              )   Case No.:
11  Louie Andreas MARQUES, Gloria V.M.,       )   P C   2 0 2 0 0 4 2 9
    Thomas V.M., and Jordan V.M.,             )
12                                            )   COMPLAINT FOR DAMAGES
                        Plaintiffs            )
13                                            )
    vs                                        )   JURY TRIAL DEMANDED
14                                            )
    GUIDING HANDS SCHOOL, Inc.(hereinafter    )
15  "GHS"),Jennifer GALAS,  Staranne          )
    MEYERS, Cindy KELLER, David               )
16  CHAMBERS, STATE OF CALIFORNIA,            )
17  DEPARTMENT OF EDUCATION, PLACER           )
    COUNTY SELPA, Cara BRUCE, Ashley ROB,     )
18  Dolores ZUMBURY, Vince ANDERSON,          )        Assigned to
    POINT QUEST, Inc., ROCKLIN UNIFIED        )     Judge Dylan Sullivan
19  SCHOOL DISTRICT, Noel COLLIER,            )       For all purposes
20  Patricia DOE, David DOE, Amanda DOE, and  )
    Noelle DOE,                               )
21                                            )
                        Defendants.           )
22  _____  )

23                        INTRODUCTION

24      Plaintiffs MARQUES, Thomas and Jordan V.M. attended Guiding Hands School, Inc.

25  (GHS), a non-public school (NPS) as defined by the education code and certified by the

26  California Department of Education (CDE) as such addressing the educational

27  requirements children with disabilities. Each of the Plaintiffs were placed at GHS by

28  their respective school districts pursuant to an Individual Education Plan (IEP) because

CMS
Exhibit F

the school district determined it was unable to provide a Free Appropriate Public Education.

After GHS was closed and sold to Defendant POINT QUEST INC. (POINT QUEST), Thomas and Jordan V.M. attended Defendant POINT QUEST, a non-public school (NPS) as defined by the education code and certified by the California Department of Education (CDE) as such addressing the educational requirements children with disabilities.

1.      Guiding Hands School staff engaged in a pattern and practice of illegal use of restraints for periods of time that were longer than necessary and with excessive force as a means of punishing children for predictable disability-related behaviors outlined in their individual Behavioral Intervention Plans (BIP).

2.      Staff members, rather than following the prescribed BIP, would place children in hurtful positions, manipulating and restraining the child's body movement in such a way that to move would cause lasting pain.

3.      Plaintiff MARQUEZ was a disabled student, placed on March 30, 2006, at GHS because of his emotional disability. He left GHS on March 19, 2008, after an incident that required medical attention as a result of actions of school staff placing him in restraint.

4.      Plaintiff Thomas V.M. was a disabled student, placed _____, at GHS because of his diagnosis of Autism. Plaintiff Jordan V.M. was a disabled student, placed _____, at GHS because of his diagnosis of Autism. All plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their educational experience and abilities. Because of the disruption that affected other students, they were frequently placed in such restraints, which included but was not limited to, the imposition of restraints that constituted physical child abuse, battery, and

- 2 -

**Exhibit F**

1  assault.

2  5.      Referring to these restraints as though they were normal and accepted ways of

3
4  disciplining plaintiffs, Defendant teachers and assisting staff, as individually identified below,

5  preyed on plaintiffs because of their disability related conduct. These defendants assaulted and

6  battered plaintiffs repeatedly rather than following the BIPs. GHS administrators tasked

7  unqualified and inadequately trained staff with supervising plaintiff students, who often failed to

8  document and report incidents of abuse, and failed to take reasonable steps to prevent further

9  abuse.

10
11  6.      Plaintiffs, like other students who were also subjected to such conduct, would attend

12  class and when a student acted consistently with their predictable behaviors stated in their

13  individual BIP and IEP (and the reason(s) why they were placed at GHS) or failed to follow the

14  directions of the GHS staff as individually described below, they would be subjected to painful

15  restraints in full and open view of fellow students. Each plaintiff had specific conduct that was

16
17  identified in their BIP, for which, each plaintiff had a set of less restrictive measures to be taken

18  before a "hands on" physical intervention such as painful restraints would be exercised.

19  7.      Plaintiffs witnessed other students treated in the same way in their respective classes.

20  The observation of such torturous conduct to other students and themselves caused Plaintiffs

21  who were in their immediate presence to experience fear and anxiety such that they were

22  terrorized in anticipation that they too might be hurt in the same way.

23
24  8.      As to MARQUES, the documented abuse occurred from as early as December 18, 2006,

25  when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was

26  removed. For Thomas and Jordan V.M., it began when they first began to attend GHS in August

27  of 2018, and lasted until they were removed in _____ of 2019.

28

**Exhibit F**

9.      Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on October 28, 2019.

10.     No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary. Defendants GHS and POINT QUEST, and their individual staff members as particularly described below carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

11.     The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent the abuse. Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

12.     Plaintiff MARQUES is now an adult and no longer in school. Plaintiffs Thomas and Jordan V.M. are in another school in Washington State. The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant. Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies

**Exhibit F**

available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted. In addition, Plaintiff MARQUES is an adult and outside of the educational system. The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

13.     Due to both the nature of Plaintiffs Thomas and Jordan V.M.'s Autism disabilities, which precluded them from reporting all of the abusive acts at the time of their events, as well the purposeful concealment of the acts by the defendants as further described below, Plaintiffs are at this point unable to describe all of the abusive acts directed at them and the exact length of time the abuse was endured. From records obtained by Plaintiffs, there were restraint incidents involving  Plaintiffs expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

**PARTIES**

14.     At all relevant times, Plaintiff Luis MARQUES (legal name Luis Andreas MARQUES, hereinafter "MARQUES"), who lives in _____ was, at all relevant times herein, a minor child diagnosed as then having Oppositional Defiant Disorder and ADHD. He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

15.     At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

16.     The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

17.     Plaintiffs Thomas and Jordan V.M. were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in

**Exhibit F**

1  Sections 12926 and 12926.1 of the Government Code.

2  18.     Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to
3
   participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears
4
5  as predictable behaviors.

6  19.     His less restrictive corrective measures are identified as monitoring for safety, one step
7  directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and
8  reapplication of original direction and follow through with original instruction.

9  20.     Jordan V.M. had an IEP that identified non0complince, physical aggression (kicking,
10
   hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate
11
12 gestures and other behavior described as eating crayons and spitting water as predictable
13 behaviors.

14 21.     His less restrictive corrective measures are identified as monitoring for safety, one step
15 directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and
16
17 reapplication of original direction and follow through with original instruction.

18 22.     Gloria V.M. is the adoptive mother of Thomas and Jordan V.M. and is their Guardian
19 Ad Litem.

20                                      **DEFENDANTS**
21 23.     Guiding Hands School Inc., 4900 Windplay Dr., El Dorado Hills, California, and POINT
22 QUEST Inc. (located on the same premises having allegedly bought out GHS) are schools
23 incorporated under the laws of the State of California as for-profit corporations and approved by
24 the State of California as institutions providing for children with mental disabilities.

25 24.     Presently, and at all times relevant to this Complaint, GHS was and is a business
26
27 establishment within the meaning of the Unruh Civil Rights Act. Defendant GHS was an
28 independent contractor with Elk Grove Unified Schools, Dry Creek Joint Unified Schools,

**Exhibit F**

1  pursuant to a written contract to perform educational services for Plaintiffs MARQUES,

2  Thomas and Jordan V.M.

3  25.    Presently, and at all times relevant to this Complaint, POINT QUEST is a business

4

5  establishment within the meaning of the Unruh Civil Rights Act. Defendant POINT QUEST is

6  an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to

7  a written contract to perform educational services for Plaintiffs Thomas and Jordan V.M.

8  26.    Presently, and at all times relevant to this Complaint, Defendant POINT QUEST is and a

9
   business establishment within the meaning of the Unruh Civil Rights Act. Defendant POINT
10
11 QUEST is an independent contractor pursuant to a written contract to perform educational

12 services for Plaintiffs Thomas and Jordan V.M.

13 27.    Presently, and at all times relevant to this Complaint, Defendants ROCKLIN UNIFIED

14 SCHOOLS and PLACER COUNTY SELPA are business establishments within the meaning of

15 the Unruh Civil Rights Act.

16
17 28.    Presently, and at all times relevant to this Complaint, the California Department of

18 Education (CDE) a department of the State of California responsible for inspecting and

19 certifying Non-Public Schools such as GHS and POINT QUEST. It is a business establishment

20 within the meaning of the Unruh Civil Rights Act.

21 29.    Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing against

22
   ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA for injuries
23
24 incurred on or after March _____, 2019 and claims herein stated against said public entities.

25     **GHS Employees:**

26 30.   At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers

27 (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller

28

**Exhibit F**

1  (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter

2  "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and

3
4  administrators of defendant GHS, all of whom have authority and control over GHS's programs,

5  and facilities, including policies, practices, procedures, programs, activities, services, training,

6  staff; and all of whom have direct responsibility for ensuring the safety and well-being of their

7  students, and for ensuring compliance with state and federal laws. MEYERS, KELLER,

8  RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and

9  unlawfully assault and batter Plaintiff MARQUEZ.

10
11  31.    At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants

12  MEYERS was the principal and member of the board of GHS, KELLER was the executive

13  director of GHS, RAMSEY was an administrator for GHS, CHRISTENSEN was an

14  administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were

15  officers, directors, and administrators of defendant GHS, all of whom have authority and control

16
17  over GHS's programs, and facilities, including policies, practices, procedures, programs,

18  activities, services, training, staff; and all of whom have direct responsibility for ensuring the

19  safety and well-being of their students, and for ensuring compliance with state and federal laws.

20  MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN and unknown DOE defendants

21  allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas

22  and Jordan V.N.

23
24  32.    At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY

25  (hereinafter "ZOMURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB

26  (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter

27  "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter

28

**Exhibit F**

1  "CHAMBERS") and DOE defendants were employed as teachers, and aides at GHS, who

2  intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal

3  punishment upon him. They had authority and control of the classroom, including policies,

4

5  practices, procedures, facilities, and activities within the classroom. They are sued in their

6  individual capacity and in their capacity as employees of GHS.

7  33.    The names and capacities, whether individual, corporate, otherwise, sued herein as DOES

8  1-10, inclusive, are presently unknown, and Plaintiff will amend the Complaint to insert them

9  when ascertained.

10

11  34.    Plaintiff sues all Defendants in El Dorado County because all of the tortious acts occurred

12  at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

13  35.    Plaintiff is informed and believes that each of the Defendants is the agent, ostensible

14  agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate,

15  related entity, partner, and/or associate, or such similar capacity, of each of the other

16

17  Defendants, and at all times acting and performing, or failing to act or perform, within the

18  course and scope of each similar aforementioned capacities, and with the authorization, consent,

19  permission or ratification of each of the other Defendants, and is personally responsible in some

20  manner for the acts and omissions of the other Defendants in proximately causing the violations

21  and damages complained of herein, and have participated, directed, and have ostensibly and/or

22  directly approved or ratified each of the acts or omissions of each of the other Defendants, as

23

24  herein described.

25  36.    Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER

26  COUNTY SELPA have failed to adequately supervise their employees that resulted in the

27  foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that staff who

28

- 9 -

**Exhibit F**

1  came into contact with Plaintiffs would provide an environment free of abuse and neglect.

2  37.    California law, including Cal Const. Art. I § 28, has long imposed on school authorities a

3
4  duty to supervise at all times the conduct of children on school grounds and to enforce those

5  rules and regulations necessary for their protection. Defendants also had a duty to use reasonable

6  measures to protect students from foreseeable injury at the hands of third parties acting

7  intentionally or negligently.

8  38.    Defendants have violated their statutory duties to Plaintiff, including their supervisory

9  duties created under California Education Code sections 44807 and 44808.

10
11  39.    California Penal Code section 11166 which required them to report any knowledge of a

12  child whom the mandated reporter knows or reasonably suspects has been the victim of child

13  abuse or neglect to the agency immediately or as soon as is practically possible by telephone and

14  the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up

15  report thereof within 36 hours of receiving the information concerning the incident.

16
17  40.    Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan V.M.,

18  including multiple violations of California Education Code sections 56521.1 and 56521.2 which

19  in pertinent part prohibits the use of any interventions that:

20         1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an
           amount of force that exceeds that which is reasonable and necessary under the
21         circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or
           that can be expected to cause excessive emotional trauma.
22

23  41.    Defendants have violated their statutory duty under California Penal Code section 11165.4

24  which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel

25  or inhuman corporal punishment or injury resulting in a traumatic condition."

26
27  42.    Defendant GHS violated its statutory duty under California Education Code section 260 by

28  failing to enact an adequate formal or informal policy to ensure that GHS provided a learning

**Exhibit F**

1  environment free from discrimination based on the characteristics provided in California

2  Education Code section 220, specifically disability.

3
                                    **OPERATIVE FACTS**
4

5  43.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth

6  herein.

7  AS TO PLAINTIFF MARQUES

8  44.   Over a one-and-one-half year period as specifically set forth below in each cause of action,

9  Defendants ZOMURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and

10
   DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES by grabbing him, pushing
11

12  or otherwise forcing him to the floor and, in painful positions, pinning all four appendages for

13  various periods of time, immobilizing him, including as punitive measures. All were either for

14  an unnecessarily prolonged period of time or had failed to utilize the less restrictive measures

15  set forth in his BIP for predictable behaviors related to his disability.

16
   45.   MARQUES was a student at GHS from 2006 to 2008.  He was referred to GHS by Elk
17

18  Grove School District employees.

19  46.   MARQUES had both an Individual Education Plan (EIP) and a Behavioral Intervention

20  Plan (BIP) at all relevant times herein.

21  47.   Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB,

22  BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants failed to file Behavioral

23
   Emergency Reports or document injuries as required by law, so all of the dates of assaults all are
24

25  unknown to MARQUES at the present time.

26  48.   Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16, 2007, April

27  23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March 19, 2008, set forth

28

- 11 -

**Exhibit F**

1 | in greater detail below.

2 | 49.    On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and Ashley
3
4 | Rob, put MARQUES in a restraint for 12 minutes because he failed to stand appropriately and
5 | when escorted from the line he was standing in, kicked a student and Bruce. He was restrained
6 | "per CPI". Both Dolores ZOMURY and David Chapman participated in the restraint.

7 | 50.    On December 18, 2006, at 1:45 PM Ashley Rob and Kera Bruce instituted an eight minute
8 | restraint after MARQUES had been found to have a toy belonging to another student. What he
9
10 | was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a
11 | basket restraint.

12 | 51.    On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by
13 | ZOMURY, after he refused to sit down and began throwing pencils and calling children names.

14 | 52.    On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMURY for
15 | five minutes after he was told to put a pointer down and had slapped it on the desk of another
16
17 | student. When he was directed to sit down he ran around the room and was restrained.

18 | 53.    On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by
19 | Dolores ZOMURY and subsequently by a teacher's aide known only as "Laure", when
20 | MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the teacher
21 | and was taken to the "corner".

22 | 54.    On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by ZOMURY
23
24 | after another student had pushed him, rubbing quotes not" on his jacket and in response he
25 | pushed that student down.

26 | 55.    On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began swearing
27 | and started to run towards another student after he disregarded a request by the instructor to put
28

**Exhibit F**

1    his head down on his desk. The staff involved were ZOMURY and Chambers.

2    56.    On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor Vince

3
     Anderson, because he failed to follow directions and began yelling in the presence of his
4
5    mother.

6    57.    On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants restrained

7    MARQUES, forcing him to the floor and containing him in a "basket hold."

8    58.    In this restraint, MARQUES was pushed to the ground and placed in a position for an
9
     extended period of time, while his arms were pulled behind his back. GHS staff sat at his back
10
11   while he was in this position, increasing his pain and making it difficult for him to move.

12   59.    This incident arose when another child assaulted MARQUES with a rock and MARQUES

13   defended himself.

14   60.    When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises to his
15
     chest, burns to his elbows, and severe soft tissue damage to his back and buttocks as a result of
16
17   these restraints.

18   61.    MARQUES subsequently suffered panic attacks, night-terrors, startles, depression and

19   self-loathing as a result of these restraints.

20   62.    MARQUES was abused on additional occasions while attending GHS. MARQUES has

21   attempted to get documentation from GHS as to the exact dates of the abuse, but has been
22
     unable to obtain any response. MARQUES will seek leave to allege these dates according to
23
24   proof when this information becomes available through the discovery process.

25   63.    At all relevant times, MARQUES.'s behaviors were known and predictable and had

26   previously been addressed in his Behavioral Intervention Plan.

27   64.    The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal
28

- 13 -

**Exhibit F**

1    Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code

2    Sec. 242), and torture (Penal Code Section 260) prohibited by California law.

3    65.    Without specific details of the restraint and measures taken, Gloria V.M. was informed

4    that Thomas V.M. was restrained by GHS staff on the following dates:

5

6    66.    Without specific details of the restraint and measures taken, Gloria V.M. was informed

7    that Jordan V.M. was restrained by GHS staff on the following dates:

8    67.    Thomas V.M. was again restrained by a staff member named "Jennifer" when attending

9    POINT QUEST and, as a result, his mother immediately withdrew him from the school.

10
                              **FIRST CAUSE OF ACTION**
11                     AS TO PLAINTIFF MARQUES Against GHS and DOES 1-10
          AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE,
12                     PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT
13                         (Violation of California Civil Code §§ 51, *et seq.*)

14   68.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set

15   forth herein.

16
     69.    Defendants' actions described herein violated the Unruh Civil Rights Act, California Civil
17
18   Code section 51.

19   70.    Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code §

20   51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with Attention

21   Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major

22   life activities of learning.

23
     71.    Plaintiffs THOMAS and JORDAN V.M. are persons with disabilities as defined by Cal.
24
25   Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  They had been diagnosed as

26   Autistic.

27   72.    Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN

28

                                           - 14 -

                                                              **Exhibit F**

1   SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

2   73.   GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse

3

4   in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

5   74.   GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them

6   with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities,

7   privileges, advantages, or accommodations.

8   75.   Plaintiffs were not provided with the services, facilities, privileges, advantages and

9

10   accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals

11   without disabilities.

12   76.   The discipline methods, behavior standards and criteria employed by GHS and POINT

13   QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his

14   disabilities.

15   77.   GHS and POINT QUEST failed to make reasonable modifications to their educational and

16

17   behavioral intervention methods and staff training that were necessary to afford students with

18   disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services,

19   facilities, privileges, advantages and accommodations.

20   78.   The actions and failures to act of GHS and POINT QUEST violated Title III of the

21   Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional

22

23   violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a

24   violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections

25   12181, *et seq*. As such, Defendant's actions also constituted a violation of the Unruh Act under

26   Cal. Civ. Code § 51(f).

27   79.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

28

**Exhibit F**

1   SCHOOLS were the product of joint action between public entities and individual employees.

2   80.   Defendants are liable to Plaintiffs for each and every offense for actual damages and

3
    multiple damages of up to three times the actual damages incurred, but in no case less than

4
5   $4000 per offense pursuant to California Civil Code section 52.

6   81.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.

7                              **SECOND CAUSE OF ACTION**
                            Violation of Cal. Civ. 51.7 Ralph Civil Rights Act
8
9          AS TO PLAINTIFF MARQUES Against GHS and DOES 1-10

10   AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE,

11          PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

12   82.   Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth

13
    herein.
14
15   83.   Defendants in doing the acts described above violated Plaintiffs' rights under the Ralph Civil

16   Rights Act.

17   84.   Plaintiffs have the right to be free from any violence, or intimidation by threat of violence,

18
    committed against their persons or property because of any characteristic listed or defined in
19
    subdivision (b) or (e) of Section 51, because another person perceives them to have one or more of
20
21   those characteristics.

22   85.   In committing the acts in paragraphs 50 through 68 above, all defendants have violated

23   Plaintiffs' rights by subjecting them to violence and intimidation.

24   86.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

25
    SCHOOLS were the product of joint action between public entities and individual employees.
26
27   87.   Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple

28   damages of up to three times the actual damages incurred, but in no case less than $4000 per offense

                                      - 16 -

                                                        **Exhibit F**

1   pursuant to California Civil Code section 52.

2   88.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.

3
                        **FOURTH CAUSE OF ACTION**
4
                For Interference with Exercise of Civil Rights in
5
6               Violation of California Civil Code Section 52.1
                AS TO PLAINTIFF MARQUES Against GHS and DOES 1-10
7       AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE,
                PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT
8
9   89. Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth
    herein.
10
11  90. California Civil Code 52.1 provides that it is unlawful to interfere with the exercise or

12  enjoyment of any rights under the Constitution and the laws of this state and the United States by

13  attempted use of threats, intimidation or coercion.

14  91.   The California Constitution establishes the right to a free public education to all students on

15  an equal basis. *Butt v. California*, 4 Cal. 4th 668, 685 (1992).

16  92.   California Civil Code section 43 guarantees the right of every person to be free from

17
18  bodily restraint or harm and personal insult.

19  93.   In doing the things herein alleged, Defendants intentionally interfered with and attempted

20  to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

21  94.   Defendants acted violently against Plaintiff, thereby preventing him from exercising his

22  rights.
23
24  95.   Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

25  96.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

26  SCHOOLS were the product of joint action between public entities and individual employees.

27

28

                                    - 17 -

                                                        **Exhibit F**

97.  The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA

AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged,

was a substantial factor in causing said harm to Plaintiff.

98.  Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a

physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a

facedown position with the pupil's hands held or restrained behind the pupil's back; and by using

a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed

a clear and present danger of serious physical harm to the pupil or others.

99.  Defendant employees of GHS and POINT QUEST acted with conscious disregard of

Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to

Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT

QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  Plaintiff is

therefore entitled to recover punitive and exemplary damages.

100.  Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys'

fees and costs as set by the Court.

**FIFTH CAUSE OF ACTION**
(Violation of California Education Code §§ 200, 201, 220, and 260 et seq. -
Against Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN
SCHOOL DISTRICT MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB,
BRUCE, CORY, BRYNA, CHAMBERS

101.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set

forth herein.

102.  Plaintiffs are individuals with disabilities.

103.  At all times relevant to this complaint, Defendant GHS was an educational institution

providing education to students from kindergarten through twelfth grade and receiving financial

- 18 -

**Exhibit F**

1  assistance from the State of California.

2  104. Defendants discriminated against Plaintiff on the basis of his disability by subjecting him

3
   to physical and emotional abuse in response to disability-related behavior.
4

5  105. The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED

6  SCHOOLS were the product of joint action between public entities and individual employees.

7  106. The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA

8  AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged,

9
   was a substantial factor in causing said harm to Plaintiff.
10

   107. As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages
11
   in an amount according to proof and reasonable attorneys' fees and costs.
12

13                          **SIXTH CAUSE OF ACTION**
                  (Assault and Battery Pursuant to California Penal Code Section 206)
14         i)AS TO PLAINTIFF MARQUES Against MEYERS, KELLER, RAMSEY, ZOMURY,

15            ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOES 1-10

16
   AS TO PLAINTIFFS THOMAS AND JORDAN V.M. against defendants MEYERS, KELLER,
17                                    RAMSEY
18  108.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth

19  herein.

20  109.   CORY, BRYNA, CHAMBERS, and DOE defendants , with the intent to cause cruel or

21  extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted

22
   significant injury upon Plaintiff by repeatedly assaulted Plaintiff throwing him to the ground and
23

24  causing bruises, contusions and lacerations.

25  110.   As a result, Plaintiff suffered physical and psychological injuries.

26  111.   Defendants acted with the intent to cause injury and that action and intention was

27  despicable, done with a willful and knowing disregard of the rights of Plaintiff.

28

                                    - 19 -

                                                                          **Exhibit F**

112.    Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

113.    Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

114.    Defendants' conduct in intentionally assaulting and restraining Plaintiff knowing of his disability condition is malicious and outrageous such that exemplary damages should be awarded.

115. WHEREFORE, Plaintiff prays for judgment for damages according to proof.

SEVENTH CAUSE OF ACTION
ASSAULT AND BATTERY
Against Defendants MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS

116. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

117. MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, and DOE defendants , with the intent to cause pain, the named defendants significant injury upon Plaintiffs by repeatedly assaulting Plaintiffs.

118. As a result, Plaintiffs suffered physical and psychological injuries.

119. Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiff.

120. Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

121. Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

122. Defendants' conduct in intentionally assaulting and restraining Plaintiff knowing of his disability condition is malicious and outrageous such that exemplary damages should be awarded.

**Exhibit F**

123. WHEREFORE, Plaintiff prays for judgment for damages according to proof.

## EIGHTH CAUSE OF ACTION
## ASSAULT AND BATTERY
Against Defendants MEYERS, KELLER, RAMSEY, ZOMURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS

124. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

125. In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs MARQUEZ, Thomas and Jordan V.M. to suffer harmful or offensive contact.

126. As a result of said conduct of said defendants, Plaintiffs MARQUEZ, Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

127. In doing the things herein alleged, said defendants threatened to touch MARQUEZ, Thomas and Jordan V.M. in a harmful or in an offensive manner.

128. At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan V.M. that said defendants were about to carry out the threat.

129. At all times herein mentioned, MARQUEZ, Thomas and Jordan V.M. did not consent to the conduct of said defendants.

130. MARQUEZ, Thomas and Jordan V.M. suffered harm, as herein alleged.

131. The afore-mentioned conduct of said defendants was a substantial factor in causing MARQUEZ, Thomas and Jordan V.M. harm.

132. The conduct of said defendants, caused MARQUEZ, Thomas and Jordan V.M. to be apprehensive that said defendants would subject MARQUEZ, Thomas and Jordan V.M. to further intentional invasions of their right to be free from harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a present ability to subject MARQUEZ,

- 21 -

**Exhibit F**

1 | Thomas and Jordan V.M. to an intentional offensive and harmful touching.

2 | 133. Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing

3

4 | MARQUEZ, Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical

5 | and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

6 | 134. At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas

7 | and Jordan V.M. rights, safety, physical well-being and feelings. Said defendants also acted with

8 | the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause

9

10 | injury and/or humiliation to MARQUEZ, Thomas and Jordan V.M. Said defendants intended to

11 | cause fear, physical injury and/or pain and suffering to MARQUEZ, Thomas and Jordan V.M.. By

12 | virtue of the foregoing, the estate of MARQUEZ, Thomas and Jordan V.M. are entitled to recover

13 | punitive and exemplary damages from individual and non-public entity defendants according to

14 | proof at trial. Estate of MARQUEZ, Thomas and Jordan V.M. make no claim for punitive damages

15 | against the named defendants.

16

17 | **NINTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(ASSERTED BY Thomas and Jordan V.M. against all defendants.)

18

19 | 135. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth

20 | herein

21 | 136. In doing the things herein alleged, the conduct of said defendants was outrageous in that it was

22 | so extreme as to exceed all bounds of that usually tolerated in a civilized community.

23

24 | 137.     Said defendants inflicted actual injury and/or acted with reckless disregard of the

25 | probability that Plaintiffs Thomas and Jordan V.M. would suffer emotional distress, knowing that

26 | the child who was restrained, including Thomas and Jordan V.M., were present when the conduct

27 | occurred.

28

- 22 -

**Exhibit F**

138.  The conduct of said defendants, as herein alleged, was a substantial factor in causing Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

139.  Said defendants knew or should have known that Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be, physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

140.  Said defendants' knowing disregard for the safety of MARQUEZ, Thomas and Jordan V.M. and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as Thomas and Jordan V.M. caused Thomas and Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS.

141.  Said defendants' conduct was extreme and outrageous.

142.  Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Thomas and Jordan V.M. would suffer emotional distress.

143.  The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Thomas and Jordan V.M. As a result, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

**TENTH CAUSE OF ACTION**
FALSE IMPRISONMENT
ASSERTED by Thomas and Jordan V.M. against all defendants

144.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

145.  Said defendants intentionally and unlawfully exercised force, threat, implied threat of force,

- 23 -

**Exhibit F**

1  or duress, to restraint and confine Thomas and Jordan V.M. , and deprive them of their freedom of

2  movement, when said defendants committed the acts described herein.

3  146. The unlawful restraint of Thomas and Jordan V.M. as hereinabove alleged, lasted for an

4

5  appreciable amount of time.

6  147. Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

7  148. As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and

8  emotional harm, as herein alleged.

9  149. That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm

10  to Thomas and Jordan V.M.

11

12  150. The outrageous conduct of the said defendants was willful and wanton, and was performed

13  with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and

14  Jordan V.M. As a result, Thomas and Jordan V.M.  are entitled to punitive or exemplary damages

15  from individual and non-public entity defendants in a sum according to proof at time of trial.

16
        **ELEVENTH CAUSE OF ACTION**
17      NEGLIGENCE
        (ASSERTED BY Thomas and Jordan V.M. against all defendants.)
18

19  151. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth

20  herein.

21  152. Said defendants breached their duty towards Thomas and Jordan V.M. by:

22

23          a.      Failure to develop and maintain effective procedures governing emergency
                    interventions;
24          b.      Failure to obtain proper training for use of behavioral emergency
                    interventions
25          c.      Failure to provide oversight on the use of restraints
26          d.      Failure to develop protocols for use of restraints
            f.      Failure to prohibit restraints on physically disabled children
27          g.      Failure to prohibit prolonged restraints (anything over 15 minutes)
28          h.      Failure to require that Thomas and Jordan V.M. be released from a restraint

**Exhibit F**

at the earliest possible moment.

 i. Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

 j. Failure to prohibit restraints that constrict the child's ability to breathe.

 k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

 l. Failure to provide for the comfort of Thomas and Jordan V.M. while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M. fluids, bathroom use, exercise, range of motion and periodic release of limbs.

 m. Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

 n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

 o. Failure to require immediate and accurate reporting on each restraint

 p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

 q. Failure to provide for:
  -primary preventative measures rather than restraint;
  -interventions that are less intrusive than restraints;
  -effective ways to de-escalate situations to avoid restraints; and
  -crisis intervention techniques that utilize alternatives to restraint.

 r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

 s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

 t. Allowing use of physical restraints on children which:
  - create an aversive environment counterproductive to facilitating learning;
  - cause significant physical harm, serious, foreseeable long term psychological impairment.

 u. Failure to provide oversight on the use of restraints to determine
  - whether the intervention was necessary
  - whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

 v.

 w. Failed to document injuries caused by restraint and

 x. Failed to get medical attention for a child who was injured while in restraint.

153. As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and

**Exhibit F**

1  Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

2  154. Breach of said mandatory duties by said defendants was a substantial factor in causing injuries

3  Thomas and Jordan V.M.

4
5  155. At all times herein mentioned said defendants breached the general duties of due care of

6  educational professionals toward Thomas and Jordan V.M. who were disabled students under their

7  guidance and care.

8  156. At all times herein mentioned, said defendants willfully, knowingly, intentionally,

9  maliciously, and routinely used or encouraged the use of prone and other restraints on special

10
11  needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in

12  violation of California law.

13  157. At all times herein mentioned, said defendants willfully, knowingly, intentionally,

14  maliciously, and routinely used or encouraged the use of prone and other restraints, known by said

15  defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with

16
17  reckless disregard for the safety of said children.

18  158. At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts,

19  willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone

20  and other restraints, to injure special needs/disabled children and to create a reign of terror within

21  the educational environment, in place and instead of providing educational services for special

22  needs/disabled children, for which they were hired.

23
24  159. As a direct and foreseeable result of the negligence of said defendants MAX suffered physical

25  injuries and death and, Thomas and Jordan V.M. suffered physical and emotional injuries.

26  160. The negligence of said defendants was a substantial factor in causing injury Thomas and

27  Jordan V.M. to suffer physical and emotional injuries.

28

-26-

**Exhibit F**

161. By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

### TWELFTH CAUSE OF ACTION
NEGLIGENT SUPERVISION
ASSERTED BY Thomas and Jordan V.M.

162. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

163. Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

164. Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

165. Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

166. As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

### SEVENTEENTH CAUSE OF ACTION
NEGLIGENCE PER SE
(ASSERTED BY Thomas and Jordan V.M. and against all Defendants)

167. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

- 27 -

**Exhibit F**

168. In doing the things herein alleged, said defendants violated the mandatory duties toward Thomas and Jordan V.M. as prescribed by state and federal law as referenced in each of the statutes as set forth hereinabove.

169. Said violations of criminal and civil law were a substantial factor in bringing about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

170. As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

### THIRTEENTH CAUSE OF ACTION
TORTIOUS BREACH OF THE COVENANT
OF GOOD FAITH AND FAIR DEALING
(ASSERTED BY THE PLAINTIFFS MARQUES, Gloria, Thomas and Jordan V.M.
AGAINST DEFENDANTS GHS, MEYERS, KELLER, POINT QUEST and DOE
DEFENDANTS)

171. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

172. Upon the respective enrollment of Marques, Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants for the education of their children.

173. At all times herein mentioned, Marques, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants.

174. As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support.  The GHS handbook also indicated that defendant GHS  would "customize" the system to support student outcomes and  "interact with students in a way that

- 28 -

**Exhibit F**

promotes social proficiency." The GHS handbook states that "social competence is a skill that requires direct teaching." . The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

175. As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST and DOE defendants against any student based on physical or mental disability.

176. As part of said contract, defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and redirecting behavior using a lesson."

177. As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

178. As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST and DOE defendants; and the most dangerous type of restraint, a prone restraint,

**Exhibit F**

1    was described by defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants to

2    each of MARQUES, Thomas and Jordan V.M's parents in innocuous language as a "neutral"

3    restraint.

4

5    179. Plaintiffs, and each of them, did all of the significant things that the contract required them

6    to do.

7    180. At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS,

8    KELLER, POINT QUEST, and DOE defendants had occurred.

9    181. Defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants unfairly

10   interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by

11

12   engaging in the conduct as herein alleged.

13   182. Defendant GHS, MEYERS, KELLER, POINT QUEST's and DOE defendants' interference

14   with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely

15   imposed corporal punishment, in addition to dangerous prone and other restraints, on special

16   needs/disabled children under their care.

17

18   183. By virtue of the bad faith interference with the contract benefits by defendants GHS,

19   MEYERS, KELLER, POINT QUEST, and DOE defendants with said plaintiffs' contractual rights,

20   plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

21   184. By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT

22   QUEST, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and

23

24   therapeutic costs.

25   185. By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT

26   QUEST, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. has suffered

27   severe emotional and physical distress at having her respective children injured by being placed in

28

- 30 -

**Exhibit F**

1  prone and other restraints because of their autism and other disabilities.

2  186. By virtue of said bad faith interference with contractual benefits, all plaintiffs suffered

3
4  physical and emotional injuries, and future general and special damages as herein alleged.

5  187. The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, and

6  DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to

7  plaintiffs, and each of them.

8  188. In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST,

9  and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and

10
11  each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior,

12  brutalizing special needs/disabled children who had been entrusted to their care by their parents so

13  as to receive an education that would allow their children to grow into well adjusted, well-

14  functioning adults. As a consequence, plaintiffs, and each of them, are entitled to punitive damages.

15
                          **FOURTEENTH CAUSE OF ACTION**
16                                      FRAUD
                              Asserted by Gloria V.M.
17

18  189. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth

19  herein.

20  190. On or about the date of enrolling their respective children in defendant GHS, defendants,

21  GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, represented to Gloria V.M. that

22  said defendants would not to discriminate in any activity against any student at GHS based on

23
24  physical or mental disability under Title IX, Education Code section 106.8(a)(d) and 106.9.8(a); that

25  they prohibited intimidation or harassment by any employee of defendants GHS and POINT

26  QUEST against any student based on physical or mental disability; that said defendants and their

27  employees would use Positive Behavior Interventions and Supports to correct inappropriate

28

**Exhibit F**

1 behavior and to interact with students in a way which promotes social proficiency and academic

2 success, including using "positive language and redirecting behavior using a lesson"; that behavior

3 by GHS' staff when correcting a child would be "calm, consistent, brief, immediate and

4 respectful,"; that GHS and POINT QUEST behavior intervention approaches involved a three step

5 prompt "verbal, modeling, hand-over-hand"; and that restraints would be imposed only if the child

6

7 was a danger to himself or others so as to de-escalate and re-integrate into classroom activities.

8 191. On or about the dates of the respective enrollment of Thomas and Jordan V.M., at GHS and

9 POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and their employees represented

10 to Gloria V.M that they were required to sign a form allowing defendants GHS, MEYERS,

11

12 KELLER, POINT QUEST, and DOE defendants, to impose restraints on said plaintiffs' respective

13 children, with the implied threat that if they did not sign the form their respective children would

14 not be enrolled at GHS, which was the only school available to educate said children, and therefore,

15 the parents would be in violation of California's mandatory education law.

16 192. That the afore-mentioned representations of defendants, were false, and Gloria V.M. learned

17

18 that they were false on or after November 29, 2018, upon the death of MAX, when they discovered

19 that they did not have to allow or consent to the use of restraints against their disabled children.

20 193. Said defendants knew that said representations were false when they made them, and/or said

21 defendants made the representations recklessly and without regard for the truth of said

22

23 representations.

24 194.

25 195. Said defendants intended that GLORIA V.M. rely on said representations.

26 196. GLORIA V.M. reasonably relied on said representations, and enrolled their respective

27 children at defendant GHS to receive an education.

28

**Exhibit F**

197. GLORIA V.M. were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

198. GLORIA V.M. reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

199.

200. At all relevant times, said defendants acted with conscious disregard of the rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs. By virtue of the foregoing, said plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial.

## DAMAGES

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

FIRST CAUSE OF ACTION SEVENTH CAUSE OF ACTION
INTERFERENCE WITH THE EXERCISE OF CIVIL RIGHTS UNDER CALIFORNIA CIVIL
CODE SECTIONS 51(b) and 51.7

1. General damages for in an amount to be determined according to proof at trial;
2. Medical and future medical and related expenses in an amount to be determined by proof at trial;
3. Past and future lost earnings in an amount to be determined by proof at trial;
4. Impairment of earning capacity for in an amount to be determined by proof at trial;
5. General damages for severe emotional and psychological distress

- 33 -

**Exhibit F**

1   6.    Pain and suffering;
2   7.    Statutory damages;
    8.    Attorneys' fees;
3   8.    Punitive and exemplary damages against all non-public entity Defendants
    9.    Costs of this action;
4   10.   Such other and further relief as the Court deems just and proper.

5       SECOND CAUSE OF ACTION INTERFERENCE WITH PLAINTIFFS' EXERCISE OF
6            CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

7   1.    General damages for in an amount to be determined according to  proof at trial;
    2.    Medical and future medical and related expenses in an amount to be determined by proof
8   at trial;
9   3.    Past and future lost earnings in an amount to be determined by proof at trial;
    4.    Impairment of earning capacity for in an amount to be determined by proof at trial;
10  5.    General damages for severe emotional and psychological distress
    6.    Pain and suffering;
11  7.    Statutory damages;
    8.    Attorneys' fees;
12  8.    Punitive and exemplary damages against all non-public entity Defendants
13  9.    Costs of this action;
    10.   Such other and further relief as the Court deems just and proper.
14

15       THIRD CAUSE OF ACTION VIOLATIONS OF CALIFORNIA EDUCATION CODE §§ 200,
                            201, 220 and 260, et seq.
16  1.    General damages for in an amount to be determined according to  proof at trial;
    2.    Medical and future medical and related expenses in an amount to be determined by proof
17  at trial;
18  3.    Past and future lost earnings in an amount to be determined by proof at trial;
    4.    Impairment of earning capacity for in an amount to be determined by proof at trial;
19  5.    General damages for severe emotional and psychological distress
    6.    Pain and suffering;
20  7.    Statutory damages;
    8.    Attorneys' fees;
21  8.    Punitive and exemplary damages against all non-public entity Defendants
22  9.    Costs of this action;
    10.   Such other and further relief as the Court deems just and proper.
23

24       FOURTH CAUSE OF ACTION ASSAULT AND BATTERY CONSTITUTING TORTURE
    1.    General damages for Pain and suffering in an amount to be determined according to  proof
25  at trial;
    2.    Medical and future medical and related expenses in an amount to be determined by proof
26  at trial;
    3.    Past and future lost earnings in an amount to be determined by proof at trial;
27  4.    Impairment of earning capacity for in an amount to be determined by proof at trial;
28  5.    General damages for severe emotional and psychological distress

                                    - 34 -

                                                            **Exhibit F**

6.    Pain and suffering;
7.    Statutory damages;
8.    Attorneys' fees;
8.    Punitive and exemplary damages against all non-public entity Defendants
9.    Costs of this action;
10.   Such other and further relief as the Court deems just and proper.

ALL OTHER CAUSES OF ACTION AS PLED ABOVE.

Dated: August 28, 2020                          /s/ Seth L. Goldstein
                                        Seth L. Goldstein, Lead Counsel for Plaintiffs

- 35 -

**Exhibit F**

COUNTY OF EL DORADO
3321 Cameron Park Drive
Cameron Park, California 95682
(530)621-5867                    Fax (530)672-2413

CASE NO. PC 2020042~9

Plaintiff,

**EL DORADO CO. SUPERIOR CT.**

LOUIE ANDREAS MARQUES
vs.

Defendant.

**FILED  AUG 2 7 2020**

GUIDING HANDS SCHOOL INC

BY _____ _SHuJE____
Deputy

NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE
(Local Rule 7.12.05 and .09)

NOTICE IS HEREBY GIVEN that a CASE MANAGEMENT CONFERENCE in the above
entitled case is set for  1:30 on 12/28/20, in Dept. 10.
3321 Cameron Park Drive, Cameron Park, California.

A Case Management Statement must be filed and served not less than
15 days before the Conference.

If a party is demanding a jury trial, pursuant to Civil Code of
Procedure section 631(b), a non-refundable jury fee of $150.00 must
be deposited with the court on or before the initial Case Management
Conference date in this action. Failure to timely deposit the funds
will result in a waiver of a jury trial.

At the CASE MANAGEMENT CONFERENCE you will be assigned a Dispute Reso-
lution Conference Date, a Mandatory Settlement Conference Date, and a
Trial Date. In lieu of a Dispute Resolution Conference, the parties
may elect mediation, binding arbitration, or judicial arbitration.

In addition, the court will make pre-trial orders.

The Court will require full compliance of El Dorado County Local
Rules, in particular, the rules governing Trial Court Case Management
(rule 7.12.00, et seq.). For additional information regarding the
Trial Court Case Management Program visit our website at:
www.eldoradocourt.org

You must be prepared to discuss all matters and dates which are the
subjects of the Case Management Conference. Telephonic court appear-
ances are provided through the Court. To sign up to appear by
telephone please go to the court's website at
http://www.eldoradocourt.org/onlineservices/vcourt.html at
least five (5) days prior to the scheduled conference.

CMC1                                              Rev 05/20/13

CMS

**Exhibit F**

CLERK'S CERTIFICATE OF SERVICE

I declare under penalty of perjury that I am over the age of 18 and not a party to the above action; that a copy of NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE was placed for mailing through either the United States Post Office or Inter-Departmental mail on the parties at the address shown herein. Executed on 08/28/20, in Cameron Park, California.

Delivered to:

SETH L GOLDSTEIN
2100 GARDEN RD
SUITE H-8
MONTEREY CA 93940

Tania Ugrin-Capobianco, Court Executive Officer

By: _____ _____
Deputy Clerk

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO

MINUTE ORDER

CASE NO: PC20200429      LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 09/14/20              TIME: 12:27      DEPT:

EX PARTE MINUTE ORDER

---

Honorable JUDGE DYLAN  SULLIVAN presiding. Clerk: Sherry Howe. Court Reporter: None.

170. 6 CCP filed by Plaintiffs against JUDGE DYLAN  SULLIVAN.

Pursuant to the standing order of the Presiding Judge, the above entitled matter is ordered referredto the South Lake Tahoe Session of this Court, forreassignment by the Presiding Judge.

Upon reassignment, this matter shall be set for CMC re status. Parties and counsel shall be notified of the assignment.

HCMCS hearing set on 12/28/20 at  1:30 in department 10 is ordered vacated.

The minute order was placed for collection/mailing in Cameron Park, California, either through United States Post Office, Inter-Departmental Mail, or Courthouse Attorney Box to those parties listed herein.

Executed on 09/14/20, in Cameron Park, California by S. Howe.

cc: Seth L. Goldstein, Esq., 2100 Garden Road, #H-8, Monterey, CA 93940

cc: Honorable Suzanne N. Kingsbury, via scan

**Exhibit F**

Seth L. Goldstein, S.B.N. 176882
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone  (831) 372 9511
Fax         (831) 372 9611

**Lead-Counsel for Plaintiffs**

EL DORADO CO. SUPERIOR CT.

FILED   SEP 11 2020

BY _____ _SHuwC_____
              Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF EL DORADO

In the Matter of:

| | |
|---|---|
| | **Case No.: PC20200429** |
| **Louie Andreas MARQUES, Gloria V.M., Thomas V.M., and Jordan V.M.,** | |
| **Plaintiffs** | **PEREMPTORY CHALLENGE OF JUDGE DYLAN SULLIVAN PURSUANT TO CCP SECTION 170.6** |
| **vs** | |
| **GUIDING HANDS SCHOOL, Inc.(hereinafter "GHS"),,Jennifer GALAS,  Staranne MEYERS, Cindy KELLER, David CHAMBERS, STATE OF CALIFORNIA, DEPARTMENT OF EDUCATION, PLACER COUNTY SELPA, Cara BRUCE, Ashley ROB, Dolores ZUMBURY, Vince ANDERSON, POINT QUEST, Inc., ROCKLIN UNIFIED SCHOOL DISTRICT, Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, and Noelle DOE,** | Judge:<br>Dept.:<br>Date:<br>Time:<br><br>**FILED BY FAX** |
| **Defendants.** | |

Declaration of Plaintiffs':

1.    I am counsel for the Plaintiffs' in the above-entitled matter.

2.    I received the Notice of Case Assignment on September 10, 2020.

3.    The Honorable Judge Dylan Sullivan to whom this matter is pending in Department 10

       is prejudiced against counsel.

**Exhibit F**

3.     Declarant believes that the Plaintiff's cannot have a fair and impartial trial or hearing before this Judge.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 11, 2020

Seth L. Goldstein
Attorney for Plaintiffs'

-2-

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO

MINUTE ORDER

CASE NO: PC20200429        LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 09/15/20             TIME: 10:22        DEPT:

EX PARTE MINUTE ORDER

---

Honorable JUDGE SUZANNE N. KINGSBURY presiding. Clerk: Sherry Howe.
Court Reporter: None.

The Honorable Dylan Sullivan having been recused in the above-matter,
the matter was referred to the Presiding Judge for reassignment.

This matter is hereby Ordered assigned to the Honorable Michael J.
McLaughlin for all purposes.

CASE MANAGEMENT CONFERENCE RE: STATUS set for 10/20/20 at  3:30 in
department 12.

The minute order was placed for collection/mailing in Cameron Park,
California, either through United States Post Office,
Inter-Departmental Mail, or Courthouse Attorney Box to those parties
listed herein.

Executed on 09/15/20, in Cameron Park, California by S. Howe.

cc: Seth L. Goldstein, Esq., 2100 Garden Road, #H-8, Monterey, CA
93940

cc: Honorable Suzanne N. Kingsbury, via scan

**Exhibit F**

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Seth Goldstein (SBN: 176882)
2100 Garden Rd., Suite H-8
Monterey, CA 93940

TELEPHONE NO.: (831)372-9511   FAX NO. (Optional): (831)372-9611
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Lead Counel for Plaintiffs

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS: SAME AS STREET
CITY AND ZIP CODE: Cameron Park, CA 95682
BRANCH NAME: CIVIL

PLAINTIFF/PETITIONER: Marques, et al.

DEFENDANT/RESPONDENT: Guiding Hands School, Inc., et al.

**FILED**

OCT 0 1 2020

EL DORADO CO. SUPERIOR COURT
BY _Wendy G Warden_
(DEPUTY CLERK)

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>PC 2020-0429<br>Judge Dylan Sullivan |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [X] With prejudice   (2) [ ] Without prejudice
   b. (1) [X] Complaint   (2) [ ] Petition
   (3) [ ] Cross-complaint filed by (name):                          on (date):
   (4) [ ] Cross-complaint filed by (name):                          on (date):
   (5) [ ] Entire action of all parties and all causes of action
   (6) [X] Other (specify):* As to Defendant, Jennifer Galas only. Each side to bear their own fees and costs.

2. (Complete in all cases except family law cases.)
   The court [ ] did [X] did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)

Date: 10/1/2020

Seth Goldstein (SBN: 176882)
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

► (SIGNATURE)
Attorney or party without attorney for: Lead Counsel for Plaintiffs

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[X] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

► (SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

(To be completed by clerk)
4. [ ] Dismissal entered as requested on (date):
5. [X] Dismissal entered on (date): 10/01/2020   as to only (name): Jennifer Galas
6. [ ] Dismissal not entered as requested for the following reasons (specify):

7. a. [ ] Attorney or party without attorney notified on (date):
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed   [ ] means to return conformed copy

Date: 10/01/2020   Clerk, by _Wendy G Warden_, Deputy
Tania G. Ugrin-Capobianco

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Legal Solutions Plus

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390

BY FAX

RECEIVED
OCT 0 1 2020

BY: .......................

**Exhibit F**

1   *Marques vs Guiding Hands School, Inc., et al.*
  El Dorado Superior Court Case No.: PC2020-0429

2

3                                 **PROOF OF SERVICE**

4       I am a citizen of the United States, employed in the County of Sacramento, State of California. My business address is 601 University Avenue, Suite 225, Sacramento, CA 95825. I am over the age of 18 and not a party to the above-entitled action.

5

6       I am readily familiar with Spinelli, Donald & Nott's practice for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle. Each day's mail is collected and deposited in a U.S. mailbox at or before the close of each day's business. (CCP Section 1013a(3) or Fed.R.Civ.P.5(a) and 4.1.)

7

8

9       On 10/1/20, I served the enclosed: **REQUEST FOR DISMISSAL.** The originals of which were produced on recycled paper, to be served via:

10

11 **xx**  **MAIL--**
      Placed in the United States Mail at Sacramento, California in an envelope with postage thereon fully prepaid addressed as follows:

12

13                                   **SERVICE LIST**

| **Lead Counsel for Plaintiffs** | Seth L. Goldstein<br>2100 Garden Rd., Suite H-8<br>Monterey, CA 93940<br>Tel: 831.372.9511<br>Fax: 831.372.9611<br>Email: slglawoffice@gmail.com |
| --- | --- |

14

15

16

17

18       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on 10/1/20, at Sacramento, California.

19

20

21                                Jessica Patton

22

23

24

25

26

27

28

**BY FAX**

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO


MINUTE ORDER


CASE NO: PC20200429      LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 10/20/20           TIME:  3:30       DEPT: 12


CASE MANAGEMENT CONFERENCE RE: STATUS


_____


Honorable Judge MICHAEL J. MCLAUGHLIN presiding. Clerk: Wendy Warden.
Court Reporter: None.

LOUIE ANDREAS MARQUES present by counsel Seth Goldstein via vCourt.

A Case Management/ADR Assessment Conference was held this date and,
good cause therefore appearing, the following determinations were
made:

Hearing continued to 12/15/20 at  3:30 in department 12

Notice to be given by Plaintiff.


**Exhibit F**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Seth L. Goldstein
Law Offices of Seth L. Goldstein
2100 Garden Rd., Ste. H-8
Monterey, CA 93940
TELEPHONE NO: 831-372-9511    FAX NO. *(Optional)*: 831-372-9611
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiffs

**EL DORADO CO. SUPERIOR CT.**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Cameron Park, CA 95682
BRANCH NAME: Civil

**FILED** OCT 06 2020
BY _____
Deputy

PLAINTIFF/PETITIONER:Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.
DEFENDANT/RESPONDENT:Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):*  [X] **UNLIMITED CASE** (Amount demanded exceeds $25,000)   [ ] **LIMITED CASE** (Amount demanded is $25,000 or less) | PC20200429 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: October 20, 2020    Time: 3:30 pm    Dept.:    Div.:    Room:
Address of court *(if different from the address above)*:

[X]  Notice of Intent to Appear by Telephone, by *(name)*: Seth L. Goldstein

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1.  **Party or parties** *(answer one)*:
    a.  [X]  This statement is submitted by party *(name)*:All Plaintiffs, Marques and Van Maren
    b.  [ ]  This statement is submitted jointly by parties *(names)*:

2.  **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
    a.  The complaint was filed on *(date)*: August 27, 2020
    b.  [ ]  The cross-complaint, if any, was filed on *(date)*:

3.  **Service** *(to be answered by plaintiffs and cross-complainants only)*
    a.  [ ]  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
    b.  [X]  The following parties named in the complaint or cross-complaint
        (1)  [X]  have not been served *(specify names and explain why not)*: I will be dismissing the Van Maren Plaintiffs and re-filing in Federal Ct., amending the complaint accordingly.
        (2)  [ ]  have been served but have not appeared and have not been dismissed *(specify names)*:
        (3)  [ ]  have had a default entered against them *(specify names)*:
    c.  [ ]  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4.  **Description of case**
    a.  Type of case in  [X] complaint    [ ] cross-complaint    *(Describe, including causes of action)*:
        Violations of civil rights in educational setting.

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]
**CASE MANAGEMENT STATEMENT**
Legal Solutions Plus
Page 1 of 5
Cal. Rules of Court, rules 3.720-3.730



CM-110

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | PC20200429 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

Plaintiff Marques was a disabled student at defendant, GHS. He was repeatedly assaulted as discipline differently than those without such a disability.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☒ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☒ The trial has been set for *(date):* Not as of this time
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one):*
   a. ☒ days *(specify number):* 20
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney: Seth L. Goldstein
   b. Firm: Law Office of Seth L. Goldstein
   c. Address: 2100 Garden Rd., Ste. H-8, Monterey, CA 93940
   d. Telephone number: 831-372-9511        f.   Fax number:  831-372-9611
   e. E-mail address: slglawoffice@gmail.com        g.   Party represented:  Plaintiffs
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
    a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

    (1) For parties represented by counsel: Counsel ☒ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

    (2) For self-represented parties: Party ☐ has  ☐ has not  reviewed the ADR information package identified in rule 3.221.

    b. **Referral to judicial arbitration or civil action mediation** (if available).

    (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

    (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.  DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | CASE NUMBER:  PC20200429 |
|---|---|

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

|  | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | [ X ] | [X] Mediation session not yet scheduled  [ ] Mediation session scheduled for *(date)*:  [ ] Agreed to complete mediation by *(date)*:  [ ] Mediation completed on *(date)*: |
| (2) Settlement conference | [ X ] | [X] Settlement conference not yet scheduled  [ ] Settlement conference scheduled for *(date)*:  [ ] Agreed to complete settlement conference by *(date)*:  [ ] Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | [ X ] | [X] Neutral evaluation not yet scheduled  [ ] Neutral evaluation scheduled for *(date)*:  [ ] Agreed to complete neutral evaluation by *(date)*:  [ ] Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | [ ] | [ ] Judicial arbitration not yet scheduled  [ ] Judicial arbitration scheduled for *(date)*:  [ ] Agreed to complete judicial arbitration by *(date)*:  [ ] Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | [ ] | [ ] Private arbitration not yet scheduled  [ ] Private arbitration scheduled for *(date)*:  [ ] Agreed to complete private arbitration by *(date)*:  [ ] Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | [ ] | [ ] ADR session not yet scheduled  [ ] ADR session scheduled for *(date)*:  [ ] Agreed to complete ADR session by *(date)*:  [ ] ADR completed on *(date)*: |

CM-110 [Rev. July 1, 2011]                    **CASE MANAGEMENT STATEMENT**                    Page 3 of 5

**Exhibit F**

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.<br>DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | CASE NUMBER:<br>PC20200429 |

**11. Insurance**
- a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
- b. Reservation of rights: ☐ Yes ☐ No
- c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
☐ Bankruptcy ☐ Other *(specify)*:
Status:

**13. Related cases, consolidation, and coordination**
- a. ☒ There are companion, underlying, or related cases.
  - (1) Name of case: Langley, Benson, et al. vs. Guiding Hands School, et al.
  - (2) Name of court: Eastern District Court of California
  - (3) Case number: 2:20-cv-00635-TLN-KJN
  - (4) Status: Pending rulings on Motion to Dismiss
  - ☐ Additional cases are described in Attachment 13a.
- b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**
☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**
- a. ☐ The party or parties have completed all discovery.
- b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| Marques | Request to Produce; Request for Admissions, Form Interrogs, Special Interrogs | Unknown because of circumstances below |

- c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*: Main issue relating to discovery are that the 40 bankers boxes of evidence and related electronic devices containing records held by the district attorney under a protective order pending resolution of the criminal case. The criminal case is not yet set for trial.

**Exhibit F**

CM-110

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.<br>DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | CASE NUMBER:<br>PC20200429 |
|---|---|

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):* The Complaint was filed to preserve the statute of limitations intending to amend as soon as certain facts were obtained. We have had COVID quarantine interuptions that have delayed our ability to follow through on the amendment. I anticipate that the complaint will be amended by November 1st. The requests for appointments of GAL with minor plaintiffs will be withdrawn as that portion of the complaint will be dismissed.

19. **Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):* Not as of this time because complaint has not yet been served.

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: October 5, 2020

Seth L. Goldstein
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**CASE MANAGEMENT STATEMENT**

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO

MINUTE ORDER

CASE NO: PC20200429     LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 12/15/20          TIME:  4:16        DEPT:

EX PARTE MINUTE ORDER

---

Honorable Judge MICHAEL J. MCLAUGHLIN presiding. Clerk: Wendy Warden.
Court Reporter: None.

On the court's own motion, due to the unavailability of a judicial
officer, the Case Managment Conference on 12/15/2020 at 3:30 PM in
department 12 is hereby continued to 01/12/2021 at 3:30 PM in
department 12.

Instructions are on our website to cancel the V Court telephonic
appearance and request a refund.  You will need to sign up on our
website for the new date.

cc: Seth L. Goldstein, Esquire; 2100 Garden Road, Suite H-8,
Monterey, CA 93940

**Exhibit F**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Seth L. Goldstein<br>Law Offices of Seth L. Goldstein<br>2100 Garden Rd., Ste. H-8<br>Monterey, CA 93940<br>TELEPHONE NO.: 831-372-9511    FAX NO. *(Optional):*  831-372-9611<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs | **EL DORADO CO. SUPERIOR CT.** |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado<br>STREET ADDRESS: 3321 Cameron Park Drive<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Cameron Park, CA 95682<br>BRANCH NAME: Civil | **FILED** DEC 0 8 2020<br>BY _____<br>Deputy |
| PLAINTIFF/PETITIONER:Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.<br>DEFENDANT/RESPONDENT:Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | |
| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
| *(Check one):*  [X] **UNLIMITED CASE**  [ ] **LIMITED CASE**<br>(Amount demanded   (Amount demanded is $25,000<br>exceeds $25,000)   or less) | PC20200429<br>**BY FAX** |

| A CASE MANAGEMENT CONFERENCE is scheduled as follows: |
|---|
| Date: December 15, 2020    Time: 3:30 pm    Dept.:    Div.:    Room:<br>Address of court *(if different from the address above):* |

[X] Notice of Intent to Appear by Telephone, by *(name):* Seth L. Goldstein

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. [X] This statement is submitted by party *(name):*All Plaintiffs, Marques and V.M.
   b. [ ] This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):* August 27, 2020
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [X] The following parties named in the complaint or cross-complaint
      (1) [X] have not been served *(specify names and explain why not):* We have been delayed by COVID exposure and unable to amend the Complaint as we planned prior to service.
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*
      (3) [ ] have had a default entered against them *(specify names):*
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in   [X] complaint   [ ] cross-complaint   *(Describe, including causes of action):*
   Violations of civil rights in educational setting.

 CMS Exhibit F

CM-110

| | |
|---|---|
| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M. <br> DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | CASE NUMBER: <br> PC20200429 |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

Plaintiffs Marques and V.M were disabled students at defendant, GHS. They were repeatedly assaulted as discipline differently than those without such a disability.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request  ☒ a jury trial  ☐ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☒ The trial has been set for *(date):* Not as of this time

b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one):*

a.  ☒ days *(specify number):* 20

b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial  ☒ by the attorney or party listed in the caption  ☐ by the following:

a.  Attorney: Seth L. Goldstein

b.  Firm: Law Office of Seth L. Goldstein

c.  Address: 2100 Garden Rd., Ste. H-8, Monterey, CA 93940

d.  Telephone number: 831-372-9511       f.  Fax number: 831-372-9611

e.  E-mail address: slglawoffice@gmail.com    g.  Party represented: Plaintiffs

☐ Additional representation is described in Attachment 8.

9.  **Preference**

☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel  ☒ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party  ☐ has  ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1)  ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3).  ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**Exhibit F**

**CM-110**

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.<br>DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | CASE NUMBER:<br>PC20200429 |
|---|---|

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | [X] | [X] Mediation session not yet scheduled<br>[ ] Mediation session scheduled for *(date)*:<br>[ ] Agreed to complete mediation by *(date)*:<br>[ ] Mediation completed on *(date)*: |
| (2) Settlement conference | [X] | [X] Settlement conference not yet scheduled<br>[ ] Settlement conference scheduled for *(date)*:<br>[ ] Agreed to complete settlement conference by *(date)*:<br>[ ] Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | [X] | [X] Neutral evaluation not yet scheduled<br>[ ] Neutral evaluation scheduled for *(date)*:<br>[ ] Agreed to complete neutral evaluation by *(date)*:<br>[ ] Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | [ ] | [ ] Judicial arbitration not yet scheduled<br>[ ] Judicial arbitration scheduled for *(date)*:<br>[ ] Agreed to complete judicial arbitration by *(date)*:<br>[ ] Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | [ ] | [ ] Private arbitration not yet scheduled<br>[ ] Private arbitration scheduled for *(date)*:<br>[ ] Agreed to complete private arbitration by *(date)*:<br>[ ] Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | [ ] | [ ] ADR session not yet scheduled<br>[ ] ADR session scheduled for *(date)*:<br>[ ] Agreed to complete ADR session by *(date)*:<br>[ ] ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

**Exhibit F**

**CM-110**

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | PC20200429 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

    (1) Name of case: Langley, Benson, et al. vs. Guiding Hands School, et al.

    (2) Name of court: Eastern District Court of California

    (3) Case number: 2:20-cv-00635-TLN-KJN

    (4) Status: Pending rulings on Motion to Dismiss

    ☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Marques/V.M.- All Plaintiffs | Request to Produce; Request for Admissions, Form Interrogs, Special Interrogs | Unknown because of circumstances below |

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):* Main issue relating to discovery are that the 40 bankers boxes of evidence and related electronic devices containing records held by the district attorney under a protective order pending resolution of the criminal case.The criminal case is set for trial in March 2021 and Preliminary Examination in January 2021.

---

CM-110 [Rev. July 1, 2011]      **CASE MANAGEMENT STATEMENT**      Page 4 of 5

**Exhibit F**

CM-110

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.<br>DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | CASE NUMBER:<br>PC20200429 |
| --- | --- |

17. **Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

    ☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):* The Complaint was filed to preserve the statute of limitations intending to amend as soon as certain facts were obtained. We have had continued COVID quarantine interuptions that have delayed our ability to follow through on the amendment. I anticipatd that the complaint would be amended by November 1st. We have been unable to do so. I must ask for another 30 days at minimum.

19. **Meet and confer**

    a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):* Not as of this time because complaint has not yet been served.

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: December 8, 2020

Seth L. Goldstein
_____
       (TYPE OR PRINT NAME)

▶ _____
       (SIGNATURE OF PARTY OR ATTORNEY)

_____
       (TYPE OR PRINT NAME)

▶ _____
       (SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached.

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO


MINUTE ORDER


CASE NO: PC20200429      LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 01/12/21           TIME:  3:30       DEPT: 12


CASE MANAGEMENT CONFERENCE RE: STATUS

---

Honorable Judge MICHAEL J. MCLAUGHLIN presiding. Clerk: Wendy Warden.
Court Reporter: None.

LOUIE ANDREAS MARQUES, GLORIA V M, THOMAS V M, JORDAN V M present by
counsel Seth Goldstein via vCourt.

A Case Management/ADR Assessment Conference was held this date and,
good cause therefore appearing, the following determinations were
made:

All Parties have not been served.

Hearing continued to 02/23/21 at  3:30 in department 12

Notice to be given by Plaintiff.

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO


MINUTE ORDER


CASE NO: PC20200429       LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 02/23/21              TIME:  3:30       DEPT: 12


CASE MANAGEMENT CONFERENCE RE: STATUS


---

Honorable Judge MICHAEL J. MCLAUGHLIN presiding. Clerk: Wendy Warden.
Court Reporter: None.

LOUIE ANDREAS MARQUES, GLORIA V M, THOMAS V M, JORDAN V M present by
counsel Seth Goldstein via vCourt.

A Case Management/ADR Assessment Conference was held this date and,
good cause therefore appearing, the following determinations were
made:

Hearing continued to 05/25/21 at  3:30 in department 4

Notice to be given by plaintiff.


**Exhibit F**

1   Seth L. Goldstein, S.B.N. 176882
2   2100 Garden Road, Suite H-8
    Monterey, California, 93940
3   Telephone (831) 372 9511
    Fax      (831) 372 9611
4

5   **Lead-Counsel for Plaintiffs**

**EL DORADO CO. SUPERIOR CT.**

**FILED** FEB 23 2021

BY _____ Deputy

6

7         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8             **COUNTY OF EL DORADO**

9   In the Matter of:

| | |
|---|---|
| 10 ———————————————— ) | **Case No.: PC20200429** |
| ) | |
| 11 Louie Andreas MARQUES, Gloria V.M., ) | |
| Thomas V.M., and Jordan V.M., ) | **FIRST AMENDED COMPLAINT** |
| 12 ) | **FOR DAMAGES** |
| ) | |
| 13 **Plaintiffs** ) | |
| **vs** ) | |
| 14 ) | **JURY TRIAL DEMANDED** |
| ) | |
| 15 **GUIDING HANDS SCHOOL, Inc.**(hereinafter ) | |
| "GHS"), Staranne MEYERS, "Star Williams"; ) | |
| 16 Cindy KELLER, David CHAMBERS, Susan ) | |
| Jane BATTLE; "Cory" DOE; Cory ) | |
| 17 QUINCEY; Byrna QUINCEY; Noel ) | |
| COLLIER; STATE OF CALIFORNIA, ) | |
| 18 DEPARTMENT OF EDUCATION ) | |
| (hereinafter CDE); PLACER COUNTY ) | |
| 19 SELPA (hereinafter PLACER SELPA); Troy ) | |
| TICKLE; Kristi GREGERSON; Cara BRUCE, ) | |
| 20 Ashley ROBB, Dolores ZUMBURY, Vince ) | |
| ANDERSON, POINT QUEST, Inc.; Nicole ) | |
| 21 DOE; Jennifer DOE; ROCKLIN UNIFIED ) | |
| 22 SCHOOL DISTRICT (hereinafter RUSD); , ) | BY FAX |
| Patricia DOE, David DOE, Amanda DOE, and ) | |
| 23 Noelle DOE, Bruce CHAPMAN; and HANDLE | |
| WITH CARE BEHAVIOR MANAGEMENT | |
| 24 SYSTEM, INC. (hereinafter HWC); and DOES | |
| 25 1-100, | |
| 26 **Defendants.** | |

27

28



**Exhibit F**

1

2

### PARTIES

1. **Plaintiff Louie MARQUES** (legal name Louie Andreas MARQUES, hereinafter "MARQUES"), who lives in Sacramento was, at all relevant times herein, a minor child diagnosed as then having Oppositional Defiant Disorder and ADHD. He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

3

4

5

6

7

8

2. At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

9

10

3. The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

11

12

13

4. **Plaintiffs Thomas and Jordan V.M.** were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

14

15

16

5. Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears as predictable behaviors.

17

18

19

20

6. His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

21

22

23

7. Jordan V.M. had an IEP that identified non-compliance, physical aggression (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate gestures and other behavior described as eating crayons and spitting water as predictable behaviors.

24

25

26

27

28

-2-

**Exhibit F**

8.   His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

9.   **Plaintiff Gloria V.M.** is the adoptive mother of Thomas and Jordan V.M. and is their Guardian Ad Litem.

### DEFENDANTS

10.  **Defendants Guiding Hands School Inc.**, and **Point Quest Inc**. 4900 Windplay Dr., El Dorado Hills, California, located on the same premises having allegedly bought out GHS are non-public schools (hereinafter NPS) incorporated under the laws of the State of California as for-profit corporations and approved by the State of California as institutions providing for children with disabilities.

11.  Presently, and at all times relevant to this Complaint, GHS was and is a business establishment within the meaning of the Unruh Civil Rights Act. Defendant GHS was an independent contractor with Elk Grove Unified Schools, pursuant to a written contract to perform educational services for Plaintiffs MARQUES, Thomas and Jordan V.M.

12.  Presently, and at all times relevant to this Complaint, POINT QUEST is a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT QUEST is an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to a written contract to perform educational services for Plaintiffs Thomas and Jordan V.M.

13.  Presently, and at all times relevant to this Complaint, Defendant POINT QUEST is and a business establishment within the meaning of the Unruh Civil Rights Act. Defendant POINT QUEST is an independent contractor pursuant to a written contract to

-2-

**Exhibit F**

1   perform educational services for Plaintiffs Thomas and Jordan V.M.

2   14.  Presently, and at all times relevant to this **Complaint, Defendants Rocklin Unified**
3
    **Schools** and **Placer County SELPA** are business establishments within the meaning of
4
    the Unruh Civil Rights Act.
5

6   15.  **Defendant California Department of Education (CDE),** a department of the State

7   of California Presently, was and at all times relevant to this Complaint,  responsible for

8   inspecting and certifying Non-Public Schools such as GHS and POINT QUEST. It is a

9   business establishment within the meaning of the Unruh Civil Rights Act.
10
    16.  **Defendants Bruce Chapman** and  **Handle with Care Behavior Management**
11
    **System, Inc.** Defendant, HWC was a corporation organized under the laws of the State
12
13  of New York, and doing business in California, marketing a system of restraint and training

14  California  teachers  to  restrain  special  needs  children  in  prone  and  other  types  of

15  restraints.

16  17. At  all  times  herein  mentioned,  defendant,  Bruce  Chapman  (hereinafter
17
    "CHAPMAN"), was the agent and employee, owner, alter-ego, president and founder of
18
19  HWC, who developed a patented restraint system marketed through HWC to schools in

20  California for use on "behaviorally challenged" children in California schools, including

21  GHS, which lead to the injuries to the student plaintiffs.

22  18.  At all times herein mentioned, defendant, HWC was a corporation organized under
23
    the laws of the State of New York, and doing business in California, marketing a system
24
    of restraint and training California teachers to restrain special needs children in prone and
25
    other types of restraints.
26

27  At  all  times  herein  mentioned,  defendant,  Bruce  Chapman,  was  the  agent  and

28

- 3 -

**Exhibit F**

employee, owner, alter-ego, president and founder of HWC, who developed a patented restraint system marketed through HWC to schools in California for use on "behaviorally challenged" children in California schools, including GHS, which lead to the injuries to student plaintiffs.

19. Chapman is the inventor of the restraint system that was used at GHS. He utilized his own personal skills and experience in marketing the use of the restraint system to school districts in the State of California for use on special needs children within the state. He personally vetted and certified the instructors who taught his methods to GHS. The actual contracts were entered into with the corporation that Chapman runs out of his single family dwelling in rural upstate New York, called Handle With Care Behavioral Management Systems, Inc.. Chapman personally advocates the use of restraints within California for special needs students. Chapman personally was aware that his restraints should not be used on children who suffered the types of disabilities as were suffered by Max Benson.

20. Chapman personally runs a website entitled "thetruthaboutpronerestraint.com". On the first page, whilst haranguing a mother who was upset because her autistic child had been put into a restraint, Chapman wrote:

> "For purpose of introduction, I am a qualified unarmed use of force/physical restraint/crisis intervention/behavior management expert and leading innovator in the creation of safe restraint including safe prone (face down) and supine (face up) physical restraining technology and training. I have offered expert testimony in many jurisdictions throughout the US, both in the prosecution of abuses and in defense of those accused of abuse...."

21. The webpage "the truth about Bruce Chapman". There it is written:

> "Bruce is an expert in the fields of behavior management, unarmed use-of-force and the use of both physical and mechanical restraints. Throughout his 34 years career, Bruce has developed five separate proprietary training programs...He has personally produced many

- 4 -

**Exhibit F**

1   thousands of HWC Certified Instructors and HWS users ... Bruce has been
2   described as a true innovator in the field of physical and mechanical
    restraint....Bruce has testified as a use of force, behavior management,
3   physical and mechanical restraint expert....He has worked for both Plaintiff
    and Defense counsels as a consultant and expert witness...."
4
5   22. At "Category Archives: California" one finds numerous references to incidents of

6   violence in California schools. Chapman stated on page 3 of "truth about":

7   "If the long term goal is to prepare children to become self-sufficient,
    productive and law abiding citizens, we submit that expressly permitting the
8   wanton destruction of property is completely contrary to that goal.   If
    destroying property is unacceptable behavior by an adult it makes no sense
9   to set a child up for failure in this way...".

10  23. Chapman states that killing of a child by a teacher would be "justifiable homicide"

11  because the teacher would be "suppressing a riot" and "preserving peace." Chapman
12
    states that he believes that a teacher may use deadly force to protect property.
13

14  24. Chapman, personally, is the registrant of the handlewithcare.com website,

15  according to "WHOIS" under which you can determine who is the owner of the website.

16  A copy of the WHOIS page lists Chapman as the registrant, and "Registrant Organization"

17  is left blank.   The HWC website is used to promote Bruce Chapman, personally, as an
18
    expert witness across the United States, which includes California.   Chapman offers his
19
    personal expertise to testify in California courts.
20

21  25. On July 20, 2011, Jennifer Gollan wrote an article for the Bay Citizen, a newspaper

22  then-existing in the San Francisco area.   The article was entitled "Questions are Raised

23  on Restraint Training."   The article references both Chapman and the corporation. Again,

24  utilizing the internet, Chapman shot back a response directed to the editor of a California

25  newspaper, posting entitled "Bay Citizen Comment 1."

26
    26.  In that letter, which is signed "BC", he writes:
27
28  "While I congratulate Bay Citizen for accomplishing the mission of kicking

- 5 -

**Exhibit F**

1

2

3

4

5

6

7

8

HWC out of the {San Francisco Unified School} District, it will ultimately deprive the District's teachers and the special education students they serve from receiving the best crisis intervention training available, anywhere.....I would like to arrange a private meeting with the Board so that I may answer any questions tor concerns they may have about my character and to personally demonstrate HWC's holding methods and safety protocols for them. I will travel to San Francisco at my own expense...."

9

10

27. In response to the Bay Citizen's editors' note back to Chapman, Chapman reiterates:

11

12

13

14

"I sincerely hope that the Board members who were quoted in this article can find the time to meet with me. We are sending my request directly to them."

15

28. That is signed "BC". Not BC as President of HWC, rather, it is him personally.

16

17

18

19

20

29. Throughout the "back and forth" with the California editor about a California reporter who wrote a story in a California newspaper article on restraints, Chapman repeatedly signs his missives "BC", without reference to HWC. Chapman used just his initials "BC" again in another letter sent to Bay Citizen.

21

22

23

"Bay Citizen Comment 2. LAST NIGHT'S 'BEHIND THE SCENES' STORY OF MS. GOLLAN'S SHENANIGANS - THE BACK AND FORTH BETWEEN HER EDITOR AND MYSELF."

24

25

26

27

30. Chapman states he was convinced that California Congressman George Miller's office was responsible for passing information about Chapman's activities to Jennifer Golan, the reporter at Bay Citizen.

28

31. Chapman personally undertook numerous attempts to have that California

- 6 -

**Exhibit F**

1   Congressman investigated by various entities including a complaint to a House

2   Committee, the US Inspector General, and apparently even the entire US Congress.

3   Chapman not only disseminated this via the internet, but he also specifically targeted

4   California residents, including California Congressman Darrell Issa; the NDRN (National

5   Disability Rights Network), which is active in California; P&A. (Protection and Advocacy)

6   "all 50 states" as Chapman writes, the editor of Bay Citizen (the newspaper in California).

7

8   He signed it:

9       32.        "Bruce Chapman,

10               Individually and President of HWC".

11      33. He also posted on the internet an article about Jennifer Gollan, this time signed as

12   the President of HWC, and he speaks of himself "personally" and in very personal detail.

13   Chapman writes:

14

15      "I have been instrumental in derailing legislative efforts by the 'restraint-free

16      movement' in multiple States and jurisdictions...In both submissions to

17      Congress, I cite a constellation of Federal laws, Federal Administrative case

18      law and the laws of all fifty States, including California. {P}. The

19      restraint-free lobbyists who operate in California and throughout the United

20      States will apparently stoop to anything necessary to prevent me from

21      circulating this position paper because they have absolutely no response to

22      it. When you have been as effect as I have been in derailing the dishonest

23      movement - organized by people with no discernible expertise on the

24      subject of restraint - you can expect retaliation.....Did she mention that I told

25      her I was forced to quit school to raise my 9 month old son by myself? I will

26      let my personal history and the integrity of my life's work speak for itself."

27

28

- 7 -

**Exhibit F**

34. Chapman also personally wrote and disseminated via the internet an article that he presented to the Virginia Board of Juvenile Justice which his personal website (aboutbrucechapman.wordpress.com) says "was widely disseminated throughout the US." The website page says:

> "Bruce's first position paper..."

35. The paper to which it refers is an article supporting the use of force by officers in the juvenile justice system. The aboutbrucechapman.wordpress.com website apparently was established after the filing of the original complaint, when Chapman migrated some of the content of his former personal website "brucechapman.com".

36. Chapman also personally authored an article entitled "How HWC holding methods create a calm mind state-faster". This article is posted on website of the California Evidence Based Clearinghouse for Child Welfare (commonly known as "CEBC"). The article refers extensively to his personal expertise, including such statements as:

> "...when I was a young psychiatric technician...I came to realize....I postulated....I also concluded....I later made a distinction between what I call....Some of the holds that I performed with adults....my observations....something I was able to do in making my own anecdotal observations. In my view...."

37. The font is changed at the bottom of the third page where the article begins to tout his "physical intervention method." At the end of the article is the first place he refers to HWC, and he only refers tangentially to the article attached to the website that is used in California as "Information and Resources for Child Professions."

38. Although Chapman's moving papers state that Chapman did not train any GHS staff, that is not "the truth, the whole truth, and nothing but the truth." Subsequent to the

- 8 -

**Exhibit F**

1  filing of this lawsuit, HWC scrubbed its old website and replaced it with a new version in
2  2020.

3    39. In this new website, when navigating around, one comes to a heading entitled
4
5  "WHY HWC". Within that section it states "24/7 SUPPORT," which reads:

6        "Both, (sic) you and your Licensor have direct access to the person who
7        actually created HWC for any technical questions or "how to" questions
8        posed to us by phone or email - 24/7...We can provide expert testimony if
9        it is ever needed..."

10    40. In the former version of the website, captured when research was being done in
11
12  preparing the complaint, the HWC website contained an article entitled "Handle With Care
13  Behavioral Management System", which was used to promote the use of their system in,
14  inter alia, in California schools. After stating on page 2 that "Handle With Care is the life's
15  work of Bruce Chapman" it goes on, on page 3 to reassure California schools that what
16  they are buying is Chapman's personal experience. It states:

17        "Your program will be conducted by a Handle With Care Master Instructor.
18
19        They are the best professional trainers in the country, selected from the
20        thousands of agency instructors that Bruce has personally certified over the
21        last 15 years." (Emphasis added.)

22    41. At the end of that document was a two-page document entitled "Handle With Care
23  Program Outline" A perusal of the program outline - what the trainers were certified by
24  Chapman personally to teach - does not appear to teach anything with respect to children
25  with serious physical disabilities, such as Max Benson had with his fused neck, brain
26  tumor, neurological deficits, low muscle tone and obesity, and for whom a prone hold was
27
28  completely counter-indicated. If Chapman wants to take credit for personally credentialing

- 9 -

**Exhibit F**

1  "Master Instructors" who taught GHS the techniques he personally invented, then he must

2  also accept the responsibility when his personal invention and training led directly to a

3  student's death.

4  42. On page 9, is a one-page document entitled "About Bruce Chapman". This does

5

6  not say "About HWC", rather "About Bruce Chapman." It states:

7      "Bruce Chapman is an inventor and author. ….Bruce created Handle with

8      Care technology from 1973 to 1984 on the locked psychiatric unit of

9      Pennsylvania Hospital in Philadelphia, where he was regarded as the

10     hospital's authority on the prevention and management of aggression and

11     suicide. He discovered HWC's proprietary holding method …in 1974 at the

12     age of 21.   …In 2001, he was granted a groundbreaking U.S. and

13     International Patent for the PRT's integrated safeguard to prevent positional

14     asphyxiation during a prone restraint. He created The Tension/Tension

15     Reduction Cycle…in 1980.  …In 1995, Mr. Chapman created "Plus", a

16     standalone defensive tactics training program …He is a certified instructor

17     for the New Jersey Police Training Commission and provides expert

18     testimony on issues related to the use-of-force. …In 1999, Bruce began a

19     multiyear protect to design and manufacture an innovative line of "modular"

20     protection products ….The SoftCircle project has earned him 11 additional

21     U.S. patents (9 remain pending more are expected.)"

24  43. Chapman then lists his professional affiliations, which for reasons of space are not

25  reiterated here. From this it is clear that Chapman markets the restraint system using his

26

27  own personal experience within the state of California. And from all of the foregoing, it

28  can be seen that Chapman has sufficient minimum contacts, so as to purposefully avail

- 10 -

**Exhibit F**

1   himself of the forum benefits with respect to the use of his restraint system.

2   44. Chapman originally started HWC as a "dba" in or around 1984. A true and correct

3   copy of the original trademark for "PRIMARY RESTRAINT TECHNIQUE (PRT), indicates

4   a date of first use in Commerce in 1984.

5

6   45. The trademark was registered in 1999.

7   46. Prior to the trademark being registered under the name of Bruce Chapman dba,

8   HWC was organized under the laws of New York.

9   47. Pages from the New York Department of State show that the initial Department of

10  State filing date was February 23, 1998.

11  48. The trademark was not cancelled for eight years after Chapman incorporated.

12

13  49. In 2006, the corporation filed for the trademark.

14  50. The New York Department of State shows that the Chief Executive Officers are

15  "Bruce Chapman & Hilary Adler" and that the Principal Executive Office is 184 McKinstry

16  Rd., Gardiner, New York 12525.

17  51. Page 2 shows that the corporation has 200 shares of no par value stock.

18  52. The location of the "principal executive office" is a single-family residence in rural

19  upstate New York.

20

21  53. This is a single family dwelling located in an area zoned for rural agriculture.

22  54. It is not zoned for commercial purposes.

23  55. The residence and adjoining property is own by Bruce Chapman and Hilary Adler

24  - the two Chief Executive Officers of the corporation.

25  56. The assessment rolls from ulstercountyny.gov website, showing on page 1, the

26  value of the residence assessed at $503,000 and on page 2, the value of the adjacent

27  vacant land at $111,000.

28

- 11 -

**Exhibit F**

57. Chapman and Adler, who doubles not only as the Vice-President of HWC, both also as Chapman's and HWC's attorney, have filed lawsuits attempting to recover monetary damages on behalf of Bruce Chapman, personally, that normally would be assets of the corporation.

58. In a published decision at 546 F.3d 230 (2008), one finds Chapman as the lead plaintiff, and HWC is also a plaintiff.

59. Chapman filed suit against numerous public and private officials - including such people as the former president of Cornell University - in his individual capacity. The first paragraph of the court's opinion (page 3 states:

> "Plaintiffs-appellants Bruce Chapman and Handle With Care Behavior Management System, Inc., (collectively "HWC") market a training program ("Handle With Care") that teaches individuals a safe technique for restraining people."

60. In another action, Bruce Chapman filed a qui tam action against various institutions and individuals in connection with his competitor who was the subject of the previous lawsuit.

61. Again he is represented by Adler.

62. It is unknown if the complaint bore a different caption, but the court's opinion lists the plaintiff as "United States ex rel. Bruce Chapman." Throughout the complaint, the court refers to Chapman and HWC as one and the same entity.

> "Plaintiff-Relator Bruce Chapman ('plaintiff' or 'Chapman') filed this qui tam action ...." "Chapman is president of Handle With Care Behavior Management System, Inc, ("HWC"), which markets and sells behavior management and physical restraint programs. In the earlier action noted

- 12 -

1
2
3
4
5
6
7

above, he asserted federal copyright and antitrust causes of action...This alleged policy of requiring all New York State child care providers and juvenile facilities to use the {competitor's} method focused Chapman's HWC method from the market...." .... "In the present lawsuit, Chapman alleges five types of false claims....Chapman alleges....Finally, Chapman alleges...."

8

63. The action was dismissed.

9
10
11
12

64. It can be seen that on Bruce Chapman's website (truthaboutbrucechapman.wordpress.com) there is yet another indication that Chapman does not regard HWC to be an entity separate from himself.

13
14

65. The GAO Investigation 2 comment posted by Chapman, where he writes on page one:

15
16
17
18
19
20
21

"We allege that Congressman Miller, individually or through his staff, have, for a second time, abused his/their authority and have engaged in acts of harassment and predatory conduct against a United States citizen, small business owner and taxpayer for having the audacity to exercise my first amendment right to comment on proposed (H.R. 1381) legislation." (Emphasis added.)

22

66. Chapman identifies the corporation as belonging to him. He continues:

23
24
25
26
27

"...Gollan's request for an interview and Gollen's final work product, best characterized as a smear attack is another example of the continued harassment and retaliation to which I and my company have been subjected to by Congressman Miller...."

28

**Exhibit F**

1

## JURISDICTION AND VENUE

2

3

4

5

67. Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing against CDE, ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA on March 24 , 2019 for injuries and claims herein stated against said public entities.

6

7

68. Plaintiffs sue all Defendants in El Dorado County because all of the tortious acts occurred at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

8

9

10

11

12

13

14

15

16

17

18

19

69. Plaintiffs are informed and believe that each of the LEA and NPS Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and at all times acting and performing, or failing to act or perform, within the course and scope of each similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

20

## GHS EMPLOYEES:

21

22

23

24

25

26

27

70. At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs,

28

- 14 -

**Exhibit F**

1  activities, services, training, staff; and all of whom have direct responsibility for ensuring

2  the safety and well-being of their students, and for ensuring compliance with state and

3  federal laws. MEYERS, KELLER, RAMSEY and DOE defendants allowed and

4  encouraged staff at GHS to intentionally and unlawfully assault and batter Plaintiff

5  MARQUES.

6

7  71. At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants

8  MEYERS was the principal and member of the board of GHS, KELLER was the executive

9  director of GHS, RAMSEY was an administrator for GHS, CHRISTENSEN was an

10  administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were

11  officers, directors, and administrators of defendant GHS, all of whom have authority and

12  control over GHS's programs, and facilities, including policies, practices, procedures,

13  programs, activities, services, training, staff; and all of whom have direct responsibility for

14  ensuring the safety and well-being of their students, and for ensuring compliance with

15  state and federal laws. MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN, Noel

16  COLLIER (Special Education Teacher),  and unknown DOE defendants allowed and

17  encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas and

18  Jordan V.N.

19

20

21  72. At all times herein mentioned, as to Plaintiff MARQUES defendants Delores

22  ZOMBURY (hereinafter "ZOMBURY"), Vince ANDERSON (hereinafter "ANDERSON"),

23  Ashley ROBB (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY

24  (hereinafter "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers

25  (hereinafter "CHAMBERS") Kera BRUCE (Hereinafter "BRUCE" , and DOE defendants

26  were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted

27  MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and

28

1  control of the classroom, including policies, practices, procedures, facilities, and activities

2  within the classroom. They are sued in their individual capacity and in their capacity as

3  employees of GHS.

73. The names and capacities, whether individual, corporate, otherwise, sued herein

as DOES 1-100, inclusive, are presently unknown, and Plaintiff will amend the Complaint

to insert them when ascertained.

### POINT QUEST EMPLOYEES

74. Bill Tollestrup, Interim Director of El Dorado Hills, Bill Weber, Director of El Dorado

Hills, Nicole DOE, Jennifer DOE and DOE defendants were employed as administrators,

teachers, and aides at POINT QUEST, who intentionally and unlawfully assaulted Jordan

V.M. and unlawfully inflicted corporal punishment upon him. They had authority and

control of the classroom, including policies, practices, procedures, facilities, and activities

within the classroom. They are sued in their individual capacity and in their capacity as

employees of POINT QUEST.

### ROCKLIN UNIFIED SCHOOL EMPLOYEES

75. Kristain ROYER, Program Specialist, Beth DAVIDSON, Assistant Director of

Special Education, and DOE defendants were employed as administrators at RUSD, who

knew or should have known that POINT QUEST staff had intentionally and unlawfully

assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had

authority and oversight control of the program at POINT QUEST school, including policies,

practices, procedures, facilities, and activities within the classroom. They are sued in their

individual capacity and in their capacity as employees of RUSD.

- 16 -

**Exhibit F**

1

**PLACER COUNTY SELPA EMPLOYEES**

2

3

4

5

6

7

8

9

76. Kristi Gregersen, Program Specialist, Troy TICKLE, Director, Placer County SELPA, and DOE defendants were employed as administrators at Placer County SELPA, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

10

11

12

13

14

15

16

17

77. Plaintiffs MARQUES, Thomas, and Jordan V.M. were placed at GHS and POINT QUEST by their respective school districts after representations were made to the minors' parents about both schools special skills, facilities and safe environment appropriate for their children. The placement was pursuant to each student's Individual Education Plan (IEP), as a result of their diagnosis as children with disabilities, because the school districts themselves determined they were unable to provide a Free Appropriate Public Education.

18

19

20

21

22

23

78. Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER COUNTY SELPA have failed to adequately supervise their employees that resulted in the foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that staff who came into contact with Plaintiffs would provide an environment free of abuse and neglect.

24

25

26

27

79. California law, including Cal Const, Art. I § 28, has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations necessary for their protection. Defendants also had

28

- 17 -

**Exhibit F**

1   a duty to use reasonable measures to protect students from foreseeable injury at the
2   hands of third parties acting intentionally or negligently.

3       80. Defendants have violated their statutory duties to Plaintiff, including their
4   supervisory duties created under California Education Code sections 44807 and 44808.
5
6       81. California Penal Code section 11166 which required them to report any knowledge
7   of a child whom the mandated reporter knows or reasonably suspects has been the victim
8   of child abuse or neglect to the agency immediately or as soon as is practically possible
9   by telephone and the mandated reporter shall prepare and send, fax, or electronically
10  transmit a written follow up report thereof within 36 hours of receiving the information
11  concerning the incident.
12
13      82. Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan
14  V.M., including multiple violations of California Education Code sections 56521.1 and
15  56521.2 (and its predecessor legislation) that, in pertinent parts, suggest alternative
16  interventions and/or prohibits the use of any interventions that:

17          1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply
18          an amount of force that exceeds that which is reasonable and necessary under the
19          circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation,
20          or that can be expected to cause excessive emotional trauma.
21

22      83. Defendants have violated their statutory duty under California Penal Code section
23  11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined
24  as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."
25
26      84. Defendants GHS and POINT QUEST violated its statutory duty under California
27  Education Code section 260 by failing to enact an adequate formal or informal policy to
28  ensure that GHS and POINT QUEST provided a learning environment free from

- 18 -

**Exhibit F**

1  discrimination based on the characteristics provided in California Education Code section

2  220, specifically disability.

3  85. GHS was closed in 2018 after the State of California revoked their license to

4
5  operate following the death of student Max Benson who was subjected to a restraint that

6  killed him.

7  86. After GHS was closed it was, allegedly, sold to POINT QUEST, and Jordan V.M.

8  then attended Defendant POINT QUEST.

9  87. When POINT QUEST took over GHS facilities and educational duties, Gloria V.M.

10 was assured by the Rocklin Unified School staff, Placer County SELPA, and POINT

11 QUEST staff, expressly, by inference, or omission, that the previous policies and practices

12
13 employed by GHS were, not only no longer employed, she was assured that the GHS

14 employees were gone and would not be rehired at POINT QUEST.

15 88. For more than a decade, the California Department of Education ("CDE"), school

16 districts, county offices of education and Special Education Plan Areas ("SELPAs") -have

17 known that using restraints on students, particularly in response to predictable

18 disability-related behavior, carries serious risks for their physical and emotional health.

19
20 89. There have been many reports of students with behavioral challenges dying or

21 sustaining serious injuries due to abusive use of restraint systems, such as the Handle

22 With Care system developed by Defendant Bruce Chapman. It is also well-known that

23 restraints are disproportionately used against children with disabilities.

24 90. Despite this knowledge, nonpublic schools like Defendants GHS and POINT

25 QUEST and their respective staffs continued to use such restraints frequently, in response

26
27 to predictable behaviors that did not constitute an immediate or serious threat to the

28 student or others, for extended periods of time, on students whose disabilities elevated

-19-

**Exhibit F**

1  the risk of using restraints, and with excessive force.

2  91. They could do so because the CDE, and the Local Educational Agency (LEA)

3
4  Defendants abdicated their responsibilities to monitor and supervise GHS and POINT

5  QUEST and ensure their compliance with state and federal laws prohibiting discrimination

6  and the improper use of restraints.

7  92.    The CDE continued to certify GHS continues to currently certify POINT QUEST,

8  and the LEA Defendants continued to contract with and place their students with

9  disabilities in the respective schools.

10  93. Plaintiff students with developmental and other disabilities whose local educational

11  agencies placed them at GHS and POINT QUEST pursuant to their Individualized

12
13  Education Plans ("IEP")

14  94. Each Plaintiff Student attended GHS sometime between 2006 and 2018, where its

15  administrators and staff subjected them to excessive and harmful restraints and other

16  aggressive physical interventions in response to known behaviors associated with their

17  disabilities, resulting in physical and emotional abuse and injury, and in the case of one

18  other student, death.

19
20  95. GHS was, and POINT QUEST is, a nonpublic school-as that term is defined in Cal.

21  Ed. Code § 56034-which contracted with the LEA Defendants to provide special education

22  services to public school students with disabilities in exchange for state and federal

23  educational funding.

24  96. As required by law, GHS  and POINT QUEST entered into Master Contracts with

25  the LEA's, as well as an Individual Services Agreement for each student placed there.

26
27  97. Each of the Plaintiff Students' IEP's included a Behavioral Intervention Plan ("BIP")

28  which described the student's known disability-related behaviors and the intervention

**Exhibit F**

1  strategies and positive behavioral supports educators should use to prevent or respond
2  to those behaviors.

3  98. Despite legal requirements (discussed below) and Defendants' knowledge of the
4  dangers associated with restraints to students' physical and emotional health, GHS and
5
6  POINT QUEST administrators and employees engaged in a policy and practice of using
7  restraints as a substitute for the positive interventions detailed in the students' BIPs in
8  response to predictable behavior that did not pose a clear and present danger of serious
9  physical harm to the student or others. GHS and POINT QUEST used restraints against
10  its students frequently, for periods of time that were longer than necessary, and with
11  excessive force.
12

13  99. These restraints-including prone restraints- in which the child is placed face down
14  on the floor with one or more adults applying force from above to keep the child's body
15  immobile-frequently lasted over an hour.

16  100. Some students were restrained frequently, sometimes more than one time each
17  day.

18  101. The restraints and other aggressive physical interventions inflicted by GHS and
19
20  POINT QUEST caused the Plaintiff Students physical and emotional injuries.

21  102. GHS and POINT QUEST administrators were not only aware of the abuse, but
22  encouraged it and were responsible for the school's policy and practice of using frequent,
23  excessive, harmful and lengthy restraints as a substitute for positive behavioral
24  interventions in response to students' predictable, disability-related behaviors.

25  103. GHS and POINT QUEST did not provide adequate training in positive behavioral
26  interventions, instead relying on Defendant Bruce Chapman's patented restraint system,
27
28  Handle With Care Behavioral Management Systems, Inc. which was associated with

- 21 -

**Exhibit F**

1 | numerous abuses by educational professionals on students with behavioral challenges.

2 | 104. GHS and POINT QUEST training in the HWC method ignored requirements of

3 | state and federal law and did not provide proper warnings regarding the risks associated

4 | with restraining students or safeguards for monitoring and responding to signs of distress.

5 |

6 | 105. Moreover, GHS and POINT QUEST took significant measures to conceal its

7 | illegal use of restraints and child abuse from parents and the LEAs with which it

8 | contracted by failing to provide required reports to the parents and the State of California.

9 | 106. Prior to the childen's placement, GHS misrepresented orally, in enrollment

10 | documents, and in the children's IEP that the school focused on proactive, positive

11 | behavioral interventions and that corrective behavior would be "calm", "brief", and

12 | "respectful."

13 |

14 | 107. The HWC Intervention Statement that parents had to sign as part of the enrollment

15 | packet emphasized positive intervention and "the 3-step prompt" which "entails a verbal

16 | request, followed by staff modeling and finally hand over hand with children who may have

17 | difficulty following directions . . . " It represented that a restraint would be used only if the

18 | child appeared to be "a physical danger to themselves or others around them".

19 |

20 | 108. GHS used the HWC terminology in referring to the most dangerous restraint-a

21 | prone restraint-as a "neutral" restraint. *Id.* These misrepresentations were repeated in the

22 | students' BIPs developed as part of the IEP process and a part of the agreement between

23 | the parent/student, the LEA, and GHS.

24 | 109. When a student was restrained, GHS frequently failed to complete a Behavioral

25 | Emergency Report ("BER"), place the BER in the student's file, send it to the LEA, or

26 | notify the student's parent, as required by law and GHS's Master Contracts with the LEAs.

27 |

28 | Nor did GHS administrators or staff report the regular, systemic child abuse they

**Exhibit F**

witnessed and participated in at the school, despite the requirement to do so as mandated reporters.

110. GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.

111. However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to place vulnerable students in its care. GHS would still be abusing its students were it not for the death of a 13-year-old student who died after he was held in a prone restraint for almost two hours on November 28, 2018.

112. Plaintiff Thomas V.M. was a disabled student, placed at GHS on August 6, 2018, because of his diagnosis of his disability. Plaintiff Jordan V.M. was a disabled student, placed at GHS on February 22, 2018, because of his diagnosis of disability. All plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their educational experience and abilities.

113. Because of the disruption that affected other students, they were frequently placed in such restraints, which included but was not limited to, the imposition of restraints that constituted physical child abuse, battery, and assault.

114. Referring to these restraints as though they were normal and accepted ways of disciplining plaintiffs, Defendant administrators, teachers and assisting staff, as individually identified below, preyed on plaintiffs because of their disability related conduct.

115. These defendants assaulted and battered plaintiffs repeatedly rather than following the BIPs.

116. The LEA administrators, by and through their agency with GHS  and POINT

- 23 -

1    QUEST administrators tasked unqualified and inadequately trained staff with supervising

2    plaintiff students, who often failed to document and report incidents of abuse, and failed

3    to take reasonable steps to prevent further abuse.

4
     117. Plaintiffs, like other students who were also subjected to such conduct, would
5
6    attend class and when a student acted consistently with their predictable behaviors stated

7    in their individual BIP and IEP (and the reason(s) why they were placed at GHS  and

8    POINT QUEST) or failed to follow the directions of the GHS  and POINT QUEST staff as

9    individually described below, they would be subjected to painful restraints in full and open

10   view of fellow students.

11
     118. Each plaintiff had specific conduct that was identified in their BIP, for which, each
12
13   plaintiff had a set of less restrictive measures to be taken before a "hands on" physical

14   intervention such as painful restraints would be exercised.

15   119. Plaintiffs witnessed other students treated in the same way in their respective

16   classes. The observation of such torturous conduct to other students and themselves

17   caused Plaintiffs who were in their immediate presence to experience fear and anxiety

18   such that they were terrorized in anticipation that they too might be hurt in the same way.

19
     120. As to MARQUES, the documented abuse occurred from as early as December 18,
20
21   2006, when Plaintiff MARQUES began attending GHS through March 19, 2008, when he

22   was removed. For Thomas and Jordan V.M., it began when they first began to attend

23   GHS on February 22, 2018, and lasted until they were removed on or about the end of

24   December 2018 and officially, in January, 2019.

25   121. Shortly after beginning to attend Defendant POINT QUEST, Thomas was
26
     assaulted, battered, and restrained in the same fashion as described below. He was
27
28   removed on or about October 1, 2019 and officially October 22, 2019.

**Exhibit F**

1    122. No efforts were shown to protect plaintiffs from the continued abuse by the

2    schools' administrations and, in fact, when complaints were made by plaintiff's respective

3    parents, the administration of both schools backed their employees alleging the children

4    were at fault and their employee's actions were necessary.

5

6    123. Defendants GHS and POINT QUEST, and their individual staff members as

7    particularly described below, carried out these series of abusive acts upon Plaintiffs and

8    other students, terrorizing them throughout their time at the school generating Plaintiffs'

9    deeply held fears of reoccurrence.

10    124. The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff

11    directly abusing him have been compounded by all the Defendants' (as individually named

12    below) willful failure to adequately report, document, respond to, and prevent the abuse.

13

14    125. Even after each of the plaintiffs' parents approached the defendants as described

15    below, requesting information about the abuse that would explain the children's injuries,

16    conduct at home, and their account of events, defendant administrators at the respective

17    schools failed to provide any meaningful information regarding what transpired in their

18    children's classroom, covering up their conduct by providing false accounts of the events.

19

20    126. Plaintiffs Thomas and Jordan V.M. are in another school in Washington State.

21    127. The alleged acts and Plaintiffs' damages are such that proceeding through due

22    process before the Office of Administrative Hearings would be both futile and irrelevant.

23    128. Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures

24    because they were assaulted and are not seeking the types of remedies available under

25    the IDEA, rather seeking remedies for physical and emotional damages resulting from

26    being assaulted.

27

28    129. In addition, Plaintiff MARQUES is an adult and outside of the educational system.

- 25 -

**Exhibit F**

1   130. The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the

2   State of California in a private religious school.

3   131. From records to be obtained by Plaintiffs, there were restraint incidents involving

4
    Plaintiffs and they expressly reserve their right to amend this Complaint to include
5
6   additional facts and/or claims as discovery in this case proceeds.

7                              **OPERATIVE FACTS**

8   132. Plaintiffs incorporate by reference all preceding paragraphs as though fully set

9   forth herein.

10       **AS TO PLAINTIFF MARQUES**

11
    133.  Over a one-and-one-half year period as specifically set forth below in each cause
12
13  of action, Defendants ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA,

14  CHAMBERS and DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES

15  by grabbing him, pushing or otherwise forcing him to the floor and, in painful positions,

16  pinning all four appendages for various periods of time, immobilizing him, including as

17  punitive measures. All were either for an unnecessarily prolonged period of time or had

18
    failed to utilize the less restrictive measures set forth in his BIP for predictable behaviors
19
20  related to his disability.

21  134.   MARQUES was a student at GHS from 2006 to 2008.  He was referred to GHS

22  by Elk Grove School District employees.

23  135.  MARQUES had both an Individual Education Plan (EIP) and a Behavioral

24  Intervention Plan (BIP) at all relevant times herein.

25  136.   Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON,

26
    ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants failed to file
27

28
                              - 26 -

                                        **Exhibit F**

1   Behavioral Emergency Reports or document injuries as required by law, so all of the dates

2   of assaults all are unknown to MARQUES at the present time.

3   137.   Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16,

4   2007, April 23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March

5   19, 2008, set forth in greater detail below.

6

7   138.   On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce

8   and Ashley Robb, put MARQUES in a restraint for 12 minutes because he failed to stand

9   appropriately and when escorted from the line he was standing in, kicked a student and

10   Bruce. He was restrained "per CPI". Both Dolores ZOMBURY and David Chapman

11   participated in the restraint.

12

13   139.   On December 18, 2006, at 1:45 PM Ashley Robb and Kera Bruce instituted an

14   eight minute restraint after MARQUES had been found to have a toy belonging to another

15   student. What he was told to return the toy he began to kick his desk and a filing cabinet.

16   He was placed in a basket restraint.

17   140.   On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by

18   ZOMBURY, after he refused to sit down and began throwing pencils and calling children

19   names.

20

21   141.   On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores

22   ZOMBURY for five minutes after he was told to put a pointer down and had slapped it on

23   the desk of another student. When he was directed to sit down he ran around the room

24   and was restrained.

25   142.   On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes

26   by Dolores ZOMBURY and subsequently by a teacher's aide known only as "Laure", when

27

28   MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the

- 27 -

**Exhibit F**

1    teacher and was taken to the "corner".

2    143.    On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by

3    ZOMBURY after another student had pushed him, rubbing "snot" on his jacket and in

4

5    response he pushed that student down.

6    144.    On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began

7    swearing and started to run towards another student after he disregarded a request by the

8    instructor to put his head down on his desk. The staff involved were ZOMBURY and

9    Chambers.

10   145.    On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor

11   Vince Anderson, because he failed to follow directions and began yelling in the presence

12
     of his mother.
13

14   146.    On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants

15   restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

16   147.    In this restraint, MARQUES was pushed to the ground and placed in a position

17   for an extended period of time, while his arms were pulled behind his back. GHS staff sat

18
     at his back while he was in this position, increasing his pain and making it difficult for him
19

20   to move.

21   148.    This incident arose when another child assaulted MARQUES with a rock and

22   MARQUES defended himself.

23   149.    When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises

24   to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks

25
     as a result of these restraints.
26

27   150.    MARQUES subsequently suffered panic attacks, night-terrors, startles,

28   depression and self-loathing as a result of these restraints.

- 28 -

**Exhibit F**

1    151.   MARQUES was abused on additional occasions while attending GHS.

2    152.   MARQUES will seek leave to allege these dates according to proof when furhter

3    information becomes available through the discovery process.

4
5    153.   At all relevant times, MARQUES.'s behaviors were known and predictable and

6    had previously been addressed in his Behavioral Intervention Plan.

7    154.   The restraints imposed upon MARQUES, as herein alleged, constituted child

8    abuse (Penal Code Section 273a), corporal punishment (Penal Code Section 273d) and

9    battery (Penal Code Sec. 242), and torture (Penal Code Section 260) prohibited by

10   California law.

11   **AS TO THOMAS V.M.**

12
13   155.   Thomas V.M. was restrained by GHS and POINT QUEST staff on many

14   occasions the precise details are neither known to he nor his mother at this time, other

15   than that described below.

16   156.   Thomas V.M. was restrained by a staff member named "Jennifer" when

17   attending POINT QUEST and, as a result, his mother immediately withdrew him from the

18   school.

19
20   157.   Thomas V.M. knows that "Jennifer"was a previous staff member at GHS.

21   **AS TO JORDAN V.M.**

22   158.   Jordan V.M. was restrained by GHS staff on many occasions the precise details

23   are neither known to he nor his mother at this time.

24

25   **FIRST CAUSE OF ACTION**

26
27   AS TO PLAINTIFF MARQUES Against GHS;
     AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,

28

- 29 -

**Exhibit F**

1

2

CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;
and DOES 1-100.
(Violation of California Civil Code §§ 51, *et seq.*)

3

4

5

159.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

6

7

8

9

160.    Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major life activities of learning.

10

11

12

13

161.    Plaintiffs THOMAS and JORDAN V.M. are persons with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  They had been diagnosed as Autistic.

14

15

16

162.    Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

17

18

19

20

163.    GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

21

22

23

164.    GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities, privileges, advantages, or accommodations.

24

25

26

27

165.    Plaintiffs were not provided with the services, facilities, privileges, advantages and accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals without disabilities.

28

166.    The discipline methods, behavior standards and criteria employed by GHS and

- 30 -

**Exhibit F**

POINT QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his disabilities.

167. GHS and POINT QUEST failed to make reasonable modifications to their educational and behavioral intervention methods and staff training that were necessary to afford students with disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services, facilities, privileges, advantages and accommodations.

168. The actions and failures to act of GHS and POINT QUEST violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections 12181, et seq. As such, Defendant's actions also constituted a violation of the Unruh Act under Cal. Civ. Code § 51(f).

169. The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

170. Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

171. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION

Violation of Cal. Civ. 51.7 Ralph Civil Rights Act
AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

172. Plaintiffs incorporate, by reference herein, all preceding paragraphs as though

**Exhibit F**

1  fully set forth herein.

2  173.   Defendants in doing the acts described above violated Plaintiffs' rights under

3  the Ralph Civil Rights Act.

4
   174.   Plaintiffs have the right to be free from any violence, or intimidation by threat of
5
6  violence, committed against their persons or property because of any characteristic listed

7  or defined in subdivision (b) or (e) of Section 51, because another person perceives them

8  to have one or more of those characteristics.

9  175.   In committing the acts described above, all defendants have violated Plaintiffs'

10 rights by subjecting them to violence and intimidation.

11
   176.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN
12
13 UNIFIED SCHOOLS were the product of joint action between public entities and

14 individual employees.

15 177.   Defendants are liable to Plaintiffs for each and every offense for actual

16 damages and multiple damages of up to three times the actual damages incurred, but

17 in no case less than $4000 per offense pursuant to California Civil Code section 52.

18
   178.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.
19

20 **THIRD CAUSE OF ACTION**

21 For Interference with Exercise of Civil Rights in
   Violation of California Civil Code Section 52.1
22 AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100
   AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
23 CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

24 179.   Plaintiff incorporate, by reference herein, all preceding paragraphs , as though

25 fully set forth herein.

26
   180.   California Civil Code 52.1 provides that it is unlawful to interfere with the
27

28
   - 32 -

   **Exhibit F**

1   exercise or enjoyment of any rights under the Constitution and the laws of this state and

2   the United States by attempted use of threats, intimidation or coercion.

3   181.   The California Constitution establishes the right to a free public education to all

4   students on an equal basis. *Butt v. California*, 4 Cal. 4th 668, 685 (1992).

5

6   182.   California Civil Code section 43 guarantees the right of every person to be free

7   from bodily restraint or harm and personal insult.

8   183.   In doing the things herein alleged, Defendants intentionally interfered with and

9   attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

10  184.   Defendants acted violently against Plaintiff, thereby preventing him from

11  exercising his rights.

12

13  185.   Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

14  186.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN

15  UNIFIED SCHOOLS were the product of joint action between public entities and

16  individual employees.

17  187.   The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY

18  SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as

19  herein alleged, was a substantial factor in causing said harm to Plaintiff.

20

21  188.   Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by

22  using a physical restraint technique that impaired Plaintiffs' ability to breathe; placing

23  Plaintiffs in a face down position with the pupil's hands held or restrained behind the

24  pupil's back; and by using a behavioral restraint for longer than was necessary to contain

25  the behavior that allegedly posed a clear and present danger of serious physical harm

26  to the pupil or others.

27

28  189.   Defendant employees of GHS and POINT QUEST acted with conscious

**Exhibit F**

1  disregard of Plaintiffs' rights and the fact that their conduct was certain to cause injury

2  and/or humiliation to Plaintiffs. Plaintiffs are informed and believe that Defendant

3  employees of GHS and POINT QUEST intended to cause fear, physical injury and/or

4  pain and suffering to Plaintiff.  Plaintiff is therefore entitled to recover punitive and

5  exemplary damages.

6

7  190.    Plaintiff is also entitled to actual and/or statutory damages, as well as

8  reasonable attorneys' fees and costs as set by the Court.

9  ### FOURTH CAUSE OF ACTION

10  (Violation of California Education Code §§ 200, 201, 220, and 260 et seq. -
    Against Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND
11  ROCKLIN SCHOOL DISTRICT MEYERS, KELLER, RAMSEY, ZOMBURY,
12  ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS

13  191.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

14  fully set forth herein.

15  192.    Plaintiffs are individuals with disabilities.

16

17  193.    At all times relevant to this complaint, Defendant GHS was an educational

18  institution providing education to students from kindergarten through twelfth grade and

19  receiving financial assistance from the State of California.

20  194.    Defendants discriminated against Plaintiff on the basis of his disability by

21  subjecting him to physical and emotional abuse in response to disability-related behavior.

22  195.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN

23  UNIFIED SCHOOLS were the product of joint action between public entities and

24  individual employees.

25

26

27

28

- 34 -

**Exhibit F**

1    196.    The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY

2    SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as

3    herein alleged, was a substantial factor in causing said harm to Plaintiff.

4
     197.    As a proximate cause of the actions of Defendants herein, Plaintiff is entitled
5
6    to damages in an amount according to proof and reasonable attorneys' fees and costs.

7

8                                **FIFTH CAUSE OF ACTION**

9           Assault and Battery Pursuant to California Penal Code Section 206
10     AS TO PLAINTIFF MARQUES Against MEYERS, KELLER, RAMSEY, ZOMBURY,
        ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOES 1-100
11                     AS TO PLAINTIFFS THOMAS AND JORDAN V.M.
              against defendants MEYERS, KELLER, RAMSEY, "JENNIFER"DOE
12
13    198.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

14    fully set forth herein.

15    199.    MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE,

16    CORY, BRYNA, CHAMBERS, MEYERS, KELLER, RAMSEY, "JENNIFER"DOE, and

17    DOE defendants , with the intent to cause cruel or extreme pain and suffering for the

18    purpose of persuasion, or for a sadistic purpose, inflicted significant injury upon Plaintiff
19
20    by repeatedly assaulted Plaintiff throwing him to the ground and causing bruises,

21    contusions and lacerations.

22    200.    As a result, Plaintiff suffered physical and psychological injuries.

23    201.    Defendants acted with the intent to cause injury and that action and intention

24    was despicable, done with a willful and knowing disregard of the rights of Plaintiff.

25

26

27

28
                                        - 35 -

                                                                    **Exhibit F**

202.   Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

203.   Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

204.   Defendants' conduct in intentionally assaulting and restraining Plaintiff knowing of his disability condition is malicious and outrageous such that exemplary damages should be awarded.

205.   WHEREFORE, Plaintiff prays for judgment for damages according to proof.

### SIXTH CAUSE OF ACTION

### ASSAULT AND BATTERY

i)Against Defendants MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, "JENNIFER DOE," DOES 1-100

206.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

207.   In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs MARQUEZ, Thomas and Jordan V.M. to suffer harmful or offensive contact.

208.   As a result of said conduct of said defendants, Plaintiffs MARQUEZ, Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

-36-

**Exhibit F**

1    209.  In doing the things herein alleged, said defendants threatened to touch
2    MARQUEZ, Thomas and Jordan V.M. in a harmful or in an offensive manner.

3    210.  At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas
4    and Jordan V.M. that said defendants were about to carry out the threat.
5

6    211.  At all times herein mentioned, MARQUEZ, Thomas and Jordan V.M. did not
7    consent to the conduct of said defendants.

8    212.  MARQUEZ, Thomas and Jordan V.M. suffered harm, as herein alleged.

9    213.  The aforementioned conduct of said defendants was a substantial factor in
10   causing MARQUEZ, Thomas and Jordan V.M. harm.The conduct of said defendants,
11   caused MARQUEZ, Thomas and Jordan V.M. to be apprehensive that said defendants
12
     would subject MARQUEZ, Thomas and Jordan V.M.  to further intentional invasions of
13
14   their right to be free from harmful and offensive contact, and demonstrated that at all
15   times material herein, said defendants had a present ability to subject MARQUEZ,
16   Thomas and Jordan V.M. to an intentional offensive and harmful touching.

17   214.  Said defendants' unlawful conduct, as herein alleged, was a substantial factor
18
     in causing MARQUEZ, Thomas and Jordan V.M. to suffer physical and emotional injury,
19
     and future physical and emotional injury, all in an amount within the jurisdiction of the
20
21   court according to proof at trial.

22   215.  At all relevant times, said defendants acted with conscious disregard of
23   MARQUEZ, Thomas and Jordan V.M. rights, safety, physical well-being and feelings.
24   Said defendants also acted with the knowledge of, or with reckless disregard for, the fact
25   that their conduct was certain to cause injury and/or humiliation to MARQUEZ, Thomas
26
     and Jordan V.M. Said defendants intended to cause fear, physical injury and/or pain and
27
28   suffering to MARQUEZ, Thomas and Jordan V.M.

- 37 -

**Exhibit F**

216.   By virtue of the foregoing, the estate of MARQUEZ, Thomas and Jordan V.M. are entitled to recover punitive and exemplary damages from individual and non-public entity defendants according to proof at trial. Estate of MARQUEZ, Thomas and Jordan V.M. make no claim for punitive damages against the named defendants.

## SEVENTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(ASSERTED BY Gloria V.M. against all RUSD, PLACER COUNTY SELPA, GHS
AND RUSD ADMINSTRATORS defendants,
Thomas and Jordan V.M. against defendants  David CHAMBERS, Susan Jane
BATTLE, "Cory" Doe, Cory QUINCEY, Byrna QUINCEY, Noel COLLIER,  Ashley
ROBB, Dolores ZUMBURY, Vince ANDERSON, Nicole Doe, Jennifer Doe.

217.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

218.   In doing the things herein alleged, the conduct of said defendants was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

219.   Said defendants inflicted actual injury and/or acted with reckless disregard of the probability that Plaintiffs Gloria, Thomas and Jordan V.M. would suffer emotional distress, knowing that the children who was restrained, including Gloria, Thomas and Jordan V.M., were present when the conduct occurred.

220.   The conduct of said defendants, as herein alleged, was a substantial factor in causing Gloria, Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

221.   Said defendants knew or should have known that Gloria, Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be,

- 38 -

**Exhibit F**

1  physically forced into prolonged prone restraints, standing, seated, settled and/or small

2  child restraints.

3  222.   Said defendants' knowing disregard for the safety of Gloria, Thomas and Jordan

4  V.M. and said defendants' deliberate failure to monitor and control their behavior towards

5  exceptional needs students, such as Gloria, Thomas and Jordan V.M. caused Thomas

6  and Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS

7  and POINT QUEST.

8

9  223.   Said defendants' conduct was extreme and outrageous.

10

11  224.   Said defendants acted willfully and wantonly, and with reckless disregard for

12  plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Gloria,

13  Thomas and Jordan V.M. would suffer emotional distress.

14  225.   The outrageous conduct of said defendants described herein was willful and

15  malicious and was performed with conscious disregard for the rights, safety, physical

16  well-being and feelings of the Gloria, Thomas and Jordan V.M. As a result, Gloria,

17  Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual

18  and non-public entity defendants in a sum according to proof.

19

20  **EIGHTH CAUSE OF ACTION**

21  FALSE IMPRISONMENT CONSPIRACY TO COMMITT FALSE IMPRISONMENT

22  ASSERTED by Thomas and Jordan V.M. against all individual defendants

23  226.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

24  fully set forth herein.

25

26  227.   Said defendants, in concert with one another, did intentionally and unlawfully,

27  and conspired to, exercise force, threat, implied threat of force, or duress, to restraint and

28

- 39 -

**Exhibit F**

confine Thomas and Jordan V.M. , and deprive them of their freedom of movement, when said defendants committed the acts described herein.

228.   Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

229.   As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and emotional harm, as herein alleged.

230.   That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm to Thomas and Jordan V.M.

231.   The outrageous conduct of the said defendants was willful and wanton, and was performed with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and Jordan V.M.

232.   As a result, Thomas and Jordan V.M.  are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof at time of trial.

## NINTH CAUSE OF ACTION

### NEGLIGENCE

Asserted by Gloria, Thomas and Jordan V.M. against all defendants.

233.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

234.   Said defendants breached their duty towards Thomas and Jordan V.M. by:

a. Failure to develop and maintain effective procedures governing emergency interventions;

b. Failure to obtain proper training for use of behavioral emergency interventions

- 40 -

**Exhibit F**

c. Failure to provide oversight on the use of restraints

d. Failure to develop protocols for use of restraints

f. Failure to prohibit restraints on physically disabled children

g. Failure to prohibit prolonged restraints (anything over 15 minutes)

h. Failure to require that Thomas and Jordan V.M. be released from a restraint at the earliest possible moment.

i. Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

j. Failure to prohibit restraints that constrict the child's ability to breathe.

k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l. Failure to provide for the comfort of Thomas and Jordan V.M. while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M. fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m. Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o. Failure to require immediate and accurate reporting on each restraint

p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q. Failure to provide for:

**Exhibit F**

-primary preventative measures rather than restraint;

-interventions that are less intrusive than restraints;

-effective ways to de-escalate situations to avoid restraints; and

-crisis intervention techniques that utilize alternatives to restraint.

r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t. Allowing use of physical restraints on children which:

- create an aversive environment counterproductive to facilitating learning;

- cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine

- whether the intervention was necessary

- whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v. Failed to document injuries caused by restraint and

w.   Failed to get medical attention for a child who was injured while in restraint.

235.   As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

236.   Breach of said mandatory duties by said defendants was a substantial factor

- 42 -

**Exhibit F**

in causing injuries Thomas and Jordan V.M.

237.   At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward Thomas and Jordan V.M. who were disabled students under their guidance and care.

238.   At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints on special needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in violation of California law.

239.   At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints, known by said defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with reckless disregard for the safety of said children.

240.   At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone and other restraints, to injure special needs/disabled children and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for which they were hired.

241.   As a direct and foreseeable result of the negligence of said defendants learning of the death of Max Benson, plaintiffs and their own injuries Thomas and Jordan V.M. suffered physical and emotional injuries.

242.   The negligence of said defendants was a substantial factor in causing injury Thomas and Jordan V.M. to suffer physical and emotional injuries.

- 43 -

**Exhibit F**

243.   By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

### TENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION
### ASSERTED BY Thomas and Jordan V.M.

244.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

245.   Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

246.   Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

247.   Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

248.   As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

### ELEVENTH CAUSE OF ACTION

- 44 -

**Exhibit F**

1
2

## NEGLIGENCE PER SE
(ASSERTED BY Thomas and Jordan V.M. and against all Defendants)

3      249.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as

4      though fully set forth herein

5      250.   In doing the things herein alleged, said defendants violated the mandatory

6      duties toward  Thomas and Jordan V.M. as prescribed by state and federal law as

7      referenced in each of the statutes as set forth hereinabove.

8
9      251.   Said violations were of the statutes specifically intended to protect the class

10     of plaintiff and to prevent the injuries as those described herein.

11     252.   Said violations of criminal and civil law were a substantial factor in bringing

12     about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

13     253.   As a direct and proximate result of the actions of said defendants as alleged

14     herein, Thomas and Jordan V.M.  suffered injury, and are entitled to damages

15     according to proof.

16
17                          **TWELFTH CAUSE OF ACTION**

18                          Tortious Breach of the Covenant
                            Of Good Faith and Fair Dealing
19     Asserted by the Plaintiffs Marques, Gloria, Thomas and Jordan V.M. Against
                            Defendants GHS, Meyers, Keller, Point Quest,
20           Troy Tickle, Kristi Gregerson, Cara Bruce and Doe Defendants

21     254.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as

22     though fully set forth herein.

23
24     255.   Upon the respective enrollment of Marques, Thomas and Jordan V.M.

25     entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, Troy

26     Tickle, Kristi Gregerson, Cara Bruce  and DOE defendants for the education of  their

27     children.

28

**Exhibit F**

1

2

3

4

5

256.   At all times herein mentioned, Marques, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce  and DOE defendants.

6

7

8

9

10

11

12

13

14

15

16

257.   As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support.  The GHS handbook also indicated that defendant GHS would "customize" the system to support student outcomes and  "interact with students in a way that promotes social proficiency."  The GHS handbook states that "social competence is a skill that requires direct teaching." .  The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

17

18

19

20

21

22

23

24

258.   As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce,  and DOE defendants against any student based on physical or mental disability.

25

26

27

28

259.   As part of said  contract, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to

- 46 -

**Exhibit F**

1  correct inappropriate behavior and to interact with students in a way which promotes

2  social proficiency and academic success, using as examples "positive language and

3  redirecting behavior using a lesson."

4

5  260.   As part of said contract defendants GHS, MEYERS, KELLER, POINT

6  QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants  promised to

7  plaintiffs, and each of them, that adult behavior when correcting a child would be

8  "calm, consistent, brief, immediate and respectful," and that their behavior intervention

9  approach involved a three step prompt "verbal, modeling, hand-over-hand."

10  261.   As part of said contract defendants GHS, MEYERS, KELLER, POINT

11  QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to

12

13  plaintiffs, and each of them, that restraints would be imposed only if the child was a

14  danger to himself or others so as to de-escalate and re-integrate into classroom

15  activities; the restraints and their possible consequences for injury and death were not

16  truthfully or accurately described to plaintiffs, and each of them, by defendants GHS,

17  MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and

18  DOE defendants; and the most dangerous type of restraint, a prone restraint, was

19  described by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi

20

21  Gregerson, Cara Bruce, and DOE defendants to each of MARQUES, Thomas and

22  Jordan V.M's parents in innocuous language as a "neutral" restraint.

23  262.   Plaintiffs, and each of them, did all of the significant things that the contract

24  required them to do.

25  263.   At all times herein mentioned, all of the conditions required for defendant

26  GHS, MEYERS, KELLER, POINT QUEST,Troy Tickle, Kristi Gregerson, Cara Bruce,

27  and DOE defendants had occurred.

28

-47-

Exhibit F

264.   Defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

265.   Defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

266.   By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

267.   By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

268.   By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. and the beneficiaries of said contract, Thomas and Jordan V.M., have suffered severe emotional and physical distress at having the respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

269.   By virtue of said  bad faith interference with contractual benefits,  all plaintiffs

**Exhibit F**

1  suffered physical and emotional injuries, and future general and special damages as

2  herein alleged.

3  270.  The bad faith interference by defendants GHS, MEYERS, KELLER, POINT

4  QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants was a

5

6  substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and

7  each of them.

8  271.  In doing the things herein alleged, defendants GHS, MEYERS, KELLER,

9  POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants

10  acted recklessly and with conscious disregard for the rights of plaintiffs, and each of

11  them, willfully and maliciously exceeding the bounds of all behavior in a civilized

12

13  behavior, brutalizing special needs/disabled children who had been entrusted to their

14  care by their parents so as to receive an education that would allow their children to

15  grow into well adjusted, well-functioning adults.  As a consequence, plaintiffs, and

16  each of them, are entitled to punitive damages.

17  **THIRTEENTH CAUSE OF ACTION**

18

19  FRAUD
Asserted by Gloria V.M.

20  272.  Plaintiffs incorporate, by reference herein, all preceding paragraphs, as

21  though fully set forth herein.

22  273.  On or about the date of enrolling their respective children in defendant GHS,

23  defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants,

24  represented to Gloria V.M. that said defendants would not to discriminate in any

25

26  activity against any student at GHS based on physical or mental disability under Title

27  IX, Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited

28

- 49 -

**Exhibit F**

1  intimidation or harassment by any employee of defendants GHS and POINT QUEST

2  against any student based on physical or mental disability; that said defendants and

3  their employees would use Positive Behavior Interventions and Supports to correct

4  inappropriate behavior and to interact with students in a way which promotes social

5  proficiency and academic success, including using "positive language and redirecting

6  behavior using a lesson"; that behavior by GHS' staff when correcting a child would be

7  "calm, consistent, brief, immediate and respectful,"; that GHS and POINT QUEST

8  behavior intervention approaches involved a three step prompt "verbal, modeling,

9  hand-over-hand";  and that restraints would be imposed only if the child was a danger

10  to himself or others so as to de-escalate and re-integrate into classroom activities.

11  
12  
13  274.   On or about the dates of the respective enrollment of Thomas and Jordan

14  V.M., at GHS and POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and

15  their employees represented to Gloria V.M that they were required to sign a form

16  allowing defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants,

17  to impose restraints on said plaintiffs' respective children, with the implied threat that if

18  they did not sign the form their respective children would not be enrolled at GHS,

19  which was the only school available to educate said children, and therefore, the

20  parents would be in violation of California's mandatory education law.

21  
22  275.   That the afore-mentioned representations of defendants, were false, and

23  Gloria V.M. learned that they were false on or after November 29, 2018, upon the

24  death of MAX, when they discovered that they did not have to allow or consent to the

25  use of restraints against their disabled children.

26  
27  276.   Said defendants knew that said representations were false when they made

28  them, and/or said defendants made the representations recklessly and without regard

- 50 -

**Exhibit F**

1 for the truth of said representations.

2 277. Said defendants intended that GLORIA V.M. rely on said representations.

3

4 278. GLORIA V.M. reasonably relied on said representations, and enrolled their

5 respective children at defendant GHS to receive an education.

6 279. GLORIA V.M. were harmed by said intentional representations, in that each

7 of said plaintiffs suffered severe emotional distress upon seeing their respective child

8
injured at the hands of GHS and its staff after being placed in prone and other types
9

10 of restraints for known behaviors related to the child's special needs and disability,

11 and which behaviors did not present a clear and present danger to himself or others;

12 and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress

13 when MAX was injured and killed after he had a behavioral outburst as a result of

14 being isolated from the rest of the class with no staff member near him to keep him

15
calm.
16

17 280. GLORIA V.M. reliance on said representations was a substantial factor in

18 causing the severe emotional distress of said plaintiffs.

19 281. At all relevant times, said defendants acted with conscious disregard of the

20 rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with

21 reckless disregard for, the fact that their conduct was certain to cause severe

22 emotional distress to said plaintiffs. By virtue of the foregoing, said plaintiffs are
23
entitled to recover punitive and exemplary damages from non-public entity defendants
24

25 according to proof at the time of trial.

26 **DAMAGES**

27 WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

28

-51-

**Exhibit F**

1

## FIRST CAUSE OF ACTION

2

### INTERFERENCE WITH THE EXERCISE OF
3
### CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51*et seq*

4

5 1.  General damages for in an amount to be determined according to  proof at trial;

6 2.  Medical and future medical and related expenses in an amount to be determined

7 by proof at trial;

8 3.  Past and future lost earnings in an amount to be determined by proof at trial;

9 4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

10 5.  General damages for severe emotional and psychological distress

11
6.      Pain and suffering;
12

13 7.  Statutory damages;

14 8.  Attorneys' fees;

15 9.  Punitive and exemplary damages against all non-public entity Defendants

16 10 Costs of this action;

17 11.  Such other and further relief as the Court deems just and proper.

18

19
SECOND CAUSE OF ACTION INTERFERENCE WITH PLAINTIFFS' EXERCISE OF
20
21 CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 51.7

22

23 1.  General damages for in an amount to be determined according to  proof at trial;

24 2.  Medical and future medical and related expenses in an amount to be determined

25 by proof at trial;

26
3.  Past and future lost earnings in an amount to be determined by proof at trial;
27

28

- 52 -

**Exhibit F**

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.     Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### INTERFERENCE WITH PLAINTIFFS' EXERCISE OF
### CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.     Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**Exhibit F**

1

**FOURTH CAUSE OF ACTION**

2

3

VIOLATIONS OF CALIFORNIA EDUCATION CODE
§§ 200, 201, 220 and 260, et seq.

4

1. General damages for in an amount to be determined according to proof at trial;

5

2. Medical and future medical and related expenses in an amount to be determined

6

by proof at trial;

7

3. Past and future lost earnings in an amount to be determined by proof at trial;

8

9

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

10

5. General damages for severe emotional and psychological distress

11

6.     Pain and suffering;

12

7. Statutory damages;

13

8. Attorneys' fees;

14

9. Punitive and exemplary damages against all non-public entity Defendants

15

16

10.  Costs of this action;

17

11.  Such other and further relief as the Court deems just and proper.

18

**FIFTH CAUSE OF ACTION**

19

ASSAULT AND BATTERY CONSTITUTING TORTURE

20

1. General damages for Pain and suffering in an amount to be determined according

21

to proof at trial;

22

2. Medical and future medical and related expenses in an amount to be determined

23

24

by proof at trial;

25

3. Past and future lost earnings in an amount to be determined by proof at trial;

26

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

27

5. General damages for severe emotional and psychological distress

28

- 54 -

**Exhibit F**

6.    Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### SIXTH CAUSE OF ACTION

### ASSAULT AND BATTERY

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.    Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

- 55 -

**Exhibit F**

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

### FALSE IMPRISONMENT, CONSPIRACY TO COMMIT FALSE IMPRISONMENT

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6.     Pain and suffering;

- 56 -

7.  Statutory damages;

8.  Attorneys' fees;

8.  Punitive and exemplary damages against all non-public entity Defendants

9.  Costs of this action;

10.  Such other and further relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION

### NEGLIGENCE

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress;

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Costs of this action;

10.  Such other and further relief as the Court deems just and proper.

## TENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION

General damages for Pain and suffering in an amount to be determined according to proof at trial;

**Exhibit F**

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6.    Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Costs of this action;

10.  Such other and further relief as the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION

### NEGLIGENCE *PER SE*

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6.  Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Costs of this action;

- 58 -

**Exhibit F**

10.   Such other and further relief as the Court deems just and proper.

### TWELFTH CAUSE OF ACTION

#### Tortious Breach of the Covenant
#### Of Good Faith and Fair Dealing

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

### THIRTEENTH CAUSE OF ACTION

### FRAUD

1.  General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

- 59 -

**Exhibit F**

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

Dated: February 23, 2021

Seth L. Goldstein,
Attorney at Law

- 60 -

**Exhibit F**

FIRST ~~AMENDED~~

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

|  | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:** GUIDING HANDS SCHOOL, INC., (hereinafter "GHS", Staranne
*(AVISO AL DEMANDADO):* MEYERS, "Star Williams", Cindy KELLER, David CHAMBERS,
Susan Jane BATTLE, "Cory" Doe; Cory QUINCEY; Byrna QUINCEY, Noel COLLIER, STATE OF
CALIFORNIA DEPARTMENT OF EDUCATION (hereinafter CDE); PLACER COUNTY SELPA
(hereinafter PLACER SELPA); Troy TICKLE, Kristi GREGERSON; Cara BRUCE; Ashley ROBB; Dolores
ZUMBURY, Vince ANDERSON; POINT QUEST, Inc.; Nicole DOE; Jennifer DOE; ROCKLIN UNIFIED
SCHOOL DISTRICT (hereinafter RUSD); Patricia DOE; David DOE; Amanda Doe; Noelle DOE; Bruce
CHAPMAN, and HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEM, Inc., and Does 1-100

**EL DORADO CO. SUPERIOR CT.**
**FILED FEB 23 2021**
BY _____ Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* Louie Andreas Marques;
Gloria V.M.; Thomas V.M.; and Jordan V.M.

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court, County of ~~Sacramento~~ El Dorado<br>~~720 9th Street~~  1354 Johnson Blvd.<br>~~Sacramento, CA 95814~~  So. Lake Tahoe, CA 96150   BY FAX | CASE NUMBER:<br>*(Número del Caso):*<br>PC20200429 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
831-372-9511      831-372-9611
Seth L. Goldstein, SBN 176882
Law Offices of Seth L. Goldstein
Monterey, CA 93940

| DATE: **FEB 23 2021**<br>*(Fecha)* | Tania G. Ugrin-Capobianco<br>Clerk, by _____, Deputy<br>*(Secretario)*          *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | 1. ☐ as an individual defendant. |
|---|---|
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☐ on behalf of *(specify):* |
| | under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

**SUMMONS**

Legal
Solutions
Plus

Code of Ci... ...20, 465



Exhibit P

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Seth L. Goldstein<br>Law Offices of Seth L. Goldstein<br>2100 Garden Rd., Ste. H-8<br>Monterey, CA 93940<br>TELEPHONE NO.: 831-372-9511    FAX NO. *(Optional):* 831-372-9611<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs | EL DORADO CO. SUPERIOR CT.<br><br>FILED    MAY 21 2021<br>BY _____<br>             Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Cameron Park, CA 95682
BRANCH NAME: Civil

PLAINTIFF/PETITIONER:Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.
DEFENDANT/RESPONDENT:Guiding Hands School, inc.(hereinafter "GHS", Staranne MEYERS, et al

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  [X] **UNLIMITED CASE**    [ ] **LIMITED CASE**<br>    (Amount demanded      (Amount demanded is $25,000<br>    exceeds $25,000)      or less) | PC20200429 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: May 25, 2021        Time: 3:30 pm    Dept.: 9Q 4    Div.:        Room:
Address of court *(if different from the address above):*

[X] Notice of Intent to Appear by Telephone, by *(name):* Seth L. Goldstein

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [X]  This statement is submitted by party *(name):*All Plaintiffs, Marques and V.M.
   b. [ ]  This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*  August 27, 2020
   b. [ ]  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ]  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [X]  The following parties named in the complaint or cross-complaint
       (1) [X]  have not been served *(specify names and explain why not):*  We will be filing a Motion to Amend the
               complaint shortly.  There have been some changes in facts since the last amended Complaint was filed.
       (2) [ ]  have been served but have not appeared and have not been dismissed *(specify names):*

       (3) [ ]  have had a default entered against them *(specify names):*

   c. [ ]  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a.  Type of case in  [X] complaint    [ ] cross-complaint    *(Describe, including causes of action):*
       Violations of civil rights in educational setting, assault, fraud.

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Legal
Solutions
& Plus



JUN 03 2021

CM-110

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M.<br>DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | CASE NUMBER:<br>PC20200429 |
|---|---|

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

Plaintiffs Marques and V.M were disabled students at defendant, GHS. They were repeatedly assaulted as discipline differently than those without such a disability.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☒ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☒ The trial has been set for *(date):* Not as of this time
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☒ days *(specify number):* 20
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney: Seth L. Goldstein
   b. Firm: Law Office of Seth L. Goldstein
   c. Address: 2100 Garden Rd., Ste. H-8, Monterey, CA 93940
   d. Telephone number: 831-372-9511           f. Fax number: 831-372-9611
   e. E-mail address: slglawoffice@gmail.com           g. Party represented: Plaintiffs
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

   a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

   (1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

   (2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

   b. **Referral to judicial arbitration or civil action mediation** (if available).

   (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

   (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

   (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

**Exhibit F**

CM-110

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M., and Jordan V.M. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Guiding Hands School, Inc.(hereinafter "GHS", Staranne MEYERS, et al | PC20200429 |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

   ☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):* A mutual Defendant in the Federal case in this matter has been dismissed. A new family Plaintiff has come forward on similar facts. We have also discovered that the First Amended Complaint that was filed repeats itself in its entirety. We omitted Federal causes of action by mistake. A Motion to Amend is in the works.

**19. Meet and confer**

   a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):* Counsel for Rocklin Unified Schools.

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached *(if any):* _____**

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: May 21, 2021

Seth L. Goldstein
_____
     (TYPE OR PRINT NAME)

                     ▶      _____
                            (SIGNATURE OF PARTY OR ATTORNEY)

_____
     (TYPE OR PRINT NAME)

                     ▶      _____
                            (SIGNATURE OF PARTY OR ATTORNEY)

                     ☐  Additional signatures are attached.

**Exhibit F**

Attachment 13a

El Dorado Superior Court
People vs. Staranne Myers, et al.
Case No. P19CRF0456-1

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO

MINUTE ORDER

CASE NO: PC20200429     LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 05/25/21          TIME:  3:30        DEPT: 4

CASE MANAGEMENT CONFERENCE RE: STATUS

---

The Honorable Judge Pro Tem Jennifer Peterson presiding.  Court Clerk:
Wendy Warden.  Court Reporter:  None.  Bailiff:  None.

LOUIE ANDREAS MARQUES present by counsel Seth Goldstein via vCourt.

GLORIA V M, THOMAS V M, JORDAN V M, GUIDING HANDS SCHOOL INC,
JENNIFER GALAS, STARANNE MEYERS, CINDY KELLER, DAVID CHAMBERS not
present.

A Case Management/ADR Assessment Conference was held this date and,
good cause therefore appearing, the following determinations were
made:

Hearing continued to 09/28/21 at  3:30 in department 4

Notice to be given by Plaintiff.

**Exhibit F**

1  Seth L. Goldstein, S.B.N. 176882
   slglawoffice@gmail.com
2  2100 Garden Road, Suite H-8
   Monterey, California, 93940
3  Telephone (831) 372 9511
   Fax (831) 372 9611
4  Lead-Counsel for Plaintiffs

# FILED

MAY 2 5 2021

EL DORADO CO. SUPERIOR COURT
BY _____ Warden
(DEPUTY CLERK)

5

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

6

## COUNTY OF EL DORADO

7

8                                                          VIA FACSIMILE

   MARQUES, et al.,
9                                        Case No. PC2020049
        Plaintiffs,
10                                       MOTION FOR ADMISSION
     v.                                  PRO HAC VICE
11
12   GUIDING HANDS SCHOOL, Inc., et al.,  DATE: N/A  7/16/21

13                                        TIME: N/A  1:30 PM

14        Defendants.                     Judge:  Michael J. McLaughlin  /D4

15

16                                        FAC Filed:  02.23.21

17                                        Trial Date:

18

19

20

21

22          **MOTION FOR ADMISSION PRO HAC VICE**

23      Comes Now, Seth L. Goldstein, a member in good standing of The State Bar of

24   California, hereby moves for the admission, pro hac vice, of Merit Bennett, Esquire ("Applicant")

25   as co-counsel on behalf of the Plaintiffs in the above-captioned matter and in support thereof

26   attaches hereto the Affidavit of the Applicant attesting to his fitness and experience.

27

28

CMS

**Exhibit F** - 1 -

1    DATED: May 25, 2021.

2                                              /s/ Seth Goldstein
                                               Seth L. Goldstein, S.B.N. 176882
3                                              2100 Garden Rd., Ste. H-8
                                               Monterey, CA 93940
4                                              Telephone: (831) 372-9511
                                               Fax: (831) 372-9611
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Seth L. Goldstein, S.B.N. 176882
   slglawoffice@gmail.com
2  2100 Garden Road, Suite H-8
   Monterey, California, 93940
3  Telephone (831) 372 9511
   Fax (831) 372 9611
4  Lead-Counsel for Plaintiffs

5  Mike Bomberger, S.B.N. 169866
   Estey and Bomberger
6  2869 India Street
7  San Diego, California 92103
   Telephone: (619) 295-0035
8  Counsel for Plaintiff David Benson

Merit Bennett, *Pro Hac Vice*
mb@thebennettlawgroup.com
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836
Co-Counsel for Plaintiffs

# FILED

MAY 2 5 2021

EL DORADO CO. SUPERIOR COURT
BY _____
(DEPUTY CLERK)

9                UNITED STATES DISTRICT COURT
10
11              EASTERN DISTRICT OF CALIFORNIA

12
13   STACIA LANGLEY, et al.,                 Case No. PC2020049
14            Plaintiffs,
                                             APPLICATION IN SUPPORT OF MOTION
15        v.                                 FOR ADMISSION PRO HAC VICE
16   GUIDING HANDS SCHOOL, Inc., et al.,     DATE: N/A  7/16/21
17                                           TIME: N/A  1:30Pm
18            Defendants.                    Judge:  Michael J. McLaughlin / D4
19
20                                           FAC Filed: 02.23.21
21                                           Trial Date:
22
23

24              **APPLICATION IN SUPPORT OF MOTION**
25              **FOR ADMISSION PRO HAC VICE**

26        I, Merit Bennett, Esquire, Law, hereby applies for admission pro hac vice for the purposes

27   of litigating the captioned matter.

28

- 3 -

CMS
Exhibit F
MAY 2 5 2021

1    In compliance with Rule 9.40. of the California Rules of Court, I state the following:

2    I am a resident of Santa Fe County New Mexico.

3    My business address is:

4        The Bennett Law Group
5        460 St. Michael''s Drive, Suite703
         Santa Fe, New Mexico 87505
6        Ph: 505-983-9834 | 505-983-9836
         Email: mb@thebennettlawgroup.com
7
8    The name and address of the registration or disciplinary agency of all state courts to which

9    I have been admitted are as follows:

10       The State Bar of New Mexico        NM Bar #4729,  Admitted: 10/7/1986
         5121 Masthead Street North East
11       Albuquerque, New Mexico 87109-4367
         Ph: 505-797- 6000
12

13       The Colorado Bar Association       CO Bar #6850,  Admitted: 10/6/1975
         1290 Broadway, Suite 1700
14       Denver, Colorado 80203
         Ph: 303-860 -1115
15

16       The Hawaii State Bar Association   HI Bar #7407,  Admitted 09/21/2000
         Alakea Corporate Tower
17       1100 Alakea Street, Suite 1000
         Honolulu, Hawaii96813
18       Ph: 808- 537-1868

19   I am eligible to practice and I am currently in good standing in all of the above-referenced

20   courts.

21   I am not nor have I ever been on suspension or disbarred in any court.

22   I have not concurrently or within the two years preceding this application made a pro hac

23   vice application to this court.

24   I designate the following permanent members of this bar, who are in good standing, to act

25   as local counsel in this matter:

26
         Seth L. Goldstein, S.B.N. 176882
27       2100 Garden Rd., Ste. H-8

28

                                                                                          - 4 -

1
2

Monterey, CA 93940
Telephone: (831) 372-9511
Fax: (831) 372-9611

3

I will be associating with Mr. Seth Goldstein and Mr. Mike bomberger, whose office

4

addresses are listed in the caption of this application and who are admitted to practice before this

5

court.

I affirm, under the penalty of perjury, that the foregoing is true and correct, executed May

6

25, 2021, in Santa Fe, New Mexico.

7

8

Respectfully submitted:

9

10

11

Merit Bennett
The Bennett Law Group
460 St. Michaels Dr., #703
Santa Fe, NM 87505
Telephone: (505) 983-9834

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF EL DORADO

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY<br>(Name, State Bar Number, and Address): SETH L. GOLDSTEIN, SBN 176882<br>2100 Garden Rd., Ste. H-8<br>Monterey, CA 93940<br>TELEPHONE NO.: 831-372-9511<br>FAX NO.: 831-372-9611<br>EMAIL ADDRESS: | FOR COURT USE ONLY<br><br>**FILED**<br><br>MAY 2 6 2021<br><br>EL DORADO CO. SUPERIOR COURT<br>BY _____<br>(DEPUTY CLERK) |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO<br>☐ 3321 Cameron Park Drive    ☒ 1354 Johnson Blvd.<br>Cameron Park, CA 95682            South Lake Tahoe, CA 96150 | |
| PETITIONER: Luis Marques, et al.<br><br>RESPONDENT: Guiding Hands School, Inc., et al. | |
| **REQUEST FOR TELEPHONIC APPEARANCE** | CASE NUMBER: PC20200429 |
| TYPE OF HEARING:               DATE: 5/25/21 | TIME: 3:30 pm   DEPT: 4 |

1. I am the ☐ petitioner ☒ petitioner's counsel ☐ respondent ☐ respondent's counsel ☐ Other: _____

2. I request the court to allow me to appear from the following telephone number: (831  ) 372-9511 _____

3. I request to appear telephonically for the following reason: _____

   It would be a hardship to have to travel to South Lake Tahoe to attend the hearing from my office located in

   Monterey County

4. I have filed this request at least twelve (12) court days prior to the hearing and will serve all parties/attorneys with this form within one (1) court day after filing the form.

5. I understand that the court, in its discretion, may decide to terminate the telephone appearance if it determines during the hearing that I am not available at the calendar call or delay due to disruption, noise, misconduct, a communication problem, a technical problem, or other issue.

6. I understand the court may decide at any time to require a personal appearance and continue the hearing.

7. I assume the risks of cost, time, delay, repeated telephone calls, technical failure, a wrong number, and/or other issues that may arise out of this telephone appearance.

8. I understand that except as provided in California Rules of Court, rule 1.150, court proceedings shall not be photographed, recorded, or broadcast.

I have read the advisements of this form and Local Rules 7.02.00, and I understand that the terms apply to me.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct

DATE: May 25, 2021

Seth L. Goldstein
_____              _____
PRINTED NAME                                  SIGNATURE

| FOR COURT USE ONLY |
|---|
| By Judicial Officer: The request is ☒ GRANTED  ☐ DENIED<br><br>Date: 5/26/21 | _____<br>Judicial Officer<br><br>**Michael J. McLaughlin** |

**Exhibit F**

MAY 2 5 2021

SUPⳆⱯOR COURT OF CALIFORNIA
COUNTY OF EL DORADO

[ ] 2850 FAIRLANE COURT          [X] 1354 JOHNSON BLVD.
    Placerville, CA 95667             South Lake Tahoe, CA 96150
    (530)621-7470                     (530)573-3069
[ ] 495 Main Street              [ ] 3321 Cameron Park Dr.
    Placerville, CA 95667             Cameron Park, CA 95682
    (530)621-6726                     (530)621-5867

05/26/21

Case PC20200429

Dear Seth Goldstein,

RE: NOTICE TELEPHONIC APPEARANCE IS GRANTED

The court has received your request for a telephonic appearance. Due
to the distance from where you reside and the location of the court,
the request is granted.

Telephonic court appearances are provided through the court.
To set up your appearance please go to the court's website at
http://www.eldoradocourt.org/onlineservices/vcourt.html.
If you cannot afford the fee you may request a fee waiver which
you must submit to the court at least 5 days prior to the hearing.

Sincerely,

_____**W. Warden**_____
      Deputy Clerk

Court Website: http://www.eldoradocourt.org/

TAG                                          Revised 06/14/2010

**Exhibit F**

| ATTORNEY OR PARTY WITHOUT ATTORNEY<br>(Name, State Bar Number, and Address): | FOR COURT USE ONLY |
|---|---|
| Merit Bennett, Pro Hac Vice, 460 St. Michael's Drive, Suite 703, Santa Fe, New Mexico 87505<br><br>TELEPHONE NO.:<br>FAX NO.:        505-983-9836<br>EMAIL ADDRESS: | **FILED**<br><br>JUL 1 5 2021<br><br>EL DORADO CO. SUPERIOR COURT<br>BY _____<br>(DEPUTY CLERK) |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO**<br><br>**MAILING ADDRESS:**  3321 Cameron Park Drive<br><br>**CITY AND ZIPCODE**   Cameron Park, California 95682 | |
| PETITIONER/PLAINTIFF:   Marques, et al. | CASE NUMBER: |
| RESPONDENT/DEFENDANT: Guiding Hands School, Inc., et al. | PC20200429 |
| **APPLICATION FOR VIDEOCONFERENCE APPEARANCE AND ORDER** | |

1. Person(s) requesting to appear by videoconference is/are:

| ☐ Petitioner/Plaintiff | Name: | Email: | Telephone: |
|---|---|---|---|
| ☐ Respondent/Defendant | Name: | Email: | Telephone: |
| Counsel for (select)<br>☑ *Petitioner/Plaintiff* or<br>☐ *Respondent/Defendant* | Name:<br>Merit Bennett | Email:<br>mb@thebennettlawgroup.com | Telephone:<br>505-9833-9834 |
| ☐ Other | Name: | Email: | Telephone: |

2. For Counsel, if requesting on client's behalf:

   ☐ My client has consented and authorized me to make this request on their behalf.

   ☑ I confirm that a means to communicate privately and confidentially has been established and reviewed by both the attorney and party if both are attending the conference, hearing or proceeding remotely.

3. Certain case types are permitted to be heard by videoconferencing. The conference, hearing or proceeding is for (describe):
   Pro Hac Vice admission

4. Videoconference appearance is requested for following reason(s):
   Out of state attorney

5. The matter is set on (date): July 16, 2021 _____ at (time): 1:30 pm _____ in Department: _____

6. Notice of this request was provided to (attach a page with additional names to this form if needed):

| Name | Role | How Notice Provided | Date Noticed |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

Mandatory Use<br>Local Form M-51<br>Revised 07-12-21

Application for Videoconference Appearance<br>and Order

Page 1 of 2

Exhibit E<br>JUL 1 5 2021

7.  By signing below, I agree to the following:

- I understand and agree that when appearing by videoconference, I may not receive assistance from anyone other than counsel, an interpreter or an individual appointed by or approved by the Court.

- I understand and agree that appearance by videoconference is the same as in-person appearance and any actions that occur in the hearing carry the same authority as if all individuals were physically in the courtroom.

- I understand if I am not connected at the time the case is called, the Court may consider it a failure to appear and the matter may be dropped from calendar.

- I understand that the court, in its discretion, may decide to terminate the videoconference appearance if there is a delay due to disruption, noise, misconduct, a communication problem, a technical problem, other issue and/or in the interest of justice.

- I understand that a failure to appear or termination of the videoconference appearance may result in the issuance of a warrant, a requirement that I appear in-person and/or a continuance of the conference, hearing or proceeding.

- I understand the Court may decide, at any time, to require a personal appearance and/or a continuance of the conference, hearing or proceeding.

- I understand that except as provided in California Rule of Court, rule 1.150, court proceedings shall not be photographed, recorded or broadcast.  Violators may be cited for contempt of court, or monetary sanctions may be imposed.

Dated: July 15, 2021

Merit Bennett

Printed Name

Signature

---

**FOR COURT USE ONLY**

By Judicial Officer: The request for a videoconference appearance is ☒ GRANTED ☐ DENIED

Dated: 7/15/21

Judicial Officer    Michael J. McLaughlin

Notice of this order along with the videoconference information was provided by email to the person(s) listed in item 1 on:

Dated: 7/15/21

Deputy Clerk

---

Mandatory Use
Local Form M-51
Revised 07-12-21

Application for Videoconference Appearance
and Order

Page 2 of 2

**Exhibit F**

ATTORNEY OR PARTY WITHOUT ATTORNEY
(Name, State Bar Number, and Address):
Seth L. Goldstein SBN#176882 2100 Garden Road, Suite H-8 Monterey, CA 93940
TELEPHONE NO.: 831-372-9511
FAX NO.: 831-372-9611
EMAIL ADDRESS: slglawoffice@gmail.com

FOR COURT USE ONLY

# FILED

JUL 1 5 2021

EL DORADO CO. SUPERIOR COURT
BY _____
(DEPUTY CLERK)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO

MAILING ADDRESS: 1354 Johnson Blvd.

CITY AND ZIPCODE: South Lake Tahoe 96150

PETITIONER/PLAINTIFF:   LOUIE ANDREAS MARQUES

RESPONDENT/DEFENDANT: GUIDING HANDS SCHOOL

CASE NUMBER:

PC20200429

APPLICATION FOR VIDEOCONFERENCE APPEARANCE AND ORDER

1. Person(s) requesting to appear by videoconference is/are:

| ☐ Petitioner/Plaintiff | Name: | Email: | Telephone: |
|---|---|---|---|
| ☐ Respondent/Defendant | Name: | Email: | Telephone: |
| Counsel for (select)<br>☑ Petitioner/Plaintiff or<br>☐ Respondent/Defendant | Name:<br>Louie Andreas Marques | Email:<br>slglawoffice@gmail.com | Telephone:<br>831-372-9511 |
| ☐ Other | Name: | Email: | Telephone: |

2. For Counsel, if requesting on client's behalf:

   ☑ My client has consented and authorized me to make this request on their behalf.

   ☑ I confirm that a means to communicate privately and confidentially has been established and reviewed by both the attorney and party if both are attending the conference, hearing or proceeding remotely.

3. Certain case types are permitted to be heard by videoconferencing. The conference, hearing or proceeding is for (describe):
   MOTION RE: FOR ADMISSION PRO HAC VICE

4. Videoconference appearance is requested for following reason(s):
   I am not local, I live over 4 hours away and was unaware hearings went back to in person.

5. The matter is set on (date): 7/16/21 ____ at (time): 1:30pm ____ in Department: 4 ____.

6. Notice of this request was provided to (attach a page with additional names to this form if needed):

| Name | Role | How Notice Provided | Date Noticed |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Mandatory Use
Local Form M-51
Revised 07-12-21

Application for Videoconference Appearance
and Order

Page 1 of 2

Exhibit F5 2021

7. By signing below, I agree to the following:

- I understand and agree that when appearing by videoconference, I may not receive assistance from anyone other than counsel, an interpreter or an individual appointed by or approved by the Court.

- I understand and agree that appearance by videoconference is the same as in-person appearance and any actions that occur in the hearing carry the same authority as if all individuals were physically in the courtroom.

- I understand if I am not connected at the time the case is called, the Court may consider it a failure to appear and the matter may be dropped from calendar.

- I understand that the court, in its discretion, may decide to terminate the videoconference appearance if there is a delay due to disruption, noise, misconduct, a communication problem, a technical problem, other issue and/or in the interest of justice.

- I understand that a failure to appear or termination of the videoconference appearance may result in the issuance of a warrant, a requirement that I appear in-person and/or a continuance of the conference, hearing or proceeding.

- I understand the Court may decide, at any time, to require a personal appearance and/or a continuance of the conference, hearing or proceeding.

- I understand that except as provided in California Rule of Court, rule 1.150, court proceedings shall not be photographed, recorded or broadcast. Violators may be cited for contempt of court, or monetary sanctions may be imposed.

Dated: 7/15/21

_SETH GOLDSTEIN_

Printed Name

Signature

---

**FOR COURT USE ONLY**

By Judicial Officer: The request for a videoconference appearance is ☒ GRANTED ☐ DENIED

Dated: 7/15/21                     Michael J. McLaughlin

                                   Judicial Officer

Notice of this order along with the videoconference information was provided by email to the person(s) listed in item 1 on:

Dated: 7/15/21

                                   Deputy Clerk

---

Application for Videoconference Appearance
and Order

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO

MINUTE ORDER

CASE NO: PC20200429      LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 07/16/21           TIME:  1:30       DEPT: 4

HEARING: MOTION RE: FOR ADMISSION PRO HAC VICE BY MERIT BENNETT
FILED BY LOUIE ANDREAS MARQUES, GLORIA V M, THOMAS V M, JORDAN V
M

Honorable Judge MICHAEL J. MCLAUGHLIN presiding. Clerk: Wendy Warden.
Court Reporter: LISA MENDEL CSR 14353. Bailiff: C. Bradford

LOUIE ANDREAS MARQUES, GLORIA V M, THOMAS V M, JORDAN V M present by
counsel Seth Goldstein via Zoom.

Also present: Merit Bennett.

Case is regularly called for hearing.

THE COURT ORDERS:

Hearing continued to 07/23/21 at  1:30 in department 4

Complaint has not been served, so the issue of serving motion is moot.

**Exhibit F**

1. **MARQUES, ET AL. v. GUIDING HANDS SCHOOL, ET AL., PC20200429**

   **Application to Appear *Pro Hac Vice***

   There is no proof of service in the court's file establishing that all parties who have appeared in this action and that the San Francisco office of the State Bar of California were served with the notice of hearing and a copy of the application. (Cal. Rules of Ct., rule 9.40(c)(1).) Moreover, there is no evidence provided establishing that the applicant paid the $50.00 fee to the State Bar with his copy of the application and the notice of hearing that is served on the State Bar. (*Id.*, subd. (e).)

   **TENTATIVE RULING # 1: APPEARANCES ARE REQUIRED AT 1:30 P.M., FRIDAY, JULY 16, 2021, IN DEPARTMENT FOUR.**

**Exhibit F**

1  Seth L. Goldstein, S.B.N. 176882
2  2100 Garden Road, Suite H-8
   Monterey, California, 93940
3  Telephone  (831) 372 9511
   Fax          (831) 372 9611
4
5  Lead-Counsel for Plaintiffs

**FILED**

SEP 2 0 2021

EL DORADO CO. SUPERIOR COURT
BY _____
(DEPUTY CLERK)

6

7           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8                   **COUNTY OF EL DORADO**

9  In the Matter of:

10 _____    )    Case No.: PC20429
                                         )
11 Louie Andreas MARQUES, Gloria V.M.,   )
   Thomas V.M., and Jordan V.M.,         )
12                                       )    **PLAINTIFF'S NOTICE OF**
                                         )    **MOTION AND MOTION FOR**
13            **Plaintiffs**             )    **LEAVE TO FILE SECOND**
   vs                                    )    **AMENDED COMPLAINT;**
14                                       )    **MEMORANDUM OF POINTS**
   GUIDING HANDS SCHOOL, Inc.(hereinafter)    **AND AUTHORITIES**
15 "GHS"), Staranne MEYERS, Cindy KELLER,)
   David CHAMBERS, STATE OF              )
16 CALIFORNIA,  DEPARTMENT OF            )
   EDUCATION, PLACER COUNTY SELPA,       )    Judge: Michael J. McLaughlin
17 Cara BRUCE, Ashley ROB, Dolores       )    Date: 10/22/21
   ZUMBURY, Vince ANDERSON, POINT        )    Time:  1:30pm
18 QUEST, Inc., ROCKLIN UNIFIED SCHOOL   )    Dept. 4
   DISTRICT, Noel COLLIER, Patricia DOE, )
19 David DOE, Amanda DOE, and            )
   Noelle DOE,                           )
20                                       )    Original Complaint Filed: 8/27/20
                                         )
21            **Defendants.**            )
   _____     )
22
23
24      TO THIS HONORABLE COURT:

25      PLEASE TAKE NOTICE that, on  10/22/21 , at  1:30pm or soon thereafter as the

26 matter can be heard, in Department 4, of this Court, located at 1254 Johnson Blvd, South Lake

27 Tahoe, California 95150, Plaintiffs', Louie Andreas MARQUES, Gloria V.M., Thomas V.M.

28 and Jordan V.M., by and through their attorneys, will move this Court for an ORDER granting

1    leave to file a Second Amended Complaint.

2
3       As discussed below, this motion is made on the grounds that good cause exists for
4    granting Plaintiffs' leave to amend.  Moreover, granting a leave to amend will not prejudice the
5    rights of any of the Defendants given the stage of the litigation. The COMPLAINT HAS NOT
6    YET BEEN SERVED SO NO MEET-AND-CONFER HAS OCCURRED AND NO NOTICE
7    TO A DEFENDANT IS REQUIRED.

8       This motion is based on this Notice of Motion and Motion for Leave to File Second
9    Amended Complain and the accompanying Memorandum of Points and Authorities, on the
10   papers and records on file herein, and on such oral and documentary evidence as may be
11
12   presented at the hearing of the motion.

13

14   Dated: Sept. 20, 2021

15                                     Seth L. Goldstein,
                                       Lead Counsel for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

**Exhibit F**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.
## INTRODUCTION

Plaintiff's, Louie Andreas MARQUES, Gloria V.M., Thomas V.M. and Jordan V.M., move to amend their Complaint and file a Second Amended Complaint (hereinafter "SAC"). The rights of Plaintiffs' have been impacted by the conduct of the defendants and the SAC seeks to include all Defendant's that Plaintiffs' recently became aware of and to include all available legal and equitable claims. There is no prejudice to the defendants to allow Plaintiffs' to amend their complaint because counsel for GHS and Rocklin Unified Schools have already been involved in litigating a companion case in Federal Court. Counsel for GHS is the same firm representing POINT QUEST.

The SAC includes the following changes: (1) According to the ruling in the companion Federal Court case it was not possible, without further discovery, to gain personal jurisdiction over Bruce Chapman. (2) Additional employee Defendants have been identified and should be added to this lawsuit. (3) Counsel for Defendant, Rocklin Unified School District has informally received the First Amended Complaint and pointed out an errors in the pleadings that by amended would avoid a Motion to Strike. (4) There were errors in pleading omitting the federal claims, listing defendants in the body of the complaint, but, not the caption and other errors that made the complaint confusing.

By this motion Plaintiffs' request that the Court order the attached SAC to be filed as proposed. The amendments are necessary in order to assert all claims on behalf of all Plaintiffs' and to correct all errors in the First Amended Complaint.

**Exhibit F**

1   Defendants are not prejudiced by this amendment and the liberal policy in favor of

2   amendments compels the granting of this motion.

3

4

5   **II. DECLARATION OF COUNSEL**

6   1.   I am co- counsel for Plaintiffs.

7   2.   As stated above, the companion case in Federal Court has a ruling that nullifies some of

8        the causes of action pled in the First Amended Complaint.

9   3.   In the creation of the First Amended Complaint (FAC), I accidently omitted all federal

10       causes of action and did not discover this until the document had been filed.

11

12  4.   Opposing counsel for the Rocklin Schools has been aware of this matter despite the fact it

13       was not served upon her client and pointed out an error that would have been subject to a

14       motion to strike and required amendment. This amendment addresses that concern.

15  5.   In the interim between the time the FAC was filed and this date, another child and his

16       family came forward seeking to sue Guiding Hands School.

17

18  6.   Because this case involves disabled young children, I sought to determine if it was

19       possible to join that family to this case.

20  7.   The investigation took longer than I had anticipated and we are now ready to proceed

21       without that family.

22  I declare, under the penalty of perjury, pursuant to the laws of the State of California, that

23  the foregoing is true and correct, executed this 20th, day of September, 2021, at

24  Monterey, California.

25

26

27  Seth L. Goldstein

28

- 4 -

**Exhibit F**

1

### III. MEMORANDUM OF POINTS AND AUTHORITIES

2

A.      It Is In Furtherance of Justice to Allow Plaintiffs' to Amend Their Complaint

3

4

This Court "may, in furtherance of justice, and on such terms as may be proper, allow a

5

party to amend any pleading or proceeding." CCP §473. It is established judicial policy

6

to resolve all disputes between the parties on their merits, and to liberally allow

7

amendments to the pleadings to put all disputes at issue at the time of the trial. See,

8

*Vogel v. Thrifty Drug Co.*, (1954) 43 Cal.2d 184, 188 ("It is a basic rule of pleading in

9

10

this State that amendments shall be liberally allowed so that all issues material to the just

11

and complete disposition of a cause may be expeditiously litigated"); See also, *Wilson v.*

12

*Turner Resilient Floors* (1949) 89 Cal.App.2d 589; *In re Herbst's Estate* (1938) 26

13

Cal.App.2d 249,

14

"While a motion to permit an amendment to a pleading to be filed is one addressed to the

15

discretion of the Court, the exercise of this discretion must be sound and reasonable  and
not arbitrary or capricious. And it is a rare case in which 'a court will be justified in

16

refusing a party leave to amend his pleadings so that he may properly present his case'. If
the Motion to amend is timely made and the granting of the motion will not prejudice the

17

opposing party, it is error to refuse permission to amend and where the refusal also results

18

in a party being deprived of the right to assert a meritorious cause of action or a
meritorious defense, it is not only error but an abuse of discretions."

19

*California Cas. Gen. Ins. Co. v. Superior Court* (1985) 173 Cal.App.3d 274, 278 (citations

20

21

omitted).

22

The judicial policy favoring amendment in the interests of justice is so strong that denial

23

is rarely justified. This motion is timely made since it is made before the defendants have

24

been served with the Complaint and before the Court has set a date for trial.

25

This Court may in its sound discretion allow Plaintiffs' to amend their complaint,

26

27

regardless of the state of litigation. See *Hirsa v. Superior Ct.* (1981) 118 Cal.App.3d

28

486, 488-489 ("Trial Courts are vested with the discretion to allow amendments to

- 5 -

**Exhibit F**

1   pleadings in furtherance of justice...that trial courts are to liberally permit such

2   amendments, at *any* stage of the proceeding, has been established policy of this

3

4   state...resting on the fundamental policy that cases should be decided on their merits.")

5   Given the sate of this case, no party in interest will be prejudiced by Plaintiff's

6   amendment to their complaint. Because granting the motion for leave to file Plaintiffs'

7   Second Amended Complaint will not prejudice any party to this action and leave to

8   amend will further the interests of justice, this Court should grant the Motion. *See,*

9   *California  Cas. Gen. Ins. Co. Supra.*

10

11                    **III.**

12             **CONCLUSION**

13   WHEREFORE, Plaintiffs' respectfully request that this Court grant their motion for leave

14   to file a Second Amended Complaint in the form submitted with their motion.

15

16

17

18   Dated: Sept. 20, 2021

19                                 Seth L. Goldstein,

20                                 Lead Attorney for Plaintiffs'

21

22

23

24

25

26

27

28

**Exhibit F**

1  Unified Schools and Placer County SELPA are business establishments within the meaning of the Unruh Civil Rights Act.

2  15.    Defendant California Department of Education (CDE), a department of the
3  State of California, presently, was, and at all times relevant to this Complaint,
4  responsible for inspecting and certifying Non-Public Schools such as GHS and POINT
5  QUEST. It is a business establishment within the meaning of the Unruh Civil Rights Act.
6
7  16.    Defendant Handle with Care Behavior Management System, Inc. Defendant,
8  HWC was a corporation organized under the laws of the State of New York, and doing
9  business in California, marketing a system of restraint and training California teachers
10 to restrain special needs children in prone and other types of restraints.

11  17.    At all times herein mentioned, Bruce Chapman (hereinafter "CHAPMAN"), was
12  the agent and employee, owner, president and founder of HWC, who developed a
13  patented restraint system marketed through HWC to schools in California for use on
14  "behaviorally challenged" children in California schools, including GHS, which lead to
15  the injuries to the student plaintiffs.
16

17  18.    At all times herein mentioned, defendant, HWC was a corporation organized
18  under the laws of the State of New York, and doing business in California, marketing
19  a system of restraint and training California teachers to restrain special needs children
20  in prone and other types of restraints.
21

22                           **JURISDICTION AND VENUE**

23  19.    Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing
24  against CDE, ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA
25  on March 24 , 2019 for injuries and claims herein stated against said public entities.
26  True and correct copies of said claims are attached as **Exhibit A.**
27

28  20.    Plaintiffs sue all Defendants in El Dorado County because all of the tortious acts

**Exhibit F**

occurred at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

21.     Plaintiffs are informed and believe that each of the Local Educational Agency (LEA) and NPS Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and at all times acting and performing, or failing to act or perform, within the course and scope of each similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

### GHS EMPLOYEES:

22.     At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault and batter Plaintiff MARQUES.

23.     At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M.,

- 5 -

**Exhibit F**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NO PROOF OF SERVICE AS THE DEFENDANTS

HAVE NOT YET BEEN SERVED WITH A COMPLAINT

- 7 -

**Exhibit F**

1   Seth L. Goldstein, S.B.N. 176882
2   2100 Garden Road, Suite H-8
    Monterey, California, 93940
3   Telephone  (831) 372 9511
    Fax        (831) 372 9611
4
5   **Lead-Counsel for Plaintiffs**

6

7               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                          **COUNTY OF EL DORADO**
8
9   In the Matter of:

10  _____   )   **Case No.: PC20200429**
                                        )
11  Louie Andreas MARQUES, Gloria V.M., )
    Thomas V.M., and Jordan V.M.,       )
12                                      )   **SECOND AMENDED**
                                        )   **COMPLAINT FOR DAMAGES**
13             **Plaintiffs**           )
                                        )
    **vs**                              )
14                                      )   **JURY TRIAL DEMANDED**
15  **GUIDING HANDS SCHOOL,**           )
    **Inc.(hereinafter "GHS"), , Staranne** )
16  **MEYERS, Cindy KELLER, David**     )
    **CHAMBERS,  Noel COLLIER, Patricia** )
17  **DOE, David DOE, Amanda DOE, Cara** )
    **BRUCE, Ashley ROB, Dolores ZUMBURY,** )
18  **Vince ANDERSON and Noelle DOE; STATE** )
    **OF CALIFORNIA, DEPARTMENT OF**    )
19  **EDUCATION; PLACER COUNTY SELPA,** )
    **Kristi GREGERSEN, Troy TICKLE, POINT** )
20  **QUEST, Inc., Bill TOLLESTRUP, Bill** )
    **WEBBER, Nicole DOE, Jennifer DOE;** )
21  **ROCKLIN UNIFIED SCHOOL DISTRICT,** )
    **Kristain ROYER, Beth DAVIDSON;**  )
22  **HANDLE WITH CARE BEHAVIOR**       )
    **MANAGEMENT SYSTEMS, INC.**        )
23

24             **Defendants.**
    _____
25                      **I. PARTIES**

26                       **Plaintiffs**

27  1.  Plaintiff Louie MARQUES (legal name Louie Andreas MARQUES, hereinafter

28      "MARQUES"), who lives in Sacramento was, at all relevant times herein, a minor

                                                            **Exhibit F**

child diagnosed as then having Oppositional Defiant Disorder and ADHD.  He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

2.     At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

3.     The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

4.     **Plaintiffs Thomas and Jordan V.M.** were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

5.     Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears as predictable behaviors.

6.     His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

7.     Jordan V.M. had an IEP that identified non-compliance, physical aggression (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate gestures and other behavior described as eating crayons and spitting water as predictable behaviors.

8.     His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt

- 2 -

**Exhibit F**

1  approach" and reapplication of original direction and follow through with original
   instruction.

2  9.     **Plaintiff Gloria V.M.** is the adoptive mother of Thomas and Jordan V.M. and is
3  their Guardian Ad Litem.

4

5                              **DEFENDANTS**

6  10. **Defendants Guiding Hands School Inc.**, and **Point Quest Inc.** 4900 Windplay Dr.,
7  El Dorado Hills, California, located on the same premises having allegedly bought out
8  GHS are non-public schools (hereinafter NPS) incorporated under the laws of the State
9  of California as for-profit corporations and approved by the State of California as
10 institutions providing for children with disabilities.

11 11.    At all times relevant to this Complaint, GHS was a business establishment within
12 the meaning of the Unruh Civil Rights Act.  Defendant GHS was an independent
13 contractor with Elk Grove Unified Schools, pursuant to a written contract to perform
14 educational services for Plaintiffs MARQUES, Thomas and Jordan V.M.
15

16 12.    Presently, and at all times relevant to this Complaint, POINT QUEST is a
17 business establishment within the meaning of the Unruh Civil Rights Act.  Defendant
18 POINT QUEST is an independent contractor with Rocklin Unified Schools and Placer
19 County SELPA, pursuant to a written contract to perform educational services for
20 Plaintiff Jordan V.M.
21

22 13.    At all times relevant to this Complaint, Defendant Noel COLLIER, Patricia DOE,
23 David DOE, Amanda DOE, and Noelle DOE were employees of POINT QUEST and
24 were either directly involved in restraining Plaintiff Jordan V.M. or were immediately
25 present on the premises during the restraints and failed to intercede to protect the
26 plaintiffs.
27

28 14.    Presently, and at all times relevant to this **Complaint, Defendants Rocklin**

-3-

**Exhibit F**

defendants MEYERS was the principal and member of the board of GHS, KELLER was the executive director of GHS, RAMSEY was an administrator for GHS, CHRISTENSEN was an administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN, Noel COLLIER (Special Education Teacher), and unknown DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas and Jordan V.M.

24.    At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY (hereinafter "ZOMBURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter "CHAMBERS") Kera BRUCE (Hereinafter "BRUCE" , and DOE defendants were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of GHS.

25.    The names and capacities, whether individual, corporate, otherwise, sued herein as DOES 1-100, inclusive, are presently unknown, and Plaintiff will amend the Complaint to insert them when ascertained.

**POINT QUEST EMPLOYEES**

- 6 -

**Exhibit F**

26.      Bill Tollestrup, Interim Director of El Dorado Hills, Bill Weber, Director of El Dorado Hills, Nicole DOE, Jennifer DOE and DOE defendants were employed as administrators, teachers, and aides at POINT QUEST, who intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of POINT QUEST.

### ROCKLIN UNIFIED SCHOOL EMPLOYEES

27.      Kristain ROYER, Program Specialist, Beth DAVIDSON, Assistant Director of Special Education, and DOE defendants were employed as administrators at RUSD, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

### PLACER COUNTY SELPA EMPLOYEES

28.      Kristi Gregersen, Program Specialist, Troy TICKLE, Director, Placer County SELPA, and DOE defendants were employed as administrators at Placer County SELPA, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

29.      Plaintiffs MARQUES, Thomas, and Jordan V.M. were placed at GHS and POINT QUEST by their respective school districts after representations were made to the

- 7 -

**Exhibit F**

minors' parents about both schools special skills, facilities and safe environment

1   appropriate for their children. The placement was pursuant to each student's Individual

2   Education Plan (IEP), as a result of their diagnosis as children with disabilities, because

3   the school districts themselves determined they were unable to provide a Free

4   Appropriate Public Education.

5   30.    Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER

6
    COUNTY SELPA have failed to adequately supervise their employees that resulted in
7
    the foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure
8
9   that staff who came into contact with Plaintiffs would provide an environment free of

10  abuse and neglect.

11  31.    California law, including Cal Const, Art. I § 28, has long imposed on school

12  authorities a duty to supervise at all times the conduct of children on school grounds

13
    and to enforce those rules and regulations necessary for their protection. Defendants
14
    also had a duty to use reasonable measures to protect students from foreseeable injury
15
16  at the hands of third parties acting intentionally or negligently.

17  32.Defendants have violated their statutory duties to Plaintiff, including their

18  supervisory duties created under California Education Code sections 44807 and 44808.

19  33.    California Penal Code section 11166 which required them to report any knowledge

20
    of a child whom the mandated reporter knows or reasonably suspects has been the
21
    victim of child abuse or neglect to the agency immediately or as soon as is practically
22
23  possible by telephone and the mandated reporter shall prepare and send, fax, or

24  electronically transmit a written follow up report thereof within 36 hours of receiving the

25  information concerning the incident.

26  34.    Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan

27  V.M., including multiple violations of California Education Code sections 56521.1 and
28

- 8 -

**Exhibit F**

56521.2 (and its predecessor legislation) that, in pertinent parts, suggest alternative interventions and/or prohibits the use of any interventions that:

1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an amount of force that exceeds that which is reasonable and necessary under the circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma.

35.     Defendants have violated their statutory duty under California Penal Code section 11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."

36.     Defendants GHS and POINT QUEST violated its statutory duty under California Education Code section 260 by failing to enact an adequate formal or informal policy to ensure that GHS and POINT QUEST provided a learning environment free from discrimination based on the characteristics provided in California Education Code section 220, specifically disability.

37.     GHS was closed in 2018 after the State of California revoked their license to operate following the death of student Max Benson who was subjected to a restraint that killed him.

38.     After GHS was closed it was, allegedly, sold to POINT QUEST, and Jordan V.M. then attended Defendant POINT QUEST.

39.     When POINT QUEST took over GHS facilities and educational duties, Gloria V.M. was assured by the Rocklin Unified School staff, Placer County SELPA, and POINT QUEST staff, expressly, by inference, or omission, that the previous policies and practices employed by GHS were, not only no longer employed, she was assured that the GHS employees were gone and would not be rehired at POINT QUEST.

- 9 -

**Exhibit F**

40.    For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") -have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for their physical and emotional health.

41.    There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to abusive use of restraint systems, such as the Handle With Care system developed by Defendant Bruce Chapman. It is also well-known that restraints are disproportionately used against children with disabilities.

42.    Despite this knowledge, nonpublic schools like Defendants GHS and POINT QUEST and their respective staffs continued to use such restraints frequently, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or others, for extended periods of time, on students whose disabilities elevated the risk of using restraints, and with excessive force.

43.    They could do so because the CDE, and the LEA Defendants abdicated their responsibilities to monitor and supervise GHS and POINT QUEST and ensure their compliance with state and federal laws prohibiting discrimination and the improper use of restraints.

44.    The CDE continued to certify GHS continues to currently certify POINT QUEST, and the LEA Defendants continued to contract with and place their students with disabilities in the respective schools.

45.    Plaintiff students with developmental and other disabilities whose local educational agencies placed them at GHS and POINT QUEST pursuant to their Individualized Education Plans ("IEP")

46.    Each Plaintiff Student attended GHS sometime between 2006 and 2018, where its administrators and staff subjected them to excessive and harmful restraints and

- 10 -

**Exhibit F**

other aggressive physical interventions in response to known behaviors associated with their disabilities, resulting in physical and emotional abuse and injury, and in the case of one other student, death.

47.     GHS was, and POINT QUEST is, a nonpublic school-as that term is defined in Cal. Ed. Code § 56034-which contracted with the LEA Defendants to provide special education services to public school students with disabilities in exchange for state and federal educational funding.

48.     As required by law, GHS and POINT QUEST entered into Master Contracts with the LEA's, as well as an Individual Services Agreement for each student placed there.

49.     Each of the Plaintiff Students' IEP's included a Behavioral Intervention Plan ("BIP") which described the student's known disability-related behaviors and the intervention strategies and positive behavioral supports educators should use to prevent or respond to those behaviors.

50.     Despite legal requirements (discussed below) and Defendants' knowledge of the dangers associated with restraints to students' physical and emotional health, GHS and POINT QUEST administrators and employees engaged in a policy and practice of using restraints as a substitute for the positive interventions detailed in the students' BIPs in response to predictable behavior that did not pose a clear and present danger of serious physical harm to the student or others. GHS and POINT QUEST used restraints against its students frequently, for periods of time that were longer than necessary, and with excessive force.

51.     These restraints-including prone restraints- in which the child is placed face down on the floor with one or more adults applying force from above to keep the child's body immobile-frequently lasted over an hour.

52.     Some students were restrained frequently, sometimes more than one time each

- 11 -

day.

53.     The restraints and other aggressive physical interventions inflicted by GHS and POINT QUEST caused the Plaintiff Students physical and emotional injuries.

54.     GHS and POINT QUEST administrators were not only aware of the abuse, but encouraged it and were responsible for the school's policy and practice of using frequent, excessive, harmful and lengthy restraints as a substitute for positive behavioral interventions in response to students' predictable, disability-related behaviors.

55.     GHS and POINT QUEST did not provide adequate training in positive behavioral interventions, instead relying on Defendant Bruce Chapman's patented restraint system, Handle With Care Behavioral Management Systems, Inc. which was associated with numerous abuses by educational professionals on students with behavioral challenges.

56.     GHS and POINT QUEST training in the HWC method ignored requirements of state and federal law and did not provide proper warnings regarding the risks associated with restraining students or safeguards for monitoring and responding to signs of distress.

57.     Moreover, GHS and POINT QUEST took significant measures to conceal its illegal use of restraints and child abuse from parents and the LEAs with which it contracted by failing to provide required reports to the parents and the State of California.

58.     Prior to the childen's placement, GHS misrepresented orally, in enrollment documents, and in the children's IEP that the school focused on proactive, positive behavioral interventions and that corrective behavior would be "calm", "brief", and "respectful."

- 12 -

**Exhibit F**

59.     The HWC Intervention Statement that parents had to sign as part of the enrollment packet emphasized positive intervention and "the 3-step prompt" which "entails a verbal request, followed by staff modeling and finally hand over hand with children who may have difficulty following directions . . . " It represented that a restraint would be used only if the child appeared to be "a physical danger to themselves or others around them".

60.     GHS used the HWC terminology in referring to the most dangerous restraint-a prone restraint-as a "neutral" restraint. *Id.* These misrepresentations were repeated in the students' BIPs developed as part of the IEP process and a part of the agreement between the parent/student, the LEA, and GHS.

61.     When a student was restrained, GHS frequently failed to complete a Behavioral Emergency Report ("BER"), place the BER in the student's file, send it to the LEA, or notify the student's parent, as required by law and GHS's Master Contracts with the LEAs. Nor did GHS administrators or staff report the regular, systemic child abuse they witnessed and participated in at the school, despite the requirement to do so as mandated reporters.

62.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.

63.     However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to place vulnerable students in its care. GHS would still be abusing its students were it not for the death of a 13-year-old student who died after he was held in a prone restraint for almost two hours on November 28, 2018.

64.     Plaintiff Thomas V.M. was a disabled student, placed at GHS on August 6, 2018,

- 13 -

**Exhibit F**

because of his diagnosis of his disability. Plaintiff Jordan V.M. was a disabled student,

1    placed at GHS on February 22, 2018, because of his diagnosis of disability. All

2    plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their

3    educational experience and abilities.

4    65.    Because of the disruption that affected other students, they were frequently

5    placed in such restraints, which included but was not limited to, the imposition of

6    restraints that constituted physical child abuse, battery, and assault.
7

8    66.    Referring to these restraints as though they were normal and accepted ways of

9    disciplining plaintiffs, Defendant administrators,  teachers and assisting staff, as

10   individually identified below, preyed on plaintiffs because of their disability related

11   conduct.

12   67.    These defendants assaulted and battered plaintiffs repeatedly rather than

13   following the BIPs.
14

15   68.    The LEA administrators, by and through their agency with GHS  and POINT

16   QUEST   administrators tasked unqualified and inadequately trained staff with

17   supervising plaintiff students, who often failed to document and report incidents of

18   abuse, and failed to take reasonable steps to prevent further abuse.

19   69.    Plaintiffs, like other students who were also subjected to such conduct, would

20   attend class and when a student acted consistently with their predictable behaviors

21   stated in their individual BIP and IEP (and the reason(s) why they were placed at GHS
22
     and POINT QUEST) or failed to follow the directions of the GHS  and POINT QUEST
23
     staff as individually described below, they would be subjected to painful restraints in full
24
25   and open view of fellow students.

26   70.    Each plaintiff had specific conduct that was identified in their BIP, for which,

27   each plaintiff had a set of less restrictive measures to be taken before a "hands on"
28

- 14 -

**Exhibit F**

physical intervention such as painful restraints would be exercised.

71.    Plaintiffs witnessed other students treated in the same way in their respective classes. The observation of such torturous conduct to other students and themselves caused Plaintiffs who were in their immediate presence to experience fear and anxiety such that they were terrorized in anticipation that they too might be hurt in the same way.

72.    As to MARQUES, the documented abuse occurred from as early as December 18, 2006, when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was removed. For Thomas and Jordan V.M., it began when they first began to attend GHS on February 22, 2018, and lasted until they were removed on or about the end of December 2018 and officially, in January, 2019.

73.    Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on or about October 1, 2019 and officially October 22, 2019.

74.    No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary.

75.    Defendants GHS and POINT QUEST, and their individual staff members as particularly described below, carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

76.    The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent

- 15 -

**Exhibit F**

the abuse.

77.    Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

78.    Plaintiffs Thomas and Jordan V.M. are in another school in Washington State.

79.    The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant.

80.    Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted.

81.    In addition, Plaintiff MARQUES is an adult and outside of the educational system.

82.    The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

83.    From records to be obtained by Plaintiffs, there were restraint incidents involving Plaintiffs and they expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

## OPERATIVE FACTS

84.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

### AS TO PLAINTIFF MARQUES

- 16 -

**Exhibit F**

85.     Over a one-and-one-half year period as specifically set forth below in each

cause of action, Defendants ZOMBURY, ANDERSON, ROBB, BRUCE, CORY,

BRYNA, CHAMBERS and DOE defendants repeatedly unlawfully assaulted Plaintiff

MARQUES by grabbing him, pushing or otherwise forcing him to the floor and, in

painful positions, pinning all four appendages for various periods of time, immobilizing

him, including as punitive measures. All were either for an unnecessarily prolonged

period of time or had failed to utilize the less restrictive measures set forth in his BIP

for predictable behaviors related to his disability.

86.     MARQUES was a student at GHS from 2006 to 2008. He was referred to GHS

by Elk Grove School District employees.

87.     MARQUES had both an Individual Education Plan (EIP) and a Behavioral

Intervention Plan (BIP) at all relevant times herein.

88.     Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON,

ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants failed to file

Behavioral Emergency Reports or document injuries as required by law, so all of the

dates of assaults all are unknown to MARQUES at the present time.

89.     Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16,

2007, April 23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March

19, 2008, set forth in greater detail below.

90.     On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and

Ashley Robb, put MARQUES in a restraint for 12 minutes because he failed to stand

appropriately and when escorted from the line he was standing in, kicked a student and

Bruce. He was restrained "per CPI". Both Dolores ZOMBURY and David Chapman

participated in the restraint.

91.     On December 18, 2006, at 1:45 PM Ashley Robb and Kera Bruce instituted an

- 17 -

**Exhibit F**

eight minute restraint after MARQUES had been found to have a toy belonging to another student. What he was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a basket restraint.

92.     On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by ZOMBURY, after he refused to sit down and began throwing pencils and calling children names.

93.     On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMBURY for five minutes after he was told to put a pointer down and had slapped it on the desk of another student. When he was directed to sit down he ran around the room and was restrained.

94.     On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by Dolores ZOMBURY and subsequently by a teacher's aide known only as "Laure", when MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the teacher and was taken to the "corner".

95.     On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by ZOMBURY after another student had pushed him, rubbing "snot" on his jacket and in response he pushed that student down.

96.     On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began swearing and started to run towards another student after he disregarded a request by the instructor to put his head down on his desk. The staff involved were ZOMBURY and Chambers.

97.     On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor Vince Anderson, because he failed to follow directions and began yelling in the presence of his mother.

98.     On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants

- 18 -

**Exhibit F**

restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

99.     In this restraint, MARQUES was pushed to the ground and placed in a position for an extended period of time, while his arms were pulled behind his back. GHS staff sat at his back while he was in this position, increasing his pain and making it difficult for him to move.

100.    This incident arose when another child assaulted MARQUES with a rock and MARQUES defended himself.

101.    When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks as a result of these restraints.

102.    MARQUES subsequently suffered panic attacks, night-terrors, startles, depression and self-loathing as a result of these restraints.

103.    MARQUES was abused on additional occasions while attending GHS.

104.    MARQUES will seek leave to allege these dates according to proof when furhter information becomes available through the discovery process.

105.    At all relevant times, MARQUES.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

106.    The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code Sec. 242), and torture (Penal Code Section 260) prohibited by California law.

**AS TO THOMAS V.M.**

107.    Thomas V.M. was restrained by GHS and POINT QUEST staff on many occasions the precise details are neither known to he nor his mother at this time, other than that described as follows.

- 19 -

108.    Thomas V.M. was restrained in some fashion on September 5, 2018, for forty (40) minutes by or in the presence of Defendant Noel COLLIER, who left a phone message for Gloria V.M. on that date informing her of the incident where he refused to participate in an art exercise and was restrained as a result of staff intervention.

109.    Thomas V.M. was restrained in some fashion on September 19, 2018, by or in the presence of Defendant Noel COLLIER.

110.    Thomas V.M. was restrained in some fashion on October 3, 2018, by or in the presence of Defendant Noel COLLIER, when he refused to cooperate with staff.

111.    Thomas V.M. was restrained in some fashion on October23, 2018, by or in the presence of Defendant Noel COLLIER and David Chambers, when he would not cooperate with staff and bit one on the leg.

112.    Thomas V.M. was restrained in some fashion on October18, 2018, by or in the presence of Defendant Noel COLLIER when he would not cooperate with staff.

113.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 3, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in Yoga.

114.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 5, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would participate in his math lesson and threw a pencil and his book.

115.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 19, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in school work, threw his paper at Noelle DOW and tried to leave the classroom.

- 20 -

**Exhibit F**

116.   Thomas V.M. was restrained by a staff member named "Jennifer" when attending POINT QUEST and, as a result, his mother immediately withdrew him from the school.

117.   Thomas V.M. knows that "Jennifer"was a previous staff member at GHS.

**AS TO JORDAN V.M.**

118.   Jordan V.M. was restrained by GHS staff on many occasions the precise details are neither known to he nor his mother at this time,  other than that described as follows:

119.   Jordan V.M. was restrained in a restraint of some fashion on February 26, 2018, by or in the presence of Defendant Amanda Doe, when he would not cooperate on a bus trip home.

120.   Jordan V.M. was restrained in a restraint of some fashion on October 10, 2018, by or in the presence of Defendant Noel COLLIER, when he was asked to do class work and threw a crayon.

121.   Jordan V.M. was restrained in a restraint of some fashion on October 9, 2018, by an unknown staff member, possibly "Dorian", for an unknown reason.

---

**FIRST CAUSE OF ACTION**

AS TO PLAINTIFF MARQUES Against GHS;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;
and DOES 1-100.
(Violation of California Civil Code §§ 51, *et seq.*)

122.   Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

123.   Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with

- 21 -

**Exhibit F**

Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was

1   limited in the major life activities of learning.

2   124.   Plaintiffs THOMAS and JORDAN V.M. are persons with disabilities as defined by

3   Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1. They had been

4   diagnosed as Autistic.

5   125.   Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND

6   ROCKLIN SCHOOL DISTRICT are businesses establishment covered by California
7
    Civil Code §51.
8

9   126.   GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and

10   emotional abuse in response to behavior that was a manifestation of Plaintiffs'

11   disabilities as described above.

12   127.   GHS and POINT QUEST discriminated against Plaintiffs in that they did not
13
    provide them with full and equal enjoyment of GHS' and POINT QUEST's goods,
14
    services, facilities, privileges, advantages, or accommodations.
15

16   128.   Plaintiffs were not provided with the services, facilities, privileges, advantages

17   and accommodations of GHS and POINT QUEST on a basis equal to that afforded to

18   individuals without disabilities.

19   129.   The discipline methods, behavior standards and criteria employed by GHS and
20
    POINT QUEST caused Plaintiff to be subjected to physical and emotional abuse as a
21
    result of his disabilities.
22

23   130.   GHS and POINT QUEST failed to make reasonable modifications to their

24   educational and behavioral intervention methods and staff training that were necessary

25   to afford students with disabilities such as Plaintiff equal access to GHS's and POINT

26   QUEST's goods, services, facilities, privileges, advantages and accommodations.

27   131.   The actions and failures to act of GHS and POINT QUEST violated Title III of the

28

- 22 -

**Exhibit F**

Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed

additional violations of the Unruh Civil Rights Act in that the conduct alleged herein

constitutes a violation of various provisions of the Americans with Disabilities Act, 42

U.S.C. sections 12181, *et seq.* As such, Defendant's actions also constituted a violation

of the Unruh Act under Cal. Civ. Code § 51(f).

132.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN

UNIFIED SCHOOLS were the product of joint action between public entities and

individual employees.

133.   Defendants are liable to Plaintiffs for each and every offense for actual damages

and multiple damages of up to three times the actual damages incurred, but in no case

less than $4000 per offense pursuant to California Civil Code section 52.

134.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
Violation of Cal. Civ. 51.7 Ralph Civil Rights Act
AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

135.   Plaintiffs incorporate, by reference herein, all preceding paragraphs as though

fully set forth herein.

136.   Defendants in doing the acts described above violated Plaintiffs' rights under the

Ralph Civil Rights Act.

137.   Plaintiffs have the right to be free from any violence, or intimidation by threat of

violence, committed against their persons or property because of any characteristic

listed or defined in subdivision (b) or (e) of Section 51, because another person

perceives them to have one or more of those characteristics.

138.   In committing the acts described above, all defendants have violated Plaintiffs'

rights by subjecting them to violence and intimidation.

- 23 -

**Exhibit F**

139. The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

140. Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

141. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

For Interference with Exercise of Civil Rights in
Violation of California Civil Code Section 52.1
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

142. Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth herein.

143. California Civil Code 52.1 provides that it is unlawful to interfere with the exercise or enjoyment of any rights under the Constitution and the laws of this state and the United States by attempted use of threats, intimidation or coercion.

144. The California Constitution establishes the right to a free public education to all students on an equal basis. *Butt v. California*, 4 Cal. 4th 668, 685 (1992).

145. California Civil Code section 43 guarantees the right of every person to be free from bodily restraint or harm and personal insult.

146. In doing the things herein alleged, Defendants intentionally interfered with and attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

147. Defendants acted violently against Plaintiff, thereby preventing him from exercising his rights.

148. Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

- 24 -

**Exhibit F**

149.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

150.   The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

151.   Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a face down position with the pupil's hands held or restrained behind the pupil's back; and by using a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed a clear and present danger of serious physical harm to the pupil or others.

152.   Defendant employees of GHS and POINT QUEST acted with conscious disregard of Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff. Plaintiff is therefore entitled to recover punitive and exemplary damages.

153.   Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys' fees and costs as set by the Court.

**FOURTH CAUSE OF ACTION**
(Violation of California Education Code §§ 200, 201, 220, and 260 et seq. - AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT

154.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

- 25 -

**Exhibit F**

155.   Plaintiffs are individuals with disabilities.

156.   At all times relevant to this complaint, Defendant GHS was an educational institution providing education to students from kindergarten through twelfth grade and receiving financial assistance from the State of California.

157.   Defendants discriminated against Plaintiff on the basis of their disability by subjecting them to physical and emotional abuse in response to disability-related behavior.

158.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

159.   The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

160.   As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages in an amount according to proof and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
Assault and Battery Pursuant to California Penal Code Section 206
AS TO PLAINTIFFS THOMAS AND JORDAN V.M.
against Defendants MEYERS, KELLER, CHAMBERS, RAMSEY,
"JENNIFER"DOE, DOES 1-100.

161.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

162.   CHAMBERS, MEYERS, KELLER, RAMSEY, "JENNIFER"DOE, and DOE defendants, with the intent to cause cruel or extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted significant injury upon Plaintiffs by repeatedly assaulting Plaintiffs throwing them to the ground and causing bruises, contusions and lacerations.

- 26 -

**Exhibit F**

Case 2:22-cv-00150-KJM-JDP Document 1 Filed 01/25/22 Page 406 of 606

163. As a result, Plaintiffs suffered physical and psychological injuries.

164. Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiffs.

165. Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

166. Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

167. Defendants' conduct in intentionally assaulting and restraining Plaintiffs knowing of their disabilities was malicious and outrageous such that exemplary damages should be awarded.

168. WHEREFORE, Plaintiffs pray for judgment for damages according to proof.

## SIXTH CAUSE OF ACTION
### ASSAULT AND BATTERY
Thomas and Jordan V.M. against Defendants MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, "JENNIFER DOE," DOES 1-100

169. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

170. In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs Thomas and Jordan V.M. to suffer harmful or offensive contact.

171. As a result of said conduct of said defendants, Plaintiffs Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

172. In doing the things herein alleged, said defendants threatened to touch Thomas and Jordan V.M. in a harmful or in an offensive manner.

- 27 -

Exhibit F

173. At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan V.M. that said defendants were about to carry out the threat.

174. At all times herein mentioned, Thomas and Jordan V.M. did not consent to the conduct of said defendants.

175. Thomas and Jordan V.M. suffered harm, as herein alleged.

176. The aforementioned conduct of said defendants was a substantial factor in causing Thomas and Jordan V.M. harm.The conduct of said defendants, caused Thomas and Jordan V.M. to be apprehensive that said defendants would subject Thomas and Jordan V.M. to further intentional invasions of their right to be free from harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a present ability to subject Thomas and Jordan V.M. to an intentional offensive and harmful touching.

177. Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

178. At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas and Jordan V.M. rights, safety, physical well-being and feelings. Said defendants also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury and/or humiliation to Thomas and Jordan V.M. Said defendants intended to cause fear, physical injury and/or pain and suffering to Thomas and Jordan V.M.

179. By virtue of the foregoing, the estate of Thomas and Jordan V.M. are entitled to recover punitive and exemplary damages from individual and non-public entity

- 28 -

**Exhibit F**

defendants according to proof at trial. Estate of Thomas and Jordan V.M. make no

1 claim for punitive damages against the named defendants.

2 ### SEVENTH CAUSE OF ACTION

3 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
4 Gloria V.M. against all RUSD, PLACER COUNTY SELPA, GHS AND RUSD
ADMINSTRATORS defendants;
5 Thomas and Jordan V.M. against defendants GHS, POINT QUEST, David
CHAMBERS, Susan Jane BATTLE, "Cory" Doe, Cory QUINCEY, Byrna QUINCEY,
6 Noel COLLIER, Ashley ROBB, Dolores ZUMBURY,
Vince ANDERSON, Nicole Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR
7 MANAGEMENT SYSTEMS, INC.

8 180.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

9 fully set forth herein.

10

11 181.    In doing the things herein alleged, the conduct of said defendants was

12 outrageous in that it was so extreme as to exceed all bounds of that usually tolerated

13 in a civilized community.

14 182.    Said defendants inflicted actual injury and/or acted with reckless disregard of the

15 probability that Plaintiffs Gloria, Thomas and Jordan V.M. would suffer emotional

16 distress, knowing that the children who were restrained, including Gloria, Thomas and

17 Jordan V.M., were present when the conduct occurred.
18

19 183.    The conduct of said defendants, as herein alleged, was a substantial factor in

20 causing Gloria, Thomas and Jordan V.M., to suffer severe emotional distress, severe

21 mental anguish, humiliation, pain, and physical distress.

22 184.    Said defendants knew or should have known that Thomas and Jordan V.M. did

23 not need to be, for their safety or the safety of others, and did not want to be, physically

24 forced into prolonged prone restraints, standing, seated, settled and/or small child

25 restraints.
26

27 185.    Said defendants' knowing disregard for the safety of Thomas and Jordan V.M.

28 and said defendants' deliberate failure to monitor and control their behavior towards

- 29 -

**Exhibit F**

exceptional needs students, such as Thomas and Jordan V.M. caused Thomas and

Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS

and POINT QUEST.

186. Said defendants' conduct was extreme and outrageous.

187. Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Gloria, Thomas and Jordan V.M. would suffer emotional distress.

188. The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Gloria, Thomas and Jordan V.M. As a result, Gloria, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

**EIGHTH CAUSE OF ACTION**
**FALSE IMPRISONMENT CONSPIRACY TO COMMIT FALSE IMPRISONMENT**
ASSERTED by Thomas and Jordan V.M. against all individual defendants

189. Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

190. Said defendants, in concert with one another, did intentionally and unlawfully, and conspire to, exercise force, threat, implied threat of force, or duress, to restraint and confine Thomas and Jordan V.M. , and deprive them of their freedom of movement, when said defendants committed the acts described herein.

191. Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

192. As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and emotional harm, as herein alleged.

193. That the conduct of said defendants, as herein alleged, was a substantial factor

- 30 -

**Exhibit F**

in causing harm to Thomas and Jordan V.M.

1   194.    The outrageous conduct of the said defendants was willful and wanton, and was

2   performed with conscious disregard for the rights, safety, physical well-being and

3   feelings of Thomas and Jordan V.M.

4   195.    As a result, Thomas and Jordan V.M. are entitled to punitive or exemplary

5   damages from individual and non-public entity defendants in a sum according to proof

6   at time of trial.

7

8                          **NINTH CAUSE OF ACTION**
                                    NEGLIGENCE
9         Gloria V.M. against all RUSD, PLACER COUNTY SELPA, GHS AND RUSD
                          ADMINSTRATORS defendants;
10        Thomas and Jordan V.M. against defendants GHS, POINT QUEST, David
      CHAMBERS, Susan Jane BATTLE, "Cory" Doe, Cory QUINCEY, Byrna QUINCEY,
11             Noel COLLIER, Ashley ROBB, Dolores ZUMBURY,
      Vince ANDERSON, Nicole Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR
12                     MANAGEMENT SYSTEMS, INC.

13
    196.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as
14
    though fully set forth herein.
15

16  197.    Said defendants breached their duty towards Thomas and Jordan V.M. by:

17          a. Failure to develop and maintain effective procedures governing
               emergency interventions;
18
            b. Failure to obtain proper training for use of behavioral emergency
19             interventions

20          c. Failure to provide oversight on the use of restraints
21
            d. Failure to develop protocols for use of restraints
22
            f. Failure to prohibit restraints on physically disabled children
23

24          g. Failure to prohibit prolonged restraints (anything over 15 minutes)

25          h. Failure to require that Thomas and Jordan V.M. be released from a
               restraint at the earliest possible moment.
26
            i. Failure to prohibit the use of any restraint when contraindicated by
27             Thomas and Jordan V.M. medical or psychological conditions, which were
               known to increase the risk of physical injury.
28

                                    - 31 -

                                                        **Exhibit F**

j. Failure to prohibit restraints that constrict the child's ability to breathe.

k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l. Failure to provide for the comfort of Thomas and Jordan V.M. while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M. fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m.     Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o. Failure to require immediate and accurate reporting on each restraint

p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q. Failure to provide for:
        -primary preventative measures rather than restraint;
        -interventions that are less intrusive than restraints;
        -effective ways to de-escalate situations to avoid restraints; and
        -crisis intervention techniques that utilize alternatives to restraint.

r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t. Allowing use of physical restraints on children which:
        - create an aversive environment counterproductive to facilitating learning;
        - cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine
        - whether the intervention was necessary
        - whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v. Failed to document injuries caused by restraint and

- 32 -

**Exhibit F**

w.     Failed to get medical attention for a child who was injured while in restraint.

198.   As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

199.   Breach of said mandatory duties by said defendants was a substantial factor in causing injuries Thomas and Jordan V.M.

200.   At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward Thomas and Jordan V.M. who were disabled students under their guidance and care.

201.   At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints on special needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in violation of California law.

202.   At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints, known by said defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with reckless disregard for the safety of said children.

203.   At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone and other restraints, to injure special needs/disabled children and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for

- 33 -

**Exhibit F**

which they were hired.

204.    As a direct and foreseeable result of the negligence of said defendants learning of the death of Max Benson, plaintiffs and their own injuries Thomas and Jordan V.M. suffered physical and emotional injuries.

205.    The negligence of said defendants was a substantial factor in causing injury Thomas and Jordan V.M. to suffer physical and emotional injuries.

206.    By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

## TENTH CAUSE OF ACTION

NEGLIGENT SUPERVISION
Thomas and Jordan V.M. against defendants GHS, POINT QUEST,  David CHAMBERS, Susan Jane BATTLE, "Cory" Doe, Cory QUINCEY, Byma QUINCEY, Noel COLLIER,  Ashley ROBB, Dolores ZUMBURY, Vince ANDERSON, Nicole Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC.

207.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

208.    Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

209.    Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

210.    Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the

- 34 -

**Exhibit F**

abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were

adequately trained and provided proper supervision.

1

2      211.    As a direct and proximate result of the actions of said defendants as alleged

3      herein, Thomas and Jordan V.M.  suffered injury, and are entitled to damages

4      according to proof.

5
                                 **ELEVENTH CAUSE OF ACTION**
6                                      **NEGLIGENCE PER SE**
       Thomas and Jordan V.M. against defendants GHS, POINT QUEST,  David
7      CHAMBERS, Susan Jane BATTLE, "Cory" Doe, Cory QUINCEY, Byrna QUINCEY,
                  Noel COLLIER,  Ashley ROBB, Dolores ZUMBURY,
8                       Vince ANDERSON, Nicole Doe, Jennifer Doe

9

10     212.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

11     fully set forth herein

12     213.    In doing the things herein alleged, said defendants violated the mandatory duties

13     toward  Thomas and Jordan V.M. as prescribed by state and federal law as referenced
14
       in each of the statutes as set forth here-in-above.
15

16     214.    Said violations were of the statutes specifically intended to protect the class of

17     plaintiff and to prevent the injuries as those described herein.

18     215.    Said violations of criminal and civil law were a substantial factor in bringing about

19     the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

20     216.    As a direct and proximate result of the actions of said defendants as alleged
21
       herein, Thomas and Jordan V.M.  suffered injury, and are entitled to damages
22
       according to proof.
23

24                               **TWELFTH CAUSE OF ACTION**
                               Tortious Breach of the Covenant
25                              Of Good Faith and Fair Dealing
       Asserted by the Plaintiffs Gloria, Thomas and Jordan V.M. Against Defendants
26     GHS, Meyers, Keller, Point Quest, Troy Tickle, Kristi Gregerson, Cara Bruce and Doe
                                  Defendants 1-100
27

28     217.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

                                        - 35 -

                                                                    **Exhibit F**

fully set forth herein.

218.     Upon the respective enrollment of Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants for the education of their children.

219.     At all times herein mentioned, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants.

220.     As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support.  The GHS handbook also indicated that defendant GHS would "customize" the system to support student outcomes and "interact with students in a way that promotes social proficiency."  The GHS handbook states that "social competence is a skill that requires direct teaching." .  The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

221.     As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce,  and DOE defendants against any student based on physical or mental disability.

222.     As part of said contract, defendants GHS, MEYERS, KELLER, POINT QUEST,

- 36 -

**Exhibit F**

Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and redirecting behavior using a lesson."

223.    As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

224.    As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants; and the most dangerous type of restraint, a prone restraint, was described by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants to each of Thomas and Jordan V.M's parents in innocuous language as a "neutral" restraint.

225.    Plaintiffs, and each of them, did all of the significant things that the contract required them to do.

226.    At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS, KELLER, POINT QUEST,Troy Tickle, Kristi Gregerson, Cara Bruce, and

-37-

**Exhibit F**

DOE defendants had occurred.

227.    Defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

228.    Defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

229.    By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

230.    By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

231.    By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. and the beneficiaries of said contract, Thomas and Jordan V.M., have suffered severe emotional and physical distress at having the respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

232.    By virtue of said  bad faith interference with contractual benefits,  all plaintiffs suffered physical and emotional injuries, and future general and special damages as

- 38 -

**Exhibit F**

herein alleged.

233.    The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

234.    In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults. As a consequence, plaintiffs, and each of them, are entitled to punitive damages.

## THIRTEENTH CAUSE OF ACTION

### FRAUD
### Asserted by Gloria V.M.

235.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

236.    On or about the date of enrolling their respective children in defendant GHS, defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, represented to Gloria V.M. that said defendants would not to discriminate in any activity against any student at GHS based on physical or mental disability under Title IX, Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited intimidation or harassment by any employee of defendants GHS and POINT QUEST against any student based on physical or mental disability; that said defendants and their employees would use Positive Behavior Interventions and Supports to correct

- 39 -

Exhibit F

inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, including using "positive language and redirecting behavior using a lesson"; that behavior by GHS' staff when correcting a child would be "calm, consistent, brief, immediate and respectful,"; that GHS and POINT QUEST behavior intervention approaches involved a three step prompt "verbal, modeling, hand-over-hand"; and that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities.

237. On or about the dates of the respective enrollment of Thomas and Jordan V.M., at GHS and POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and their employees represented to Gloria V.M that they were required to sign a form allowing defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, to impose restraints on said plaintiffs' respective children, with the implied threat that if they did not sign the form their respective children would not be enrolled at GHS, which was the only school available to educate said children, and therefore, the parents would be in violation of California's mandatory education law.

238. That the afore-mentioned representations of defendants, were false, and Gloria V.M. learned that they were false on or after November 29, 2018, upon the death of MAX, when they discovered that they did not have to allow or consent to the use of restraints against their disabled children.

239. Said defendants knew that said representations were false when they made them, and/or said defendants made the representations recklessly and without regard for the truth of said representations.

240. Said defendants intended that GLORIA V.M. rely on said representations.

241. GLORIA V.M. reasonably relied on said representations, and enrolled their respective children at defendant GHS to receive an education.

- 40 -

**Exhibit F**

242. GLORIA V.M. were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

243. GLORIA V.M. reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

244. At all relevant times, said defendants acted with conscious disregard of the rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs. By virtue of the foregoing, said plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial.

## FOURTEENTH CAUSE OF ACTION
### Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. Sec's 12101 et seq.

Thomas, V.M. and Jordan V.M. vs CDE, Rocklin Unified Schools, and Placer County SELPA

245. Plaintiffs incorporate by reference all preceding paragraphs.

246. Title II of the ADA prohibits public entities from denying persons with disabilities the benefits of its programs, services or activities. 28 U.S.C. § 12132.

247. Defendants CDE, Rocklin Unified Schools, and Placer County SELPA are public entities.

- 41 -

**Exhibit F**

248.     Thomas, V.M. and Jordan V.M. were at all relevant times students with disabilities who had been placed at GHS via their IEPs.

249.     The ADA is violated not only by outright discrimination but also when a public entity engages in "forms of discrimination which deny disabled persons public services disproportionately due to their disability." *Crowder v. Kitagawa*, 81 F. 3d 1480, 1483 (9th Cir. 1996); see also, *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008). The ADA prohibits governmental agencies from denying persons with disabilities from "the benefits" of their programs. *Mark H.*, 513 F.3d at 937. The ADA requires more than just some access to governmental services; it requires "meaningful access". Id.

250.     A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability:

a.   Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

b.   Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

c.   Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;

d.   Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

28 C.F.R. § 35.130(b)(1)(ii)(iii)(v) and (vii).

- 42 -

**Exhibit F**

251.    A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration-

    a.    That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

    b.    That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

    c.    That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

28 C.F.R. § 35.130(b)(3).

252.    A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(6).

253.    A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

254.    A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

255.    The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities.  Through GHS:

- 43 -

**Exhibit F**

a.    The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that were not equal to those provided to students without disabilities;

b.    The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that did not afford equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to LEA students without disabilities;

c.    The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans;

d.    The LEA Defendants limited the Plaintiff Students from enjoying their right to a free public education in a safe placement, free from discrimination or abuse; and

e.    The LEA Defendants used administrative methods-specifically the policies and practices of GHS regarding behavioral interventions-that subjected Plaintiff Students to disability discrimination and defeated or substantially impaired the objective of providing a free public education to the Plaintiff Students.

256.    Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe,

- 44 -

**Exhibit F**

abusive educational placement. The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement. Nor did it acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students. As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

257. The LEA Defendants failed to make reasonable modifications to their program of providing special education services to children within the LEA, such that LEA students with disabilities would not be subject to discrimination and abuse in their educational placements. These modifications-meaningful investigations and evaluations of the NPS prior to placing an LEA student there and forceful oversight, investigation, and measures to ensure compliance with state and federal laws during the placement, including site visits and regular review of school and student records and BERs-would not have constituted a fundamental alteration in the LEAs' programs of providing educational services to their students.

258. GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students. However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

259. The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to

- 45 -

**Exhibit F**

supervise, monitor, investigate, and ensure the legal compliance of GHS during the

1 placement; and to remove LEA students when it became clear that GHS was not a

2 safe placement and was subjecting the students to physical and emotional abuse

3 and discriminating against them on the basis of their disabilities.

4 260.    Defendant CDE knew or should have known that:  students with disabilities at

5 nonpublic schools-including GHS-were being restrained frequently, for excessive

6
periods of time, with excessive force, and in response to predictable,
7

8 disability-related behavior that did not constitute a clear and present danger to the

9 students' or others' safety; the types of restraints being used against children with

10 disabilities were dangerous and have resulted in serious injury to and death of

11 students with disabilities in response to behavior that was known to be a

12 manifestation of the students' disabilities; that the particular disabilities of the

13
children against whom these restraints were used made the restraints even more
14

15 dangerous; and that the restraints were not only ineffective and contrary to the

16 students' BIPs, but more often than not aggravated the students' behavioral

17 problems.

18 261.    Defendant CDE discriminated against Plaintiffs on the basis of their

19 disabilities by:

20
a.    Abdicating its duties to supervise, monitor,
21        investigate, train, and ensure legal compliance of
          nonpublic schools, including GHS, with laws designed
22        to protect students with disabilities from discrimination
          and abuse;
23

24        b.    Failing to take even minimal measures to ensure
                statewide compliance with state and federal laws
25              within nonpublic schools, including GHS;

26
c.    Administering its licensing program of
27        certifying, monitoring, investigating and taking
          corrective action against nonpublic schools
28        which provide educational services to children

- 46 -

Exhibit F

with disabilities in a discriminatory, cursory, and indifferent manner;

d. Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, investigation, and legal compliance of nonpublic schools in light of repeated notifications from the U.S. Department of Education and other sources regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes; and

e. Completely abandoning its duty to monitor and supervise the use of emergency behavioral interventions in nonpublic schools under Cal. Ed. Code § 56521(b).

262. The CDE knew and was deliberately indifferent to the fact that children with disabilities were being restrained at far greater rates than children without disabilities and that the rates of restraint use were significantly higher at "nonpublic" schools such as GHS than at public schools. It took no action to strengthen its oversight and monitoring of nonpublic schools or laws restricting the use of physical interventions. The CDE knew and was deliberately indifferent to allegations that children with disabilities being improperly restrained at GHS and failed to conduct an emergency site visit when they had a substantial reason to believe that there was an immediate danger to the health, safety and welfare of students at GHS. The CDE did not conduct a real investigation or visit the school until after GHS staff killed a student by restraining him.

263. Defendants' actions and failures to act were a substantial factor in causing physical and emotional injuries to the Plaintiff Students as outlined above.

264. Plaintiffs seek compensatory damages and attorneys' fees and costs.

**FIFTEENTH CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

- 47 -

**Exhibit F**

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

265.    Plaintiffs incorporate by reference all preceding paragraphs

266.    Section 504 prohibits entities that receive federal financial assistance from
denying persons with disabilities the benefits of their programs, services or activities
or otherwise discriminate against them on the basis of their disabilities.  29 U.S.C. §
794; 34 C.F.R. pt. 104.

267.    Thomas V.M. and Jordan V.M. were at all relevant times students with
disabilities who had been placed at GHS by the LEAs in which they resided via their
IEPs.

268.    The CDE and the LEA Defendants receive federal financial assistance to
provide special education services to children with disabilities in California.  20
U.S.C. §§ 1411-1413.

269.    Defendant GHS was a "nonpublic school" that contracted with the LEA
Defendants to provide educational services to students with disabilities, including
the Plaintiff Students, on behalf of the LEA Defendants in exchange for the state
and federal financial assistance provided to the LEA Defendants to perform those
services. Cal. Ed. Code § 56365.  Section 504 therefore applies to GHS.  34 C.F.R.
§ 104.2 ("This part applies to each recipient of Federal financial assistance from the
Department of Education and to the program or activity that receives such
assistance.").

270.    Section 504 prohibits recipients of federal financial assistance from directly or
through contractual, licensing, or other arrangements, on the basis of disability:

          a.    Denying a qualified person with a disability the
opportunity to participate in or benefit from the
aid, benefit or service;

- 48 -

**Exhibit F**

b. Affording a qualified person with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

c. Providing a qualified person with a disability with an aid, benefit, or service that is not as effective as that provided to others;

d. Aiding or perpetuating discrimination against a qualified person with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to the beneficiaries of the recipients' program or activity;

e. Otherwise limiting a qualified person with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

C.F.R. 104.4(b)(1)(i)(ii)(iii)(v) and (vii).

271.     Section 504 prohibits recipients of federal financial assistance from directly or through contractual or other arrangements, utilizing criteria or methods of administration:

a. That have the effect of subjecting persons with disabilities to discrimination on the basis of their disabilities;

b. that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to persons with disabilities; or

c. That perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

C.F.R. § 104.4(b)(4).

272.     GHS engaged in deliberate discrimination against the Plaintiff Students on the basis of their disabilities.  GHS and its staff subjected the Plaintiff Students to illegal,

- 49 -

**Exhibit F**

excessive and harmful restraints in response to known, disability-related behaviors

1   that did not constitute a clear and present danger to the safety of the students or

2   others and that could have been addressed by less restrictive measures, including

3   those outlined in the students' BIPs. GHS discriminated against the Plaintiff Students

4   by:

5
6           a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

7   b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

8

9   c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

10

11   d.    Administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

12

13

14

15   273.    The LEA Defendants discriminated against the Plaintiff Students through their

16   contractual arrangements with GHS to provide education services to LEA students

17   with disabilities by:

18   a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

19

20   b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

21

22   c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

23

24   d.    Using administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

25

26

27   274.    The LEA Defendants aided and perpetuated disability discrimination against

28   the Plaintiff Students by providing significant state and federal financial assistance

- 50 -

to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans.

275.     Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement. The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement. Nor did they acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students. As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

276.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students. However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

277.     The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to

- 51 -

**Exhibit F**

supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

278.    Defendant CDE knew or should have known that: students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of students with disabilities in response to behavior that was known to be a manifestation of the students' disabilities; that the particular disabilities of the children against whom these restraints were used made the restraints even more dangerous; and that the restraints were not only ineffective and contrary to the students' BIPs, but more often than not aggravated the students' behavioral problems.

279.    Defendant CDE discriminated against Plaintiffs on the basis of their disabilities by:

      a.    Abdicating its monitoring, investigation and compliance duties with regard to nonpublic schools, including GHS;

      b.    Failing to take even minimal measures to ensure statewide compliance with state and federal laws within nonpublic schools, including GHS;

      c.    Administering its licensing program of certifying, monitoring, investigating and taking corrective action against nonpublic schools which provide educational services to children with disabilities in a discriminatory, cursory, and indifferent manner;

      d.    Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision,

- 52 -

Exhibit F

investigation, and compliance of nonpublic schools in light of
repeated notifications from the U.S. Department of Education
regarding the disproportionate use of restraints on children
with disabilities and their tragic outcomes; and

    e.    Completely abandoning its duty to monitor and supervise the
use of emergency behavioral interventions in nonpublic
schools under Cal. Ed. Code § 56521(b).

280.    The CDE knew and was deliberately indifferent to the fact that children with

disabilities were being restrained at far greater rates than children without disabilities

and that the rates of restraint use were significantly higher at "nonpublic" schools

such as GHS than at public schools. It took no action to strengthen its oversight and

monitoring of nonpublic schools or laws restricting the use of physical interventions.

The CDE knew and was deliberately indifferent to allegations that children with

disabilities were being improperly restrained at GHS and failed to conduct an

emergency site visit when they had a substantial reason to believe that there was an

immediate danger to the health, safety and welfare of students at GHS. The CDE

did not conduct a real investigation or visit the school until after GHS staff killed a

student by restraining him.

281.    Defendants actions and failures to act were a substantial factor in causing

physical and emotional injuries to the Plaintiff Students as outlined above.

282.    Plaintiffs seek compensatory damages and attorneys' fees and costs.
283.

## SIXTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution

Marques against GHS, MEYER, KELLER, RAMSEY, SZOMBURY, ANDERSON,
ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE,  and DOE defendants;
Thomas, V.M. and Jordan V.M. against GHS, POINT QUEST, , Staranne MEYERS,
Cindy KELLER, David CHAMBERS,  Noel COLLIER, Patricia DOE, David DOE,
Amanda DOE, Cara BRUCE, Ashley ROB, Dolores ZUMBURY, Vince ANDERSON
and Noelle DOE; Kristi GREGERSEN, Troy TICKLE, Bill TOLLESTRUP, Bill
WEBBER, Nicole DOE; Kristain ROYER, Beth DAVIDSON, DOES 1-100.

284.    Plaintiffs incorporate by reference all preceding paragraphs.

**Exhibit F**

285.    Defendants GHS, MEYER, KELLER, RAMSEY, SZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE, POINT QUEST, , Staranne MEYERS, Cindy KELLER, David CHAMBERS,  Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, Cara BRUCE, Ashley ROB, Dolores ZUMBURY, Vince ANDERSON and Noelle DOE; Kristi GREGERSEN, Troy TICKLE, Bill TOLLESTRUP, Bill WEBBER, Nicole DOE; Kristain ROYER, Beth DAVIDSON, DOES 1-100. used excessive force against Marques, Thomas, V.M. and Jordan V.M. when they restrained them in response to predictable, disability-related behavior that did not constitute a clear and present danger to Marques, Thomas, V.M. and Jordan V.M. 's or others' safety and that could have been addressed by less restrictive measures, including those outlined in their BIPs.  Defendants' use of force was objectively unreasonable in light of Marques, Thomas, V.M. and Jordan V.M. 's behavior and California law restricting the use of physical interventions. Defendants' use of restraints was also unreasonable in their frequency, duration, pressure and restrictions applied, lack of monitoring of Marques, Thomas, V.M. and Jordan V.M.  health condition, and the pain and injuries caused to Marques, Thomas, V.M. and Jordan V.M.

286.    Defendants GHS, MEYER, KELLER, RAMSEY, SZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE, POINT QUEST, , Staranne MEYERS, Cindy KELLER, David CHAMBERS,  Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, Cara BRUCE, Ashley ROB, Dolores ZUMBURY, Vince ANDERSON and Noelle DOE; Kristi GREGERSEN, Troy TICKLE, Bill TOLLESTRUP, Bill WEBBER, Nicole DOE; Kristain ROYER, Beth DAVIDSON, DOES 1-100 violated the Plaintiff Students' Fourth Amendment rights when they instituted and maintained a policy and practice at GHS of restraining students in

-54-

response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

287.    Defendants GHS, MEYER, KELLER, RAMSEY, SZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE, POINT QUEST, Staranne MEYERS, Cindy KELLER, David CHAMBERS, Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, Cara BRUCE, Ashley ROB, Dolores ZUMBURY, Vince ANDERSON and Noelle DOE; Kristi GREGERSEN, Troy TICKLE, Bill TOLLESTRUP, Bill WEBBER, Nicole DOE; Kristain ROYER, Beth DAVIDSON, DOES 1-100 were acting under color of state law when they instituted and practiced a policy of restraining students, including the Plaintiff Students, in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

288.    Defendants GHS and POINT QUERST were performing a public function that the LEA Defendants were legally required to provide and for which they were receiving state and federal funds-that of providing free educational services, including special education, to the Plaintiff Students.  If an LEA does not have an appropriate special education placement within its district, it may place a student in a nonpublic school.  Cal. Ed. Code § 56365.  In turn, the student "will be deemed to be enrolled in public schools" for the purpose of state and federal funding.  Cal. Ed. Code § 56365(b).  However, the LEAs are to monitor and supervise the placement and transition the student back to the public schools if the NPS is no longer

-55-

**Exhibit F**

appropriate to meet the student's needs. Cal. Ed. Code § 56366(a)(2)(B). The

1  LEA continues to be responsible for the child's placement and special education

2  needs and must participate in their IEP meetings. 20 U.S.C. § 1414(d)(1)(B)(iv).

3  289.    The Plaintiff Students were placed and kept at GHS by the LEA Defendants

4  pursuant to their IEPs. GHS had a Master Contract with each of the Defendant

5  LEAs to provide education services to the Plaintiff Students.

6
7  290.    GHS and POINT QUEST sent BERs to the LEA Defendants demonstrating

8  the excessive and illegal nature of the restraints, but this information was filed away

9  and ignored. The IEP teams, in which the LEA Defendants participated, did not

10  review and modify students' BIPs when it was clear they were ineffective or not

11  being followed. Despite knowing that their students were being illegally restrained

12  by GHS staff, the LEA Defendants left the Plaintiff Students at the school and did

13
14  not take any action to stop the restraints. Because they were unable and unwilling

15  to provide the educational services themselves, the LEA Defendants ignored and

16  thereby allowed the violations of Plaintiffs' constitutional rights, knowingly accepting

17  the benefits of GHS's illegal behavior.

18  291.    At all times relevant to the complaint, the individual GHS and POINT QUEST

19  Defendants were acting in the performance of their official duties to provide

20  educational services, including special education services, to the Plaintiff Students

21
22  pursuant to state and federal law and GHS's contract with the LEA Defendants.

23  292.    The GHS and POINT QUEST Defendants knowingly deprived the Plaintiff

24  Students of their Fourth Amendment rights to be free from excessive force.

25  293.    Defendants GHS, MEYERS, Cindy KELLER, David CHAMBERS, Noel

26  COLLIER, Patricia DOE, David DOE, Amanda DOE, Cara BRUCE, Ashley ROB,

27  Dolores ZUMBURY, Vince ANDERSON and Noelle DOE;, Bill TOLLESTRUP, Bill

28

- 56 -

**Exhibit F**

WEBBER, Nicole DOE; , DOES 1-100, deprived Plaintiffs Thomas and Jordan V.P. of their Fourth Amendment rights to be free from excessive force. As administrators of the PLACER COUNTY SELPA Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSONM adminstrators for ROCKLIN UNIFIED SCHOOLS, were responsible for overseeing the Plan's implementation, which included: 1) coordinating with school districts to ensure that all special education students in the Plan area have equal access to the full continuum of programs and services; 2) working with the school districts to identify unmet student needs and resources to meet those needs; 3) receiving, distributing, and monitoring the use of special education funding; 4) entering into Master Contracts with nonpublic schools, reviewing and monitoring those contracts, issuing and monitoring the assurances for those contracts, and maintaining updated contracts; and 5) submitting for approval to the Superintendents' Council policies and procedures governing regional and District-operated programs, including nonpublic schools. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON adminstrators for ROCKLIN UNIFIED SCHOOLS had a duty to monitor GHS as a nonpublic school with which it had a Master Contract to provide services for students in the Plan area. They also had a duty to monitor the use of special education funding and ensure that it was not going to programs that used behavioral interventions that violated state or federal law. Cal. Ed. Code §§ 56521.2, 56523(d).

294. GHS, MEYER, KELLER, RAMSEY, SZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE, and DOE defendants deprived Plaintiff Marques of his Fourth Amendment rights to be free from excessive force.

**Exhibit F**

295.    Despite widespread knowledge within the educational community about the disproportionate use of excessive, illegal and dangerous restraints on children with disabilities and in nonpublic schools, as administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to the Fourth Amendment rights of students in the YOLO SELPA plan area to be free from excessive force.  They maintained a policy and practice within YCOE and YOLO SELPA of ignoring their duties to monitor GHS and ensure that it was complying with state and federal laws prohibiting discrimination and restricting the use of physical behavior interventions.

296.    From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates.  As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements.   Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON failed to supervise and train staff to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOL students to ensure that they were not being subjected to excessive force.

**Exhibit F**

297.     At all times relevant to the complaint,  Kristi GREGERSEN, Troy TICKLE,
and Defendants  Kristain ROYER, Beth DAVIDSON were acting under color of
state law in the performance of their official duties as administrators for public
entities, PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOLS.

298.     Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth
DAVIDSON 's actions and failures to act were a substantial factor in causing
Thomas and Jordan V.M.'s physical and emotional pain and suffering.

299.     Defendants and Defendants  Kristain ROYER, Beth DAVIDSON,
administrators for ROCKLIN UNIFIED SCHOOLS

300.     Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN
UNIFIED SCHOOLS deprived Jordan V.M. of their Fourth Amendment rights to be
free from excessive force.  RUSD and Defendants  Kristain ROYER, Beth
DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS wer responsible for
the coordination of special education services and programs within the RUSD and
the implementation of the PLACER COUNTY SELPA plan. This included assuring
that the District's programs-including any nonpublic school in which the District has
placed a special education student-did not discriminate against children on the
basis of disability and followed state and federal education laws, including those
prohibiting the use of excessive force against students. DAVIDSON was the direct
supervisor of Defendant ROYER , the RUSD Program Specialist assigned to
Jordan V.M..  ROYER was responsible for developing Jordan's IEP, ensuring that
Jordan's educational placement at POINT QUEST was appropriate, monitoring the
delivery of services to Jordan, and ensuring that the program in which Jordan had
been placed complied with state and federal laws, including those related to the
use of behavioral interventions and use of physical force. ROYER was also

- 59 -

**Exhibit F**

1   responsible for coordinating and monitoring the implementation of educational

2   programs and services at nonpublic schools at which RUSD students had been
    placed.

3   301.   Throughout Jordan's's placement at POINT QUEST, ROYER and

4   DAVIDSON received information and documents demonstrating that POINT

5   QUEST was subjecting Jordan to excessive force.  Specifically, POINT QUEST

6   staff was placing Jordan in illegal restraints POINT QUEST in response to

7   predictable, disability-related behaviors which did not pose a clear and present

8   danger to the safety of the student or others and could have been addressed by

9   less restrictive interventions.  This information included, but was not limited to,

10  

11  Behavior Emergency Reports, information provided by POINT QUEST staff at

12  Jordan's IEP meetings, and documents accompanying Jordan's IEP meetings.

13  302.   ROYER AND DAVIDSON were deliberately indifferent to the knowledge that

14  

15  POINT QUEST  was subjecting Jordan to excessive force.  Defendants did nothing

16  to investigate POINT QUEST to stop the restraints, or remove to a safe, approved

17  placement.

18  303.   From media reports, U.S. Department of Education publications and letters,

19  and reports published by nonprofits advocating for students with disabilities, it was

20  well-known within the educational community that children with disabilities were

21  

22  being subjected to illegal restraints at a greater rate than those without disabilities

23  and that nonpublic schools restrained students at higher rates. As administrators

24  for ROCKLIN UNIFIED SCHOOLS, Kristain ROYER, Beth DAVIDSON, deprived

25  Jordan V.M. was deliberately indifferent to this information and failed to implement

26  policies and procedures for training, monitoring and supervision of nonpublic school

27  placements.  DAVIDSON failed to supervise and train the program specialists

28  

- 60 -

**Exhibit F**

working under her to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of RUSD students to ensure that they were not being subjected to excessive force.

304.  At all times relevant to the complaint, Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties for public entity RUSD.

305.  Kristain ROYER, Beth DAVIDSON's actions and failures to act were a substantial factor in causing Jordan's physical and emotional pain and suffering.

306.  GHS, MEYER, KELLER, RAMSEY, SZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE,  and DOE defendants' actions and failures to act were a substantial factor in causing Marques' physical and emotional pain and suffering.

## DAMAGES

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

**FIRST CAUSE OF ACTION**
**INTERFERENCE WITH THE EXERCISE OF**
**CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51et seq**

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

- 61 -

**Exhibit F**

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**INTERFERENCE WITH PLAINTIFFS' EXERCISE OF CIVIL RIGHTS IN VIOLATION**
**OF CALIFORNIA CIVIL CODE SECTION 51.7**

1.  General damages for in an amount to be determined according to  proof at trial;

2.  Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.  Past and future lost earnings in an amount to be determined by proof at trial;

4.  Impairment of earning capacity for in an amount to be determined by proof at trial;

5.  General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.  Statutory damages;

8.  Attorneys' fees;

9.  Punitive and exemplary damages against all non-public entity Defendants

10.  Costs of this action;

11.  Such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**INTERFERENCE WITH PLAINTIFFS' EXERCISE OF**
**CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1**

1.  General damages for in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be

1    determined by proof at trial;

2    3.    Past and future lost earnings in an amount to be determined by proof at trial;

3    4.    Impairment of earning capacity for in an amount to be determined by proof at

4    trial;

5    5.    General damages for severe emotional and psychological distress

6
7    6.    Pain and suffering;

8    7.    Statutory damages;

9    8.    Attorneys' fees;

10    9.    Punitive and exemplary damages against all non-public entity Defendants

11    10.    Costs of this action;

12    11.    Such other and further relief as the Court deems just and proper.

13
                        **FOURTH CAUSE OF ACTION**
14              **VIOLATIONS OF CALIFORNIA EDUCATION CODE**
                    **§§ 200, 201, 220 and 260, et seq.**
15

16    1.    General damages for in an amount to be determined according to  proof at

17    trial;

18    2.    Medical and future medical and related expenses in an amount to be

19    determined by proof at trial;

20
21    3.    Past and future lost earnings in an amount to be determined by proof at trial;

22    4.    Impairment of earning capacity for in an amount to be determined by proof at

23    trial;

24    5.    General damages for severe emotional and psychological distress

25    6.    Pain and suffering;

26    7.    Statutory damages;

27    8.    Attorneys' fees;

28

- 63 -

**Exhibit F**

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
## ASSAULT AND BATTERY CONSTITUTING TORTURE

1.    General damages for Pain and suffering in an amount to be determined

according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be

determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at

trial;

5.    General damages for severe emotional and psychological distress

6.    Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
## ASSAULT AND BATTERY

1.    General damages for Pain and suffering in an amount to be determined

according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be

determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

- 64 -

Exhibit F

4. Impairment of earning capacity for in an amount to be determined by proof at

trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. General damages for Pain and suffering in an amount to be determined

according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be

determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at

trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

- 65 -

**Exhibit F**

**FALSE IMPRISONMENT, CONSPIRACY TO COMMIT FALSE IMPRISONMENT**

1.    General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at trial;

5.    General damages for severe emotional and psychological distress

6.    Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

8.    Punitive and exemplary damages against all non-public entity Defendants

9.    Costs of this action;

10.   Such other and further relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION
### NEGLIGENCE

1.    General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at trial;

5.    General damages for severe emotional and psychological distress;

6.   Pain and suffering;

- 66 -

**Exhibit F**

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

### TENTH CAUSE OF ACTION
### NEGLIGENT SUPERVISION

General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
### NEGLIGENCE *PER SE*

1.      General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

- 67 -

**Exhibit F**

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

## TWELFTH CAUSE OF ACTION
### Tortious Breach of the Covenant
### Of Good Faith and Fair Dealing

1. General damages for Pain and suffering in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### FRAUD

**Exhibit F**

Dated: September 20, 2021

Seth L. Goldstein,
Attorney at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 70 -

# Rocklin Unified School District

2615 Sierra Meadows Drive • Rocklin, CA 95677
Phone • (916) 624-2428  Fax • (916) 624-7246



**Educational Excellence**

Roger Stock, Superintendent
Kathleen Pon, Deputy Superintendent

Barbara Patterson , Deputy Superintendent
Tony Limoges, Associate Superintendent

May 8, 2020

Seth. L. Goldstein
Law Offices of Seth Goldstein
2100 Garden Road, Suite H-8
Monterey, CA 93940

RE: CLAIM FOR PERSONAL INJURY OR PROPERTY DAMAGE BY Gloria Van Maren

Dear Mr. Goldstein:

## NOTICE OF REJECTION OF CLAIM

NOTICE IS HEREBY GIVEN that the claim which you presented to the Rocklin Unified School District dated March 24, 2020 and received on March 30, 2020 was rejected on May 6, 2020.

## WARNING

Subject to certain exceptions, you have only six (6) months from the date that this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section, 945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult with an attorney, you should do so immediately.

Nothing herein, nor any action taken by this school district of any or its officers, employees, or agents with regard to the above-referenced matter should be construed as a relinquishment or waiver of any legal requirement or any right or defense such as timeliness, sufficiency, proper presentation of any other matter which may be available to the Rocklin Unified School District or any of its officers, employees, or agents.

Please also be advised that, pursuant to Sections 128.5 and 1038 of the California Code of Civil Procedure, the Rocklin Unified School District will seek to recover all costs of defense in the event an action is filed in the matter and it is determined that the action was not brought in good faith and with reasonable cause.

Sincerely,

Barbara Patterson

Barbara Patterson

Board Members: Eric Stevens • Camille Maben • Dereck Counter • Rick Miller • Rachelle Price

EXHIBIT A

3

Exhibit F

# Rocklin Unified School District

2615 Sierra Meadows Drive • Rocklin, CA 95677
Phone • (916) 624-2428  Fax • (916) 624-7246



Roger Stock, Superintendent
Kathleen Pon, Deputy Superintendent

Barbara Patterson , Deputy Superintendent
Tony Limoges, Associate Superintendent

May 8, 2020

Seth. L. Goldstein
Law Offices of Seth Goldstein
2100 Garden Road, Suite H-8
Monterey, CA  93940

RE:  CLAIM FOR PERSONAL INJURY OR PROPERTY DAMAGE BY Thomas Van Maren a minor
by and through his mother and legal guardian Gloria Van Maren

Dear Mr. Goldstein:

## NOTICE OF REJECTION OF CLAIM

NOTICE IS HEREBY GIVEN that the claim which you presented to the Rocklin Unified School
District dated March 24, 2020 and received on March 30, 2020 was rejected on May 6, 2020.

## WARNING

Subject to certain exceptions, you have only six (6) months from the date that this notice was
personally delivered or deposited in the mail to file a court action on this claim.  See Government Code
Section, 945.6.

You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to
consult with an attorney, you should do so immediately.

Nothing herein, nor any action taken by this school district of any or its officers, employees, or agents
with regard to the above-referenced matter should be construed as a relinquishment or waiver of any
legal requirement or any right or defense such as timeliness, sufficiency, proper presentation of any
other matter which may be available to the Rocklin Unified School District or any of its officers,
employees, or agents.

Please also be advised that, pursuant to Sections 128.5 and 1038 of the California Code of Civil
Procedure, the Rocklin Unified School District will seek to recover all costs of defense in the event an
action is filed in the matter and it is determined that the action was not brought in good faith and with
reasonable cause.

Sincerely,

Barbara Patterson

Board Members: Eric Stevens • Camille Maben • Dereck Counter • Rick Miller • Rachelle Price

**Exhibit F**

# Rocklin Unified School District

2615 Sierra Meadows Drive • Rocklin, CA 95677
Phone • (916) 624-2428  Fax • (916) 624-7246



Roger Stock, Superintendent
Kathleen Pon, Deputy Superintendent

Barbara Patterson , Deputy Superintendent
Tony Limoges, Associate Superintendent

May 8, 2020

Seth. L. Goldstein
Law Offices of Seth Goldstein
2100 Garden Road, Suite H-8
Monterey, CA  93940

RE: CLAIM FOR PERSONAL INJURY OR PROPERTY DAMAGE BY Jordan Van Maren a minor
by and through his mother and legal guardian Gloria Van Maren

Dear Mr. Goldstein:

## NOTICE OF REJECTION OF CLAIM

NOTICE IS HEREBY GIVEN that the claim which you presented to the Rocklin Unified School
District dated March 24, 2020 and received on March 30, 2020 was rejected on May 6, 2020.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date that this notice was
personally delivered or deposited in the mail to file a court action on this claim. See Government Code
Section, 945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to
consult with an attorney, you should do so immediately.

Nothing herein, nor any action taken by this school district of any or its officers, employees, or agents
with regard to the above-referenced matter should be construed as a relinquishment or waiver of any
legal requirement or any right or defense such as timeliness, sufficiency, proper presentation of any
other matter which may be available to the Rocklin Unified School District or any of its officers,
employees, or agents.

Please also be advised that, pursuant to Sections 128.5 and 1038 of the California Code of Civil
Procedure, the Rocklin Unified School District will seek to recover all costs of defense in the event an
action is filed in the matter and it is determined that the action was not brought in good faith and with
reasonable cause.

Sincerely,

Barbara Patterson

Board Members: Eric Stevens • Camille Maben • Derock Counter • Rick Miller • Rachelle Price

**Exhibit F**

# FILED

AUG 09 2021

EL DORADO CO. SUPERIOR COURT
BY _Wendy X Warden_
(DEPUTY CLERK)

1  **SETH L. GOLDSTEIN, S.B.N. 176882**
2  2100 Garden Road, Suite H-8
   Monterey, California 93940
3  Telephone: (831) 372-9511
   Facsimile: (831) 372-9611
4  Lead-Counsel for Plaintiffs

5  ## SUPERIOR COURT OF THE STATE OF CALIFORNIA

6  ## COUNTY OF EL DORADO

7
   In the Matter of:                        **Case No.: ~~PC2020049~~ PC 20 200429**
8
9
   ────────────────────────────
10 **MARQUES, et al.,**                     **ORDER AFTER HEARING**

11             Plaintiffs,

12 v.

13 **GUIDING HANDS SCHOOL,** INC., ET AL.,

14             Defendants

15

16

17       The request for order or notice of motion of Louie Andreas Marques of admission pro

18 hac vice in the above-entitled case came on regularly for hearing on 7/23/21 in Department 4 of

19 the above-entitled Court located at 1354 Johnson Blvd. the Honorable Judge Michael J.

20 McLaughlin, presiding.

21
22       In reading the application of Louis Andreas Marques and good cause appearing therefore:

23       It is ordered that the motion admission pro hac vice is granted on July 23, 2021.

24

25 Dated: 8/9/2021

26                                          ────────────────────────────
                                           Judicial Officer
27                                         Michael J. McLaughlin

28

**CMS**

AUG 09 2021

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO


MINUTE ORDER


CASE NO: PC20200429      LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 07/23/21               TIME:  1:30        DEPT: 4


HEARING: MOTION RE: FOR ADMISSION PRO HAC VICE BY MERIT BENNETT
FILED BY LOUIE ANDREAS MARQUES, GLORIA V M, THOMAS V M, JORDAN V
M

---

Honorable Judge MICHAEL J. MCLAUGHLIN presiding. Clerk: Shannon R.
Alexander. Court Reporter: LISA MENDEL CSR 14353. Bailiff: C.
BRADFORD

No appearance is made by any parties herein or their counsel of
record.

Case is regularly called for hearing.

Motion for Admission Pro Hac Vice is read and considered.

Court confirms receipt of the state bar appellant.

THE COURT ORDERS:

Motion Granted.

Order to be prepared by lead counsel for the Plaintiff's - Seth
Goldstein, Esq.

cc: SETH GOLDSTEIN, ESQ., 2100 GARDEN RD, STE H8, MONTEREY, CA 93940


**Exhibit F**

**Subject:** Fwd: Pro Hac Vice Application Approval Notice
**From:** Merit Bennett <mb@thebennettlawgroup.com>
**Date:** 7/22/2021, 11:51 AM
**To:** Seth Goldstein <slglawoffice@gmail.com>, Alexandria Guthrie <ag@thebennettlawgroup.com>, Donna Valdes <dv@thebennettlawgroup.com>

-------- Forwarded Message --------
**Subject:** Pro Hac Vice Application Approval Notice
   **Date:** Thu, 22 Jul 2021 17:27:37 +0000 (GMT)
  **From:** State Bar of California - Special Admissions <special.admissions@calbar.ca.gov>
     **To:** mb@thebennettlawgroup.com <mb@thebennettlawgroup.com>

 The State Bar
*of California*                                    **OFFICE OF ADMISSIONS**

**Application's Case Number:** 00702809
**Trial Case Name:** Marquez v. Guiding Hands School, Inc. et al.
**Trial Case Number:** PC2020049

Dear Merit Bennett,

Your Pro Hac Vice application has been successfully filed and approved with the State Bar of California, Office of Admissions.

The successful filing of this application is restricted to the above case only.

Any future documents relating to this particular case must be provided to the State Bar by responding directly to this email, with the document(s) attached. Please do not mail any physical documents to the Admissions office.

If you have any questions regarding this matter, please contact the Special Admissions department at the number below.

Sincerely,

Office of Admissions
State Bar of California
(415) 538-2300

ref:_00Dt0TZax._500t0oOdLk:ref

**CMS**
**JUL 2 1 2021**
**Exhibit F**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number, and Address):<br>Seth L. Goldstein SBN#176882 2100 Garden Road, Suite H-8 Monterey, CA 93940<br><br>TELEPHONE NO.:<br>FAX NO.:        831-372-9611<br>EMAIL ADDRESS: | FOR COURT USE ONLY<br><br>**FILED**<br>SEP 2 1 2021<br>EL DORADO CO. SUPERIOR COURT<br>BY _Wendi M Wilder_<br>(DEPUTY CLERK) |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO<br><br>**MAILING ADDRESS:** 1354 Johnson Blvd.<br><br>**CITY AND ZIPCODE**  South Lake Tahoe 96150 | |
| PETITIONER/PLAINTIFF:      LOUIE ANDREAS MARQUES<br><br>RESPONDENT/DEFENDANT: GUIDING HANDS SCHOOL | CASE NUMBER:<br>PC20200429 |
| **APPLICATION FOR VIDEOCONFERENCE APPEARANCE AND ORDER** | |

1.  Person(s) requesting to appear by videoconference is/are:

| □ Petitioner/Plaintiff | Name: | Email: | Telephone: |
|---|---|---|---|
| □ Respondent/Defendant | Name: | Email: | Telephone: |
| Counsel for (select)<br>☑ *Petitioner/Plaintiff* or<br>□ *Respondent/Defendant* | Name:<br>Louie Andreas Marques | Email:<br>slglawoffice@gmail.com | Telephone:<br>831-372-9511 |
| □ Other | Name: | Email: | Telephone: |

2.  For Counsel, if requesting on client's behalf:

    ☑ My client has consented and authorized me to make this request on their behalf.

    ☑ I confirm that a means to communicate privately and confidentially has been established and reviewed by both the attorney and party if both are attending the conference, hearing or proceeding remotely.

3.  Certain case types are permitted to be heard by videoconferencing.  The conference, hearing or proceeding is for (describe):
    Case Management Conference

4.  Videoconference appearance is requested for following reason(s):
    I am not local, I live over 4 hours away.

5.  The matter is set on (date): 9/28/21 _____ at (time): 3:30pm _____ in Department: 4 _____

6.  Notice of this request was provided to (attach a page with additional names to this form if needed):

| Name | Role | How Notice Provided | Date Noticed |
|---|---|---|---|
| | | | |
| | | | |

Mandatory Use<br>Local Form M-51<br>Revised 07-12-21

Application for Videoconference Appearance<br>and Order

Page 1 of 2

CMS

Exhibit F<br>SEP 2 0 2021

7.  By signing below, I agree to the following:

- I understand and agree that when appearing by videoconference, I may not receive assistance from anyone other than counsel, an interpreter or an individual appointed by or approved by the Court.

- I understand and agree that appearance by videoconference is the same as in-person appearance and any actions that occur in the hearing carry the same authority as if all individuals were physically in the courtroom.

- I understand if I am not connected at the time the case is called, the Court may consider it a failure to appear and the matter may be dropped from calendar.

- I understand that the court, in its discretion, may decide to terminate the videoconference appearance if there is a delay due to disruption, noise, misconduct, a communication problem, a technical problem, other issue and/or in the interest of justice.

- I understand that a failure to appear or termination of the videoconference appearance may result in the issuance of a warrant, a requirement that I appear in-person and/or a continuance of the conference, hearing or proceeding.

- I understand the Court may decide, at any time, to require a personal appearance and/or a continuance of the conference, hearing or proceeding.

- I understand that except as provided in California Rule of Court, rule 1.150, court proceedings shall not be photographed, recorded or broadcast. Violators may be cited for contempt of court, or monetary sanctions may be imposed.

Dated: 9/20/21

Seth L. Goldstein

Printed Name

Signature

---

**FOR COURT USE ONLY**

By Judicial Officer: The request for a videoconference appearance is ☐GRANTED ☒DENIED

Dated: 9/21/21                                               Michael J. McLaughlin

CWCS  authorized  for                Judicial Officer
V Conf  not  Zoom.
Notice of this order along with the videoconference information was provided by email to the person(s) listed in item 1 on:

Dated: 9/22/21

Deputy Clerk

Mandatory Use
Local Form M-51
Revised 07-12-21

Application for Videoconference Appearance
and Order

Page 2 of 2

**Exhibit F**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF EL DORADO

[ ] 2850 FAIRLANE COURT
Placerville, CA 95667
(530)621-7470

[ ] 495 Main Street
Placerville, CA 95667
(530)621-6726

[X] 1354 JOHNSON BLVD.
South Lake Tahoe, CA 96150
(530)573-3069

[ ] 3321 Cameron Park Dr.
Cameron Park, CA 95682
(530)621-5867

09/22/21

Case PC20200429

Dear Mr. Goldstein,

RE: NOTICE TELEPHONIC APPEARANCE IS GRANTED

The court has received your request for a telephonic appearance. Due
to the distance from where you reside and the location of the court,
the request is granted.

Telephonic court appearances are provided through the court.
To set up your appearance please go to the court's website at
http://www.eldoradocourt.org/onlineservices/vcourt.html.
If you cannot afford the fee you may request a fee waiver which
you must submit to the court at least 5 days prior to the hearing.

Sincerely,

Deputy Clerk

Court Website: http://www.eldoradocourt.org/   *eldoradocourts.ca.gov*

TAG

Revised 06/14/2010

**Exhibit F**

1   Seth L. Goldstein, S.B.N. 176882
2   2100 Garden Road, Suite H-8
    Monterey, California, 93940
3   Telephone  (831) 372 9511
    Fax         (831) 372 9611
4
5   **Lead-Counsel for Plaintiffs**

**SCANNED**

**FILED**

OCT 1 9 2021

EL DORADO CO. SUPERIOR COURT
BY _____
(DEPUTY CLERK)

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8                        **COUNTY OF EL DORADO**

9   In the Matter of:

10  _____   )    **Case No.: PC202429**
                                               )
11  Louie Andreas MARQUES, Gloria V.M.,        )
    Thomas V.M., and Jordan V.M.,              )    FIRST AMENDED
12                                             )    PLAINTIFF'S NOTICE OF
                        **Plaintiffs**         )    MOTION AND MOTION FOR
13                                             )    LEAVE TO FILE SECOND
    vs                                         )    AMENDED COMPLAINT;
14                                             )    MEMORANDUM OF POINTS
    GUIDING HANDS SCHOOL, Inc.(hereinafter     )    AND AUTHORITIES
15  "GHS"),Jennifer GALAS,  Staranne           )
    MEYERS, Cindy KELLER, David                )
16  CHAMBERS, STATE OF CALIFORNIA,             )
    DEPARTMENT OF EDUCATION, PLACER            )    Judge: Hon. Michael J. McLaughlin
17  COUNTY SELPA, Cara BRUCE, Ashley ROB,      )    Date:  10-22-21
18  Dolores ZUMBURY, Vince ANDERSON,           )    Time:  1:30 pm
    POINT QUEST, Inc., ROCKLIN UNIFIED         )    Dept.  4
19  SCHOOL DISTRICT, Noel COLLIER,             )
20  Patricia DOE, David DOE, Amanda DOE, and   )
    Noelle DOE, ET AL                          )    Original Complaint Filed: 8/27/20
21                                             )
                        **Defendants.**        )
22  _____   )

23  TO THIS HONORABLE COURT:
24
25      This matter is set for Oct. 22, 2021, at 1:30 pm, in Department 4, of this Court, located
26  at 3321 Cameron Park Drive, Cameron Park, California 95682, Plaintiffs', Louie Andreas
27  MARQUES, Gloria V.M., Thomas V.M. and Jordan V.M., by and through their attorneys, have
28  asked this Court for an ORDER granting leave to file a Second Amended Complaint.

Exhibit R

OCT 1 9 2021

1    We ask that the Court accept this amended motion and Second Amended Complaint,

2  corrected for scrivener's errors omitting names of defendants and reformatting to make a

3  necessarily long complaint more easily read.

4

5    As discussed below, this motion is made on the grounds that good cause exists for

6  granting Plaintiffs' leave to amend.  Moreover, granting a leave to amend will not prejudice the

7  rights of any of the Defendants given the stage of the litigation as no one has yet been served.

8    This motion is based on this Notice of Motion and Motion and the accompanying

9  Memorandum of Points and Authorities, and on the papers and records on file herein, and on

10  such oral and documentary evidence as may be presented at the hearing of the motion.

11

12

13  Dated: October 18, 2021

Seth L. Goldstein,
14                                                       Lead Counsel for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

**Exhibit F**

1

2

# I.
## INTRODUCTION

3    Plaintiff's, Louie Andreas MARQUES, Gloria V.M., Thomas V.M. and Jordan V.M.,

4    move to amend their Complaint and file a Second Amended Complaint (hereinafter "SAC").

5    The rights of Plaintiffs' have been impacted by the conduct of the defendants and the SAC seeks

6
7    to include all Defendant's that Plaintiffs' recently became aware of and to include all available

8    legal and equitable claims.  There is no prejudice to the defendants to allow Plaintiffs' to amend

9    their complaint.

10    The SAC includes the following changes: (1) According to the ruling in Federal Court,

11    Bruce Chapman is not the owner of Handle with Care and should be dismissed with prejudice

12    pending discovery. (2) Since the time of the filing of the First Amended Complaint and before
13
14    it has been served, an additional Plaintiff family has come forward and in the interest of judicial

15    economy and to reduce the costs to both the Defendant's; and (3) Additional Defendant's have

16    been found and should be joined to this lawsuit. (4) Counsel for Defendant, Rocklin Unified

17    School District has informally received the First Amended Complaint and pointed out an error

18    in the pleadings.  Plaintiff's seek to amend those errors to avoid an unnecessary Motion to
19
20    Strike.

21    By this motion Plaintiffs' request that the Court order the attached SAC to be filed as

22    proposed.  The amendments are necessary in order to assert all claims on behalf of all Plaintiffs'

23    and to correct all errors in the First Amended Complaint.

24    Defendants are not prejudiced by this amendment and the liberal policy in favor of

25    amendments compels the granting of this motion.
26
27    # II.

28    ## MEMORANDUM OF POINTS AND AUTHORITIES

- 3 -

**Exhibit F**

A.     It Is In Furtherance of Justice to Allow Plaintiffs' to Amend Their Complaint

This Court "may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding." CCP §473. It is established judicial policy to resolve all disputes between the parties on their merits, and to liberally allow amendments to the pleadings to put all disputes at issue at the time of the trial. See, *Vogel v. Thrifty Drug Co.,* (1954) 43 Cal.2d 184, 188 ("It is a basic rule of pleading in this State that amendments shall be liberally allowed so that all issues material to the just and complete disposition of a cause may be expeditiously litigated"); See also, *Wilson v. Turner Resilient Floors* (1949) 89 Cal.App.2d 589; In re Herbst's Estate (1938) 26 Cal.App.2d 249,

> "While a motion to permit an amendment to a pleading to be filed is one addressed to the discretion of the Court, the exercise of this discretion must be sound and reasonable and not arbitrary or capricious. And it is a rare case in which 'a court will be justified in refusing a party leave to amend his pleadings so that he may properly present his case'. If the Motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend and where the refusal also results in a party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it is not only error but an abuse of discretions."

*California Cas. Gen. Ins. Co. v. Superior Court* (1985) 173 Cal.App.3d 274, 278 (citations omitted).

The judicial policy favoring amendment in the interests of justice is so strong that denial is rarely justified. This motion is timely made since it is made before the defendants have been served with the Complaint and before the Court has set a date for trial.

This Court may in its sound discretion allow Plaintiffs' to amend their complaint, regardless of the state of litigation. See, *Hirsa v. Superior Ct.* (1981) 118 Cal.App.3d 486, 488-489 ("Trial Courts are vested with the discretion to allow amendments to pleadings in furtherance of justice...that trial courts are to liberally permit such amendments, at *any* stage of the proceeding, has been established policy of this state...resting on the fundamental policy that

- 4 -

**Exhibit F**

1    cases should be decided on their merits.") Given the sate of this case, no party in interest will be

2    prejudiced by Plaintiff's amendment to their complaint. Because granting the motion for leave

3
     to file Plaintiffs' Second Amended Complaint will not prejudice any party to this action and
4
5    leave to amend will further the interests of justice, this Court should grant the Motion. *See,*

6    *California Cas. Gen. Ins. Co. Supra.*

7

8                                      **III.**

9
                                  **CONCLUSION**
10
11          WHEREFORE, Plaintiffs' respectfully request that this Court grant their motion for

12   leave to file a Second Amended Complaint in the form submitted with their motion.

13

14

15   Dated:   October 18, 2021

16                                                      Seth L. Goldstein,
17                                                      Lead Attorney for Plaintiffs'

18                              *TO THE CLERK OF THE COURT:*
19              NO SERVICE WAS MADE AS THE
20       DEFENDANTS HAVE YET TO BE SERVED
21       WITH A COMPLAINT AND THERE ARE NO
22       APPEARANCES FROM ANY DEFENDANT
23

24

25

26

27

28

                                      - 5 -

                                                              **Exhibit F**

1   **Seth L. Goldstein, S.B.N. 176882**
2   2100 Garden Road, Suite H-8
    Monterey, California, 93940
3   Telephone  (831) 372 9511
    Fax          (831) 372 9611
4
5   **Lead-Counsel for Plaintiffs**

6   **Merit Bennett**, *Pro Hac Vice*
    460 St. Michael's Drive, Suite 703
7   Santa Fe, New Mexico 87505
    Telephone: (505) 983-9834
8   Fax: (505) 983-9836

9   Co-Counsel for Plaintiffs

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                        **COUNTY OF EL DORADO**
11

12  In the Matter of:

13  _____ )    **Case No.: PC20200429**
                                          )
14  **Louie Andreas MARQUES, Gloria V.M.,** )
    **Thomas V.M., and Jordan V.M.,**       )    **SECOND AMENDED**
15                                          )    **COMPLAINT FOR DAMAGES**
                   **Plaintiffs**            )
16  **vs**                                   )
                                            )    **JURY TRIAL DEMANDED**
17  **GUIDING HANDS SCHOOL,**               )
    **Inc.(hereinafter "GHS"), , Staranne** )
18  **MEYERS, Cindy KELLER, Phylis RAMSEY,** )
    **Jennifer CHRISTENSEN, David**          )
19  **CHAMBERS, Noel Doe,  Nicole DOE,**     )
    **Roland DOE, Noel COLLIER, Patricia DOE,** )
20  **David DOE, Amanda DOE, Cara BRUCE,**   )
    **Ashley ROBB, Dolores ZUMBURY, Vince**  )
21  **ANDERSON, Susan Jane BATTLE and**      )
    **Noelle DOE; STATE OF CALIFORNIA,**     )
22  **DEPARTMENT OF EDUCATION; PLACER**      )
    **COUNTY SELPA, Kristi GREGERSEN, Troy** )
23  **TICKLE, POINT QUEST, Inc., Bill**      )
    **TOLLESTRUP, Bill WEBBER, Nicole DOE,** )
24  **Jennifer DOE; ROCKLIN UNIFIED**
    **SCHOOL DISTRICT, Kristain ROYER, Beth**
25  **DAVIDSON; HANDLE WITH CARE**
    **BEHAVIOR MANAGEMENT SYSTEMS,**
26  **INC.**
                   **Defendants.**
27  _____

28

                                                        **Exhibit F**

## I. PARTIES

### Plaintiffs

1.   Plaintiff Louie MARQUES (legal name Louie Andreas MARQUES, hereinafter "MARQUES"), who lives in Sacramento was, at all relevant times herein, a minor child diagnosed as then having Oppositional Defiant Disorder and ADHD.  He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

2.   At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

3.   The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

4.   **Plaintiffs Thomas and Jordan V.M.** were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

5.   Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears as predictable behaviors.

6.   His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

7.   Jordan V.M. had an IEP that identified non-compliance, physical aggression (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate gestures and other behavior described as eating crayons and spitting water as predictable behaviors.

**Exhibit F**

8.      His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

9.      **Plaintiff Gloria V.M.** is the adoptive mother of Thomas and Jordan V.M. and is their Guardian Ad Litem.

## DEFENDANTS

10. **Defendants Guiding Hands School Inc.**, and **Point Quest Inc**. 4900 Windplay Dr., El Dorado Hills, California, located on the same premises having allegedly bought out GHS are non-public schools (hereinafter NPS) incorporated under the laws of the State of California as for-profit corporations and approved by the State of California as institutions providing for children with disabilities.

11.      At all times relevant to this Complaint, GHS was a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant GHS was an independent contractor with Elk Grove Unified Schools, pursuant to a written contract to perform educational services for Plaintiffs MARQUES, Thomas and Jordan V.M.

12.      Presently, and at all times relevant to this Complaint, POINT QUEST is a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT QUEST is an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to a written contract to perform educational services for Plaintiff Jordan V.M.

13.      Presently, and at all times relevant to this **Complaint, Defendants Rocklin Unified Schools** and **Placer County SELPA** are business establishments within the meaning of the Unruh Civil Rights Act.

14.      **Defendant California Department of Education (CDE),** a department of the State of California, presently, was, and at all times relevant to this Complaint, responsible for inspecting and certifying Non-Public Schools such as GHS and POINT QUEST. It is a business establishment within the meaning of the Unruh Civil Rights Act.

- 3 -

**Exhibit F**

15.     **Defendant Handle with Care Behavior Management System, Inc.** Defendant, HWC was a corporation organized under the laws of the State of New York, and doing business in California, marketing a system of restraint and training California teachers to restrain special needs children in prone and other types of restraints.

16.     At all times herein mentioned, Bruce Chapman (hereinafter "CHAPMAN"), was the agent and employee, owner, president and founder of HWC, who developed a patented restraint system marketed through HWC to schools in California for use on "behaviorally challenged" children in California schools, including GHS, which lead to the injuries to the student plaintiffs.

17.     At all times herein mentioned, defendant, HWC was a corporation organized under the laws of the State of New York, and doing business in California, marketing a system of restraint and training California teachers to restrain special needs children in prone and other types of restraints.

### JURISDICTION AND VENUE

18.     Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing against CDE, ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA on March 24 , 2019 for injuries and claims herein stated against said public entities. True and correct copies of said claims are attached as **Exhibit A.**

19.     Plaintiffs sue all Defendants in El Dorado County because all of the tortious acts occurred at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

20.     Plaintiffs are informed and believe that each of the Local Educational Agency (LEA) and NPS Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and at all times acting and performing, or failing to act or perform, within the course and scope of each similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated,

- 4 -

**Exhibit F**

directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

### GHS EMPLOYEES:

21.    At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault and batter Plaintiff MARQUES.

22.    At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants MEYERS was the principal and member of the board of GHS, KELLER was the executive director of GHS, RAMSEY was an administrator for GHS, Jennifer CHRISTENSEN was an administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN, Noel COLLIER (Special Education Teacher), and unknown DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas and Jordan V.M.

23.    At all times herein mentioned, "Roland" was a driver for GHS and assisted on campus during the time Thomas V.M. was at GHS. "Roland" was also rehired as staff at Defendant Point Quest.

- 5 -

**Exhibit F**

24.     At all times herein mentioned, there were two secretary/support staff working the "front desk" at GHS. One was known to Thomas V.M. only as "Nicole" and the other's name is unknown at this time. On information and belief, "Nicole" was rehired at Defendant Point Quest.

25.     At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY (hereinafter "ZOMBURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter "CHAMBERS") Kera BRUCE (Hereinafter "BRUCE" , Susan Jane BATTLE, and DOE defendants were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of GHS.

26.     The names and capacities, whether individual, corporate, otherwise, sued herein as DOES 1-100, inclusive, are presently unknown, and Plaintiff will amend the Complaint to insert them when ascertained.

**POINT QUEST EMPLOYEES**

27.     Bill Tollestrup, Interim Director of El Dorado Hills, Bill Weber, Director of El Dorado Hills,  Nicole DOE, Jennifer DOE, Roland Doe, and DOE defendants were employed as administrators, teachers, and aides at POINT QUEST, who intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom.

28.     At all times relevant to this Complaint, Defendant Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, and Noelle DOE were employees of POINT QUEST and were either directly involved in restraining Plaintiff Jordan V.M. or were immediately

**Exhibit F**

present on the premises during the restraints and failed to intercede to protect the plaintiffs.

They are sued in their individual capacity and in their capacity as employees of POINT QUEST.

## ROCKLIN UNIFIED SCHOOL EMPLOYEES

29.     Kristain ROYER, Program Specialist, Beth DAVIDSON, Assistant Director of Special Education, and DOE defendants were employed as administrators at RUSD, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

## PLACER COUNTY SELPA EMPLOYEES

30.     Kristi Gregersen, Program Specialist, Troy TICKLE, Director, Placer County SELPA,  and DOE defendants were employed as administrators at Placer County SELPA, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

31.     Plaintiffs MARQUES, Thomas, and Jordan V.M. were placed at GHS and POINT QUEST by their respective school districts after representations were made to the minors' parents about both schools special skills, facilities and safe environment appropriate for their children. The placement was pursuant to each student's Individual Education Plan (IEP), as a result of their diagnosis as children with disabilities, because the school districts themselves determined they were unable to provide a Free Appropriate Public Education.

32.     Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER COUNTY SELPA have failed to adequately supervise their employees that resulted in

**Exhibit F**

the foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that staff who came into contact with Plaintiffs would provide an environment free of abuse and neglect.

33.     California law, including Cal Const, Art. I § 28, has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations necessary for their protection. Defendants also had a duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting intentionally or negligently.

34.     Defendants have violated their statutory duties to Plaintiff, including their supervisory duties created under California Education Code sections 44807 and 44808.

35.     California Penal Code section 11166 which required them to report any knowledge of a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect to the agency immediately or as soon as is practically possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up report thereof within 36 hours of receiving the information concerning the incident.

36.     Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan V.M., including multiple violations of California Education Code sections 56521.1 and 56521.2 (and its predecessor legislation) that, in pertinent parts, suggest alternative interventions and/or prohibits the use of any interventions that:

1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an amount of force that exceeds that which is reasonable and necessary under the circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma.

37.     Defendants have violated their statutory duty under California Penal Code section 11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."

- 8 -

**Exhibit F**

38.     Defendants GHS and POINT QUEST violated its statutory duty under California Education Code section 260 by failing to enact an adequate formal or informal policy to ensure that GHS and POINT QUEST provided a learning environment free from discrimination based on the characteristics provided in California Education Code section 220, specifically disability.

39.     GHS was closed in 2018 after the State of California revoked their license to operate following the death of student Max Benson who was subjected to a restraint that killed him.

40.     After GHS was closed it was, allegedly, sold to POINT QUEST, and Jordan V.M. then attended Defendant POINT QUEST.

41.     When POINT QUEST took over GHS facilities and educational duties, Gloria V.M. was assured by the Rocklin Unified School staff, Placer County SELPA, and POINT QUEST staff, expressly, by inference, or omission, that the previous policies and practices employed by GHS were, not only no longer employed, she was assured that the GHS employees were gone and would not be rehired at POINT QUEST.

42.     For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") -have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for their physical and emotional health.

43.     There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to abusive use of restraint systems, such as the Handle With Care system developed by Defendant Bruce Chapman. It is also well-known that restraints are disproportionately used against children with disabilities.

44.     Despite this knowledge, nonpublic schools like Defendants GHS and POINT QUEST and their respective staffs continued to use such restraints frequently, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or others, for extended periods of time, on students whose disabilities elevated the risk of using restraints, and with excessive force.

- 9 -

**Exhibit F**

45.     They could do so because the CDE, and the LEA Defendants abdicated their responsibilities to monitor and supervise GHS and POINT QUEST and ensure their compliance with state and federal laws prohibiting discrimination and the improper use of restraints.

46.     The CDE continued to certify GHS continues to currently certify POINT QUEST, and the LEA Defendants continued to contract with and place their students with disabilities in the respective schools.

47.     Plaintiff students with developmental and other disabilities whose local educational agencies placed them at GHS and POINT QUEST pursuant to their Individualized Education Plans ("IEP")

48.     Each Plaintiff Student attended GHS sometime between 2006 and 2018, where its administrators and staff subjected them to excessive and harmful restraints and other aggressive physical interventions in response to known behaviors associated with their disabilities, resulting in physical and emotional abuse and injury, and in the case of one other student, death.

49.     GHS was, and POINT QUEST is, a nonpublic school-as that term is defined in Cal. Ed. Code § 56034-which contracted with the LEA Defendants to provide special education services to public school students with disabilities in exchange for state and federal educational funding.

50.     As required by law, GHS and POINT QUEST entered into Master Contracts with the LEA's, as well as an Individual Services Agreement for each student placed there.

51.     Each of the Plaintiff Students' IEP's included a Behavioral Intervention Plan ("BIP") which described the student's known disability-related behaviors and the intervention strategies and positive behavioral supports educators should use to prevent or respond to those behaviors.

52.     Despite legal requirements (discussed below) and Defendants' knowledge of the dangers associated with restraints to students' physical and emotional health, GHS and POINT QUEST administrators and employees engaged in a policy and practice of using restraints as a substitute for the positive interventions detailed in the students' BIPs in

- 10 -

**Exhibit F**

response to predictable behavior that did not pose a clear and present danger of serious physical harm to the student or others.  GHS and POINT QUEST used restraints against its students frequently, for periods of time that were longer than necessary, and with excessive force.

53.    These restraints-including prone restraints- in which the child is placed face down on the floor with one or more adults applying force from above to keep the child's body immobile-frequently lasted over an hour.

54.    Some students were restrained frequently, sometimes more than one time each day.

55.    The restraints and other aggressive physical interventions inflicted by GHS and POINT QUEST caused the Plaintiff Students physical and emotional injuries.

56.    GHS and POINT QUEST administrators were not only aware of the abuse, but encouraged it and were responsible for the school's policy and practice of using frequent, excessive, harmful and lengthy restraints as a substitute for positive behavioral interventions in response to students' predictable, disability-related behaviors.

57.    GHS  and POINT QUEST did not provide adequate training in positive behavioral interventions, instead relying on Defendant Bruce Chapman's patented restraint system, Handle With Care Behavioral Management Systems, Inc. which was associated with numerous abuses by educational professionals on students with behavioral challenges.

58.    GHS and POINT QUEST  training in the HWC method ignored requirements of state and federal law and did not provide proper warnings regarding the risks associated with restraining students or safeguards for monitoring and responding to signs of distress.

59.    Moreover, GHS  and POINT QUEST took significant measures to conceal its illegal use of restraints and child abuse from parents and the LEAs with which it contracted by failing to provide required reports to the parents and the State of California.

**Exhibit F**

60.     Prior to the childen's placement, GHS misrepresented orally, in enrollment documents, and in the children's IEP that the school focused on proactive, positive behavioral interventions and that corrective behavior would be "calm", "brief", and "respectful."

61.     The HWC Intervention Statement that parents had to sign as part of the enrollment packet emphasized positive intervention and "the 3-step prompt" which "entails a verbal request, followed by staff modeling and finally hand over hand with children who may have difficulty following directions . . ." It represented that a restraint would be used only if the child appeared to be "a physical danger to themselves or others around them".

62.     GHS used the HWC terminology in referring to the most dangerous restraint-a prone restraint-as a "neutral" restraint. *Id.* These misrepresentations were repeated in the students' BIPs developed as part of the IEP process and a part of the agreement between the parent/student, the LEA, and GHS.

63.     When a student was restrained, GHS frequently failed to complete a Behavioral Emergency Report ("BER"), place the BER in the student's file, send it to the LEA, or notify the student's parent, as required by law and GHS's Master Contracts with the LEAs. Nor did GHS administrators or staff report the regular, systemic child abuse they witnessed and participated in at the school, despite the requirement to do so as mandated reporters.

64.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.

65.     However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to place vulnerable students in its care. GHS would still be abusing its students were it not for the death of a 13-year-old student who died after he was held in a prone restraint for almost two hours on November 28, 2018.

- 12 -

**Exhibit F**

66.     Plaintiff Thomas V.M. was a disabled student, placed at GHS on August 6, 2018, because of his diagnosis of his disability. Plaintiff Jordan V.M. was a disabled student, placed at GHS on February 22, 2018, because of his diagnosis of disability. All plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their educational experience and abilities.

67.     Because of the disruption that affected other students, they were frequently placed in such restraints, which included but was not limited to, the imposition of restraints that constituted physical child abuse, battery, and assault.

68.     Referring to these restraints as though they were normal and accepted ways of disciplining plaintiffs, Defendant administrators,  teachers and assisting staff, as individually identified below, preyed on plaintiffs because of their disability related conduct.

69.     These defendants assaulted and battered plaintiffs repeatedly rather than following the BIPs.

70.     The LEA administrators, by and through their agency with GHS  and POINT QUEST  administrators tasked unqualified and inadequately trained staff with supervising plaintiff students, who often failed to document and report incidents of abuse, and failed to take reasonable steps to prevent further abuse.

71.     Plaintiffs, like other students who were also subjected to such conduct, would attend class and when a student acted consistently with their predictable behaviors stated in their individual BIP and IEP (and the reason(s) why they were placed at GHS and POINT QUEST) or failed to follow the directions of the GHS  and POINT QUEST staff as individually described below, they would be subjected to painful restraints in full and open view of fellow students.

72.      Each plaintiff had specific conduct that was identified in their BIP, for which, each plaintiff had a set of less restrictive measures to be taken before a "hands on" physical intervention such as painful restraints would be exercised.

73.     Plaintiffs witnessed other students treated in the same way in their respective classes. The observation of such torturous conduct to other students and themselves

- 13 -

**Exhibit F**

caused Plaintiffs who were in their immediate presence to experience fear and anxiety such that they were terrorized in anticipation that they too might be hurt in the same way.

74.    As to MARQUES, the documented abuse occurred from as early as December 18, 2006, when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was removed. For Thomas and Jordan V.M., it began when they first began to attend GHS on February 22, 2018, and lasted until they were removed on or about the end of December 2018 and officially, in January, 2019.

75.    Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on or about October 1, 2019 and officially October 22, 2019.

76.    No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary.

77.    Defendants GHS and POINT QUEST, and their individual staff members as particularly described below, carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

78.    The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent the abuse.

79.    Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

- 14 -

**Exhibit F**

80.     Plaintiffs Thomas and Jordan V.M. are in another school in Washington State.

81.     The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant.

82.     Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted.

83.     In addition, Plaintiff MARQUES is an adult and outside of the educational system.

84.     The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

85.     From records to be obtained by Plaintiffs, there were restraint incidents involving Plaintiffs and they expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

## OPERATIVE FACTS

86.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

### AS TO PLAINTIFF MARQUES

87.     Over a one-and-one-half year period as specifically set forth below in each cause of action, Defendants ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES by grabbing him, pushing or otherwise forcing him to the floor and, in painful positions, pinning all four appendages for various periods of time, immobilizing him, including as punitive measures. All were either for an unnecessarily prolonged period of time or had failed to utilize the less restrictive measures set forth in his BIP for predictable behaviors related to his disability.

88.     MARQUES was a student at GHS from 2006 to 2008.  He was referred to GHS by Elk Grove School District employees.

- 15 -

**Exhibit F**

89.    MARQUES had both an Individual Education Plan (EIP) and a Behavioral Intervention Plan (BIP) at all relevant times herein.

90.    Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS and DOE defendants failed to file Behavioral Emergency Reports or document injuries as required by law, so all of the dates of assaults all are unknown to MARQUES at the present time.

91.    Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16, 2007, April 23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March 19, 2008, set forth in greater detail below.

92.    On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and Ashley ROBB, put MARQUES in a restraint for 12 minutes because he failed to stand appropriately and when escorted from the line he was standing in, kicked a student and Bruce. He was restrained "per CPI". Both Dolores ZOMBURY and David Chapman participated in the restraint.

93.    On December 18, 2006, at 1:45 PM Ashley ROBB and Kera Bruce instituted an eight minute restraint after MARQUES had been found to have a toy belonging to another student. What he was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a basket restraint.

94.    On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by ZOMBURY, after he refused to sit down and began throwing pencils and calling children names.

95.    On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMBURY for five minutes after he was told to put a pointer down and had slapped it on the desk of another student. When he was directed to sit down he ran around the room and was restrained.

96.    On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by Dolores ZOMBURY and subsequently by a teacher's aide known only as "Laure", when MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the teacher and was taken to the "corner".

- 16 -

**Exhibit F**

97.   On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by ZOMBURY after another student had pushed him, rubbing "snot" on his jacket and in response he pushed that student down.

98.   On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began swearing and started to run towards another student after he disregarded a request by the instructor to put his head down on his desk. The staff involved were ZOMBURY and Chambers.

99.   On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor Vince Anderson, because he failed to follow directions and began yelling in the presence of his mother.

100.   On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

101.   In this restraint, MARQUES was pushed to the ground and placed in a position for an extended period of time, while his arms were pulled behind his back.  GHS staff sat at his back while he was in this position, increasing his pain and making it difficult for him to move.

102.   This incident arose when another child assaulted MARQUES with a rock and MARQUES defended himself.

103.   When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks as a result of these restraints.

104.   MARQUES subsequently suffered panic attacks, night-terrors, startles, depression and self-loathing as a result of these restraints.

105.   MARQUES was abused on additional occasions while attending GHS.

106.   MARQUES will seek leave to allege these dates according to proof when furhter information becomes available through the discovery process.

107.   At all relevant times, MARQUES.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

- 17 -

**Exhibit F**

108.    The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code Sec. 242), and torture (Penal Code Section 206) prohibited by California law.

**AS TO THOMAS V.M.**

109.    Thomas V.M. was restrained by GHS and POINT QUEST staff on many occasions the precise details are neither known to he nor his mother at this time, other than that described as follows.

110.    Thomas V.M. was restrained in some fashion on September 5, 2018, for forty (40) minutes by or in the presence of Defendant Noel COLLIER, who left a phone message for Gloria V.M. on that date informing her of the incident where he refused to participate in an art exercise and was restrained as a result of staff intervention.

111.    Thomas V.M. was restrained in some fashion on September 19, 2018, by or in the presence of Defendant Noel COLLIER.

112.    Thomas V.M. was restrained in some fashion on October 3, 2018, by or in the presence of Defendant Noel COLLIER, when he refused to cooperate with staff.

113.    Thomas V.M. was restrained in some fashion on October23, 2018, by or in the presence of Defendant Noel COLLIER and David Chambers, when he would not cooperate with staff and bit one on the leg.

114.    Thomas V.M. was restrained in some fashion on October18, 2018, by or in the presence of Defendant Noel COLLIER when he would not cooperate with staff.

115.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 3, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in Yoga.

116.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 5, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would participate in his math lesson and threw a pencil and his book.

- 18 -

**Exhibit F**

117.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 19, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in school work, threw his paper at Noelle DOW and tried to leave the classroom.

118.    Thomas V.M. was restrained by a staff member named "Jennifer" when attending POINT QUEST and, as a result, his mother immediately withdrew him from the school.

119.    Thomas V.M. knows that "Jennifer"was a previous staff member at GHS.

120.    Thomas V.M. was repeatedly assaulted by "Roland" who was a driver for GHS and who had shoved Thomas, face first, into a wall on various occasions, one of which chipped one of Thomas's teeth.

121.    While attending GHS, Thomas was repeatedly refused food and prevented from eating, despite his mother's frequent pleas that he be provided the lunch he was sent to school with or that was to have been provided by the GHS staff. Thomas, at all relevant times, was suffering from a thyroid disorder and provided medication that frequently made him hungry. Various unidentified staff, including Nicole Doe, had taken Thomas's lunch from him before he was finished eating, thereby increasing his discomfort and hunger throughout the day.

**AS TO JORDAN V.M.**

122.    Jordan V.M. was restrained by GHS staff on many occasions the precise details are neither known to he nor his mother at this time,  other than that described as follows:

123.    Jordan V.M. was restrained in a restraint of some fashion on February 26, 2018, by or in the presence of Defendant Amanda Doe, when he would not cooperate on a bus trip home.

- 19 -

**Exhibit F**

124.    Jordan V.M. was restrained in a restraint of some fashion on October 10, 2018, by or in the presence of Defendant Noel COLLIER, when he was asked to do class work and threw a crayon.

125.    Jordan V.M. was restrained in a restraint of some fashion on October 9, 2018, by an unknown staff member, possibly "Dorian", for an unknown reason.

---

## FIRST CAUSE OF ACTION

### Violation of California Civil Code §§ 51, *et seq.*

AS TO PLAINTIFF MARQUES Against GHS;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;
and DOES 1-100.

126.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

127.    Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1. He had been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major life activities of learning.

128.    Plaintiffs THOMAS and JORDAN V.M. are persons with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1. They had been diagnosed as Autistic.

129.    Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

130.    GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

- 20 -

**Exhibit F**

131.    GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities, privileges, advantages, or accommodations.

132.    Plaintiffs were not provided with the services, facilities, privileges, advantages and accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals without disabilities.

133.    The discipline methods, behavior standards and criteria employed by GHS and POINT QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his disabilities.

134.    GHS and POINT QUEST failed to make reasonable modifications to their educational and behavioral intervention methods and staff training that were necessary to afford students with disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services, facilities, privileges, advantages and accommodations.

135.    The actions and failures to act of GHS and POINT QUEST violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections 12181, et seq. As such, Defendant's actions also constituted a violation of the Unruh Act under Cal. Civ. Code § 51(f).

136.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

137.    Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

138.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Cal. Civ. 51.7 Ralph Civil Rights Act**
AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100;

- 21 -

**Exhibit F**

AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT,
and DOES 1-100

139.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

140.    Defendants in doing the acts described above violated Plaintiffs' rights under the Ralph Civil Rights Act.

141.    Plaintiffs have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of any characteristic listed or defined in subdivision (b) or (e) of Section 51, because another person perceives them to have one or more of those characteristics.

142.    In committing the acts described above, all defendants have violated Plaintiffs' rights by subjecting them to violence and intimidation.

143.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

144.    Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

145.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

**For Interference with Exercise of Civil Rights in**
**Violation of California Civil Code Section 52.1**
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST,
CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT,
and DOES 1-100

146.    Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth herein.

147.    California Civil Code 52.1 provides that it is unlawful to interfere with the exercise

- 22 -

**Exhibit F**

or enjoyment of any rights under the Constitution and the laws of this state and the United States by attempted use of threats, intimidation or coercion.

148.     The California Constitution establishes the right to a free public education to all students on an equal basis.  Butt v. California, 4 Cal. 4th 668, 685 (1992).

149.     California Civil Code section 43 guarantees the right of every person to be free from bodily restraint or harm and personal insult.

150.     In doing the things herein alleged, Defendants intentionally interfered with and attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

151.     Defendants acted violently against Plaintiff, thereby preventing him from exercising his rights.

152.     Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

153.     The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

154.     The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

155.     Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a face down position with the pupil's hands held or restrained behind the pupil's back; and by using a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed a clear and present danger of serious physical harm to the pupil or others.

156.     Defendant employees of GHS and POINT QUEST acted with conscious disregard of Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  Plaintiff is therefore entitled to recover punitive and exemplary damages.

- 23 -

**Exhibit F**

157.    Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys' fees and costs as set by the Court.

## FOURTH CAUSE OF ACTION
**Violation of California Education Code §§ 200, 201, 220, and 260 et seq.**
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT,
and DOES 1-100

158.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

159.    Plaintiffs are individuals with disabilities.

160.    At all times relevant to this complaint, Defendant GHS was an educational institution providing education to students from kindergarten through twelfth grade and receiving financial assistance from the State of California.

161.    Defendants discriminated against Plaintiff on the basis of their disability by subjecting them to physical and emotional abuse in response to disability-related behavior.

162.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

163.    The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

164.    As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages in an amount according to proof and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
Assault and Battery Pursuant to California Penal Code Section 206
AS TO PLAINTIFFS
MARQUES, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN, CHAMBERS, ROBB, BRUCE, ZOMBURY, ANDERSON,  CORY QUINCY, BYRNA QUINCY, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

- 24 -

**Exhibit F**

Thomas V.M. against defendants GHS, CHRISTENSEN, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

165.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

166.     CHAMBERS, CHRISTENSEN, MEYERS, KELLER, RAMSEY, "JENNIFER" DOE, and DOE defendants , with the intent to cause cruel or extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted significant injury upon Plaintiffs by repeatedly assaulting Plaintiffs throwing them to the ground and causing bruises, contusions and lacerations.

167.     As a result, Plaintiffs suffered physical and psychological injuries.

168.     Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiffs.

169.     Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

170.     Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

171.     Defendants' conduct in intentionally assaulting and restraining Plaintiffs knowing of their disabilities was malicious and outrageous such that exemplary damages should be awarded.

172.     WHEREFORE, Plaintiffs pray for judgment for damages according to proof.

- 25 -

**Exhibit F**

## SIXTH CAUSE OF ACTION
### ASSAULT AND BATTERY

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT DOES 1-100

173.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

174.    In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs Thomas and Jordan V.M. to suffer harmful or offensive contact.

175.    As a result of said conduct of said defendants, Plaintiffs Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

176.    In doing the things herein alleged, said defendants threatened to touch Thomas and Jordan V.M. in a harmful or in an offensive manner.

177.    At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan V.M. that said defendants were about to carry out the threat.

178.    At all times herein mentioned, Thomas and Jordan V.M. did not consent to the conduct of said defendants.

179.    Thomas and Jordan V.M. suffered harm, as herein alleged.

180.    The aforementioned conduct of said defendants was a substantial factor in causing Thomas and Jordan V.M. harm.The conduct of said defendants, caused Thomas and Jordan V.M. to be apprehensive that said defendants would subject Thomas and Jordan V.M. to further intentional invasions of their right to be free from

- 26 -

**Exhibit F**

harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a present ability to subject Thomas and Jordan V.M. to an intentional offensive and harmful touching.

181.    Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

182.    At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas and Jordan V.M. rights, safety, physical well-being and feelings. Said defendants also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury and/or humiliation to Thomas and Jordan V.M. Said defendants intended to cause fear, physical injury and/or pain and suffering to Thomas and Jordan V.M.

183.    By virtue of the foregoing, the estate of Thomas and Jordan V.M. are entitled to recover punitive and exemplary damages from individual and non-public entity defendants according to proof at trial. Estate of Thomas and Jordan V.M.  make no claim for punitive damages against the named defendants.

## SEVENTH CAUSE OF ACTION

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, CHRISTENSEN, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;
Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

- 27 -

**Exhibit F**

EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN
SCHOOL DISTRICT;
DOES 1-100

184.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

185.     In doing the things herein alleged, the conduct of said defendants was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

186.     Said defendants inflicted actual injury and/or acted with reckless disregard of the probability that Plaintiffs Gloria, Thomas and Jordan V.M. would suffer emotional distress, knowing that the children who were restrained, including Gloria, Thomas and Jordan V.M., were present when the conduct occurred.

187.     The conduct of said defendants, as herein alleged, was a substantial factor in causing Gloria, Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

188.     Said defendants knew or should have known that Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be, physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

189.     Said defendants' knowing disregard for the safety of Thomas and Jordan V.M. and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as Thomas and Jordan V.M. caused Thomas and Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS and POINT QUEST.

190.     Said defendants' conduct was extreme and outrageous.

191.     Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Gloria, Thomas and Jordan V.M. would suffer emotional distress.

- 28 -

**Exhibit F**

192.    The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Gloria, Thomas and Jordan V.M. As a result, Gloria, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

**EIGHTH CAUSE OF ACTION**

FALSE IMPRISONMENT CONSPIRACY TO COMMIT FALSE IMPRISONMENT
ASSERTED by
Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; ROYER, DAVIDSON

193.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

194.    Said defendants, in concert with one another, did intentionally and unlawfully, and conspire to, exercise force, threat, implied threat of force, or duress, to restraint and confine Thomas and Jordan V.M. , and deprive them of their freedom of movement, when said defendants committed the acts described herein.

195.    Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

196.    As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and emotional harm, as herein alleged.

197.    That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm to Thomas and Jordan V.M.

198.    The outrageous conduct of the said defendants was willful and wanton, and was

- 29 -

**Exhibit F**

performed with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and Jordan V.M.

199.     As a result, Thomas and Jordan V.M.  are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof at time of trial.

## NINTH CAUSE OF ACTION
## NEGLIGENCE

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

200.     Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

201.     Said defendants breached their duty towards Thomas and Jordan V.M. by:

a. Failure to develop and maintain effective procedures governing emergency interventions;

b. Failure to obtain proper training for use of behavioral emergency interventions

c. Failure to provide oversight on the use of restraints

d. Failure to develop protocols for use of restraints

- 30 -

**Exhibit F**

f.  Failure to prohibit restraints on physically disabled children

g. Failure to prohibit prolonged restraints (anything over 15 minutes)

h. Failure to require that Thomas and Jordan V.M. be released from a restraint at the earliest possible moment.

i. Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

j.  Failure to prohibit restraints that constrict the child's ability to breathe.

k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l.  Failure to provide for the comfort of Thomas and Jordan V.M.  while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M.  fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m.    Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o. Failure to require immediate and accurate reporting on each restraint

p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q. Failure to provide for:
       -primary preventative measures rather than restraint;
       -interventions that are less intrusive than restraints;
       -effective ways to de-escalate situations to avoid restraints; and
       -crisis intervention techniques that utilize alternatives to restraint.

- 31 -

**Exhibit F**

r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t. Allowing use of physical restraints on children which:
    - create an aversive environment counterproductive to facilitating learning;
    - cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine
    - whether the intervention was necessary
    - whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v. Failed to document injuries caused by restraint and

w.    Failed to get medical attention for a child who was injured while in restraint.

202.    As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

203.    Breach of said mandatory duties by said defendants was a substantial factor in causing injuries Thomas and Jordan V.M.

204.    At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward Thomas and Jordan V.M. who were disabled students under their guidance and care.

- 32 -

**Exhibit F**

205.　At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints on special needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in violation of California law.

206.　At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints, known by said defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with reckless disregard for the safety of said children.

207.　At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone and other restraints, to injure special needs/disabled children and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for which they were hired.

208.　As a direct and foreseeable result of the negligence of said defendants learning of the death of Max Benson, plaintiffs and their own injuries Thomas and Jordan V.M. suffered physical and emotional injuries.

209.　The negligence of said defendants was a substantial factor in causing injury Thomas and Jordan V.M. to suffer physical and emotional injuries.

210.　By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

## TENTH CAUSE OF ACTION

## NEGLIGENT SUPERVISION

Gloria V.M. against GHS, RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

- 33 -

**Exhibit F**

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

211.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

212.    Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

213.    Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

214.    Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

215.    As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

### ELEVENTH CAUSE OF ACTION
### NEGLIGENCE PER SE

Gloria V.M. against GHS, RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

- 34 -

**Exhibit F**

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

216.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

217.    In doing the things herein alleged, said defendants violated the mandatory duties toward  Thomas and Jordan V.M. as prescribed by state and federal law as referenced in each of the statutes as set forth here-in-above.

218.    Said violations were of the statutes specifically intended to protect the class of plaintiff and to prevent the injuries as those described herein.

219.    Said violations of criminal and civil law were a substantial factor in bringing about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

220.    As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M.  suffered injury, and are entitled to damages according to proof.

**TWELFTH CAUSE OF ACTION**
**Tortious Breach of the Covenant**
**Of Good Faith and Fair Dealing**

Asserted by the Plaintiffs Gloria, Thomas and Jordan V.M. Against Defendants GHS, Meyers, Keller, Point Quest,Troy Tickle, Kristi Gregerson, Cara Bruce and Doe Defendants 1-100

221.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

- 35 -

**Exhibit F**

fully set forth herein.

222.   Upon the respective enrollment of Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants for the education of their children.

223.   At all times herein mentioned, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants.

224.   As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support. The GHS handbook also indicated that defendant GHS would "customize" the system to support student outcomes and "interact with students in a way that promotes social proficiency." The GHS handbook states that "social competence is a skill that requires direct teaching." . The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

225.   As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants against any student based on physical or mental disability.

226.   As part of said contract, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and

- 36 -

**Exhibit F**

redirecting behavior using a lesson."

227.    As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

228.    As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants; and the most dangerous type of restraint, a prone restraint, was described by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants to each of Thomas and Jordan V.M's parents in innocuous language as a "neutral" restraint.

229.    Plaintiffs, and each of them, did all of the significant things that the contract required them to do.

230.    At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS, KELLER, POINT QUEST,Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants had occurred.

231.    Defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

232.    Defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed

- 37 -

**Exhibit F**

corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

233.    By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

234.    By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

235.    By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. and the beneficiaries of said contract, Thomas and Jordan V.M., have suffered severe emotional and physical distress at having the respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

236.    By virtue of said  bad faith interference with contractual benefits,  all plaintiffs suffered physical and emotional injuries, and future general and special damages as herein alleged.

237.    The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

238.    In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults. As a consequence, plaintiffs, and each of them,

- 38 -

**Exhibit F**

are entitled to punitive damages.

### THIRTEENTH CAUSE OF ACTION

### FRAUD

Asserted by Gloria V.M. against GHS, POINT QUEST, PLACER COUNTY SELPA
and ROCKLIN UNIFIED SCHOOLS; TICKLE, GREGERSON, BRUCE, RAMSEY,
MYERS, KELLY, NARAN,TOLLESTRUP, WEBBER, ROYER, DAVIDSON

239.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though
fully set forth herein.

240.    On or about the date of enrolling their respective children in defendant GHS,
defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants,
represented to Gloria V.M. that said defendants would not to discriminate in any activity
against any student at GHS based on physical or mental disability under Title IX,
Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited intimidation or
harassment by any employee of defendants GHS and POINT QUEST against any
student based on physical or mental disability; that said defendants and their
employees would use Positive Behavior Interventions and Supports to correct
inappropriate behavior and to interact with students in a way which promotes social
proficiency and academic success, including using "positive language and redirecting
behavior using a lesson"; that behavior by GHS' staff when correcting a child would be
"calm, consistent, brief, immediate and respectful,"; that GHS and POINT QUEST
behavior intervention approaches involved a three step prompt "verbal, modeling, hand-
over-hand";  and that restraints would be imposed only if the child was a danger to
himself or others so as to de-escalate and re-integrate into classroom activities.

241.    On or about the dates of the respective enrollment of Thomas and Jordan V.M.,
at GHS and POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and their
employees represented to Gloria V.M that they were required to sign a form allowing
defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, to impose
restraints on said plaintiffs' respective children, with the implied threat that if they did
not sign the form their respective children would not be enrolled at GHS, which was the

- 39 -

**Exhibit F**

only school available to educate said children, and therefore, the parents would be in violation of California's mandatory education law.

242.   That the afore-mentioned representations of defendants, were false, and Gloria V.M. learned that they were false on or after November 29, 2018, upon the death of MAX, when they discovered that they did not have to allow or consent to the use of restraints against their disabled children.

243.   Said defendants knew that said representations were false when they made them, and/or said defendants made the representations recklessly and without regard for the truth of said representations.

244.   Said defendants intended that GLORIA V.M. rely on said representations.

245.   GLORIA V.M. reasonably relied on said representations, and enrolled their respective children at defendant GHS to receive an education.

246.   GLORIA V.M. were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

247.   GLORIA V.M. reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

248.   At all relevant times, said defendants acted with conscious disregard of the rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs.  By virtue of the foregoing, said plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial.

**FOURTEENTH CAUSE OF ACTION**

- 40 -

**Exhibit F**

**Title II of the Americans with Disabilities Act of 1990,
42 U.S.C. Sec's 12101 et seq.**

1

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

2

249.  Plaintiffs incorporate by reference all preceding paragraphs.

3

250.  Title II of the ADA prohibits public entities from denying persons with

4

disabilities the benefits of its programs, services or activities. 28 U.S.C. § 12132.

5

251.  Defendants CDE,Rocklin Unified Schools, and Placer County SELPA are

6

public entities.

7

252.  Thomas, V.M. and Jordan V.M. were at all relevant times students with

8

disabilities who had been placed at GHS via their IEPs.

9

253.      The ADA is violated not only by outright discrimination but also when a

10

public entity engages in "forms of discrimination which deny disabled persons public

11

services disproportionately due to their disability." Crowder v. Kitagawa, 81 F. 3d

12

1480, 1483 (9th Cir. 1996); see also, Mark H. v. Lemahieu, 513 F.3d 922, 937 (9th

13

Cir. 2008).  The ADA prohibits governmental agencies from denying persons with

14

disabilities from "the benefits" of their programs. Mark H., 513 F.3d at 937. The

15

ADA requires more than just some access to governmental services; it requires

16

"meaningful access". Id.

17

254.  A public entity, in providing any aid, benefit, or service, may not, directly or

18

through contractual, licensing, or other arrangements, on the basis of disability:

19

    a.    Afford a qualified individual with a disability an opportunity to

20

participate in or benefit from the aid, benefit, or service that is not
equal to that afforded others;

21

    b.    Provide a qualified individual with a disability with an aid, benefit, or

22

service that is not as effective in affording equal opportunity to obtain
the same result, to gain the same benefit, or to reach the same level

23

of achievement as that provided to others;

24

    c.    Aid or perpetuate discrimination against a qualified individual

25

with a disability by providing significant assistance to an
agency, organization, or person that discriminates on the

26

basis of  disability in providing any aid, benefit, or service to
beneficiaries of the  public entity's program;

27

28

- 41 -

**Exhibit F**

d. Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

28 C.F.R. § 35.130(b)(1)(ii)(iii)(v) and (vii).

255. A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration-

a. That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

b. That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

c. That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

28 C.F.R. § 35.130(b)(3).

256. A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(6).

257. A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

258. A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

259. The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities.  Through GHS:

a. The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that were not equal to those provided to students without disabilities;

- 42 -

**Exhibit F**

b.    The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that did not afford equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to LEA students without disabilities;

c.    The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans;

d.    The LEA Defendants limited the Plaintiff Students from enjoying their right to a free public education in a safe placement, free from discrimination or abuse; and

e.    The LEA Defendants used administrative methods-specifically the policies and practices of GHS regarding behavioral interventions-that subjected Plaintiff Students to disability discrimination and defeated or substantially impaired the objective of providing a free public education to the Plaintiff Students.

260.    Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement.  The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement.  Nor did it acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students.  As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

- 43 -

**Exhibit F**

261.    The LEA Defendants failed to make reasonable modifications to their program of providing special education services to children within the LEA, such that LEA students with disabilities would not be subject to discrimination and abuse in their educational placements.  These modifications-meaningful investigations and evaluations of the NPS prior to placing an LEA student there and forceful oversight, investigation, and measures to ensure compliance with state and federal laws during the placement, including site visits and regular review of school and student records and BERs-would not have constituted a fundamental alteration in the LEAs' programs of providing educational services to their students.

262.    GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.  However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

263.    The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

264.    Defendant CDE knew or should have known that:  students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of

- 44 -

**Exhibit F**

students with disabilities in response to behavior that was known to be a manifestation of the students' disabilities; that the particular disabilities of the children against whom these restraints were used made the restraints even more dangerous; and that the restraints were not only ineffective and contrary to the students' BIPs, but more often than not aggravated the students' behavioral problems.

265.   Defendant CDE discriminated against Plaintiffs on the basis of their disabilities by:

a.   Abdicating its duties to supervise, monitor, investigate, train, and ensure legal compliance of nonpublic schools, including GHS, with laws designed to protect students with disabilities from discrimination and abuse;

b.   Failing to take even minimal measures to ensure statewide compliance with state and federal laws within nonpublic schools, including GHS;

c.   Administering its licensing program of certifying, monitoring, investigating and taking corrective action against nonpublic schools which provide educational services to children with disabilities in a discriminatory, cursory, and indifferent manner;

d.   Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, investigation, and legal compliance of nonpublic schools in light of repeated notifications from the U.S. Department of Education and other sources regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes; and

e.   Completely abandoning its duty to monitor and supervise the use of emergency behavioral interventions in nonpublic schools under Cal. Ed. Code § 56521(b).

266.   The CDE knew and was deliberately indifferent to the fact that children with disabilities were being restrained at far greater rates than children without disabilities and that the rates of restraint use were significantly higher at "nonpublic" schools such as GHS than at public schools.  It took no action to strengthen its oversight and monitoring of nonpublic schools or laws restricting the use of physical interventions. The CDE knew and was deliberately indifferent to allegations that children with disabilities being improperly restrained at GHS and failed to conduct an emergency

- 45 -

**Exhibit F**

site visit when they had a substantial reason to believe that there was an immediate danger to the health, safety and welfare of students at GHS. The CDE did not conduct a real investigation or visit the school until after GHS staff killed a student by restraining him.

267.    Defendants' actions and failures to act were a substantial factor in causing physical and emotional injuries to the Plaintiff Students as outlined above.

268.    Plaintiffs seek compensatory damages and attorneys' fees and costs.

**FIFTEENTH CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

269.    Plaintiffs incorporate by reference all preceding paragraphs

270.    Section 504 prohibits entities that receive federal financial assistance from denying persons with disabilities the benefits of their programs, services or activities or otherwise discriminate against them on the basis of their disabilities. 29 U.S.C. § 794; 34 C.F.R. pt. 104.

271.    Thomas V.M. and Jordan V.M. were at all relevant times students with disabilities who had been placed at GHS by the LEAs in which they resided via their IEPs.

272.    The CDE and the LEA Defendants receive federal financial assistance to provide special education services to children with disabilities in California. 20 U.S.C. §§ 1411-1413.

273.    Defendant GHS was a "nonpublic school" that contracted with the LEA Defendants to provide educational services to students with disabilities, including the Plaintiff Students, on behalf of the LEA Defendants in exchange for the state and federal financial assistance provided to the LEA Defendants to perform those services. Cal. Ed. Code § 56365. Section 504 therefore applies to GHS. 34 C.F.R. § 104.2 ("This part applies to each recipient of Federal financial assistance from the Department of Education and to the program or activity that receives such assistance.").

- 46 -

**Exhibit F**

274.   Section 504 prohibits recipients of federal financial assistance from directly or through contractual, licensing, or other arrangements, on the basis of disability:

    a.   Denying a qualified person with a disability the opportunity to participate in or benefit from the aid, benefit or service;

    b.   Affording a qualified person with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

    c.   Providing a qualified person with a disability with an aid, benefit, or service that is not as effective as that provided to others;

    d.   Aiding or perpetuating discrimination against a qualified person with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to the beneficiaries of the recipients' program or activity;

    e.   Otherwise limiting a qualified person with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

    C.F.R. 104.4(b)(1)(i)(ii)(iii)(v) and (vii).

275.   Section 504 prohibits recipients of federal financial assistance from directly or through contractual or other arrangements, utilizing criteria or methods of administration:

    a.   That have the effect of subjecting persons with disabilities to discrimination on the basis of their disabilities;

    b.   that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to persons with disabilities; or

    c.   That perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

    C.F.R. § 104.4(b)(4).

276.   GHS engaged in deliberate discrimination against the Plaintiff Students on the basis of their disabilities.  GHS and its staff subjected the Plaintiff Students to illegal, excessive and harmful restraints in response to known, disability-related behaviors that did not constitute a clear and present danger to the safety of the students or others and that could have been addressed by less restrictive measures, including

-47-

**Exhibit F**

those outlined in the students' BIPs. GHS discriminated against the Plaintiff Students by:

a.  Denying them the opportunity to participate in educational services free from physical and emotional abuse;

b.  Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

c.  Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

d.  Administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

277.  The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities by:

a.  Denying them the opportunity to participate in educational services free from physical and emotional abuse;

b.  Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

c.  Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

d.  Using administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

278.  The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans.

- 48 -

**Exhibit F**

279.     Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement.  The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement.  Nor did they acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students.  As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

280.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.  However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

281.     The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

282.     Defendant CDE knew or should have known that:  students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of

- 49 -

**Exhibit F**

students with disabilities in response to behavior that was known to be a manifestation of the students' disabilities; that the particular disabilities of the children against whom these restraints were used made the restraints even more dangerous; and that the restraints were not only ineffective and contrary to the students' BIPs, but more often than not aggravated the students' behavioral problems.

283.    Defendant CDE discriminated against Plaintiffs on the basis of their disabilities by:

   a.   Abdicating its monitoring, investigation and compliance duties with regard to nonpublic schools, including GHS;

   b.   Failing to take even minimal measures to ensure statewide compliance with state and federal laws within nonpublic schools, including GHS;

   c.   Administering its licensing program of certifying, monitoring, investigating and taking corrective action against nonpublic schools which provide educational services to children with disabilities in a discriminatory, cursory, and indifferent manner;

   d.   Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, investigation, and compliance of nonpublic schools in light of repeated notifications from the U.S. Department of Education regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes; and

   e.   Completely abandoning its duty to monitor and supervise the use of emergency behavioral interventions in nonpublic schools under Cal. Ed. Code § 56521(b).

284.    The CDE knew and was deliberately indifferent to the fact that children with disabilities were being restrained at far greater rates than children without disabilities and that the rates of restraint use were significantly higher at "nonpublic" schools such as GHS than at public schools. It took no action to strengthen its oversight and monitoring of nonpublic schools or laws restricting the use of physical interventions. The CDE knew and was deliberately indifferent to allegations that children with disabilities were being improperly restrained at GHS and failed to conduct an emergency site visit when they had a substantial reason to believe that there was an immediate danger to the health, safety and welfare of students at GHS. The CDE

**Exhibit F**

did not conduct a real investigation or visit the school until after GHS staff killed a
student by restraining him.

285.    Defendants actions and failures to act were a substantial factor in causing
physical and emotional injuries to the Plaintiff Students as outlined above.

286.    Plaintiffs seek compensatory damages and attorneys' fees and costs.

## SIXTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution

MARQUES, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN, CHAMBERS,
BRUCE, ZOMBURY, ANDERSON,  CORY QUINCY, BYRNA QUINCY, HANDLE
WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER,
ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane
BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSON, NARAN,
Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON,
WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE
WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
DOES 1-100.

287.    Plaintiffs incorporate by reference all preceding paragraphs.

288.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND
DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE,
HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT
QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe,
David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, used excessive force against
Marques, Thomas, V.M. and Jordan V.M. when they restrained them in response to
predictable, disability-related behavior that did not constitute a clear and present
danger to Marques, Thomas, V.M. and Jordan V.M. 's or others' safety and that
could have been addressed by less restrictive measures, including those outlined in
their BIPs.  Defendants' use of force was objectively unreasonable in light of

- 51 -

**Exhibit F**

Marques, Thomas, V.M. and Jordan V.M. 's behavior and California law restricting the use of physical interventions. Defendants' use of restraints was also unreasonable in their frequency, duration, pressure and restrictions applied, lack of monitoring of Marques, Thomas, V.M. and Jordan V.M. health condition, and the pain and injuries caused to Marques, Thomas, V.M. and Jordan V.M.

289.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, violated the Plaintiff Students' Fourth Amendment rights when they instituted and maintained a policy and practice at GHS of restraining students in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

290.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, were acting under color of state law when they instituted and practiced a policy of restraining students, including the Plaintiff Students, in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

291.    Defendants GHS and POINT QUEST were performing a public function that the LEA Defendants were legally required to provide and for which they were receiving state and federal funds-that of providing free educational services, including special education, to the Plaintiff Students.  If an LEA does not have an

**Exhibit F**

appropriate special education placement within its district, it may place a student in a nonpublic school. Cal. Ed. Code § 56365.  In turn, the student "will be deemed to be enrolled in public schools" for the purpose of state and federal funding.  Cal. Ed. Code § 56365(b).   However, the LEAs are to monitor and supervise the placement and transition the student back to the public schools if the NPS is no longer appropriate to meet the student's needs.  Cal. Ed. Code § 56366(a)(2)(B).  The LEA continues to be responsible for the child's placement and special education needs and must participate in their IEP meetings. 20 U.S.C. § 1414(d)(1)(B)(iv).

292.     The Plaintiff Students were placed and kept at GHS by the LEA Defendants pursuant to their IEPs.  GHS had a Master Contract with each of the Defendant LEAs to provide education services to the Plaintiff Students.

293.     GHS and POINT QUEST sent BERs to the LEA Defendants demonstrating the excessive and illegal nature of the restraints, but this information was filed away and ignored.  The IEP teams, in which the LEA Defendants participated, did not review and modify students' BIPs when it was clear they were ineffective or not being followed.  Despite knowing that their students were being illegally restrained by GHS staff, the LEA Defendants left the Plaintiff Students at the school and did not take any action to stop the restraints.  Because they were unable and unwilling to provide the educational services themselves, the LEA Defendants ignored and thereby allowed the violations of Plaintiffs' constitutional rights, knowingly accepting the benefits of GHS's illegal behavior.

294.     At all times relevant to the complaint, the individual GHS and POINT QUEST Defendants were acting in the performance of their official duties to provide educational services, including special education services, to the Plaintiff Students pursuant to state and federal law and GHS's contract with the LEA Defendants.

295.     The GHS and POINT QUEST Defendants knowingly deprived the Plaintiff Students of their Fourth Amendment rights to be free from excessive force.

296.     Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE,

**Exhibit F**

HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, , deprived Plaintiffs Thomas and Jordan V.P. of their Fourth Amendment rights to be free from excessive force. As administrators of the PLACER COUNTY SELPA Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON administrators for ROCKLIN UNIFIED SCHOOLS, were responsible for overseeing the Plan's implementation, which included: 1) coordinating with school districts to ensure that all special education students in the Plan area have equal access to the full continuum of programs and services;   2) working with the school districts to identify unmet student needs and resources to meet those needs; 3) receiving, distributing, and monitoring the use of special education funding; 4) entering into Master Contracts with nonpublic schools, reviewing and monitoring those contracts, issuing and monitoring the assurances for those contracts, and maintaining updated contracts; and 5) submitting for approval to the Superintendents' Council policies and procedures governing regional and District-operated programs, including nonpublic schools. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON adminstrators for ROCKLIN UNIFIED SCHOOLS had a duty to monitor GHS as a nonpublic school with which it had a Master Contract to provide services for students in the Plan area.  They also had a duty to monitor the use of special education funding and ensure that it was not going to programs that used behavioral interventions that violated state or federal law.  Cal. Ed. Code §§ 56521.2, 56523(d).

297.      GHS, MEYER, KELLER, RAMSEY, CHRISTENSEN, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE,  and DOE defendants deprived Plaintiff Marques of his Fourth Amendment rights to be free from excessive force.

- 54 -

**Exhibit F**

298.     Despite widespread knowledge within the educational community about the disproportionate use of excessive, illegal and dangerous restraints on children with disabilities and in nonpublic schools, as administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to the Fourth Amendment rights of students in the YOLO SELPA plan area to be free from excessive force. They maintained a policy and practice within YCOE and YOLO SELPA of ignoring their duties to monitor GHS and ensure that it was complying with state and federal laws prohibiting discrimination and restricting the use of physical behavior interventions.

299.     From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements. Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON failed to supervise and train staff to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOL students to ensure that they were not being subjected to excessive force.

300.     At all times relevant to the complaint, Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties as administrators for public entities, PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOLS.

- 55 -

**Exhibit F**

301.    Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON 's actions and failures to act were a substantial factor in causing Thomas and Jordan V.M.'s physical and emotional pain and suffering.

302.    Defendants and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS

303.    Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS deprived Jordan V.M. of their Fourth Amendment rights to be free from excessive force.  RUSD and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS wer responsible for the coordination of special education services and programs within the RUSD and the implementation of the PLACER COUNTY SELPA plan.  This included assuring that the District's programs-including any nonpublic school in which the District has placed a special education student-did not discriminate against children on the basis of disability and followed state and federal education laws, including those prohibiting the use of excessive force against students.  DAVIDSON was the direct supervisor of Defendant ROYER , the RUSD Program Specialist assigned to Jordan V.M..  ROYER was responsible for developing Jordan's IEP, ensuring that Jordan's educational placement at POINT QUEST was appropriate, monitoring the delivery of services to Jordan, and ensuring that the program in which Jordan had been placed complied with state and federal laws, including those related to the use of behavioral interventions and use of physical force.  ROYER was also responsible for coordinating and monitoring the implementation of educational programs and services at nonpublic schools at which RUSD students had been placed.

304.    Throughout Jordan's's placement at POINT QUEST, ROYER and DAVIDSON received information and documents demonstrating that POINT QUEST was subjecting Jordan to excessive force.  Specifically, POINT QUEST staff was placing Jordan in illegal restraints POINT QUEST in response to predictable, disability-related behaviors which did not pose a clear and present

- 56 -

**Exhibit F**

danger to the safety of the student or others and could have been addressed by less restrictive interventions. This information included, but was not limited to, Behavior Emergency Reports, information provided by POINT QUEST staff at Jordan's IEP meetings, and documents accompanying Jordan's IEP meetings.

305.     ROYER AND DAVIDSON were deliberately indifferent to the knowledge that POINT QUEST was subjecting Jordan to excessive force. Defendants did nothing to investigate POINT QUEST to stop the restraints, or remove to a safe, approved placement.

306.     From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates. As administrators for ROCKLIN UNIFIED SCHOOLS, Kristain ROYER, Beth DAVIDSON, deprived Jordan V.M. was deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements. DAVIDSON failed to supervise and train the program specialists working under her to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of RUSD students to ensure that they were not being subjected to excessive force.

307.     At all times relevant to the complaint, Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties for public entity RUSD.

308.     Kristain ROYER, Beth DAVIDSON's actions and failures to act were a substantial factor in causing Jordan's physical and emotional pain and suffering.

309.   GHS, MEYER, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS, BRUCE,  and DOE defendants' actions and failures to act were a substantial factor in causing Marques' physical and emotional pain and suffering.

- 57 -

**Exhibit F**

## DAMAGES

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

### FIRST CAUSE OF ACTION
### INTERFERENCE WITH THE EXERCISE OF
### CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51et seq

1.      General damages for in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10   Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION
### INTERFERENCE WITH PLAINTIFFS' EXERCISE OF CIVIL RIGHTS IN VIOLATION
### OF CALIFORNIA CIVIL CODE SECTION 51.7

1.      General damages for in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

**Exhibit F**

6.    Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### INTERFERENCE WITH PLAINTIFFS' EXERCISE OF
### CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

1.    General damages for in an amount to be determined according to proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at trial;

5.    General damages for severe emotional and psychological distress

6.    Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA EDUCATION CODE
### §§ 200, 201, 220 and 260, et seq.

1.    General damages for in an amount to be determined according to proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

- 59 -

**Exhibit F**

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
## ASSAULT AND BATTERY CONSTITUTING TORTURE

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
## ASSAULT AND BATTERY

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

- 60 -

**Exhibit F**

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**FALSE IMPRISONMENT, CONSPIRACY TO COMMIT FALSE IMPRISONMENT**

- 61 -

**Exhibit F**

1.    General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at trial;

5.    General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

8.    Punitive and exemplary damages against all non-public entity Defendants

9.    Costs of this action;

10.    Such other and further relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION
## NEGLIGENCE

1.    General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at trial;

5.    General damages for severe emotional and psychological distress;

6.   Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Costs of this action;

10.    Such other and further relief as the Court deems just and proper.

- 62 -

**Exhibit F**

## TENTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION

General damages for Pain and suffering in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Costs of this action;

10. Such other and further relief as the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
## NEGLIGENCE PER SE

1. General damages for Pain and suffering in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Costs of this action;

10. Such other and further relief as the Court deems just and proper.

- 63 -

**Exhibit F**

**TWELFTH CAUSE OF ACTION**
**Tortious Breach of the Covenant**
**Of Good Faith and Fair Dealing**

1. General damages for Pain and suffering in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees:

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

**THIRTEENTH CAUSE OF ACTION**
**FRAUD**

1. General damages for Pain and suffering in an amount to be determined according to proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

- 64 -

**Exhibit F**

**FOURTEENTH CAUSE OF ACTION**
**Title II of the Americans with Disabilities Act of 1990,**
**42 U.S.C. Sec's 12101 et seq.**

1. Compensatory Damages

2. Attorneys' fees and costs

**FIFTEENTH CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

1.Compensatory Damages

2. Attorneys' fees and costs

**SIXTEENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution**

1.Compensatory Damages

2. Punitive Damages

c. Attorneys' fees and costs

Dated: October 18, 2021

Seth L. Goldstein,
Attorney at Law

- 65 -

**Exhibit F**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF EL DORADO

MINUTE ORDER

CASE NO: PC20200429       LOUIE ANDREAS MARQUES vs GUIDING HANDS SCHOOL
DATE: 09/28/21            TIME:  3:30       DEPT: 4

CASE MANAGEMENT CONFERENCE RE: STATUS

---

Honorable Judge Pro Tem Jennifer Peterson presiding.  Clerk: Wendy
Warden  Court Reporter: None.  Baileff: None.

LOUIE ANDREAS MARQUES, GLORIA V M, THOMAS V M, JORDAN V M present by
counsel Seth Goldstein via vCourt.

A Case Management/ADR Assessment Conference was held this date and,
good cause therefore appearing, the following determinations were
made:

Hearing continued to 12/21/21 at  3:30 in department 4

Notice to be given by Plaintiff.

**Exhibit F**

2. MARQUES, ET AL. v. GUIDING HANDS SCHOOL, ET AL., PC20200429

   Amended Motion for Leave to File Second Amended Complaint

   TENTATIVE RULING # 2: THE AMENDED MOTION IS GRANTED. PLAINTIFFS MUST FILE THE SECOND AMENDED COMPLAINT NO LATER THAN NOVEMBER 12, 2021.

**Exhibit F**

**IN THE SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF EL DORADO**
**DEPARTMENT 4**

| | |
|---|---|
| LOUIE ANDREAS MARQUES )<br>Plaintiff/Petitioner, )<br>v. )<br><br>GUIDING HANDS SCHOOL )<br>Defendant/Respondent. )<br>) | Case No.  **PC20200429**<br>Event Date:  **10/22/2021**<br>Event Type:  **Motion Hearing**<br>Mtn/OSC:  **Other**<br>Add'l Info:  **FOR LEAVE TO FILE SECOND AMENDED[COMPLAINT[000101[0001-0002-0003-0004[**<br>Judge:<br>Clerk:  **Wendy Warden**<br>Reporter: |

### Civil Unlimited - Minutes

## Appearances:

Honorable Judge Michael J. McLaughlin presiding.
There are no appearances.

## Nature of Proceedings:

Motion Rulings - Minutes Orders Entries

| Prompt | Text | Other Information |
|---|---|---|
| Motion Rulings | **Amended Motion is granted. The court adopts the tentative ruling.** | **Plaintiffs must file the Second Amended Complaint no later than November 12, 2021.** |

Plaintiffs' counsel to prepare order.

**Exhibit F**

CIV-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Domenic D. Spinelli SBN: 131192 <br> SPINELLI DONALD & NOTT <br> 601 University Ave., Suite 225 <br> Sacramento, CA 95825 <br><br> TELEPHONE NO.: 916.448.7888   FAX NO.: 916.448.6888 <br> E-MAIL ADDRESS: domenics@sdnlaw.com <br> ATTORNEY FOR (Name): JENNIFER GALAS | EL DORADO CO. SUPERIOR CT. <br><br> FILED  OCT 2 2 2020 <br><br> BY: _____ <br> Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS: SAME AS STREET
CITY AND ZIP CODE: Cameron Park, CA 95682
BRANCH NAME: CIVIL

PLAINTIFF/PETITIONER: Marques, et al.

DEFENDANT/RESPONDENT: Guiding Hands School, Inc., et al

| NOTICE OF ENTRY OF DISMISSAL AND PROOF OF SERVICE | CASE NUMBER: |
|---|---|
| [X] Personal Injury, Property Damage, or Wrongful Death <br> [ ] Motor Vehicle   [ ] Other <br> [ ] Family Law <br> [ ] Eminent Domain <br> [ ] Other (specify): | PC 20200429 |

**TO ATTORNEYS AND PARTIES WITHOUT ATTORNEYS:** A dismissal was entered in this action by the clerk as shown on the *Request for Dismissal. (Attach a copy completed by the clerk.)*

Date: October 21, 2020

DOMENIC D. SPINELLI ▶
(TYPE OR PRINT NAME OF  [X] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)                    (SIGNATURE)

## PROOF OF SERVICE

1. I am over the age of 18 and not a party to this cause. My residence or business address is: 601 University Ave., Suite 225, Sacramento, CA 95825

2. [X] I am a resident of or employed in the county where the mailing occurred. I served a copy of the *Notice of Entry of Dismissal* and *Request for Dismissal* by mailing them, in a sealed envelope with postage fully prepaid, as follows:
   a. [ ] I deposited the envelope with the United States Postal Service.
   b. [X] I placed the envelope for collection and processing for mailing following this business's ordinary practice with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.
   c. Date of deposit: 10/21/20   d. Place of deposit (city and state): Sacramento, CA 95825
   e. Addressed as follows (name and address): Seth L. Goldstein, 2100 Garden Rd., Suite H-8, Monterey, CA 93940

3. [ ] I served a copy of the *Notice of Entry of Dismissal* and *Request for Dismissal* by personally delivering copies as shown below:
   a. Name of person served:
   b. Address at which person served:
   c. On (date):                    d. At (time):

4. [ ] I served a copy of the *Notice of Entry of Dismissal* and *Request for Dismissal* by electronically serving copies as shown below *(complete if electronic service is used based on a court order or agreement of the parties):*
   a. Name of person served:
   b. Electronic service address of person served:
   c. On (date):                    d. At (time):
   e. Electronic service address from which I served the documents:
   [ ] Proof of electronic service is attached.

5. [ ] Proof of service on additional parties is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 21, 2020

Jessica Patton ▶
(TYPE OR PRINT NAME)                    (SIGNATURE OF DECLARANT)

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CIV-120 [Rev. January 1, 2012] | **NOTICE OF ENTRY OF DISMISSAL** <br> **AND PROOF OF SERVICE** | Legal Solutions Plus | Code of Civil Procedure, § 581 et seq.; <br> Cal. Rules of Court, rule 3.1390 |

BY FAX



NOV 1 2 2021 <br> Exhibit 15

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Seth Goldstein (SBN: 176882)
2100 Garden Rd., Suite H-8
Monterey, CA 93940

TELEPHONE NO.: (831)372-9511    FAX NO. (Optional): (831)372-9611
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Lead Counel for Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS: SAME AS STREET
CITY AND ZIP CODE: Cameron Park, CA 95682
BRANCH NAME: CIVIL

PLAINTIFF/PETITIONER: Marques, et al.

DEFENDANT/RESPONDENT: Guiding Hands School, Inc., et al.

**FILED**

OCT 0 1 2020

EL DORADO CO. SUPERIOR COURT
BY W. **Warden**
(DEPUTY CLERK)

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>PC 2020-0429<br>Judge Dylan Sullivan |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) [X] With prejudice   (2) [ ] Without prejudice
   b. (1) [X] Complaint   (2) [ ] Petition
   (3) [ ] Cross-complaint filed by (name):                    on (date):
   (4) [ ] Cross-complaint filed by (name):                    on (date):
   (5) [ ] Entire action of all parties and all causes of action
   (6) [X] Other (specify):* As to Defendant, Jennifer Galas only. Each side to bear their
      own fees and costs.
2. (Complete in all cases except family law cases.)
   The court [ ] did [X] did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)

Date:  10/1/2020

Seth Goldstein (SBN: 176882)
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▷ _____ (SIGNATURE)

*If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for: Lead Counsel for Plaintiffs
[X] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▷ _____ (SIGNATURE)

** If a cross-complaint — or Response (Family Law) seeking affirmative relief — is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

(To be completed by clerk)
4. [ ] Dismissal entered as requested on (date):
5. [X] Dismissal entered on (date): 10/01/2020    as to only (name): Jennifer Galas
6. [ ] Dismissal not entered as requested for the following reasons (specify):

7. a. [ ] Attorney or party without attorney notified on (date):
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed [ ] means to return conformed copy

Date: 10/01/2020    Clerk, by W. **Warden**
Tania C. Ugrin-Capobianco    , Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390

BY FAX

**Exhibit F**

*Marques vs Guiding Hands School, Inc., et al.*
El Dorado Superior Court Case No.: PC2020-0429

## PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Sacramento, State of California. My business address is 601 University Avenue, Suite 225, Sacramento, CA 95825. I am over the age of 18 and not a party to the above-entitled action.

I am readily familiar with Spinelli, Donald & Nott's practice for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle. Each day's mail is collected and deposited in a U.S. mailbox at or before the close of each day's business. (CCP Section 1013a(3) or Fed.R.Civ.P.5(a) and 4.1.)

On 10/1/20, I served the enclosed: REQUEST FOR DISMISSAL. The originals of which were produced on recycled paper, to be served via:

**xx     MAIL--**
Placed in the United States Mail at Sacramento, California in an envelope with postage thereon fully prepaid addressed as follows:

### SERVICE LIST

| **Lead Counsel for Plaintiffs** | Seth L. Goldstein |
|---|---|
| | 2100 Garden Rd., Suite H-8 |
| | Monterey, CA 93940 |
| | Tel: 831.372.9511 |
| | Fax: 831.372.9611 |
| | Email: slglawoffice@gmail.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on 10/1/20, at Sacramento, California.

_____
Jessica Patton

BY FAX

1
PROOF OF SERVICE

**Exhibit F**

N-Court Fax Filing

1   **Seth L. Goldstein, S.B.N. 176882**
    2100 Garden Road, Suite H-8
2   Monterey, California, 93940
3   Telephone  (831) 372 9511
    Fax         ·  (831) 372 9611
4
    **Lead-Counsel for Plaintiffs**
5
6   **Merit Bennett**, *Pro Hac Vice*
    460 St. Michael's Drive, Suite 703
7   Santa Fe, New Mexico 87505
    Telephone: (505) 983-9834
    Fax: (505) 983-9836
8
9   Co-Counsel for Plaintiffs

10            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11                        **COUNTY OF EL DORADO**

12  In the Matter of:

13  _____     )   **Case No.: PC20200429**
                                          )
14  **Louie Andreas MARQUES, Gloria V.M.,**  )
    **Thomas V.M., and Jordan V.M.,**        )   **SECOND AMENDED**
15                                        )   **COMPLAINT FOR DAMAGES**
                  **Plaintiffs**          )
16  **vs**                                )
                                          )   **JURY TRIAL DEMANDED**
17  **GUIDING HANDS SCHOOL,**             )
    **Inc.(hereinafter "GHS"), ,  Staranne**  )
18  **MEYERS, Cindy KELLER, Phylis RAMSEY,**  )
    **Jennifer CHRISTENSEN, David**       )
19  **CHAMBERS, Noel Doe,  Nicole DOE,**  )
    **Roland DOE, Noel COLLIER, Patricia DOE,**  )
20  **David DOE, Amanda DOE, Cara BRUCE,**  )
    **Ashley ROBB, Dolores ZUMBURY, Vince**  )
21  **ANDERSON, Susan Jane BATTLE and**   )
    **Noelle DOE; STATE OF CALIFORNIA,**  )
22  **DEPARTMENT OF EDUCATION; PLACER**   )
    **COUNTY SELPA, Kristi GREGERSEN, Troy**  )
23  **TICKLE, POINT QUEST, Inc., Bill**   )
    **TOLLESTRUP, Bill WEBBER, Nicole DOE,**  )
24  **Jennifer DOE; ROCKLIN UNIFIED**     )
    **SCHOOL DISTRICT, Kristain ROYER, Beth**
25  **DAVIDSON; HANDLE WITH CARE**
    **BEHAVIOR MANAGEMENT SYSTEMS,**
26  **INC.**
27                **Defendants.**
    _____
28

EL DORADO CO. SUPERIOR CT.

FILED  NOV 0 2 2021

BY _____
              Deputy

SCANNED
Exhibit F
NOV 1 2 2021



## I. PARTIES

### Plaintiffs

1.     Plaintiff Louie MARQUES (legal name Louie Andreas MARQUES, hereinafter "MARQUES"), who lives in Sacramento was, at all relevant times herein, a minor child diagnosed as then having Oppositional Defiant Disorder and ADHD. He was a person with a disability as defined by the Unruh Act, with a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

2.     At the relevant times, MARQUES had an IEP that identified predictable behaviors as disrespecting authority, tantrums, disruption of others, yelling, swearing, and kicking.

3.     The BIP mandated that staff use verbal prompts, proximity changes, and modeling behaviors sought to be learned.

4.     **Plaintiffs Thomas and Jordan V.M.** were children with disabilities as defined in 20 USD 1401(3), and were persons who under the Unruh Act, have a mental disability as defined in Sections 12926 and 12926.1 of the Government Code.

5.     Thomas V.M. had an IEP that identified kicking, biting, throwing objects, refusal to participate in activity or follow staff directives, yelling, screaming, grunting or crying with tears as predictable behaviors.

6.     His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

7.     Jordan V.M. had an IEP that identified non-compliance, physical aggression (kicking, hitting, pushing, biting, and spitting on staff and peers), yelling/screaming, inappropriate gestures and other behavior described as eating crayons and spitting water as predictable behaviors.

**Exhibit F**

8.     His less restrictive corrective measures are identified as monitoring for safety, one step directions, neutral tone and affect. If ineffective, prompted with a "3-prompt approach" and reapplication of original direction and follow through with original instruction.

9.     **Plaintiff Gloria V.M.** is the adoptive mother of Thomas and Jordan V.M. and is their Guardian Ad Litem.

### DEFENDANTS

10. **Defendants Guiding Hands School Inc.**, and **Point Quest Inc**. 4900 Windplay Dr., El Dorado Hills, California, located on the same premises having allegedly bought out GHS are non-public schools (hereinafter NPS) incorporated under the laws of the State of California as for-profit corporations and approved by the State of California as institutions providing for children with disabilities.

11.    At all times relevant to this Complaint, GHS was a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant GHS was an independent contractor with Elk Grove Unified Schools, pursuant to a written contract to perform educational services for Plaintiffs MARQUES, Thomas and Jordan V.M.

12.    Presently, and at all times relevant to this Complaint, POINT QUEST is a business establishment within the meaning of the Unruh Civil Rights Act.  Defendant POINT QUEST is an independent contractor with Rocklin Unified Schools and Placer County SELPA, pursuant to a written contract to perform educational services for Plaintiff Jordan V.M.

13.    Presently, and at all times relevant to this **Complaint, Defendants Rocklin Unified Schools** and **Placer County SELPA** are business establishments within the meaning of the Unruh Civil Rights Act.

14.    **Defendant California Department of Education (CDE),** a department of the State of California, presently, was, and at all times relevant to this Complaint, responsible for inspecting and certifying Non-Public Schools such as GHS and POINT QUEST. It is a business establishment within the meaning of the Unruh Civil Rights Act.

- 3 -

**Exhibit F**

15.     **Defendant Handle with Care Behavior Management System, Inc.** Defendant, HWC was a corporation organized under the laws of the State of New York, and doing business in California, marketing a system of restraint and training California teachers to restrain special needs children in prone and other types of restraints.

16.     At all times herein mentioned, Bruce Chapman (hereinafter "CHAPMAN"), was the agent and employee, owner, president and founder of HWC, who developed a patented restraint system marketed through HWC to schools in California for use on "behaviorally challenged" children in California schools, including GHS, which lead to the injuries to the student plaintiffs.

17.     At all times herein mentioned, defendant, HWC was a corporation organized under the laws of the State of New York, and doing business in California, marketing a system of restraint and training California teachers to restrain special needs children in prone and other types of restraints.

## JURISDICTION AND VENUE

18.     Gloria, Thomas, and Jordan V.M. have complied with the Tort Claims filing against CDE, ROCKLIN UNIFIED SCHOOL DISTRICT and PLACER COUNTY SELPA on March 24 , 2019 for injuries and claims herein stated against said public entities. True and correct copies of said claims are attached as **Exhibit A**.

19.     Plaintiffs sue all Defendants in El Dorado County because all of the tortious acts occurred at 4900 Windplay Dr., El Dorado Hills, El Dorado County, California.

20.     Plaintiffs are informed and believe that each of the Local Educational Agency (LEA) and NPS Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and at all times acting and performing, or failing to act or perform, within the course and scope of each similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated,

- 4 -

**Exhibit F**

directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

**GHS EMPLOYEES:**

21.    At all times herein mentioned, as to Plaintiff MARQUES defendants Staranne Meyers (hereinafter "MEYERS") was the principal and member of the board of GHS, Cindy Keller (hereinafter "KELLER") was the executive director of GHS, Phyllis RAMSEY (hereinafter "RAMSEY") was an administrator for GHS and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, RAMSEY and DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault and batter Plaintiff MARQUES.

22.    At all times herein mentioned, as to Plaintiffs Thomas and Jordan V.M., defendants MEYERS was the principal and member of the board of GHS, KELLER was the executive director of GHS, RAMSEY was an administrator for GHS, Jennifer CHRISTENSEN was an administrator at GHS, NARAN was an administrator at GHS, and DOE defendants were officers, directors, and administrators of defendant GHS, all of whom have authority and control over GHS's programs, and facilities, including policies, practices, procedures, programs, activities, services, training, staff; and all of whom have direct responsibility for ensuring the safety and well-being of their students, and for ensuring compliance with state and federal laws. MEYERS, KELLER, CHRISTENSEN, RAMSEY, NARAN, Noel COLLIER (Special Education Teacher), and unknown DOE defendants allowed and encouraged staff at GHS to intentionally and unlawfully assault Plaintiffs Thomas and Jordan V.M.

23.    At all times herein mentioned, "Roland" was a driver for GHS and assisted on campus during the time Thomas V.M. was at GHS. "Roland" was also rehired as staff at Defendant Point Quest.

**Exhibit F**

24. At all times herein mentioned, there were two secretary/support staff working the "front desk" at GHS. One was known to Thomas V.M. only as "Nicole" and the other's name is unknown at this time. On information and belief, "Nicole" was rehired at Defendant Point Quest.

25. At all times herein mentioned, as to Plaintiff MARQUES defendants Delores ZOMBURY (hereinafter "ZOMBURY"), Vince ANDERSON (hereinafter "ANDERSON"), Ashley ROBB (hereinafter "ROBB"), Cary BRUCE (hereinafter "BRUCE"), Cory QUINCEY (hereinafter "CORY"), Bryna QUINCEY (Hereinafter "BRYNA"), David Chambers (hereinafter "CHAMBERS") Kera BRUCE (Hereinafter "BRUCE", Susan Jane BATTLE, and DOE defendants were employed as teachers, and aides at GHS, who intentionally and unlawfully assaulted MARQUES and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of GHS.

26. The names and capacities, whether individual, corporate, otherwise, sued herein as DOES 1-100, inclusive, are presently unknown, and Plaintiff will amend the Complaint to insert them when ascertained.

**POINT QUEST EMPLOYEES**

27. Bill Tollestrup, Interim Director of El Dorado Hills, Bill Weber, Director of El Dorado Hills, Nicole DOE, Jennifer DOE, Roland Doe, and DOE defendants were employed as administrators, teachers, and aides at POINT QUEST, who intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and control of the classroom, including policies, practices, procedures, facilities, and activities within the classroom.

28. At all times relevant to this Complaint, Defendant Noel COLLIER, Patricia DOE, David DOE, Amanda DOE, and Noelle DOE were employees of POINT QUEST and were either directly involved in restraining Plaintiff Jordan V.M. or were immediately

- 6 -

**Exhibit F**

present on the premises during the restraints and failed to intercede to protect the plaintiffs.

They are sued in their individual capacity and in their capacity as employees of POINT QUEST.

### ROCKLIN UNIFIED SCHOOL EMPLOYEES

29.     Kristain ROYER, Program Specialist, Beth DAVIDSON, Assistant Director of Special Education, and DOE defendants were employed as administrators at RUSD, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

### PLACER COUNTY SELPA EMPLOYEES

30.     Kristi Gregersen, Program Specialist, Troy TICKLE, Director, Placer County SELPA, and DOE defendants were employed as administrators at Placer County SELPA, who knew or should have known that POINT QUEST staff had intentionally and unlawfully assaulted Jordan V.M. and unlawfully inflicted corporal punishment upon him. They had authority and oversight control of the program at POINT QUEST school, including policies, practices, procedures, facilities, and activities within the classroom. They are sued in their individual capacity and in their capacity as employees of RUSD.

31.     Plaintiffs MARQUES, Thomas, and Jordan V.M. were placed at GHS and POINT QUEST by their respective school districts after representations were made to the minors' parents about both schools special skills, facilities and safe environment appropriate for their children. The placement was pursuant to each student's Individual Education Plan (IEP), as a result of their diagnosis as children with disabilities, because the school districts themselves determined they were unable to provide a Free Appropriate Public Education.

32.     Defendants GHS, POINT QUEST, ROCKLIN UNIFIED SCHOOLS AND PLACER COUNTY SELPA have failed to adequately supervise their employees that resulted in

- 7 -

**Exhibit F**

the foreseeable physical harm to Plaintiffs. Defendants had a statutory duty to ensure that staff who came into contact with Plaintiffs would provide an environment free of abuse and neglect.

33.    California law, including Cal Const, Art. I § 28, has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations necessary for their protection. Defendants also had a duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting intentionally or negligently.

34.    Defendants have violated their statutory duties to Plaintiff, including their supervisory duties created under California Education Code sections 44807 and 44808.

35.    California Penal Code section 11166 which required them to report any knowledge of a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect to the agency immediately or as soon as is practically possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up report thereof within 36 hours of receiving the information concerning the incident.

36.    Defendants have violated their statutory duties to Plaintiffs Thomas and Jordan V.M., including multiple violations of California Education Code sections 56521.1 and 56521.2 (and its predecessor legislation) that, in pertinent parts, suggest alternative interventions and/or prohibits the use of any interventions that:

1) cause physical pain; 2) simultaneously immobilize all four extremities, 3) apply an amount of force that exceeds that which is reasonable and necessary under the circumstances, or 4) subjects the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma.

37.    Defendants have violated their statutory duty under California Penal Code section 11165.4 which prohibits "unlawful corporal punishment or injury" against a child, defined as "any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."

- 8 -

**Exhibit F**

38.    Defendants GHS and POINT QUEST violated its statutory duty under California Education Code section 260 by failing to enact an adequate formal or informal policy to ensure that GHS and POINT QUEST provided a learning environment free from discrimination based on the characteristics provided in California Education Code section 220, specifically disability.

39.    GHS was closed in 2018 after the State of California revoked their license to operate following the death of student Max Benson who was subjected to a restraint that killed him.

40.    After GHS was closed it was, allegedly, sold to POINT QUEST, and Jordan V.M. then attended Defendant POINT QUEST.

41.    When POINT QUEST took over GHS facilities and educational duties, Gloria V.M. was assured by the Rocklin Unified School staff, Placer County SELPA, and POINT QUEST staff, expressly, by inference, or omission, that the previous policies and practices employed by GHS were, not only no longer employed, she was assured that the GHS employees were gone and would not be rehired at POINT QUEST.

42.    For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") -have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for their physical and emotional health.

43.    There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to abusive use of restraint systems, such as the Handle With Care system developed by Defendant Bruce Chapman. It is also well-known that restraints are disproportionately used against children with disabilities.

44.    Despite this knowledge, nonpublic schools like Defendants GHS and POINT QUEST and their respective staffs continued to use such restraints frequently, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or others, for extended periods of time, on students whose disabilities elevated the risk of using restraints, and with excessive force.

-9-

**Exhibit F**

45.     They could do so because the CDE, and the LEA Defendants abdicated their responsibilities to monitor and supervise GHS and POINT QUEST and ensure their compliance with state and federal laws prohibiting discrimination and the improper use of restraints.

46.     The CDE continued to certify GHS continues to currently certify POINT QUEST, and the LEA Defendants continued to contract with and place their students with disabilities in the respective schools.

47.     Plaintiff students with developmental and other disabilities whose local educational agencies placed them at GHS and POINT QUEST pursuant to their Individualized Education Plans ("IEP")

48.     Each Plaintiff Student attended GHS sometime between 2006 and 2018, where its administrators and staff subjected them to excessive and harmful restraints and other aggressive physical interventions in response to known behaviors associated with their disabilities, resulting in physical and emotional abuse and injury, and in the case of one other student, death.

49.     GHS was, and POINT QUEST is, a nonpublic school-as that term is defined in Cal. Ed. Code § 56034-which contracted with the LEA Defendants to provide special education services to public school students with disabilities in exchange for state and federal educational funding.

50.     As required by law, GHS and POINT QUEST entered into Master Contracts with the LEA's, as well as an Individual Services Agreement for each student placed there.

51.     Each of the Plaintiff Students' IEP's included a Behavioral Intervention Plan ("BIP") which described the student's known disability-related behaviors and the intervention strategies and positive behavioral supports educators should use to prevent or respond to those behaviors.

52.     Despite legal requirements (discussed below) and Defendants' knowledge of the dangers associated with restraints to students' physical and emotional health, GHS and POINT QUEST administrators and employees engaged in a policy and practice of using restraints as a substitute for the positive interventions detailed in the students' BIPs in

- 10 -

**Exhibit F**

response to predictable behavior that did not pose a clear and present danger of serious physical harm to the student or others. GHS and POINT QUEST used restraints against its students frequently, for periods of time that were longer than necessary, and with excessive force.

53.     These restraints-including prone restraints- in which the child is placed face down on the floor with one or more adults applying force from above to keep the child's body immobile-frequently lasted over an hour.

54.     Some students were restrained frequently, sometimes more than one time each day.

55.     The restraints and other aggressive physical interventions inflicted by GHS and POINT QUEST caused the Plaintiff Students physical and emotional injuries.

56.     GHS and POINT QUEST administrators were not only aware of the abuse, but encouraged it and were responsible for the school's policy and practice of using frequent, excessive, harmful and lengthy restraints as a substitute for positive behavioral interventions in response to students' predictable, disability-related behaviors.

57.     GHS  and POINT QUEST did not provide adequate training in positive behavioral interventions, instead relying on Defendant Bruce Chapman's patented restraint system, Handle With Care Behavioral Management Systems, Inc. which was associated with numerous abuses by educational professionals on students with behavioral challenges.

58.     GHS and POINT QUEST training in the HWC method ignored requirements of state and federal law and did not provide proper warnings regarding the risks associated with restraining students or safeguards for monitoring and responding to signs of distress.

59.     Moreover, GHS and POINT QUEST took significant measures to conceal its illegal use of restraints and child abuse from parents and the LEAs with which it contracted by failing to provide required reports to the parents and the State of California.

**Exhibit F**

60.     Prior to the childen's placement, GHS misrepresented orally, in enrollment documents, and in the children's IEP that the school focused on proactive, positive behavioral interventions and that corrective behavior would be "calm", "brief", and "respectful."

61.     The HWC Intervention Statement that parents had to sign as part of the enrollment packet emphasized positive intervention and "the 3-step prompt" which "entails a verbal request, followed by staff modeling and finally hand over hand with children who may have difficulty following directions . . . " It represented that a restraint would be used only if the child appeared to be "a physical danger to themselves or others around them".

62.     GHS used the HWC terminology in referring to the most dangerous restraint-a prone restraint-as a "neutral" restraint. *Id.* These misrepresentations were repeated in the students' BIPs developed as part of the IEP process and a part of the agreement between the parent/student, the LEA, and GHS.

63.     When a student was restrained, GHS frequently failed to complete a Behavioral Emergency Report ("BER"), place the BER in the student's file, send it to the LEA, or notify the student's parent, as required by law and GHS's Master Contracts with the LEAs. Nor did GHS administrators or staff report the regular, systemic child abuse they witnessed and participated in at the school, despite the requirement to do so as mandated reporters.

64.     GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.

65.     However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to place vulnerable students in its care. GHS would still be abusing its students were it not for the death of a 13-year-old student who died after he was held in a prone restraint for almost two hours on November 28, 2018.

- 12 -

**Exhibit F**

66.     Plaintiff Thomas V.M. was a disabled student, placed at GHS on August 6, 2018, because of his diagnosis of his disability. Plaintiff Jordan V.M. was a disabled student, placed at GHS on February 22, 2018, because of his diagnosis of disability. All plaintiffs, due to their disabilities, engaged in repetitive conduct that disrupted their educational experience and abilities.

67.     Because of the disruption that affected other students, they were frequently placed in such restraints, which included but was not limited to, the imposition of restraints that constituted physical child abuse, battery, and assault.

68.     Referring to these restraints as though they were normal and accepted ways of disciplining plaintiffs, Defendant administrators,   teachers and assisting staff, as individually identified below, preyed on plaintiffs because of their disability related conduct.

69.     These defendants assaulted and battered plaintiffs repeatedly rather than following the BIPs.

70.     The LEA administrators, by and through their agency with GHS  and POINT QUEST   administrators tasked unqualified and inadequately trained staff with supervising plaintiff students, who often failed to document and report incidents of abuse, and failed to take reasonable steps to prevent further abuse.

71.     Plaintiffs, like other students who were also subjected to such conduct, would attend class and when a student acted consistently with their predictable behaviors stated in their individual BIP and IEP (and the reason(s) why they were placed at GHS and POINT QUEST) or failed to follow the directions of the GHS  and POINT QUEST staff as individually described below, they would be subjected to painful restraints in full and open view of fellow students.

72.     Each plaintiff had specific conduct that was identified in their BIP, for which, each plaintiff had a set of less restrictive measures to be taken before a "hands on" physical intervention such as painful restraints would be exercised.

73.     Plaintiffs witnessed other students treated in the same way in their respective classes. The observation of such torturous conduct to other students and themselves

- 13 -

**Exhibit F**

caused Plaintiffs who were in their immediate presence to experience fear and anxiety such that they were terrorized in anticipation that they too might be hurt in the same way.

74.     As to MARQUES, the documented abuse occurred from as early as December 18, 2006, when Plaintiff MARQUES began attending GHS through March 19, 2008, when he was removed. For Thomas and Jordan V.M., it began when they first began to attend GHS on February 22, 2018, and lasted until they were removed on or about the end of December 2018 and officially, in January, 2019.

75.     Shortly after beginning to attend Defendant POINT QUEST, Thomas was assaulted, battered, and restrained in the same fashion as described below. He was removed on or about October 1, 2019 and officially October 22, 2019.

76.     No efforts were shown to protect plaintiffs from the continued abuse by the schools' administrations and, in fact, when complaints were made by plaintiff's respective parents, the administration of both schools backed their employees alleging the children were at fault and their employee's actions were necessary.

77.     Defendants GHS and POINT QUEST, and their individual staff members as particularly described below, carried out these series of abusive acts upon Plaintiffs and other students, terrorizing them throughout their time at the school generating Plaintiffs' deeply held fears of reoccurrence.

78.     The harmful effects of the abuse suffered by all Plaintiffs at the hands of the staff directly abusing him have been compounded by all the Defendants' (as individually named below) willful failure to adequately report, document, respond to, and prevent the abuse.

79.     Even after each of the plaintiffs' parents approached the defendants as described below, requesting information about the abuse that would explain the children's injuries, conduct at home, and their account of events, defendant administrators at the respective schools failed to provide any meaningful information regarding what transpired in their children's classroom, covering up their conduct by providing false accounts of the events.

- 14 -

**Exhibit F**

80.   Plaintiffs Thomas and Jordan V.M. are in another school in Washington State.

81.   The alleged acts and Plaintiffs' damages are such that proceeding through due process before the Office of Administrative Hearings would be both futile and irrelevant.

82.   Plaintiffs' injuries cannot be redressed under the IDEA's due process procedures because they were assaulted and are not seeking the types of remedies available under the IDEA, rather seeking remedies for physical and emotional damages resulting from being assaulted.

83.   In addition, Plaintiff MARQUES is an adult and outside of the educational system.

84.   The same is true for Plaintiffs Thomas and Jordan V.M. who are both outside the State of California in a private religious school.

85.   From records to be obtained by Plaintiffs, there were restraint incidents involving Plaintiffs and they expressly reserve their right to amend this Complaint to include additional facts and/or claims as discovery in this case proceeds.

### OPERATIVE FACTS

86.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

### AS TO PLAINTIFF MARQUES

87.   Over a one-and-one-half year period as specifically set forth below in each cause of action, Defendants ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS and DOE defendants repeatedly unlawfully assaulted Plaintiff MARQUES by grabbing him, pushing or otherwise forcing him to the floor and, in painful positions, pinning all four appendages for various periods of time, immobilizing him, including as punitive measures. All were either for an unnecessarily prolonged period of time or had failed to utilize the less restrictive measures set forth in his BIP for predictable behaviors related to his disability.

88.   MARQUES was a student at GHS from 2006 to 2008.  He was referred to GHS by Elk Grove School District employees.

- 15 -

**Exhibit F**

89.    MARQUES had both an Individual Education Plan (EIP) and a Behavioral Intervention Plan (BIP) at all relevant times herein.

90.    Defendants GHS, MEYERS, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS and DOE defendants failed to file Behavioral Emergency Reports or document injuries as required by law, so all of the dates of assaults all are unknown to MARQUES at the present time.

91.    Those that are identified occurred on Sept. 12, 2006, Dec. 18, 2006, April 16, 2007, April 23, 2007, September 4, 2007, September 5, 2007, October 31, 2007, March 19, 2008, set forth in greater detail below.

92.    On September 12, 2006, and 9:50 AM, guiding hands employees Kera Bruce and Ashley ROBB, put MARQUES in a restraint for 12 minutes because he failed to stand appropriately and when escorted from the line he was standing in, kicked a student and Bruce. He was restrained "per CPI". Both Dolores ZOMBURY and David Chapman participated in the restraint.

93.    On December 18, 2006, at 1:45 PM Ashley ROBB and Kera Bruce instituted an eight minute restraint after MARQUES had been found to have a toy belonging to another student. What he was told to return the toy he began to kick his desk and a filing cabinet. He was placed in a basket restraint.

94.    On April 16, 2007 at 9 AM, MARQUES was put in a restraint for five minutes by ZOMBURY, after he refused to sit down and began throwing pencils and calling children names.

95.    On April 17, 2007, at 10 AM, MARQUES was put in a restraint by Dolores ZOMBURY for five minutes after he was told to put a pointer down and had slapped it on the desk of another student. When he was directed to sit down he ran around the room and was restrained.

96.    On April 17, 2007, at 10:50 AM, MARQUES was put in a restraint for 30 minutes by Dolores ZOMBURY and subsequently by a teacher's aide known only as "Laure", when MARQUES refused to give back a protein bar and be escorted to his seat. He kicked the teacher and was taken to the "corner".

- 16 -

**Exhibit F**

97.     On April 23, 2007, at 8:35 AM, he was placed in a three minute restraint by ZOMBURY after another student had pushed him, rubbing "snot" on his jacket and in response he pushed that student down.

98.     On April 23, 2007 11:30 AM, MARQUES was put in a restraint when he began swearing and started to run towards another student after he disregarded a request by the instructor to put his head down on his desk. The staff involved were ZOMBURY and Chambers.

99.     On September 5, 2007, 2 PM, MARQUES was put in a restraint by instructor Vince Anderson, because he failed to follow directions and began yelling in the presence of his mother.

100.    On March 19, 2008, CORY, BRYNA, CHAMBERS, and DOE defendants restrained MARQUES, forcing him to the floor and containing him in a "basket hold."

101.    In this restraint, MARQUES was pushed to the ground and placed in a position for an extended period of time, while his arms were pulled behind his back. GHS staff sat at his back while he was in this position, increasing his pain and making it difficult for him to move.

102.    This incident arose when another child assaulted MARQUES with a rock and MARQUES defended himself.

103.    When assaulted by GHS staff on March 19, 2008, MARQUES suffered bruises to his chest, burns to his elbows, and severe soft tissue damage to his back and buttocks as a result of these restraints.

104.    MARQUES subsequently suffered panic attacks, night-terrors, startles, depression and self-loathing as a result of these restraints.

105.    MARQUES was abused on additional occasions while attending GHS.

106.    MARQUES will seek leave to allege these dates according to proof when furhter information becomes available through the discovery process.

107.    At all relevant times, MARQUES.'s behaviors were known and predictable and had previously been addressed in his Behavioral Intervention Plan.

- 17 -

**Exhibit F**

108.    The restraints imposed upon MARQUES, as herein alleged, constituted child abuse (Penal Code Section 273a), corporal punishment (Penal Code Section 273d) and battery (Penal Code Sec. 242), and torture (Penal Code Section 206) prohibited by California law.

**AS TO THOMAS V.M.**

109.    Thomas V.M. was restrained by GHS and POINT QUEST staff on many occasions the precise details are neither known to he nor his mother at this time, other than that described as follows.

110.    Thomas V.M. was restrained in some fashion on September 5, 2018, for forty (40) minutes by or in the presence of Defendant Noel COLLIER, who left a phone message for Gloria V.M. on that date informing her of the incident where he refused to participate in an art exercise and was restrained as a result of staff intervention.

111.    Thomas V.M. was restrained in some fashion on September 19, 2018, by or in the presence of Defendant Noel COLLIER.

112.    Thomas V.M. was restrained in some fashion on October 3, 2018, by or in the presence of Defendant Noel COLLIER, when he refused to cooperate with staff.

113.    Thomas V.M. was restrained in some fashion on October23, 2018, by or in the presence of Defendant Noel COLLIER and David Chambers, when he would not cooperate with staff and bit one on the leg.

114.    Thomas V.M. was restrained in some fashion on October18, 2018, by or in the presence of Defendant Noel COLLIER  when he would not cooperate with staff.

115.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 3, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in Yoga.

116.    Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 5, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would participate in his math lesson and threw a pencil and his book.

- 18 -

**Exhibit F**

117. Thomas V.M. was restrained in a HWC Neutral (prone) restraint on November 19, 2018, by or in the presence of Defendant Noelle Doe, when he would not cooperate with staff because he would not give up a ball nor participate in school work, threw his paper at Noelle DOW and tried to leave the classroom.

118. Thomas V.M. was restrained by a staff member named "Jennifer" when attending POINT QUEST and, as a result, his mother immediately withdrew him from the school.

119. Thomas V.M. knows that "Jennifer"was a previous staff member at GHS.

120. Thomas V.M. was repeatedly assaulted by "Roland" who was a driver for GHS and who had shoved Thomas, face first, into a wall on various occasions, one of which chipped one of Thomas's teeth.

121. While attending GHS, Thomas was repeatedly refused food and prevented from eating, despite his mother's frequent pleas that he be provided the lunch he was sent to school with or that was to have been provided by the GHS staff. Thomas, at all relevant times, was suffering from a thyroid disorder and provided medication that frequently made him hungry. Various unidentified staff, including Nicole Doe, had taken Thomas's lunch from him before he was finished eating, thereby increasing his discomfort and hunger throughout the day.

**AS TO JORDAN V.M.**

122. Jordan V.M. was restrained by GHS staff on many occasions the precise details are neither known to he nor his mother at this time, other than that described as follows:

123. Jordan V.M. was restrained in a restraint of some fashion on February 26, 2018, by or in the presence of Defendant Amanda Doe, when he would not cooperate on a bus trip home.

- 19 -

**Exhibit F**

124.    Jordan V.M. was restrained in a restraint of some fashion on October 10, 2018, by or in the presence of Defendant Noel COLLIER, when he was asked to do class work and threw a crayon.

125.    Jordan V.M. was restrained in a restraint of some fashion on October 9, 2018, by an unknown staff member, possibly "Dorian", for an unknown reason.

## FIRST CAUSE OF ACTION

### Violation of California Civil Code §§ 51, *et seq.*

AS TO PLAINTIFF MARQUES Against GHS;
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT; and DOES 1-100.

126.    Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

127.    Plaintiff MARQUES was a person with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  He had been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and was limited in the major life activities of learning.

128.    Plaintiffs THOMAS and JORDAN V.M. are  persons with disabilities as defined by Cal. Civ. Code § 51(e)(1) and Cal. Gov't Code §§ 12926 and 12926.1.  They had been diagnosed as Autistic.

129.    Defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT are businesses establishment covered by California Civil Code §51.

130.    GHS, POINT QUEST and their staffs subjected Plaintiffs to physical and emotional abuse in response to behavior that was a manifestation of Plaintiffs' disabilities as described above.

- 20 -

**Exhibit F**

131.    GHS and POINT QUEST discriminated against Plaintiffs in that they did not provide them with full and equal enjoyment of GHS' and POINT QUEST's goods, services, facilities, privileges, advantages, or accommodations.

132.    Plaintiffs were not provided with the services, facilities, privileges, advantages and accommodations of GHS and POINT QUEST on a basis equal to that afforded to individuals without disabilities.

133.    The discipline methods, behavior standards and criteria employed by GHS and POINT QUEST caused Plaintiff to be subjected to physical and emotional abuse as a result of his disabilities.

134.    GHS and POINT QUEST failed to make reasonable modifications to their educational and behavioral intervention methods and staff training that were necessary to afford students with disabilities such as Plaintiff equal access to GHS's and POINT QUEST's goods, services, facilities, privileges, advantages and accommodations.

135.    The actions and failures to act of GHS and POINT QUEST violated Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 121Defendant has committed additional violations of the Unruh Civil Rights Act in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. sections 12181, et seq. As such, Defendant's actions also constituted a violation of the Unruh Act under Cal. Civ. Code § 51(f).

136.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

137.    Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

138.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Cal. Civ. 51.7 Ralph Civil Rights Act**
AS TO PLAINTIFF MARQUES Against GHS and DOES 1-100;

- 21 -

**Exhibit F**

AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, and DOES 1-100

139.   Plaintiffs incorporate, by reference herein, all preceding paragraphs as though fully set forth herein.

140.   Defendants in doing the acts described above violated Plaintiffs' rights under the Ralph Civil Rights Act.

141.   Plaintiffs have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of any characteristic listed or defined in subdivision (b) or (e) of Section 51, because another person perceives them to have one or more of those characteristics.

142.   In committing the acts described above, all defendants have violated Plaintiffs' rights by subjecting them to violence and intimidation.

143.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

144.   Defendants are liable to Plaintiffs for each and every offense for actual damages and multiple damages of up to three times the actual damages incurred, but in no case less than $4000 per offense pursuant to California Civil Code section 52.

145.   Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

**For Interference with Exercise of Civil Rights in**
**Violation of California Civil Code Section 52.1**
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, and DOES 1-100

146.   Plaintiff incorporate, by reference herein, all preceding paragraphs , as though fully set forth herein.

147.   California Civil Code 52.1 provides that it is unlawful to interfere with the exercise

- 22 -

**Exhibit F**

or enjoyment of any rights under the Constitution and the laws of this state and the United States by attempted use of threats, intimidation or coercion.

148.    The California Constitution establishes the right to a free public education to all students on an equal basis.  Butt v. California, 4 Cal. 4th 668, 685 (1992).

149.    California Civil Code section 43 guarantees the right of every person to be free from bodily restraint or harm and personal insult.

150.    In doing the things herein alleged, Defendants intentionally interfered with and attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

151.    Defendants acted violently against Plaintiff, thereby preventing him from exercising his rights.

152.    Defendants' conduct caused Plaintiff to suffer physical and emotional harm.

153.    The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

154.    The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

155.    Defendants' GHS and POINT QUEST's employees, violated Plaintiffs' rights by using a physical restraint technique that impaired Plaintiffs' ability to breathe; placing Plaintiffs in a face down position with the pupil's hands held or restrained behind the pupil's back; and by using a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed a clear and present danger of serious physical harm to the pupil or others.

156.    Defendant employees of GHS and POINT QUEST acted with conscious disregard of Plaintiffs' rights and the fact that their conduct was certain to cause injury and/or humiliation to Plaintiffs. Plaintiffs are informed and believe that Defendant employees of GHS and POINT QUEST intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  Plaintiff is therefore entitled to recover punitive and exemplary damages.

- 23 -

**Exhibit F**

157.   Plaintiff is also entitled to actual and/or statutory damages, as well as reasonable attorneys' fees and costs as set by the Court.

**FOURTH CAUSE OF ACTION**
**Violation of California Education Code §§ 200, 201, 220, and 260 et seq.**
AS TO PLAINTIFF MARQUES Against GHS,
AS TO PLAINTIFFS THOMAS AND JORDAN V.M. Against GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, and DOES 1-100

158.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

159.   Plaintiffs are individuals with disabilities.

160.   At all times relevant to this complaint, Defendant GHS was an educational institution providing education to students from kindergarten through twelfth grade and receiving financial assistance from the State of California.

161.   Defendants discriminated against Plaintiff on the basis of their disability by subjecting them to physical and emotional abuse in response to disability-related behavior.

162.   The actions of the Defendants CDE, PLACER COUNTY SELPA, ROCKLIN UNIFIED SCHOOLS were the product of joint action between public entities and individual employees.

163.   The conduct of defendants GHS, POINTQUEST, CDE, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT, their employees and DOE defendants, as herein alleged, was a substantial factor in causing said harm to Plaintiff.

164.   As a proximate cause of the actions of Defendants herein, Plaintiff is entitled to damages in an amount according to proof and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
Assault and Battery Pursuant to California Penal Code Section 206
AS TO PLAINTIFFS
MARQUES, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN, CHAMBERS, ROBB, BRUCE, ZOMBURY, ANDERSON, CORY QUINCY, BYRNA QUINCY, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

- 24 -

**Exhibit F**

Thomas V.M. against defendants GHS, CHRISTENSEN, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT; DOES 1-100

165.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

166.   CHAMBERS, CHRISTENSEN, MEYERS, KELLER, RAMSEY, "JENNIFER" DOE, and DOE defendants , with the intent to cause cruel or extreme pain and suffering for the purpose of persuasion, or for a sadistic purpose, inflicted significant injury upon Plaintiffs by repeatedly assaulting Plaintiffs throwing them to the ground and causing bruises, contusions and lacerations.

167.   As a result, Plaintiffs suffered physical and psychological injuries.

168.   Defendants acted with the intent to cause injury and that action and intention was despicable, done with a willful and knowing disregard of the rights of Plaintiffs.

169.   Defendants acted knowingly and aware of the probable consequences of their conduct and deliberately failed to avoid these consequences, subjecting Plaintiffs to cruel and unjust hardship.

170.   Defendants' conduct, assaulting a disabled child is so vile, base, and contemptible that it would be looked down upon and despised by reasonable people.

171.   Defendants' conduct in intentionally assaulting and restraining Plaintiffs knowing of their disabilities was malicious and outrageous such that exemplary damages should be awarded.

172.   WHEREFORE, Plaintiffs pray for judgment for damages according to proof.

- 25 -

**Exhibit F**

**SIXTH CAUSE OF ACTION**
ASSAULT AND BATTERY
Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN,
COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David
CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR
MANAGEMENT SYSTEMS, INC;
Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN,
NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT
SYSTEMS, INC;
Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE,
GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe,
Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN
SCHOOL DISTRICT DOES 1-100

173.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

174.    In doing the things herein alleged, said defendants intended to cause, and did cause Plaintiffs Thomas and Jordan V.M. to suffer harmful or offensive contact.

175.    As a result of said conduct of said defendants, Plaintiffs Thomas and Jordan V.M., reasonably believed that they were about to be touched in a harmful or offensive manner, and in a manner that offended a reasonable sense of personal dignity.

176.    In doing the things herein alleged, said defendants threatened to touch Thomas and Jordan V.M. in a harmful or in an offensive manner.

177.    At all times herein mentioned, it reasonably appeared to MARQUEZ, Thomas and Jordan V.M. that said defendants were about to carry out the threat.

178.    At all times herein mentioned, Thomas and Jordan V.M. did not consent to the conduct of said defendants.

179.    Thomas and Jordan V.M. suffered harm, as herein alleged.

180.    The aforementioned conduct of said defendants was a substantial factor in causing Thomas and Jordan V.M. harm.The conduct of said defendants, caused Thomas and Jordan V.M. to be apprehensive that said defendants would subject Thomas and Jordan V.M. to further intentional invasions of their right to be free from

- 26 -

**Exhibit F**

harmful and offensive contact, and demonstrated that at all times material herein, said defendants had a present ability to subject Thomas and Jordan V.M. to an intentional offensive and harmful touching.

181.     Said defendants' unlawful conduct, as herein alleged, was a substantial factor in causing Thomas and Jordan V.M. to suffer physical and emotional injury, and future physical and emotional injury, all in an amount within the jurisdiction of the court according to proof at trial.

182.     At all relevant times, said defendants acted with conscious disregard of MARQUEZ, Thomas and Jordan V.M. rights, safety, physical well-being and feelings. Said defendants also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury and/or humiliation to Thomas and Jordan V.M. Said defendants intended to cause fear, physical injury and/or pain and suffering to Thomas and Jordan V.M.

183.     By virtue of the foregoing, the estate of Thomas and Jordan V.M. are entitled to recover punitive and exemplary damages from individual and non-public entity defendants according to proof at trial. Estate of Thomas and Jordan V.M.  make no claim for punitive damages against the named defendants.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Gloria V.M. against GHS,  RAMSEY, MYERS, KELLY, CHRISTENSEN, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

- 27 -

**Exhibit F**

EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN
SCHOOL DISTRICT;
DOES 1-100

184.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

185.    In doing the things herein alleged, the conduct of said defendants was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

186.    Said defendants inflicted actual injury and/or acted with reckless disregard of the probability that Plaintiffs Gloria, Thomas and Jordan V.M. would suffer emotional distress, knowing that the children who were restrained, including Gloria, Thomas and Jordan V.M., were present when the conduct occurred.

187.    The conduct of said defendants, as herein alleged, was a substantial factor in causing Gloria, Thomas and Jordan V.M., to suffer severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

188.    Said defendants knew or should have known that Thomas and Jordan V.M. did not need to be, for their safety or the safety of others, and did not want to be, physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

189.    Said defendants' knowing disregard for the safety of Thomas and Jordan V.M. and said defendants' deliberate failure to monitor and control their behavior towards exceptional needs students, such as Thomas and Jordan V.M. caused Thomas and Jordan V.M. to be repeatedly battered and assaulted by teachers and aides at GHS and POINT QUEST.

190.    Said defendants' conduct was extreme and outrageous.

191.    Said defendants acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that Gloria, Thomas and Jordan V.M. would suffer emotional distress.

- 28 -

**Exhibit F**

192.    The outrageous conduct of said defendants described herein was willful and malicious and was performed with conscious disregard for the rights, safety, physical well-being and feelings of the Gloria, Thomas and Jordan V.M. As a result, Gloria, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof.

### EIGHTH CAUSE OF ACTION

FALSE IMPRISONMENT CONSPIRACY TO COMMIT FALSE IMPRISONMENT
ASSERTED by
Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN,
COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David
CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR
MANAGEMENT SYSTEMS, INC;
Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN,
NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT
SYSTEMS, INC;
Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE,
GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe,
Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;
ROYER, DAVIDSON

193.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

194.    Said defendants, in concert with one another, did intentionally and unlawfully, and conspire to, exercise force, threat, implied threat of force, or duress, to restraint and confine Thomas and Jordan V.M. , and deprive them of their freedom of movement, when said defendants committed the acts described herein.

195.    Thomas and Jordan V.M. did not knowingly or voluntarily consent to said restraints.

196.    As a proximate cause of the restraints, Thomas and Jordan V.M. suffered actual physical and emotional harm, as herein alleged.

197.    That the conduct of said defendants, as herein alleged, was a substantial factor in causing harm to Thomas and Jordan V.M.

198.    The outrageous conduct of the said defendants was willful and wanton, and was

- 29 -

**Exhibit F**

performed with conscious disregard for the rights, safety, physical well-being and feelings of Thomas and Jordan V.M.

199.   As a result, Thomas and Jordan V.M. are entitled to punitive or exemplary damages from individual and non-public entity defendants in a sum according to proof at time of trial.

## NINTH CAUSE OF ACTION
## NEGLIGENCE

Gloria V.M. against GHS, RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

200.   Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

201.   Said defendants breached their duty towards Thomas and Jordan V.M. by:

a. Failure to develop and maintain effective procedures governing emergency interventions;

b. Failure to obtain proper training for use of behavioral emergency interventions

c. Failure to provide oversight on the use of restraints

d. Failure to develop protocols for use of restraints

- 30 -

**Exhibit F**

f. Failure to prohibit restraints on physically disabled children

g. Failure to prohibit prolonged restraints (anything over 15 minutes)

h. Failure to require that Thomas and Jordan V.M. be released from a restraint at the earliest possible moment.

i. Failure to prohibit the use of any restraint when contraindicated by Thomas and Jordan V.M. medical or psychological conditions, which were known to increase the risk of physical injury.

j. Failure to prohibit restraints that constrict the child's ability to breathe.

k. Failure to prohibit the use of multiple staff members in a restraint, which exponentially increases the risk of injury.

l. Failure to provide for the comfort of Thomas and Jordan V.M. while in prone restraint, including, but not limited to: offering Thomas and Jordan V.M. fluids, bathroom use, exercise, range of motion and periodic release of limbs.

m.     Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

n. Failure to require continuous, close supervision of a restraint by the HWC trainer or another staff member who is not involved in the restraint.

o. Failure to require immediate and accurate reporting on each restraint

p. Failure to conduct a prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

q. Failure to provide for:
      -primary preventative measures rather than restraint;
      -interventions that are less intrusive than restraints;
      -effective ways to de-escalate situations to avoid restraints; and
      -crisis intervention techniques that utilize alternatives to restraint.

**Exhibit F**

r. Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

s. Failure to teach students adaptive behaviors, especially involving autistic children who do not have effective ways of communicating and interacting with others.

t. Allowing use of physical restraints on children which:
- create an aversive environment counterproductive to facilitating learning;
- cause significant physical harm, serious, foreseeable long term psychological impairment.

u. Failure to provide oversight on the use of restraints to determine
- whether the intervention was necessary
- whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

v. Failed to document injuries caused by restraint and

w.     Failed to get medical attention for a child who was injured while in restraint.

202.     As a foreseeable result of the breach of said mandatory duties by said defendants, said school staff at GHS and POINT QUEST imposed numerous and prolonged prone restraints on Thomas and Jordan V.M. as hereinabove alleged, resulting in injuries to Thomas and Jordan V.M.

203.     Breach of said mandatory duties by said defendants was a substantial factor in causing injuries Thomas and Jordan V.M.

204.     At all times herein mentioned said defendants breached the general duties of due care of educational professionals toward Thomas and Jordan V.M. who were disabled students under their guidance and care.

- 32 -

**Exhibit F**

205.    At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints on special needs/disabled children, including Thomas and Jordan V.M. as a form of corporal punishment in violation of California law.

206.    At all times herein mentioned, said defendants willfully, knowingly, intentionally, maliciously, and routinely used or encouraged the use of prone and other restraints, known by said defendants to be dangerous, on disabled children, including on Thomas and Jordan V.M. with reckless disregard for the safety of said children.

207.    At all times herein mentioned, said defendants, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used, or encouraged the use of, prone and other restraints, to injure special needs/disabled children and to create a reign of terror within the educational environment, in place and instead of providing educational services for special needs/disabled children, for which they were hired.

208.    As a direct and foreseeable result of the negligence of said defendants learning of the death of Max Benson, plaintiffs and their own injuries Thomas and Jordan V.M. suffered physical and emotional injuries.

209.    The negligence of said defendants was a substantial factor in causing injury Thomas and Jordan V.M. to suffer physical and emotional injuries.

210.    By virtue of the willful and wanton, knowing, intentional, malicious acts of said defendants, and acts by said defendants that were done and acts done in reckless disregard for the safety and lives of Thomas and Jordan V.M., Thomas and Jordan V.M. are entitled to punitive damages against individual non-public entity defendants according to an award at the time of trial.

### TENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION

Gloria V.M. against GHS, RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

- 33 -

**Exhibit F**

<u>Thomas V.M.</u> against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

211.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein.

212.    Said defendants had a legal duty to exercise reasonable care in supervising special needs students in its respective charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care.

213.    Said defendants failed to exercise reasonable care in supervising Thomas and Jordan V.M. when they suffered the abuse as described herein.

214.    Said defendants breached their duties to Thomas and Jordan V.M. when they failed to supervise Thomas and Jordan V.M., its administrators and staff during the abuse, and failed to ensure that GHS and POINT QUEST administrators and staff were adequately trained and provided proper supervision.

215.    As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M. suffered injury, and are entitled to damages according to proof.

**ELEVENTH CAUSE OF ACTION**
**NEGLIGENCE PER SE**
<u>Gloria V.M.</u> against GHS,  RAMSEY, MYERS, KELLY, NARAN, POINT QUEST, RUSD, PLACER COUNTY SELPA,  TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER;

- 34 -

**Exhibit F**

<u>Thomas V.M.</u> against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against defendants GHS, Susan Jane BATTLE, CHRISTENSEN, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

<u>Jordan V.M.</u> against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; EDUSD, RUSD, ROYER, DAVIDSON, PLACER COUNTY SELPA AND ROCKLIN SCHOOL DISTRICT;

DOES 1-100

216.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though fully set forth herein

217.    In doing the things herein alleged, said defendants violated the mandatory duties toward  Thomas and Jordan V.M. as prescribed by state and federal law as referenced in each of the statutes as set forth here-in-above.

218.    Said violations were of the statutes specifically intended to protect the class of plaintiff and to prevent the injuries as those described herein.

219.    Said violations of criminal and civil law were a substantial factor in bringing about the harm alleged to Thomas and Jordan V.M. as set forth hereinabove.

220.    As a direct and proximate result of the actions of said defendants as alleged herein, Thomas and Jordan V.M.  suffered injury, and are entitled to damages according to proof.

**TWELFTH CAUSE OF ACTION**
**Tortious Breach of the Covenant**
**Of Good Faith and Fair Dealing**

Asserted by the Plaintiffs Gloria, Thomas and Jordan V.M. Against Defendants GHS, Meyers, Keller, Point Quest,Troy Tickle, Kristi Gregerson, Cara Bruce and Doe Defendants 1-100

221.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though

- 35 -

**Exhibit F**

fully set forth herein.

222.    Upon the respective enrollment of Thomas and Jordan V.M. entered into a written contract with GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants for the education of their children.

223.    At all times herein mentioned, Thomas and Jordan V.M. were intended third party beneficiaries to the afore-mentioned contracts entered into between their parents and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants.

224.    As a part of said contract, GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce and DOE defendants provided each of said parents, with a copy of GHS' and POINT QUEST's parent/teacher handbook in which GHS and POINT QUEST indicated that they had a system of positive behavior intervention and support.  The GHS handbook also indicated that defendant GHS would "customize" the system to support student outcomes and "interact with students in a way that promotes social proficiency."  The GHS handbook states that "social competence is a skill that requires direct teaching." .  The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

225.    As part of the contract between said parties and defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, not to discriminate in any activity against any student based on physical or mental disability and further promised to prohibit intimidation or harassment by any employee of defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce,  and DOE defendants against any student based on physical or mental disability.

226.    As part of said contract, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, to use Positive Behavior Interventions and Supports to correct inappropriate behavior and to interact with students in a way which promotes social proficiency and academic success, using as examples "positive language and

- 36 -

**Exhibit F**

redirecting behavior using a lesson."

227.  As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that adult behavior when correcting a child would be "calm, consistent, brief, immediate and respectful," and that their behavior intervention approach involved a three step prompt "verbal, modeling, hand-over-hand."

228.  As part of said contract defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants promised to plaintiffs, and each of them, that restraints would be imposed only if the child was a danger to himself or others so as to de-escalate and re-integrate into classroom activities; the restraints and their possible consequences for injury and death were not truthfully or accurately described to plaintiffs, and each of them, by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants; and the most dangerous type of restraint, a prone restraint, was described by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants to each of Thomas and Jordan V.M's parents in innocuous language as a "neutral" restraint.

229.  Plaintiffs, and each of them, did all of the significant things that the contract required them to do.

230.  At all times herein mentioned, all of the conditions required for defendant GHS, MEYERS, KELLER, POINT QUEST,Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants had occurred.

231.  Defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants unfairly interfered with the rights of plaintiffs, and each of them, to receive the benefits of the contract by engaging in the conduct as herein alleged.

232.  Defendant GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants' interference with the afore-mentioned benefits of the contract was done in bad faith in that defendants routinely imposed

- 37 -

**Exhibit F**

corporal punishment, in addition to dangerous prone and other restraints, on special needs/disabled children under their care.

233.    By virtue of the bad faith interference with the contract benefits by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, plaintiffs MARQUES, Thomas and Jordan V.M., suffered severe emotional distress.

234.    By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights are entitled to medical and therapeutic costs.

235.    By virtue of the bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants with said plaintiffs' contractual rights, Gloria V.M. and the beneficiaries of said contract, Thomas and Jordan V.M., have suffered severe emotional and physical distress at having the respective children injured by being placed in prone and other restraints because of their autism and other disabilities.

236.    By virtue of said  bad faith interference with contractual benefits,  all plaintiffs suffered physical and emotional injuries, and future general and special damages as herein alleged.

237.    The bad faith interference by defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants was a substantial factor in causing each of the afore-mentioned injuries to plaintiffs, and each of them.

238.    In doing the things herein alleged, defendants GHS, MEYERS, KELLER, POINT QUEST, Troy Tickle, Kristi Gregerson, Cara Bruce, and DOE defendants acted recklessly and with conscious disregard for the rights of plaintiffs, and each of them, willfully and maliciously exceeding the bounds of all behavior in a civilized behavior, brutalizing special needs/disabled children who had been entrusted to their care by their parents so as to receive an education that would allow their children to grow into well adjusted, well-functioning adults.  As a consequence, plaintiffs, and each of them,

- 38 -

**Exhibit F**

are entitled to punitive damages.

### THIRTEENTH CAUSE OF ACTION

### FRAUD

Asserted by Gloria V.M. against GHS, POINT QUEST, PLACER COUNTY SELPA
and ROCKLIN UNIFIED SCHOOLS; TICKLE, GREGERSON, BRUCE, RAMSEY,
MYERS, KELLY, NARAN,TOLLESTRUP, WEBBER, ROYER, DAVIDSON

239.    Plaintiffs incorporate, by reference herein, all preceding paragraphs, as though
fully set forth herein.

240.    On or about the date of enrolling their respective children in defendant GHS,
defendants, GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants,
represented to Gloria V.M. that said defendants would not to discriminate in any activity
against any student at GHS based on physical or mental disability under Title IX,
Education Code section 106.8(a)(d) and 106.9.8(a); that they prohibited intimidation or
harassment by any employee of defendants GHS and POINT QUEST against any
student based on physical or mental disability; that said defendants and their
employees would use Positive Behavior Interventions and Supports to correct
inappropriate behavior and to interact with students in a way which promotes social
proficiency and academic success, including using "positive language and redirecting
behavior using a lesson"; that behavior by GHS' staff when correcting a child would be
"calm, consistent, brief, immediate and respectful,"; that GHS and POINT QUEST
behavior intervention approaches involved a three step prompt "verbal, modeling, hand-
over-hand";  and that restraints would be imposed only if the child was a danger to
himself or others so as to de-escalate and re-integrate into classroom activities.

241.    On or about the dates of the respective enrollment of Thomas and Jordan V.M.,
at GHS and POINT QUEST, PLACER and ROCKLIN UNIFIED SCHOOLS and their
employees represented to Gloria V.M that they were required to sign a form allowing
defendants GHS, MEYERS, KELLER, POINT QUEST, and DOE defendants, to impose
restraints on said plaintiffs' respective children, with the implied threat that if they did
not sign the form their respective children would not be enrolled at GHS, which was the

- 39 -

**Exhibit F**

only school available to educate said children, and therefore, the parents would be in violation of California's mandatory education law.

242.    That the afore-mentioned representations of defendants, were false, and Gloria V.M. learned that they were false on or after November 29, 2018, upon the death of MAX, when they discovered that they did not have to allow or consent to the use of restraints against their disabled children.

243.    Said defendants knew that said representations were false when they made them, and/or said defendants made the representations recklessly and without regard for the truth of said representations.

244.    Said defendants intended that GLORIA V.M.  rely on said representations.

245.    GLORIA V.M.  reasonably relied on said representations, and enrolled their respective children at defendant GHS to receive an education.

246.    GLORIA V.M.  were harmed by said intentional representations, in that each of said plaintiffs suffered severe emotional distress upon seeing their respective child injured at the hands of GHS and its staff after being placed in prone and other types of restraints for known behaviors related to the child's special needs and disability, and which behaviors did not present a clear and present danger to himself or others; and further plaintiffs, Thomas and Jordan V.M. suffered severe emotional distress when MAX was injured and killed after he had a behavioral outburst as a result of being isolated from the rest of the class with no staff member near him to keep him calm.

247.    GLORIA V.M.  reliance on said representations was a substantial factor in causing the severe emotional distress of said plaintiffs.

248.    At all relevant times, said defendants acted with conscious disregard of the rights and feelings of GLORIA V.M. , and acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause severe emotional distress to said plaintiffs.  By virtue of the foregoing, said  plaintiffs are entitled to recover punitive and exemplary damages from non-public entity defendants according to proof at the time of trial.

**FOURTEENTH CAUSE OF ACTION**

- 40 -

**Exhibit F**

**Title II of the Americans with Disabilities Act of 1990,
42 U.S.C. Sec's 12101 et seq.**

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

249. Plaintiffs incorporate by reference all preceding paragraphs.

250. Title II of the ADA prohibits public entities from denying persons with

disabilities the benefits of its programs, services or activities. 28 U.S.C. § 12132.

251. Defendants CDE,Rocklin Unified Schools, and Placer County SELPA are

public entities.

252. Thomas, V.M. and Jordan V.M. were at all relevant times students with

disabilities who had been placed at GHS via their IEPs.

253. The ADA is violated not only by outright discrimination but also when a

public entity engages in "forms of discrimination which deny disabled persons public

services disproportionately due to their disability." Crowder v. Kitagawa, 81 F. 3d

1480, 1483 (9th Cir. 1996); see also, Mark H. v. Lemahieu, 513 F.3d 922, 937 (9th

Cir. 2008). The ADA prohibits governmental agencies from denying persons with

disabilities from "the benefits" of their programs. Mark H., 513 F.3d at 937. The

ADA requires more than just some access to governmental services; it requires

"meaningful access". Id.

254. A public entity, in providing any aid, benefit, or service, may not, directly or

through contractual, licensing, or other arrangements, on the basis of disability:

   a. Afford a qualified individual with a disability an opportunity to
      participate in or benefit from the aid, benefit, or service that is not
      equal to that afforded others;

   b. Provide a qualified individual with a disability with an aid, benefit, or
      service that is not as effective in affording equal opportunity to obtain
      the same result, to gain the same benefit, or to reach the same level
      of achievement as that provided to others;

   c. Aid or perpetuate discrimination against a qualified individual
      with a disability by providing significant assistance to an
      agency, organization, or person that discriminates on the
      basis of disability in providing any aid, benefit, or service to
      beneficiaries of the  public entity's program;

- 41 -

**Exhibit F**

d.     Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

28 C.F.R. § 35.130(b)(1)(ii)(iii)(v) and (vii).

255.     A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration-

a.     That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

b.     That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

c.     That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

28 C.F.R. § 35.130(b)(3).

256.     A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(6).

257.     A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

258.     A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

259.     The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities. Through GHS:

a.     The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that were not equal to those provided to students without disabilities;

- 42 -

**Exhibit F**

b.      The LEA Defendants provided the Plaintiff Students with educational aid, benefits and services that did not afford equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to LEA students without disabilities;

c.      The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans;

d.      The LEA Defendants limited the Plaintiff Students from enjoying their right to a free public education in a safe placement, free from discrimination or abuse; and

e.      The LEA Defendants used administrative methods-specifically the policies and practices of GHS regarding behavioral interventions-that subjected Plaintiff Students to disability discrimination and defeated or substantially impaired the objective of providing a free public education to the Plaintiff Students.

260.    Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement.  The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement.  Nor did it acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students.  As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

- 43 -

**Exhibit F**

261.    The LEA Defendants failed to make reasonable modifications to their

program of providing special education services to children within the LEA, such that

LEA students with disabilities would not be subject to discrimination and abuse in

their educational placements.  These modifications-meaningful investigations and

evaluations of the NPS prior to placing an LEA student there and forceful oversight,

investigation, and measures to ensure compliance with state and federal laws during

the placement, including site visits and regular review of school and student records

and BERs-would not have constituted a fundamental alteration in the LEAs'

programs of providing educational services to their students.

262.    GHS's use of restraints was so excessive in frequency, duration, force and

purpose that any educator or monitoring official who personally observed the

program for more than an hour would realize that the school and its staff had

exceeded the legal bounds for emergency interventions and were physically abusing

their students.  However, the CDE and the LEAs ignored their legal duties to

supervise and monitor the program and continued to re-certify GHS and place and

leave vulnerable students in the school's care.

263.    The LEA Defendants were deliberately indifferent to disability discrimination

and abuse of which they knew or should have known had they taken seriously their

duties to investigate and evaluate GHS prior to placing LEA students there; to

supervise, monitor, investigate, and ensure the legal compliance of GHS during the

placement; and to remove LEA students when it became clear that GHS was not a

safe placement and was subjecting the students to physical and emotional abuse

and discriminating against them on the basis of their disabilities.

264.    Defendant CDE knew or should have known that:  students with disabilities at

nonpublic schools-including GHS-were being restrained frequently, for excessive

periods of time, with excessive force, and in response to predictable,

disability-related behavior that did not constitute a clear and present danger to the

students' or others' safety; the types of restraints being used against children with

disabilities were dangerous and have resulted in serious injury to and death of

- 44 -

**Exhibit F**

students with disabilities in response to behavior that was known to be a

manifestation of the students' disabilities; that the particular disabilities of the

children against whom these restraints were used made the restraints even more

dangerous; and that the restraints were not only ineffective and contrary to the

students' BIPs, but more often than not aggravated the students' behavioral

problems.

265.   Defendant CDE discriminated against Plaintiffs on the basis of their

disabilities by:

     a.   Abdicating its duties to supervise, monitor, investigate, train, and ensure legal compliance of nonpublic schools, including GHS, with laws designed to protect students with disabilities from discrimination and abuse;

     b.   Failing to take even minimal measures to ensure statewide compliance with state and federal laws within nonpublic schools, including GHS;

     c.   Administering its licensing program of certifying, monitoring, investigating and taking corrective action against nonpublic schools which provide educational services to children with disabilities in a discriminatory, cursory, and indifferent manner;

     d.   Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, investigation, and legal compliance of nonpublic schools in light of repeated notifications from the U.S. Department of Education and other sources regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes; and

     e.   Completely abandoning its duty to monitor and supervise the use of emergency behavioral interventions in nonpublic schools under Cal. Ed. Code § 56521(b).

266.   The CDE knew and was deliberately indifferent to the fact that children with

disabilities were being restrained at far greater rates than children without disabilities

and that the rates of restraint use were significantly higher at "nonpublic" schools

such as GHS than at public schools.  It took no action to strengthen its oversight and

monitoring of nonpublic schools or laws restricting the use of physical interventions.

The CDE knew and was deliberately indifferent to allegations that children with

disabilities being improperly restrained at GHS and failed to conduct an emergency

- 45 -

**Exhibit F**

site visit when they had a substantial reason to believe that there was an immediate danger to the health, safety and welfare of students at GHS.  The CDE did not conduct a real investigation or visit the school until after GHS staff killed a student by restraining him.

267.    Defendants' actions and failures to act were a substantial factor in causing physical and emotional injuries to the Plaintiff Students as outlined above.

268.    Plaintiffs seek compensatory damages and attorneys' fees and costs.

## FIFTEENTH CLAIM FOR RELIEF
## Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

Thomas, V.M. and Jordan V.M. vs CDE,
Rocklin Unified Schools, and Placer County SELPA

269.    Plaintiffs incorporate by reference all preceding paragraphs

270.    Section 504 prohibits entities that receive federal financial assistance from denying persons with disabilities the benefits of their programs, services or activities or otherwise discriminate against them on the basis of their disabilities.  29 U.S.C. § 794; 34 C.F.R. pt. 104.

271.    Thomas V.M. and Jordan V.M. were at all relevant times students with disabilities who had been placed at GHS by the LEAs in which they resided via their IEPs.

272.    The CDE and the LEA Defendants receive federal financial assistance to provide special education services to children with disabilities in California.  20 U.S.C. §§ 1411-1413.

273.    Defendant GHS was a "nonpublic school" that contracted with the LEA Defendants to provide educational services to students with disabilities, including the Plaintiff Students, on behalf of the LEA Defendants in exchange for the state and federal financial assistance provided to the LEA Defendants to perform those services. Cal. Ed. Code § 56365.  Section 504 therefore applies to GHS.  34 C.F.R. § 104.2 ("This part applies to each recipient of Federal financial assistance from the Department of Education and to the program or activity that receives such assistance.").

- 46 -

**Exhibit F**

274.    Section 504 prohibits recipients of federal financial assistance from directly or through contractual, licensing, or other arrangements, on the basis of disability:

a.    Denying a qualified person with a disability the opportunity to participate in or benefit from the aid, benefit or service;

b.    Affording a qualified person with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

c.    Providing a qualified person with a disability with an aid, benefit, or service that is not as effective as that provided to others;

d.    Aiding or perpetuating discrimination against a qualified person with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to the beneficiaries of the recipients' program or activity;

e.    Otherwise limiting a qualified person with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

C.F.R. 104.4(b)(1)(i)(ii)(iii)(v) and (vii).

275.    Section 504 prohibits recipients of federal financial assistance from directly or through contractual or other arrangements, utilizing criteria or methods of administration:

a.    That have the effect of subjecting persons with disabilities to discrimination on the basis of their disabilities;

b.    that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to persons with disabilities; or

c.    That perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

C.F.R. § 104.4(b)(4).

276.    GHS engaged in deliberate discrimination against the Plaintiff Students on the basis of their disabilities.  GHS and its staff subjected the Plaintiff Students to illegal, excessive and harmful restraints in response to known, disability-related behaviors that did not constitute a clear and present danger to the safety of the students or others and that could have been addressed by less restrictive measures, including

- 47 -

**Exhibit F**

those outlined in the students' BIPs. GHS discriminated against the Plaintiff Students by:

    a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

    b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

    c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

    d.    Administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

277.    The LEA Defendants discriminated against the Plaintiff Students through their contractual arrangements with GHS to provide education services to LEA students with disabilities by:

    a.    Denying them the opportunity to participate in educational services free from physical and emotional abuse;

    b.    Providing them educational services that were not equal to or as effective as those afforded to children without disabilities;

    c.    Preventing students with disabilities from enjoying their rights to receive a free, public education and the benefits that come with it in an environment free from physical and emotional abuse; and

    d.    Using administration methods, particularly those regarding behavioral interventions-that subjected students to disability discrimination and that defeated and/or substantially impaired the accomplishment of the students' educational objectives.

278.    The LEA Defendants aided and perpetuated disability discrimination against the Plaintiff Students by providing significant state and federal financial assistance to GHS, which discriminated against LEA students on the basis of their disabilities by subjecting them to repeated physical and emotional abuse in response to predictable, disability-related behavior which did not constitute a clear and present danger to the safety of the students or others and which could have been addressed by less restrictive measures, including those outlined in the students' behavioral intervention plans.

- 48 -

**Exhibit F**

279.   Moreover, the LEA Defendants directly discriminated against the Plaintiff Students by administering their public education program and local plans in a manner that resulted in placing and keeping students with disabilities in an unsafe, abusive educational placement.  The LEA Defendants did not sufficiently-if at all-investigate, monitor, or supervise the placement.  Nor did they acknowledge or direct GHS to correct its known violations of state and federal law against the Plaintiff Students.  As a result, the Plaintiff Students were not afforded education services equal to those afforded to other students and were subject to disability discrimination and repeated physical and emotional abuse.

280.   GHS's use of restraints was so excessive in frequency, duration, force and purpose that any educator or monitoring official who personally observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were physically abusing their students.  However, the CDE and the LEAs ignored their legal duties to supervise and monitor the program and continued to re-certify GHS and place and leave vulnerable students in the school's care.

281.   The LEA Defendants were deliberately indifferent to disability discrimination and abuse of which they knew or should have known had they taken seriously their duties to investigate and evaluate GHS prior to placing LEA students there; to supervise, monitor, investigate, and ensure the legal compliance of GHS during the placement; and to remove LEA students when it became clear that GHS was not a safe placement and was subjecting the students to physical and emotional abuse and discriminating against them on the basis of their disabilities.

282.   Defendant CDE knew or should have known that:  students with disabilities at nonpublic schools-including GHS-were being restrained frequently, for excessive periods of time, with excessive force, and in response to predictable, disability-related behavior that did not constitute a clear and present danger to the students' or others' safety; the types of restraints being used against children with disabilities were dangerous and have resulted in serious injury to and death of

- 49 -

**Exhibit F**

students with disabilities in response to behavior that was known to be a manifestation of the students' disabilities; that the particular disabilities of the children against whom these restraints were used made the restraints even more dangerous; and that the restraints were not only ineffective and contrary to the students' BIPs, but more often than not aggravated the students' behavioral problems.

283.   Defendant CDE discriminated against Plaintiffs on the basis of their disabilities by:

a.   Abdicating its monitoring, investigation and compliance duties with regard to nonpublic schools, including GHS;

b.   Failing to take even minimal measures to ensure statewide compliance with state and federal laws within nonpublic schools, including GHS;

c.   Administering its licensing program of certifying, monitoring, investigating and taking corrective action against nonpublic schools which provide educational services to children with disabilities in a discriminatory, cursory, and indifferent manner;

d.   Failing to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, investigation, and compliance of nonpublic schools in light of repeated notifications from the U.S. Department of Education regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes; and

e.   Completely abandoning its duty to monitor and supervise the use of emergency behavioral interventions in nonpublic schools under Cal. Ed. Code § 56521(b).

284.   The CDE knew and was deliberately indifferent to the fact that children with disabilities were being restrained at far greater rates than children without disabilities and that the rates of restraint use were significantly higher at "nonpublic" schools such as GHS than at public schools.  It took no action to strengthen its oversight and monitoring of nonpublic schools or laws restricting the use of physical interventions.  The CDE knew and was deliberately indifferent to allegations that children with disabilities were being improperly restrained at GHS and failed to conduct an emergency site visit when they had a substantial reason to believe that there was an immediate danger to the health, safety and welfare of students at GHS.  The CDE

- 50 -

**Exhibit F**

did not conduct a real investigation or visit the school until after GHS staff killed a student by restraining him.

285.    Defendants actions and failures to act were a substantial factor in causing physical and emotional injuries to the Plaintiff Students as outlined above.

286.    Plaintiffs seek compensatory damages and attorneys' fees and costs.

## SIXTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution

MARQUES, against GHS, KELLER, MYERS, RAMSEY, CHRISTENSEN, CHAMBERS, BRUCE, ZOMBURY, ANDERSON,  CORY QUINCY, BYRNA QUINCY, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Thomas V.M. against defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against defendants GHS, Susan Jane BATTLE, CHRISTENSON, NARAN, Noel COLLIER, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

Jordan V.M. against POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC;

DOES 1-100.

287.    Plaintiffs incorporate by reference all preceding paragraphs.

288.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, used excessive force against Marques, Thomas, V.M. and Jordan V.M. when they restrained them in response to predictable, disability-related behavior that did not constitute a clear and present danger to Marques, Thomas, V.M. and Jordan V.M. 's or others' safety and that could have been addressed by less restrictive measures, including those outlined in their BIPs.  Defendants' use of force was objectively unreasonable in light of

- 51 -

**Exhibit F**

Marques, Thomas, V.M. and Jordan V.M. 's behavior and California law restricting the use of physical interventions. Defendants' use of restraints was also unreasonable in their frequency, duration, pressure and restrictions applied, lack of monitoring of Marques, Thomas, V.M. and Jordan V.M.  health condition, and the pain and injuries caused to Marques, Thomas, V.M. and Jordan V.M.

289.     Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, violated the Plaintiff Students' Fourth Amendment rights when they instituted and maintained a policy and practice at GHS of restraining students in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

290.     Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE, HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, were acting under color of state law when they instituted and practiced a policy of restraining students, including the Plaintiff Students, in response to predictable, disability-related behavior that did not constitute a clear and present threat to the students' or others' safety and that could have been addressed by less restrictive interventions, such as those outlined in students' BIPs.

291.     Defendants GHS and POINT QUEST were performing a public function that the LEA Defendants were legally required to provide and for which they were receiving state and federal funds-that of providing free educational services, including special education, to the Plaintiff Students.  If an LEA does not have an

**Exhibit F**

appropriate special education placement within its district, it may place a student in a nonpublic school. Cal. Ed. Code § 56365. In turn, the student "will be deemed to be enrolled in public schools" for the purpose of state and federal funding. Cal. Ed. Code § 56365(b). However, the LEAs are to monitor and supervise the placement and transition the student back to the public schools if the NPS is no longer appropriate to meet the student's needs. Cal. Ed. Code § 56366(a)(2)(B). The LEA continues to be responsible for the child's placement and special education needs and must participate in their IEP meetings. 20 U.S.C. § 1414(d)(1)(B)(iv).

292.    The Plaintiff Students were placed and kept at GHS by the LEA Defendants pursuant to their IEPs. GHS had a Master Contract with each of the Defendant LEAs to provide education services to the Plaintiff Students.

293.    GHS and POINT QUEST sent BERs to the LEA Defendants demonstrating the excessive and illegal nature of the restraints, but this information was filed away and ignored. The IEP teams, in which the LEA Defendants participated, did not review and modify students' BIPs when it was clear they were ineffective or not being followed. Despite knowing that their students were being illegally restrained by GHS staff, the LEA Defendants left the Plaintiff Students at the school and did not take any action to stop the restraints. Because they were unable and unwilling to provide the educational services themselves, the LEA Defendants ignored and thereby allowed the violations of Plaintiffs' constitutional rights, knowingly accepting the benefits of GHS's illegal behavior.

294.    At all times relevant to the complaint, the individual GHS and POINT QUEST Defendants were acting in the performance of their official duties to provide educational services, including special education services, to the Plaintiff Students pursuant to state and federal law and GHS's contract with the LEA Defendants.

295.    The GHS and POINT QUEST Defendants knowingly deprived the Plaintiff Students of their Fourth Amendment rights to be free from excessive force.

296.    Defendants GHS, RAMSEY, MYERS, KELLY, NARAN, COLLIER, ROLAND DOE, NICOLE DOE, CHRISTENSEN, David CHAMBERS, Susan Jane BATTLE,

- 53 -

**Exhibit F**

HANDLE WITH CARE BEHAVIOR MANAGEMENT SYSTEMS, INC; POINT QUEST, TOLLESTRUP, BRUCE, TICKLE, GREGERSON, WEBER, Patricia Doe, David Doe, Amanda Doe, Noelle Doe, Jennifer Doe, , deprived Plaintiffs Thomas and Jordan V.P. of their Fourth Amendment rights to be free from excessive force. As administrators of the PLACER COUNTY SELPA Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON administrators for ROCKLIN UNIFIED SCHOOLS, were responsible for overseeing the Plan's implementation, which included: 1) coordinating with school districts to ensure that all special education students in the Plan area have equal access to the full continuum of programs and services;   2) working with the school districts to identify unmet student needs and resources to meet those needs; 3) receiving, distributing, and monitoring the use of special education funding; 4) entering into Master Contracts with nonpublic schools, reviewing and monitoring those contracts, issuing and monitoring the assurances for those contracts, and maintaining updated contracts; and 5) submitting for approval to the Superintendents' Council policies and procedures governing regional and District-operated programs, including nonpublic schools. As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON adminstrators for ROCKLIN UNIFIED SCHOOLS had a duty to monitor GHS as a nonpublic school with which it had a Master Contract to provide services for students in the Plan area.  They also had a duty to monitor the use of special education funding and ensure that it was not going to programs that used behavioral interventions that violated state or federal law.  Cal. Ed. Code §§ 56521.2, 56523(d).

297.      GHS, MEYER, KELLER, RAMSEY, CHRISTENSEN, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHAMBERS, BRUCE,  and DOE defendants deprived Plaintiff Marques of his Fourth Amendment rights to be free from excessive force.

- 54 -

**Exhibit F**

298.    Despite widespread knowledge within the educational community about the disproportionate use of excessive, illegal and dangerous restraints on children with disabilities and in nonpublic schools, as administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to the Fourth Amendment rights of students in the YOLO SELPA plan area to be free from excessive force.  They maintained a policy and practice within YCOE and YOLO SELPA of ignoring their duties to monitor GHS and ensure that it was complying with state and federal laws prohibiting discrimination and restricting the use of physical behavior interventions.

299.    From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates.  As administrators of the PLACER COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS were deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements.   Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON failed to supervise and train staff to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOL students to ensure that they were not being subjected to excessive force.

300.    At all times relevant to the complaint,  Kristi GREGERSEN, Troy TICKLE, and Defendants  Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties as administrators for public entities, PLACER COUNTY SELPA and ROCKLIN UNIFIED SCHOOLS.

- 55 -

**Exhibit F**

301.    Kristi GREGERSEN, Troy TICKLE, and Defendants Kristain ROYER, Beth DAVIDSON 's actions and failures to act were a substantial factor in causing Thomas and Jordan V.M.'s physical and emotional pain and suffering.

302.    Defendants and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS

303.    Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS deprived Jordan V.M. of their Fourth Amendment rights to be free from excessive force. RUSD and Defendants Kristain ROYER, Beth DAVIDSON, administrators for ROCKLIN UNIFIED SCHOOLS wer responsible for the coordination of special education services and programs within the RUSD and the implementation of the PLACER COUNTY SELPA plan. This included assuring that the District's programs-including any nonpublic school in which the District has placed a special education student-did not discriminate against children on the basis of disability and followed state and federal education laws, including those prohibiting the use of excessive force against students. DAVIDSON was the direct supervisor of Defendant ROYER , the RUSD Program Specialist assigned to Jordan V.M.. ROYER was responsible for developing Jordan's IEP, ensuring that Jordan's educational placement at POINT QUEST was appropriate, monitoring the delivery of services to Jordan, and ensuring that the program in which Jordan had been placed complied with state and federal laws, including those related to the use of behavioral interventions and use of physical force. ROYER was also responsible for coordinating and monitoring the implementation of educational programs and services at nonpublic schools at which RUSD students had been placed.

304.    Throughout Jordan's's placement at POINT QUEST, ROYER and DAVIDSON received information and documents demonstrating that POINT QUEST was subjecting Jordan to excessive force. Specifically, POINT QUEST staff was placing Jordan in illegal restraints POINT QUEST in response to predictable, disability-related behaviors which did not pose a clear and present

**Exhibit F**

danger to the safety of the student or others and could have been addressed by less restrictive interventions.  This information included, but was not limited to, Behavior Emergency Reports, information provided by POINT QUEST staff at Jordan's IEP meetings, and documents accompanying Jordan's IEP meetings.

305.    ROYER AND DAVIDSON were deliberately indifferent to the knowledge that POINT QUEST  was subjecting Jordan to excessive force.  Defendants did nothing to investigate POINT QUEST to stop the restraints, or remove to a safe, approved placement.

306.    From media reports, U.S. Department of Education publications and letters, and reports published by nonprofits advocating for students with disabilities, it was well-known within the educational community that children with disabilities were being subjected to illegal restraints at a greater rate than those without disabilities and that nonpublic schools restrained students at higher rates. As administrators for ROCKLIN UNIFIED SCHOOLS, Kristain ROYER, Beth DAVIDSON, deprived Jordan V.M. was deliberately indifferent to this information and failed to implement policies and procedures for training, monitoring and supervision of nonpublic school placements.  DAVIDSON failed to supervise and train the program specialists working under her to ensure that they understood the laws preventing illegal restraints and were adequately monitoring the NPS placements of RUSD students to ensure that they were not being subjected to excessive force.

307.    At all times relevant to the complaint, Kristain ROYER, Beth DAVIDSON were acting under color of state law in the performance of their official duties for public entity RUSD.

308.    Kristain ROYER, Beth DAVIDSON's actions and failures to act were a substantial factor in causing Jordan's physical and emotional pain and suffering.

309.    GHS, MEYER, KELLER, RAMSEY, ZOMBURY, ANDERSON, ROBB, BRUCE, CORY, BRYNA, CHRISTENSEN, CHAMBERS, BRUCE,  and DOE defendants' actions and failures to act were a substantial factor in causing Marques' physical and emotional pain and suffering.

- 57 -

**Exhibit F**

## DAMAGES

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

**FIRST CAUSE OF ACTION**
**INTERFERENCE WITH THE EXERCISE OF**
**CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51et seq**

1.   General damages for in an amount to be determined according to  proof at trial;

2.   Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.   Past and future lost earnings in an amount to be determined by proof at trial;

4.   Impairment of earning capacity for in an amount to be determined by proof at trial;

5.   General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.   Statutory damages;

8.   Attorneys' fees;

9.   Punitive and exemplary damages against all non-public entity Defendants

10   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**INTERFERENCE WITH PLAINTIFFS' EXERCISE OF CIVIL RIGHTS IN VIOLATION**
**OF CALIFORNIA CIVIL CODE SECTION 51.7**

1.   General damages for in an amount to be determined according to  proof at trial;

2.   Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.   Past and future lost earnings in an amount to be determined by proof at trial;

4.   Impairment of earning capacity for in an amount to be determined by proof at trial;

5.   General damages for severe emotional and psychological distress

- 58 -

**Exhibit F**

6.    Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
## INTERFERENCE WITH PLAINTIFFS' EXERCISE OF
## CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

1.    General damages for in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

4.    Impairment of earning capacity for in an amount to be determined by proof at trial;

5.    General damages for severe emotional and psychological distress

6.    Pain and suffering;

7.    Statutory damages;

8.    Attorneys' fees;

9.    Punitive and exemplary damages against all non-public entity Defendants

10.   Costs of this action;

11.   Such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF CALIFORNIA EDUCATION CODE
## §§ 200, 201, 220 and 260, et seq.

1.    General damages for in an amount to be determined according to  proof at trial;

2.    Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.    Past and future lost earnings in an amount to be determined by proof at trial;

**Exhibit F**

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
## ASSAULT AND BATTERY CONSTITUTING TORTURE

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
## ASSAULT AND BATTERY

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

- 60 -

**Exhibit F**

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1.      General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.  Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Punitive and exemplary damages against all non-public entity Defendants

10.     Costs of this action;

11.     Such other and further relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION
## FALSE IMPRISONMENT, CONSPIRACY TO COMMIT FALSE IMPRISONMENT

- 61 -

**Exhibit F**

1.   General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.   Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.   Past and future lost earnings in an amount to be determined by proof at trial;

4.   Impairment of earning capacity for in an amount to be determined by proof at trial;

5.   General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.   Statutory damages;

8.   Attorneys' fees;

8.   Punitive and exemplary damages against all non-public entity Defendants

9.   Costs of this action;

10.   Such other and further relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION
## NEGLIGENCE

1.   General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.   Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.   Past and future lost earnings in an amount to be determined by proof at trial;

4.   Impairment of earning capacity for in an amount to be determined by proof at trial;

5.   General damages for severe emotional and psychological distress;

6.   Pain and suffering;

7.   Statutory damages;

8.   Attorneys' fees;

9.   Costs of this action;

10.   Such other and further relief as the Court deems just and proper.

**Exhibit F**

## TENTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION

General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.      Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
## NEGLIGENCE PER SE

1.      General damages for Pain and suffering in an amount to be determined according to proof at trial;

2.      Medical and future medical and related expenses in an amount to be determined by proof at trial;

3.      Past and future lost earnings in an amount to be determined by proof at trial;

4.      Impairment of earning capacity for in an amount to be determined by proof at trial;

5.      General damages for severe emotional and psychological distress

6.   Pain and suffering;

7.      Statutory damages;

8.      Attorneys' fees;

9.      Costs of this action;

10.     Such other and further relief as the Court deems just and proper.

- 63 -

**Exhibit F**

### TWELFTH CAUSE OF ACTION
#### Tortious Breach of the Covenant
#### Of Good Faith and Fair Dealing

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

### THIRTEENTH CAUSE OF ACTION
#### FRAUD

1. General damages for Pain and suffering in an amount to be determined according to  proof at trial;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity for in an amount to be determined by proof at trial;

5. General damages for severe emotional and psychological distress

6. Pain and suffering;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive and exemplary damages against all non-public entity Defendants

10. Costs of this action;

11. Such other and further relief as the Court deems just and proper.

- 64 -

**Exhibit F**

**FOURTEENTH CAUSE OF ACTION**
**Title II of the Americans with Disabilities Act of 1990,**
**42 U.S.C. Sec's 12101 et seq.**

1. Compensatory Damages

2. Attorneys' fees and costs

**FIFTEENTH CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

1.Compensatory Damages

2. Attorneys' fees and costs

**SIXTEENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourth Amendment to the U.S. Constitution**

1.Compensatory Damages

2. Punitive Damages

c. Attorneys' fees and costs

Dated: October 18, 2021

Seth L. Goldstein,
Attorney at Law

- 65 -

**Exhibit F**

SUM-100

## SUMMONS ON SECOND AMENDED COMPLAINT
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GUIDING HANDS SCHOOL, et al. (**** PLEASE SEE ATTACHMENT 1 ****)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Louis Andreas MARQUEZ, Gloria V.M., Thomas V.M., and Jordan V.M.



FILED

NOV 3 0 2021

EL DORADO CO. SUPERIOR COURT
BY _____
(DEPUTY CLERK)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California - County of El Dorado<br>3321 Cameron Park Drive<br>Cameron Park, CA 95682 | **CASE NUMBER:**<br>*(Número del Caso):*<br>PC 202000429 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Seth L. Goldstein, Attorney at Law, 2100 Garden Road, Suite H-8, Monterey, CA 93940 Telephone Number: (831) 372-8511

| DATE:<br>*(Fecha)*  **NOV 3 0 2021** | Clerk, by<br>*(Secretario)* _____ | Deputy<br>*(Adjunto)* |
|---|---|---|
| | Tania G. Ugrin-Capobianco | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)  [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**
On Second Amended Complaint

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SCANNED

Exhibit FD   NOV 19 2021

LOUIE ANDREAS MARQUES, et al.,                    Case Number: PC20200429
vs.
GUIDING HANDS SCHOOL, et al.

## SUMMONS ON SECOND AMENDED COMPLAINT
### ATTACHMENT 1

**NOTICE TO DEFENDANT:**

GUIDING HANDS SCHOOL, Inc., (hereinafter "GHS"),, Staranne MEYERS, Cindy
KELLER, Phylis RAMSEY, Jennifer CHRISTENSEN, David CHAMBERS, Noel Doe,
Nicole DOE, Roland DOE, Noel COLLIER, Patricia DOE, David DOE, Amanda DOE,
Cara BRUCE, Ashley ROBB, Dellores ZUMBURY, Vince ANDERSON, Susan Jane
BATTLE and Noelle DOE; STATE OF CALIFORNIA, DEPARTMENT OF EDUCATION; PLACER
COUNTY SELPA, Kristi GREGERSEN, Troy TICKLE, POINT QUEST, Inc., Bill
TOLLESTRUP, Bill WEBBER, Nicole DOE, Jennifer DOE; ROCKLIN UNIFIED SCHOOL
DISTRICT, Kristain ROYER, Beth DAVIDSON; HANDLE WITH CARE BEHAVIOR
MANAGMENT SYSTEMS, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**

Louie Andreas MARQUES, Gloria V.M., Thomas V.M., and Jordan V.M.

## SUMMONS ON SECOND AMENDED COMPLAINT
### ATTACHMENT 1

**Exhibit F**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Seth L. Goldstein (SBN 176882)<br>Law Offices of Seth L. Goldstein<br>2100 Garden Rd, STE H-8<br>Monterey, CA 93940<br><br>TELEPHONE NO.: (831) 372-9511    FAX NO. *(Optional):* (831) 372-9611<br>E-MAIL ADDRESS: slglawoffice@gmail.com<br>ATTORNEY FOR *(Name):* Plaintiffs | *FOR COURT USE ONLY*<br><br>**FILED**<br><br>DEC 15 2021<br><br>EL DORADO CO. SUPERIOR COURT<br>BY _Cindy of Narden_<br>(DEPUTY CLERK) |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO
STREET ADDRESS: 1354 Johnson Blvd
MAILING ADDRESS: 1354 Johnson Blvd
CITY AND ZIP CODE: South Lake Tahoe, CA 96150
BRANCH NAME: Civil

PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M. and Jordan V.M

DEFENDANT/RESPONDENT: Guiding Hands School, Inc. Staranne Meyers, et al.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER:<br>PC20200429 |
| *(Check one):*   ☒ **UNLIMITED CASE**     ☐ **LIMITED CASE**<br>(Amount demanded       (Amount demanded is $25,000<br>exceeds $25,000)       or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: December 21, 2021     Time: 3:30 p.m.     Dept.: 4     Div.:     Room:

Address of court *(if different from the address above):*

☒ Notice of Intent to Appear by Telephone, by *(name):* Seth L. Goldstein

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☒ This statement is submitted by party *(name):* All Plaintiffs, Marques and V.M.
   b. ☐ This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☒ The following parties named in the complaint or cross-complaint
      (1) ☒ have not been served *(specify names and explain why not):* Opposing Counsel not accepting service after they said they would. Staff illness and changes have delayed our achieving service
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☒ complaint     ☐ cross-complaint     *(Describe, including causes of action):*
   Violation of civil rights in educational setting, assault, fraud.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. September 1, 2021]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov

SCANNED

**Exhibit F**
DEC 15 2021

**CM-110**

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M. and Jordan V.M | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Guiding Hands School, Inc. Staranne Meyers, et al. | PC20200429 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Plaintiffs Marques and V.M. were disabled students at defendant, GHS. They were repeatedly assaulted as discipline differently than those without such a disability.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☒ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one):*

a. ☒ days *(specify number):* 20

b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a. Attorney: Seth L. Goldstein

b. Firm: Law Offices of Seth L. Goldstein

c. Address: 2100 Garden Rd, STE. H-8, Monterey, CA 93940

d. Telephone number: (831) 372-9511        f. Fax number: (831) 372-9611

e. E-mail address: slglawoffice@gmail.com        g. Party represented: Plaintiffs

☐ Additional representation is described in Attachment 8.

9. **Preference**

☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☒ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*
Amount in controversy, complex case.

**Exhibit F**

**CM-110**

| PLAINTIFF/PETITIONER:   Louie Andreas Marques, Gloria V.M., Thomas V.M. and Jordan V.M | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   Guiding Hands School, Inc. Staranne Meyers, et al. | PC20200429 |

10. c.   Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | [ x ] | [ x ]  Mediation session not yet scheduled <br> [ ]  Mediation session scheduled for *(date):* <br> [ ]  Agreed to complete mediation by *(date):* <br> [ ]  Mediation completed on *(date):* |
| (2) Settlement conference | [ x ] | [ x ]  Settlement conference not yet scheduled <br> [ ]  Settlement conference scheduled for *(date):* <br> [ ]  Agreed to complete settlement conference by *(date):* <br> [ ]  Settlement conference completed on *(date):* |
| (3) Neutral evaluation | [ x ] | [ x ]  Neutral evaluation not yet scheduled <br> [ ]  Neutral evaluation scheduled for *(date):* <br> [ ]  Agreed to complete neutral evaluation by *(date):* <br> [ ]  Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | [ x ] | [ x ]  Judicial arbitration not yet scheduled <br> [ ]  Judicial arbitration scheduled for *(date):* <br> [ ]  Agreed to complete judicial arbitration by *(date):* <br> [ ]  Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | [ ] | [ ]  Private arbitration not yet scheduled <br> [ ]  Private arbitration scheduled for *(date):* <br> [ ]  Agreed to complete private arbitration by *(date):* <br> [ ]  Private arbitration completed on *(date):* |
| (6) Other *(specify):* | [ ] | [ ]  ADR session not yet scheduled <br> [ ]  ADR session scheduled for *(date):* <br> [ ]  Agreed to complete ADR session by *(date):* <br> [ ]  ADR completed on *(date):* |

**Exhibit F**

CM-110

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M. and Jordan V.M<br>DEFENDANT/RESPONDENT: Guiding Hands School, Inc. Staranne Meyers, et al. | CASE NUMBER:<br>PC20200429 |
|---|---|

## 11. Insurance

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

## 12. Jurisdiction

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

## 13. Related cases, consolidation, and coordination

a. ☒ There are companion, underlying, or related cases.

    (1) Name of case: Langley, Benson, et al. vs Guiding Hands School, et al.

    (2) Name of court: Eastern District Court of California

    (3) Case number: 2:20-cv-00635-TLN-KJN

    (4) Status:

☒ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

## 14. Bifurcation

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

## 15. Other motions

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

## 16. Discovery

a. ☐ The party or parties have completed all discovery.

b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Marques/V.M. – All Plaintiffs | Request to Produce; Request for Admissions;<br>Form Interrogatories; Special Interrogatories | Unknown because of<br>circumstances below |

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

Main issue relating to discovery are that the 4 bankers boxes of evidence and related electronic devices containing records held by the district attorney under a protective order pending resolution of the criminal case. The criminal case was set for trial in March 2021 and preliminary examination in January 2021 but the case has been continued to a date not yet set

**CASE MANAGEMENT STATEMENT**

**Exhibit F**

**CM-110**

| PLAINTIFF/PETITIONER: Louie Andreas Marques, Gloria V.M., Thomas V.M. and Jordan V.M | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Guiding Hands School, Inc. Staranne Meyers, et al. | PC20200429 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**19. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:
Counsel for Rocklin Unified Schools

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

20. Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: December 15, 2021

Seth L. Goldstein
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**CASE MANAGEMENT STATEMENT**

**Exhibit F**

**IN THE SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF EL DORADO**
**DEPARTMENT 4**

LOUIE ANDREAS MARQUES )
      Plaintiff/Petitioner, )
v. )
  )
GUIDING HANDS SCHOOL )
      Defendant/Respondent. )

| | |
|---|---|
| Case No. | **PC20200429** |
| Event Date: | **12/21/2021 3:30 pm** |
| Department: | **Department 4** |
| Event Type: | **Case Management Conference** |
| Mtn/OSC: | |
| Add'l Info: | |
| Judge: | |
| Clerk: | **Wendy Warden** |
| Reporter: | **For The Record - Recording Device** |

---

### Civil Unlimited - Minutes

The Honorable Judge Pro Tem Jennifer Peterson presiding.

## Appearances:

Attorney: Seth Goldstein is present by V Court on behalf of Plaintiffs Louie Andreas Marques et al.
There are no appearances on behalf of defendants..

## Nature of Proceedings:

The Court, on its own motion, orders this matter continued as follows:

| DATE/TIME | DEPT. | PURPOSE |
|---|---|---|
| 03/22/2022 3:30 PM | Department 4 | Case Management Conference |

Notice by Plaintiffs' counsel.

**Exhibit F**