AMY BISSON HOLLOWAY, State Bar No. 163731
General Counsel
LEN GARFINKEL, State Bar No. 114815
Assistant General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, CA 95814
Telephone: (916) 319-0860
Facsimile: (916) 322-2549
lgarfinkel@cde.ca.gov
Attorneys for Defendant the California Department of Education

*(Defendants are Exempt from Filing Fees Pursuant to Cal. Gov't. Code § 6103)*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIE MARQUES, et al.,<br><br>　　　Plaintiffs,<br><br>　v.<br><br>GUIDING HANDS SCHOOL, INC., et al.,<br><br>　　　Defendants. | Case No.  2:22-cv-00150-TLN-KJN<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO SEVER<br><br>Hearing Date:　March 10, 2022<br>Time:　　　　2 p.m.<br>Dept:　　　　2<br>Judge:　　　Hon. Troy L. Nunley |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ii

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND INFORMATION ................................................................................1

        A.      Summary of Facts and SAC........................................................................1

        B.      Background Regarding the IDEA. ..............................................................3

        C.      Legal Standard on Motion to Dismiss. .......................................................5

III.    ARGUMENT ...................................................................................................................5

        A.      Plaintiffs have Failed to Exhaust Administrative Remedies......................5

                1.      Federal Claims (ADA and Section 504, Fourteenth and Fifteenth
                        COAs). ...............................................................................................5

                2.      State Claims (COAs 1 through 4). ..................................................10

        B.      Plaintiffs failed to comply with the Government Tort Claims Act.................11

        C.      Plaintiffs do not plausibly allege the elements of a cause of action for any
                of their claims. ..........................................................................................12

                1.      Federal claims (COA 14 and 15). ..................................................12

                2.      State claims (COA 1 through 4).....................................................14

                        a.      First Cause of Action under Unruh Act. .............................14

                        b.      Second Cause of Action under Ralph Act ...........................15

                        c.      Third Cause of Action under Bane Act................................16

                        d.      Fourth Cause of Action under Cal. Educ. Code §§ 200, 201, 220
                                and 260..................................................................................16

        D.      The claims involving Guiding Hands School and Point Quest should be
                severed. ......................................................................................................17

IV.     CONCLUSION..............................................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

*A.T. v. Baldo*,
   798 Fed. Appx. 80 (9th Cir. 2019) ........................................................................13

*Albino v. Baca*,
   747 F.3d 1162 (9th Cir. 2014) (en banc) ..........................................................5, 6

*Alex G. v. Board of Trustee of Davis Jt. Unified Sch. Dist.*,
   387 F. Supp. 2d 1119 (E.D. Cal. 2015) ................................................................13

*Asante v. California Department of Health Care Services*,
   886 F.3d 795 (9th Cir. 2018) ................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2005) ..................................................................................5, 9, 14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. (2007) ........................................................................................................5

*In re Broderbund Learning Co. Securities Litigation*,
   294 F.3d 1201 (9th Cir. 2002) ................................................................................5

*C.O. v. Portland Public Schs.*,
   679 F.3d 1162 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 859 (2013) ......................10

*Coughlin v. Rogers*,
   130 F.3d 1348 (9th Cir. 1997) ........................................................................17, 18

*Cupp v. Harris*,
   2018 WL 4599588 (E.D. Cal.) ..............................................................................17

*D.D. v. Los Angeles Unified Sch. Dist.*,
   18 F. 4th 1043 (9th Cir. 2021) (en banc) ........................................................6, 7, 8

*Doe v. Arizona Dept. of Educ.*,
   111 F.3d 678 (9th Cir. 1997) ..................................................................................8

*Duvall v. County of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ..............................................................................12

*E.J. v. San Carlos Elem. Sch. Dist.*,
   803 F. Supp. 2d 1024 (N.D. Cal. 2011) ..................................................................3

*Forest Grove v. T.A.*,
   557 U.S. 230 (2009) ................................................................................................4

*Fry v. Napoleon Community Schools,*
　　137 S. Ct. 743 (2017)..........................................................................................6, 7, 8

*Hoeft v. Tuscon Unified Sch. Dist.,*
　　967 F.2d 1298 (9th Cir. 1992) ...................................................................................6, 9

*J.M. v. Frances Howell Sch. Dist.,*
　　850 F.3d 944 (8th Cir. 2017) ...........................................................................................8

*L.L. v. Keppel Union Sch. Dist.,*
　　2021 WL 4692781 (C.D. Cal.)........................................................................................15

*Mark H. v. Lemahieu,*
　　513 F.3d 922 (9th Cir. 2008) .........................................................................................12

*Neilson v. Chang (In re First T.D. and Investment, Inc.),*
　　253 F.3d 520 (9th Cir. 2001) .........................................................................................15

*Pantell v. Antioch Unified Sch. Dist.,*
　　2015 WL 757612 (N.D. Cal.) .........................................................................................13

*Paul G. v. Monterey Peninsula Unified Sch. Dist.,*
　　933 F.3d 1096 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 2672 (2020)...................................8, 9

*Payne v. Peninsula Sch. Dist.,*
　　653 F.3d 863 (9th Cir. 2011) (en banc), *cert. denied,* 132 S. Ct. 1540 (2012)...............6, 7, 10

*Reese v. City of Sacramento,*
　　888 F.3d 1030 (9th Cir. 2018) .......................................................................................16

*S.G. v. City of Los Angeles,*
　　2021 WL 911254 (C.D. Cal.)..........................................................................................14

*Sprewell v. Golden State Warriors,*
　　266 F.3d 979 (9th Cir. 2001) ...........................................................................................5

*T.B. v. San Diego Unified Sch. Dist.,*
　　806 F.3d 451 (9th Cir. 2015), *cert. denied,* 136 S. Ct. 1679 (2016)......................................13

*Vernon v. City of Los Angeles,*
　　27 F.3d 1385 (9th Cir. 1994) .........................................................................................15

*Vinson v. Thomas,*
　　288 F.3d 1145 (9th Cir. 2002) .......................................................................................12

**California Cases**

*Abelleira v. District Court of Appeal,*
　　17 Cal. 2d 280, 293 (1941) ...........................................................................................11

*Austin B. v. Escondido Unified School District*,
   149 Cal. App. 4th 860 (2007) ...................................................................15, 16

*Brennon B. v. Superior Court of Contra Costa County*,
   57 Cal. App. 5th 367 (2020), *review granted and request for de-publication denied*,
   275 Cal. Rptr. 3d 232 (2021) ..................................................................14, 15

*Calif. Assn. of Private Special Education Schools*,
   141 Cal. App. 4th 360 (2006) ...........................................................................4

*Campbell v. Regents of University of California*,
   35 Cal. 4th 311 (2005) .....................................................................................10

*Fall River Jt. Unified Sch. Dist. v. Superior Court*,
   206 Cal. App. 3d 431 (1998) ............................................................................11

*Harris v. Capital Growth Investors XIV*,
   52 Cal. 3d 1142 (1991) .....................................................................................15

*Shirk v. Vista Unified Sch. Dist.*,
   42 Cal. 4th 201 (2007) .....................................................................................12

*Stockett v. Associates of Cal. Water Agencies Jt. Powers Ins. Authority*,
   34 Cal. 4th 441 (2004) .....................................................................................11

*In re Strick*,
   148 Cal. App. 3d 906 (1983) ............................................................................11

**Federal Regulations**

28 C.F.R.
   § 35...................................................................................................................14

34 C.F.R.
   § 300.33..............................................................................................................4
   § 300.115............................................................................................................3
   § 300.325(c)........................................................................................................4

**California Regulations**

Title 5
   § 3000, et seq. ....................................................................................................3
   § 3060..................................................................................................................3
   § 3069..................................................................................................................4

**Federal Statutes**

20 U.S.C.
§ 1400 et seq. ...............................................................................................1
§ 1401(3) .....................................................................................................1
§ 1401(9) .....................................................................................................3
§ 1401(19) ...................................................................................................3
§ 1401(29) ...................................................................................................3
§ 1401(32) ...................................................................................................3
§ 1412(a)(5)(A) ...........................................................................................3
§ 1412(a)(11)(A) .........................................................................................3
§ 1412(b) .....................................................................................................3
§ 1414(d) .....................................................................................................3
§ 1414(d)(1)(B) ...........................................................................................1
§ 1415(i)(1)(A) ............................................................................................4
§ 1415(i)(2)(A) ............................................................................................5
§ 1415(i)(2)(B) ............................................................................................5
§ 1415(b)(6)(A) ........................................................................................4, 5
§ 1415(f)(1)(A) .........................................................................................4, 5
§ 1415(f)(3)(A) ............................................................................................4
§ 1415(f)(3)(E) ............................................................................................4
§ 1415(l) ...............................................................................................4, 5, 6

29 U.S.C.
§ 794 .....................................................................................................2, 8, 10
§ 794(a) ......................................................................................................12
§ 794(b)(2)(B) ............................................................................................12

42 U.S.C.
§ 12132 ...........................................................................................2, 5, 10, 12

Title II of the Americans with Disabilities Act (ADA) ........................................ *passim*

Individuals with Disabilities Education Act (IDEA) ........................................... *passim*

Section 504 of the Rehabilitation Act of 1973 ................................................... *passim*

**California Statutes**

Cal. Civ. Code
§ 51 ...............................................................................................................2
§ 51(b) ..................................................................................................10, 14
§ 51(f) .........................................................................................................10
§ 51.7 .......................................................................................................2, 11
§ 51.7(b)(1) ................................................................................................15
§ 52.1 ...........................................................................................................2
§ 52.1(b) .....................................................................................................16

Cal. Educ. Code

§ 200 ........................................................................................................................2, 16
§ 200 et seq. ....................................................................................................................11
§ 201 ........................................................................................................................2, 16
§ 201(g) ...........................................................................................................................10
§ 210.3 .............................................................................................................................16
§ 220 ........................................................................................................2, 10, 16, 17
§ 260 ........................................................................................................................2, 16
§ 48200 ..............................................................................................................................3
§ 56000(a) ...........................................................................................................................3
§ 56000, et seq. ...................................................................................................................3
§ 56026.3 .............................................................................................................................3
§ 56028.5 .............................................................................................................................4
§ 56034 ........................................................................................................................1, 3
§ 56040(a) ...........................................................................................................................3
§ 56300 ...............................................................................................................................3
§ 56302 ...............................................................................................................................3
§ 56340 ...............................................................................................................................3
§ 56342(b) ...........................................................................................................................3
§ 56344(c) ...........................................................................................................................3
§ 56345 ...............................................................................................................................3
§ 56361(e) ...........................................................................................................................3
§ 56365 ...............................................................................................................................4
§ 56365(a) ...........................................................................................................................1
§ 56366(a) ...........................................................................................................................4
§ 56366(a)(2)(A) .......................................................................................................1, 3, 4
§ 56366.1 .......................................................................................................................3, 4
§ 56366.1(h) .......................................................................................................................4
§ 56366.1(i) ........................................................................................................................4
§ 56366.1(j) .........................................................................................................................4
§ 56366.2(a)(2)(B) ....................................................................................................1, 4
§ 56383 ...............................................................................................................................4
§ 56501(a) ...........................................................................................................................4
§ 56504.5(a) ........................................................................................................................4
§ 56505(k) ...........................................................................................................................5
§ 56520 et seq. .......................................................................................................7, 9, 13
§ 56521.1(a-c) .....................................................................................................................7
§ 56521.1(d)(2) ...................................................................................................................7
§ 56521.1(d)(3) ...................................................................................................................7
§ 56521.2(a)(5) ...................................................................................................................7

Cal. Gov't. Code

§ 910(c) .............................................................................................................................12
§ 911.2 ...............................................................................................................................12
§ 945.4 ...............................................................................................................................11

Government Tort Claims Act ...........................................................................................11

**Other Authorities**

California Rules of Court 8.1115(e)(1) ................................................................................15

Ninth Circuit Rule 36-3(b) .................................................................................................13

Fed. R. App. P. 32.1(a) .....................................................................................................13

Fed. R. Civ. P.
    12(b)(6) ...................................................................................................................1, 5
    21 ........................................................................................................................1, 17

Local Rule 140(a) ..............................................................................................................1

## I.    INTRODUCTION

Plaintiffs T.V.M. and J.V.M., who are students with disabilities, and their guardian ad litem bring this action alleging that they were harmed by the unlawful use of restraints while served in non-public schools (NPS), Guiding Hands School (GHS) and Point Quest, Inc. (PQI).  The allegations as to the California Department of Education (CDE) are based on the theory and claims that the CDE is liable for any misdeeds of the NPSs and their agents and employees or the local educational agencies (LEAs) who placed the students in the NPSs.  The Second Amended Complaint (SAC) (Dkt. 1, Exhibit C) is flawed as a matter of law and the claims as to the CDE are subject to dismissal.  Specifically, the CDE moves to dismiss all counts alleged against it in the SAC on the grounds that they fail to state a claim upon which relief can be granted under any of the theories alleged.  Fed. R. Civ. P. 12(b)(6).  Accordingly, the motion of the CDE should be granted in its entirety. In the event that the motion is not granted in its entirety, the court should sever Plaintiffs' claims against Guiding Hands School and Point Quest as to the CDE.  Fed. R. Civ. P. 21.

## II.    BACKGROUND INFORMATION

### A.  Summary of Facts and SAC.

Under state law implementing the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., as discussed more fully below, a student with a disability can be served by an NPS only after there has been the adoption of an Individualized Education Program (IEP) that is agreed upon by the parent and LEA that is responsible for serving the student.  Cal. Educ. Code §§ 56034, 56365(a).  By law, the CDE is not a party to the IEP process.  20 U.S.C. § 1414(d)(1)(B).  Once it is agreed that a student would be best served by an NPS, the LEA and the NPS must enter into a contract designating the scope of services to be provided.  Cal. Educ. Code § 56366(a)(2)(A).  By law, the CDE is not a party to this contract.  *Id.*  The LEA is responsible for overseeing and evaluating its NPS placements on an ongoing basis.  *See, e.g.*, Cal. Educ. Code § 56366(a)(2)(B).

The SAC alleges that Plaintiffs T.V.M. and J.V.M. were students with disabilities as defined in the IDEA.  20 U.S.C. § 1401(3).  SAC, p. 2, ¶ 4. [1]  They each had IEPs that described their significant

---

[1] Pursuant to Local Rule 140(a), minors will be referenced by initials only.

behavioral needs and included Behavior Intervention Plans (BIPs) to address these needs.  SAC, p. 2, ¶¶ 5-8.; p. 10, ¶ 51.  They attended GHS and PQI, NPSs that were certified by the CDE, pursuant to master contracts and individual service agreements between the NPSs and the students' responsible LEAs.  SAC, p. 3, ¶¶ 10-14; p. 10, ¶¶ 49-50.

T.V.M. attended GHS from August 8, 2018 through December 2018.  SAC, p. 13, ¶ 66; p. 14, ¶ 74.  T.V.M. was restrained at GHS on eight occasions between September 5, 2018 and November 19, 2018.  SAC, pp. 18-19, ¶¶ 110-117.  At GHS, T.V.M. was assaulted by a driver, on one occasion chipping a tooth, and was prevented from eating.  SAC, p. 19, ¶¶ 120-121.  T.V.M. attended Point Quest until October 2019, when he was restrained and withdrew from school.  SAC, p. 14, ¶ 75; p. 19, ¶ 118.

J.V.M. attended GHS from February 22, 2018 through December 2018.  SAC, p. 13, ¶ 66; p. 14, ¶ 74.  J.V.M. was restrained at GHS on three occasions between February 26, 2018 and October 10, 2018.  SAC, pp. 19-20, ¶¶ 123-125.

The SAC alleges that the NPSs' use of restraints violated California Education Code provisions implementing the IDEA that relate to the use of emergency behavioral interventions.  SAC, p. 8, ¶ 36.  Specifically, the SAC alleges that the NPSs improperly used restraints as a substitute for  less restrictive behavioral interventions described in the students' BIPs in their IEPs.  SAC, p. 10, ¶ 52; p. 13, ¶ 72.  The SAC alleges that the CDE knew that restraints could be harmful to students' emotional and physical health, but failed to properly monitor NPSs' use of restraints, and continued to certify the NPSs to provide services under the IDEA.  SAC, p. 9, ¶ 42; p. 10, ¶¶ 45-46.  Plaintiffs allege that they have suffered emotional and physical injuries.  SAC. p. 11, ¶ 55.

The SAC asserts six claims against the CDE, alleging violation of the following statutes, respectively: (1) The First Cause of Action under Cal. Civ. Code § 51 (Unruh Act); (2) the Second Cause of Action under Cal. Civ. Code § 51.7 (Ralph Act); (3) the Third Cause of Action under Cal. Civ. Code § 52.1 (Bane Act); (4) the Fourth Cause of Action under Cal. Educ. Code §§ 200, 201, 220 and 260; (5) the Fourteenth Cause of Action under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 and (6) the Fifteenth Cause of Action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

**B.  Background Regarding the IDEA.**

Under the IDEA, students with disabilities have the right to a free appropriate public education (FAPE) including special education and related services that are described in an IEP developed by the LEA and the parent.  20 U.S.C. §§ 1401(9), (29); 1414(d); Cal. Educ. Code §§ 56000(a), 56040(a); 56345.  Pursuant to the IDEA, the CDE is a state educational agency (SEA) with general supervisory responsibility for the overall provision of special education services.  20 U.S.C. §§ 1412(a)(11)(A), 1401(32).  The IDEA does not require that a SEA such as the CDE directly provide services to students.  20 U.S.C. § 1412(b).

California elected to participate in the IDEA, adopted a state plan, and enacted a series of implementing statutes and regulations.  Cal. Educ. Code § 56000, et seq.; Cal. Code Regs. tit. 5, § 3000, et seq.; *see, e.g.*, *E.J. v. San Carlos Elem. Sch. Dist.,* 803 F. Supp. 2d 1024, 1028 n. 4 (N.D. Cal. 2011) (Cal. Educ. Code § 56000 et seq. implements the IDEA).  California law places primary responsibility for providing FAPE to eligible students on the LEA.  20 U.S.C. § 1401(19); Cal. Educ. Code § 56026.3.  An LEA is generally responsible for providing an education to students residing within its jurisdictional boundaries.  Cal. Educ. Code § 48200.  Moreover, the LEA is responsible for identifying students with disabilities, determining appropriate educational placements and related services through the IEP process, and providing needed special education and related services.  Cal. Educ. Code §§ 56300, 56302, 56340, 56344(c).

LEAs must educate students with disabilities in the least restrictive environment (LRE), that is, with their nondisabled peers to the "maximum extent appropriate."  20 U.S.C. § 1412(a)(5)(A); Cal. Educ. Code § 56342(b).  A continuum of alternative placements must be available.  34 C.F.R. § 300.115.  One option on the continuum is NPS services.  Cal. Educ. Code § 56361(e).  An NPS is a private nonsectarian school that enrolls disabled students pursuant to an IEP and is certified by the CDE.  Cal. Educ. Code § 56034; Cal. Educ. Code § 56366.1; Cal. Code Regs. tit. 5, § 3060.  An LEA may only place a student in an NPS when there is no appropriate public education program available.  Cal. Educ. Code § 56365(a).  Accordingly, NPSs typically serve students with significant special needs, including significant emotional and behavioral needs.

///

The LEA enters into a master contract with the NPS, and an Individual Services Agreement (ISA) for each student it places at the NPS. Cal. Educ. Code §§ 56365, 56366(a), 56366(a)(2)(A). The CDE is not a party to the master contract or the ISA. *Id.* The LEA remains responsible for FAPE for the students it places in NPSs. *See, e.g.*, 34 C.F.R. § 300.325(c); Cal. Educ. Code § 56383; Cal. Code Regs. tit. 5, § 3069. The LEA is responsible for overseeing and evaluating its NPS placements on an ongoing basis. *See, e.g.*, Cal. Educ. Code § 56366(a)(2)(B).

The CDE exercises certain ongoing oversight of the NPSs it certifies. Cal. Educ. Code § 56366.1; *Calif. Assn. of Private Special Education Schools*, 141 Cal. App. 4th 360, 369-370 (2006). The CDE annually reviews the NPS' certification, conducts investigations and issues corrective actions "where appropriate," and monitors on a three-year cycle (self-review in Year 1, onsite review in Year 2, and a follow-up visit in Year 3). Cal. Educ. Code §§ 56366.1(h), (i), (j).

A parent who has a dispute with the LEA regarding her student's program parent may request an administrative "due process" hearing. 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A); Cal. Educ. Code § 56501(a). Under the IDEA, the person conducting the hearing must be impartial and independent from the SEA. 20 U.S.C. §§ 1415(f)(1)(A), (f)(3)(A). The CDE contracts with the Office of Administrative Hearings (OAH) for the services of Administrative Law Judges (ALJs). Cal. Educ. Code § 56504.5(a).

The proper respondent at OAH is the LEA responsible for educating the student. Cal. Educ. Code §§ 56501(a), 56502(d)(2). Although the CDE has general oversight responsibility for special education, as a general rule, it is not a proper respondent because it is not the agency that is: "responsible for providing education to [the] children with disabilities" in the LEA, 34 C.F.R. § 300.33; "involved in any decisions regarding a pupil," Cal. Educ. Code § 56501(a); or "providing special education or related services" to a student. Cal. Educ. Code § 56028.5.

The ALJ determines if there has been a denial of FAPE, in a final administrative decision. 20 U.S.C. §§ 1415(f)(3)(E); 1415(i)(1)(A). If the ALJ finds a denial of FAPE, he is authorized to award "appropriate relief." *Forest Grove v. T.A.,* 557 U.S. 230, 243-244 n. 11 (2009). A parent must exhaust the OAH remedy against the LEA before filing a civil action. 20 U.S.C. § 1415(l). Either the parent or the public agency, if "aggrieved" by the final administrative decision at OAH, may seek de novo

judicial review by filing a civil action within 90 days in a state or federal court.  20 U.S.C.

§§ 1415(i)(2)(A), (B); Cal. Educ. Code § 56505(k).

### C.  Legal Standard on Motion to Dismiss.

In order to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The complaint must contain sufficient factual matter, accepted as true, to plausibly -- not merely possibly – allow the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2005).  The court need not accept legal conclusions as true.  *Ashcroft*, 556 U.S. at 678.  The court need not accept unwarranted deductions of fact or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A dismissal without leave to amend will be affirmed when the complaint cannot be saved by further amendment.  *In re Broderbund Learning Co. Securities Litigation*, 294 F.3d 1201, 1203 (9th Cir. 2002).

### III.    ARGUMENT

### A.  Plaintiffs have Failed to Exhaust Administrative Remedies.

When it is clear that a plaintiff has failed to exhaust the required special education administrative remedy -- as, the SAC acknowledges, Plaintiffs failed to do here -- the complaint is subject to dismissal for failure to state a cause of action.  *Albino v. Baca,* 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).  As shown below, Plaintiffs' assertion that exhaustion should be excused is without merit.

1.   Federal Claims (ADA and Section 504, Fourteenth and Fifteenth COAs).

The IDEA states in 20 U.S.C. § 1415(l) that before filing a civil action under Section 504 or the ADA that seeks relief available under the IDEA, a party must first exhaust the IDEA's administrative remedy, by pursuing a special education due process hearing established by § 1415(f)(1)(A) that addresses matters set forth in Section 1415(b)(6)(A), and obtaining a final decision pursuant to § 1415(i)(2)(A).  The exhaustion requirement serves the important purposes of affording the parties and

///

the courts the benefits and expertise of the agency, and ensuring the compilation of an adequate record for judicial review.  *Hoeft v. Tuscon Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).

In *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), the Supreme Court stated that a court must look to the "gravamen" of a complaint to determine if it seeks relief for a denial of FAPE under the IDEA.  *Id.* at 752.  An IDEA hearing officer awards relief based on whether a student received a FAPE.  *Id.* at 754.  The court stated that the exhaustion rule "hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education.  If a lawsuit charges such a denial, the plaintiff cannot escape [20 U.S.C.] § 1415(l) merely by bringing her suit under a statute other than the IDEA . . . Rather, that plaintiff must first submit her case to an IDEA hearing officer . . . . " *Id.*

Where the claim arises as a result of an alleged denial of a FAPE, whether pled under the IDEA or another statute protecting the rights of children with disabilities, "exhaustion is clearly required." *Payne v. Peninsula Sch. Dist.,* 653 F.3d 863, 880 (9th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1540 (2012), overruled in part on other grounds, *Albino v. Baca*, 747 F.3d at 1171.  That is, exhaustion is required when a plaintiff seeks to enforce rights resulting from an alleged denial of FAPE, whether pled as an IDEA claim or any other claim that relies on the denial of FAPE to provide the basis for the cause of action (for example, in a Section 504 claim for damages that is premised on denial of FAPE). *Payne*, 653 F.3d at 875.  Stated differently, when the relief sought follows directly from the alleged IDEA violation -- even if damages are sought -- exhaustion is required.  *Payne*, 653 F.3d at 875, 882. For example, exhaustion is required where the Plaintiff seeks damages for emotional distress that follows from an alleged denial of FAPE.  *Payne*, 653 F.3d at 875.

The exhaustion requirement is designed to channel requests for a FAPE (and its incidents) through IDEA-prescribed procedures and prevents Plaintiffs from using artful pleading to litigate IDEA issues without first utilizing the IDEA process.  *D.D. v. Los Angeles Unified Sch. Dist.,* 18 F. 4th 1043, 1049 (9th Cir. 2021) (en banc).  In *D.D.*, Plaintiff, a student with an IEP who had significant behavioral challenges, sought a one to one aide and other behavioral supports from his LEA, and alleged that once he was placed at an NPS, peers and staff were physical towards him.  *D.D.,* 18 F. 4th at 1051-1052. Although Plaintiff labeled his claim an ADA claim, the court found that the gravamen of the complaint sought relief for an alleged failure to provide an aide and other behavioral supports that Plaintiff alleged

were necessary for him to receive a FAPE under the IDEA, so exhaustion was required.  *Id.* at 1054.
The *D.D.* court confirmed the Ninth Circuit's earlier holding in *Payne* that the fact that Plaintiff limits
his prayer for relief to money damages does not vitiate the exhaustion requirement.  *Id.* at 1056; *see
also Payne*, 653 F.3d at 877.

The *Fry* court posed two questions: (1) could the plaintiff have brought essentially the same
claim if the alleged conduct had occurred at a public facility other than a school? and (2) could an adult
at the school (i.e. a non-student employee or visitor) have pursued the same claim?  137 S. Ct. at 756.
Here, both questions must be answered "no," indicating that the gravamen of the SAC seeks relief for a
denial of FAPE.

As to the first question, the state laws at issue regarding restraints apply only in the school
context.  The SAC alleges violation of specific state special education laws, Cal. Educ. Code § 56520 et
seq., that implement the IDEA and circumscribe the use of restraint as an emergency behavioral
intervention for students with disabilities in schools.  The SAC also alleges failure to properly
implement the behavior plans set forth in individual students' IEPs developed pursuant to the IDEA.[2]
The relevant statutes provide specific direction for the LEAs that serve students (and NPSs that serve
students pursuant to contracts with LEAs).  Emergency behavioral interventions such as restraint are
only to be used to control unpredictable, spontaneous behavior that poses a clear and present danger of
serious physical harm to the student or others, and that cannot be immediately prevented by a response
less restrictive than the temporary application of a technique used to contain the behavior.  They cannot
be used as a substitute for the systematic BIP in the IEP that is designed to change, modify or eliminate
a targeted behavior.  And they cannot be employed for longer than necessary to contain the behavior;
and they cannot employ an unreasonable or unnecessary amount of force.  Cal. Educ. Code
§§ 56521.1(a-c), (d)(3).  LEAs and NPSs may use prone containment by personnel trained in that
procedure, as a limited emergency intervention.  Cal. Educ. Code §§ 56521.1(d)(2), 56521.2(a)(5).
California's detailed statutory scheme for addressing the behavioral needs of students with IEPs

---

[2] *See also* Dkt. 4-1, p. 68, ¶¶ 1 and 7 (Plaintiffs' Tort Claim alleges that the CDE violated the IDEA and
state special education laws implementing the IDEA).

including the use of emergency behavioral interventions for students with IEPs does not apply in public facilities other than schools.  Thus, *Fry's* first question -- whether a plaintiff could have brought the claim at a facility other than a school -- must be answered "no."

*Fry's*  second question -- whether an adult at the school could have pursued the same claim -- must also be answered "no," because the above-referenced statutory scheme does not apply to adults at the school, but rather only to students.

Case law applied to the facts of this case provides further support for the answers to the *Fry* questions above.  Federal court decisions in which a Plaintiff sought damages under the ADA or Section 504 for restraints of a student with an IEP have found that exhaustion was required because the gravamen of the complaint sought relief for an alleged denial of FAPE.  For example, in *J.M. v. Frances Howell Sch. Dist.,* 850 F.3d 944, 949-950 (8th Cir. 2017), the court found that the Section 504 damages claim as to restraints actually sought relief for a denial of FAPE under the IDEA for failure to properly implement the IEP with respect to behavior, and therefore was subject to the exhaustion requirement.  Similarly, here, Plaintiffs specifically allege that the NPSs (GHS and PQI) improperly used restraints as a substitute for  less restrictive behavioral interventions described in the students' BIPs in their IEPs.  SAC, p. 10, ¶ 52; p. 13, ¶ 72.  As in *J.M.,* the gravamen of Plaintiffs' claims seeks relief for a denial of FAPE under the IDEA.

Furthermore, none of the available exceptions to exhaustion applies here.  The exceptions include: (1) it would be futile to go to OAH; (2) the educational agency has adopted a policy or pursued a practice of general applicability that is contrary to law; or (3) it is improbable that adequate relief can be obtained at OAH.  *Doe v. Arizona Dept. of Educ.,* 111 F.3d 678, 683-684 (9th Cir. 1997).  Plaintiffs assert that going to OAH would be futile because they seek remedies for emotional and physical damages that result from being "assaulted."  SAC, p. 15, ¶¶ 81-82.  However, the fact that Plaintiffs seek money damages that cannot be awarded at OAH does not vitiate the exhaustion requirement. *D.D.,* 18 F. 4th at 1056. The fact that damages are sought does not mean that going to OAH would be futile.  *Paul G. v. Monterey Peninsula Unified Sch. Dist*., 933 F.3d 1096, 1102 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2672 (2020).

///

This court would benefit from the development of an administrative record as to whether the responsible LEA failed to properly implement each student's IEP, provide appropriate behavioral supports, and follow state special education law circumscribing the use of restraints in each instance in which a restraint was applied, for each individual student. An OAH hearing could address the gravamen of Plaintiffs' complaint, which seeks relief for an alleged denial of FAPE resulting from these alleged failures in response to Plaintiffs' behavioral challenges.

Thus the purposes of exhaustion would have been served by OAH hearings here. *Hoeft*, 967 F.2d at 1303. Whether or not a particular restraint complied with relevant special education law is appropriate for an individualized inquiry at OAH. The use of restraints is not per se unlawful. California special education law permits specified types of restraints to be used in certain circumstances, and prohibits their use in other circumstances. Cal. Educ. Code § 56520 et seq. The fact-specific questions of whether each LEA denied each individual student plaintiff a FAPE because of the use of restraints, failure to implement the IEP, or failure to provide appropriate behavior services are highly individualized inquiries that would have benefitted from the development of a record at OAH for each student.[3]

As to the CDE, the SAC seeks damages premised on the allegation that the CDE, which did not place or serve the students, failed to fulfill its supervisory responsibilities under the IDEA, and as a direct consequence Plaintiffs were harmed. However, the IDEA demands more. Specifically, Plaintiffs must plead that they availed themselves of the administrative process at OAH, against the LEA. Before Plaintiffs can pursue any claims against the CDE relating to the CDE's allegedly inadequate oversight of the local defendants' use of restraints, Plaintiffs must prevail at OAH, i.e., they must show that the restraints applied to them by the local defendants denied them FAPE. *See, e.g.*, *Paul G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d at 1101-1102 (Plaintiff could not bring federal disability

---

[3] For example, the SAC alleges that on one occasion only that T.V.M. was "restrained in some fashion," with no further context or details, SAC, p. 18, ¶ 111, and that on another occasion only that T.V.M. was "restrained," with no further context or details. SAC, p. 19, ¶ 118. Because restraint is permissible in certain circumstances, and the SAC does not allege any particular circumstances related to these restraints, the allegations as to these restraints are consistent with lawful conduct and do not plausibly allege a violation of law. *Ashcroft*, 556 U.S. at 678-679.

discrimination claims for damages against the CDE premised on allegedly inadequate oversight of residential placements under the IDEA, without having shown at OAH that he was denied a FAPE by the residential placement he received from the LEA).

In each instance here, an OAH hearing would have resolved whether the alleged restraints applied by the NPS were inappropriate, and whether as a result the LEA had denied the student a FAPE under the IDEA.  Such a finding is a predicate for any subsequent claim for damages against the CDE.

Because (1) the gravamen of the Plaintiffs' ADA and Section 504 claims in the Fourteenth and Fifteenth causes of action seeks relief for an alleged denial of FAPE, (2) Plaintiffs failed to exhaust the IDEA's administrative remedy, and (3) exhaustion is not excused, Plaintiffs cannot bring these claims. *C.O. v. Portland Public Schs.,* 679 F.3d 1162, 1167 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 859 (2013); *Payne*, 653 F.3d at 875, 877.  Accordingly, the Court should dismiss the ADA and Section 504 claims as to the CDE.

       2.   State Claims (COAs 1 through 4).

Although Plaintiffs frame causes of action 1 through 4 under state statutory disability discrimination and civil rights laws, these claims are premised on the underlying allegations that GHS, PQI and the LEAs violated federal and state special education law with regard to the use of restraints, and that the CDE failed to exercise adequate oversight under federal and state special education law. The federal analogs to these claims include the ADA and Section 504.  *See, e.g.*, Cal. Civ. Code § 51(f), stating that a violation of the ADA constitutes a violation of Cal. Civ. Code § 51(b) (the Unruh Act) invoked in the first cause of action; Cal. Educ. Code § 201(g) (stating that Cal. Educ. Code § 220, invoked in the fourth cause of action, should be interpreted as consistent with Section 504). Just as the federal analogs to these claims are barred, framing a claim as one involving state disability discrimination or civil rights violations should be deemed insufficient to avoid IDEA exhaustion when the gravamen of the claim seeks relief for an alleged denial of FAPE with regard to the use of restraints.

Because the gravamen of the state law causes of action (1 through 4) seeks relief for an alleged denial of FAPE under the IDEA, for which exhaustion is required, the Court should dismiss those causes of action as to the CDE.  In state court, when it is clear that a plaintiff has failed to exhaust, the complaint is subject to dismissal.  *Campbell v. Regents of University of California*, 35 Cal. 4th 311, 321

(2005); *Abelleira v. District Court of Appeal*, 17 Cal. 2d 280, 293 (1941).  It well-settled in state law that a litigant will not be afforded relief in the courts unless and until he has exhausted available administrative remedies.  *In re Strick*, 148 Cal. App. 3d 906, 911 (1983).

### B.  Plaintiffs failed to comply with the Government Tort Claims Act

Plaintiffs allege compliance with the Government Tort Claims Act (GTCA).  SAC, Dkt. 1, Exhibit C, p. 4, ¶ 18.  However, although the SAC filed November 2, 2021 references an Exhibit A, there was no Exhibit A attached.  SAC, Dkt. 1, Exh. C.  On January 28, 2022, Plaintiffs filed a "Notice of Errata" attaching Exhibit A.  Dkt. 4 and 4-1.  However, the Tort Claim as to the CDE has multiple defects.

First, the Tort Claim as to the CDE is explicitly limited to incidents that occurred at Point Quest, and does not include any incidents that occurred at Guiding Hands.  *See* Dkt. 4-1, p. 67, ¶ 18.  Further, the Tort Claim alleges as to the CDE only that "CDE negligently delegated this duty to *Point Quest School* without proper assessment, inspection, oversight and monitoring."  *See* Dkt. 4-1, p. 68 (emphasis in italics supplied.)  The Tort Claim fails to allege a factual basis for the CDE's alleged failure to adequately oversee Guiding Hands.  Thus the Tort Claim does not provide adequate notice of such a claim.  The SAC inappropriately premises liability almost entirely on acts committed by a different entity than the one described in the Tort Claim.  Accordingly, all claims in Causes of Action 1 through 4 involving an alleged failure to adequately oversee Guiding Hands are barred.  *See Stockett v. Associates of Cal. Water Agencies Jt. Powers Ins. Authority*, 34 Cal. 4th 441, 446-447 (2004).  Specifically, this eliminates all of Plaintiff T.V.M.'s state law claims as to the CDE except with respect to one alleged restraint at Point Quest.  SAC, p. 14, ¶ 75; p. 19, ¶ 118.  And, this eliminates all of Plaintiff J.V.M.'s state law claims as to the CDE.

Second, Plaintiffs cannot bring a cause of action that was not reflected in a claim presented in the Tort Claim.  *Fall River Jt. Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 434 (1998); Cal. Gov't. Code § 945.4.  The Tort Claim does not specify a claim under the Ralph Act (Cal. Civ. Code § 51.7), or Cal. Educ. Code § 200 et seq. and therefore the Second Cause of Action under the Ralph Act and the Fourth Cause of Action under Cal. Educ. Code § 200 et seq. are barred.

///

Third, no lawsuit for damages for death or injury can be brought against the CDE unless a claim has been presented to the Department of General Services (DGS) within six months of accrual.  Cal. Gov't. Code § 911.2.  Timely presentation of a claim is a required element of a plaintiff's cause of action.  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007).  The Tort Claim as to the CDE does not identify the date of any alleged incident, as required by Cal. Gov't. Code § 910(c).  Dkt. 4-1, p. 67, ¶ 18.  Therefore, Plaintiffs have not plausibly alleged that they filed their Tort Claim in a timely manner, and the state claims in causes of action 1 through 4 are barred.

For the reasons stated above, causes of action 1 through 4 must be dismissed.

**C.  Plaintiffs do not plausibly allege the elements of a cause of action for any of their claims.**

1.  Federal claims (COA 14 and 15).

Title II of the Americans with Disabilities Act (COA 14) prohibits discrimination by a public entity in its services, programs or activities  "by reason of . . . disability."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act of 1973 (COA 15) prohibits discrimination "solely by reason of . . . disability" in any program or activity of a local educational agency.  29 U.S.C. §§ 794(a), (b)(2)(B).  Title II of the ADA and Section 504 are typically analyzed together.  *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002).

The SAC fails to plausibly allege that the CDE had the "mens rea" for a Section 504 damages remedy, which is "intentional discrimination," requiring discriminatory animus or deliberate indifference. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).  Deliberate indifference requires (1) knowledge that a harm to a federally protected right is substantially likely, and a (2) failure to act upon that likelihood.  *Mark H.,* 513 F.3d at 938.  Deliberate indifference is more than negligence. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).  As shown below, Plaintiffs cannot show either knowledge or failure to act on the part of the CDE.

As for the first required element, knowledge, the SAC does not allege that the CDE served T.V.M. or J.V.M., had any contact or communication with T.V.M. or J.V.M., or had any knowledge of any restraint of T.V.M. or J.V.M.  The SAC alleges only that the CDE was aware generally that restraints may cause harm, and that NPSs use restraints.  But state law permits the use of restraints as

1  an emergency behavioral intervention in specified circumstances.  *See* Cal. Educ. Code § 56520 et seq.;

2  *Alex G. v. Board of Trustee of Davis Jt. Unified Sch. Dist.*, 387 F. Supp. 2d 1119, 1125 (E.D. Cal.

3  2015) ("State law explicitly allows school officials to physically restrain students when the student

4  poses an immediate danger to himself and others").  The Ninth Circuit has noted, in a case involving

5  the use of restraint to address behavioral challenges posed by a student with severe emotional

6  disturbance, that "the use of physical restraints and seclusion in school settings -- particularly in special

7  education classrooms -- is not necessarily unlawful."  *A.T. v. Baldo*, 798 Fed. Appx. 80, 83 (9th Cir.

8  2019).[4]  Nothing in the IDEA prohibits the use of restraints, and state standards that are not inconsistent

9  with the IDEA -- such as Cal. Educ. Code § 56520 et seq. -- are enforceable in federal court.  *T.B. v.*

10  *San Diego Unified Sch. Dist.*, 806 F.3d 451, 468-469 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1679

11  (2016).  Therefore, knowledge that NPSs are using restraints for students with disabilities is not

12  knowledge that harm to federally-protected rights is substantially likely.  *See Pantell v. Antioch Unified*

13  *Sch. Dist.*, 2015 WL 757612 at *8 (N.D. Cal.) (dismissing ADA and Section 504 claims against LEA

14  with prejudice because Plaintiffs did not plausibly allege that the LEA was aware that students the LEA

15  placed in a particular NPS were being harmed by restraints).

16        As for the second required element, failure to act, the SAC fails to plausibly allege that there

17  was any failure to act on the part of the CDE that discriminated against the Plaintiffs based on

18  disability.  As the court stated in *Pantell,* 2015 WL 757612 at *8:

19        Plaintiff alleges no deliberate conduct on the part of [the LEA] with respect to the
        allegedly improper containment at Tobinworld [NPS]. The conclusory allegation that
20        [the LEA] intentionally denied DP appropriate educational and other public services, *see*
        SAC ¶¶ 99–100, is insufficient as to discriminatory purpose, as plaintiff pleads no
21        factual nexus between DP's alleged disability and any failure to act on the part of [the
        LEA] — let alone as to the unavailability to him of state benefits provided to his non-
22        disabled peers.

23  Similarly here, Plaintiffs do not plausibly allege the "failure to act" element as to the CDE.  That is,

24  Plaintiffs do not plausibly allege any nexus between Plaintiffs' disabilities and any failure to act on the

25  part of the CDE, let alone as to the unavailability to Plaintiffs of state benefits provided to non-disabled

26  peers.

27

28

---

[4] Citation is made pursuant to Fed. R. App. P. 32.1(a) and Ninth Circuit Rule 36-3(b).

1   The SAC alleges only that the CDE certified GHS and PQI.  However, the fact that the CDE

2   certified GHS and PQI to provide special education services pursuant to California's statutory scheme -

3   - in which the SEA certifies NPSs -- does not make the CDE vicariously responsible for allegedly

4   discriminatory actions of GHS or PQI.  In *S.G. v. City of Los Angeles*, 2021 WL 911254 at *13-14

5   (C.D. Cal.), Plaintiff alleged that the public entity failed to use its regulatory authority as a licensor to

6   prevent private activities having a disparate impact on people with disabilities.  The court found no

7   ADA violation on the part of the licensor public entity, stating "The programs or activities of entities

8   that are licensed or certified by a public entity are not, themselves, covered by this part." *Id*. at *11-12;

9   *see also*, Appendix to 28 C.F.R. § 35, Appendix B ("The programs or activities of licensees or certified

10   entities are not themselves programs or entities of the public entity merely by virtue of the license or

11   certificate.").

12   In summary, the SAC does not plausibly allege that the CDE discriminated against Plaintiffs

13   based on disability.  The conclusory allegations in causes of action 14 and 15 asserted as to the CDE

14   are insufficient. *Ashcroft*, 556 U.S. at 678.

15   2.   State claims (COA 1 through 4).

16   a.   First Cause of Action under Unruh Act.

17   The Unruh Act prohibits discrimination based on disability in "business establishments."  Cal.

18   Civ. Code § 51(b).  Plaintiffs allege in conclusory fashion that the CDE is a business establishment

19   under the Unruh Act.  SAC, p. 3, ¶ 14.  However, in *Brennon B. v. Superior Court of Contra Costa*

20   *County*, 57 Cal. App. 5th 367, 389 (2020), *review granted and request for de-publication denied*, 275

21   Cal. Rptr. 3d 232 (2021), California's First District Court of Appeal held that public school districts are

22   not business establishments under the Act.  While *Brennon B.* focused in particular on one type of

23   public entity established under state law -- school districts -- the court made clear that its holding

24   applied to all public entities established under state law.  *See, e.g.*, *Brennon B.*, 57 Cal. App. 5th at 369,

25   372, 379, 388. That is, the court found that the Unruh Act was directed at private rather than state

26   conduct, and that public entities are not "business establishments" under the Unruh Act.  *Id.*

27   Accordingly, pursuant to *Brennon B.*, the CDE is not a business establishment subject to suit under the

28   Unruh Act.

The role of a federal court in assessing a state law claim (such as the Unruh Act claim at issue here) is to attempt to divine how the California Supreme Court would decide it. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994). In so doing, a federal court in California applies California principles of statutory construction. *Neilson v. Chang (In re First T.D. and Investment, Inc.)*, 253 F.3d 520, 527 (9th Cir. 2001). When there is no California Supreme Court authority directly on point, a federal court will look to other state court decisions to determine applicable state law. *Asante v. California Department of Health Care Services*, 886 F.3d 795, 799 (9th Cir. 2018). As the Ninth Circuit stated in *Asante*, "State appeals court decisions on state law issues 'provide guidance and instruction and are not to be disregarded in the absence of convincing indications the state supreme court would hold otherwise'". *Id.* The Court of Appeal's opinion in *Brennon B.* is citable for its potentially persuasive value. California Rules of Court 8.1115(e)(1). In *L.L. v. Keppel Union Sch. Dist.*, 2021 WL 4692781 at *4 (C.D. Cal.), the federal district court found *Brennon B.* persuasive and dismissed an Unruh Act claim against a school district on the grounds that it was not a business establishment under Unruh.

Similarly, this court should find, based on *Brennon B.,* that the CDE is not a business establishment subject to suit under the Unruh Act.

Furthermore, even assuming the CDE were a business establishment under the Unruh Act, the Act requires intentional discrimination. *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991). For the same reasons described above as to why the ADA and Section 504 claims fail to plausibly alleged deliberate indifference, or intentional discrimination, the Unruh Act claim fails to plausibly allege intention discrimination.

For the above reasons, the First Cause of Action fails to plausibly allege the elements of an Unruh Act claim.

### b.   Second Cause of Action under Ralph Act

The Ralph Act prohibits violence or intimidation by threat of violence against a person because of disability. Cal. Civ. Code § 51.7(b)(1); *Austin B. v. Escondido Unified School District*, 149 Cal. App. 4th 860, 881 (2007) (there was no showing that the defendant took any of the alleged actions "because of" the student's disability). The SAC does not plausibly allege that the CDE engaged in any

violence or intimidation by threat of violence against T.V.M. or J.V.M. because of disability.  The SAC does not allege that the CDE ever had any contact with T.V.M. or J.V.M.  Accordingly, the Second Cause of Action fails to plausibly allege the elements of a Ralph Act claim.

### c.  Third Cause of Action under Bane Act

The Bane Act prohibits interference or attempted interference by threat, intimidation or coercion with an individual's exercise or enjoyment of federal or state constitutional or statutory rights.  Cal. Civ. Code § 52.1(b); *Austin B. v. Escondido Unified School District*, 149 Cal. App. 4th 860, 883 (2007) (there was no showing that the defendant took any actions that caused or attempted to cause interference with rights by threat, intimidation or coercion).  The SAC does not plausibly allege that the CDE interfered or attempted to interfere with Plaintiffs' rights.  The SAC does not allege that the CDE ever had any contact with T.V.M. or J.V.M.  The SAC does not satisfy the Bane Act's specific intent requirement.  *Reese v. City of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  Accordingly, the Third Cause of Action fails to plausibly allege the elements of a Bane Act claim.

### d.  Fourth Cause of Action under Cal. Educ. Code §§ 200, 201, 220 and 260

Cal. Educ. Code § 200 is a statement of legislative intent prohibiting discrimination based on protected characteristics in public schools.  Cal. Educ. Code § 201 makes similar statements with respect to "public schools" and "school grounds."  Cal. Educ. Code § 220 prohibits discrimination on the basis of disability in any program or activity conducted by an "educational institution."  The term "educational institution" is defined as:

> [A] public or private preschool, elementary, or secondary school or institution; the governing board of a school district; or any combination of school districts or counties recognized as the administrative agency for public elementary or secondary schools.
> Cal. Educ. Code § 210.3.

Finally, Cal. Educ. Code § 260 states that the primary responsibility for ensuring that a school district's programs and activities are free from discrimination based on protected characteristics belongs to its governing board.

The SAC does not allege that the CDE is an educational institution covered by these statutes, nor could it do so.  The SAC provides no factual or legal support for the proposition that the CDE is an educational institution within the meaning of Cal. Educ. Code § 210.3 that is subject to suit under Cal.

Educ. Code § 220.  The CDE is not a public school, or a governing board of a school district, or a combination of school districts or counties recognized as the administrative agency for public schools. The SAC alleges only that the CDE is "a department of the State of California."  SAC, p. 3, para. 14. This is insufficient.

Accordingly, the Fourth Cause of Action for violation of Cal. Educ. Code § 220 must be dismissed for failure to state a cause of action.

**D.  The claims involving Guiding Hands School and Point Quest should be severed.**

The SAC identifies claims against Guiding Hands School and Point Quest.  As noted above, as to T.V.M., the SAC identifies multiple restraints at Guiding Hands School, and one restraint at Point Quest with no further context or details.  As to J.V.M., the SAC identifies several restraints at Guiding Hands School, but does not identify any restraint of J.V.M. at Point Quest.  Further, the SAC alleges that another student died after a restraint at Guiding Hands School in November 2018.  SAC, p. 12, ¶ 65.  The court should sever the claims relating to the CDE's allegedly inadequate oversight of Guiding Hands School from the claims relating to the CDE's allegedly inadequate oversight of Point Quest. *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); Fed. R. Civ. P. 21.  In determining whether to sever a claim under Fed. R. Civ. P. 21, courts may consider the following factors:  (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance would be granted; and (5) whether different witnesses and documentary proof are required for separate claims.  *Cupp v. Harris*, 2018 WL 4599588 at *3 (E.D. Cal.) (citations omitted).

All of the five factors identified above weigh in favor of severing Plaintiffs' claims against Guiding Hands School and Point Quest as to the CDE.  As for the first factor, the claims involve different entities, and different restraints, and do not arise out of the same transaction or occurrence. Similarly, as for the second factor, there are significant differences in questions of law and fact.  The restraint incidents at Guiding Hands School and Point Quest were unrelated.  The facts and allegations that would be raised as to, and in defense of, the CDE are separate and distinct.

///

As for the third factor, severance would facilitate judicial economy because the claims require significant individual attention. *Coughlin v. Rogers,* 130 F.3d at 1351. The allegations as to Guiding Hands School and Point Quest involve different entities, different percipient witnesses, and different facts, and each restraint must be evaluated individually. As for the fourth factor, severance would avoid prejudice to the CDE and jury confusion. If the cases remained joined for trial, there is the danger and likelihood that in evaluating the merits of Plaintiffs' claims as to the CDE's allegedly inadequate oversight of Point Quest, the jury would be unduly swayed by evidence of the gravity and significance of the harm to another student at Guiding Hands. Further, there is no prejudice to Plaintiffs from severing the trials as to Guiding Hands School and Point Quest. Fifth, and finally, the cases involving Guiding Hands School and Point Quest involve different incidents, different restraints, different employees and different harms, and therefore involve different witnesses and documentary proof.

In summary, fundamental fairness requires severance of Plaintiffs' claims against Guiding Hands School and Point Quest as to the CDE.

### IV.    CONCLUSION

Defendant the CDE respectfully requests that its motion to dismiss the SAC and the requests for relief therein be granted in its entirety, without leave to amend. In the event that the motion is not granted in its entirety, the court should sever Plaintiffs' claims against Guiding Hands School and Point Quest as to the CDE.

Dated: January 31, 2022                      Respectfully submitted,


                                    By:    /s/ Len Garfinkel
                                           LEN GARFINKEL
                                           Assistant General Counsel
                                           Attorney for Defendant CDE