Seth L. Goldstein, S.B.N. 176882
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone (831) 372 9511
Fax (831) 372 9611
Lead-Counsel for Plaintiffs

Merit Bennett, *Pro Hac Vice*
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836
Co-Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LOUIE MARQUES, et al.,

        Plaintiffs,

v.

GUIDING HANDS SCHOOL, Inc., et al.,

        Defendants.

**Case No. 2:22-cv-00150-TLN-KJN**

**PLAINTIFFS OPPOSITION TO DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO SEVER**

**DATE: March 10. 2022**

**TIME: 2:00 pm**

**Judge: Hon. Troy L. Nunley**

**Trial Date:  Not Set**

**PLAINTIFFS OPPOSITION TO DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO SEVER**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      Introduction ........................................................................................................... 1

II.     Procedural History ................................................................................................ 2

III.    Factual Allegations ............................................................................................... 3

        A.      Summary of Facts and SAC ....................................................................... 3

        B.      Background Regarding CDE ....................................................................... 5

IV.     Legal Standard on Motion to Dismiss .................................................................. 6

V.      Argument .............................................................................................................. 6

        A.      Plaintiffs Do Not Need to Exhaust Administrative Remedies. ................... 6

        B.      Exceptions to exhaustion applies here ....................................................... 9

        C.      Plaintiffs have complied with the Government Tort Claims Act .............. 10

        D.      Plaintiffs plausibly allege the elements of a cause of action for
                their claims. ............................................................................................... 11

                1.   Plaintiffs Allege Viable Claims Under the ADA and Section
                     504 ........................................................................................................... 11

                2.   State Claims (COA 1 through 4) ...................................................... 17

        D.      CDE's Argument to Sever Should be Denied ......................................... 20

VII.    CONCLUSION ................................................................................................... 21

CERTIFICATE OF SERVICE ...................................................................................... 22(1-2)

DECLARATION OF MERIT BENNETT ...................................................................... 24(1-2)

i

1

**TABLE OF AUTHORITES**

2

<u>**CASES**</u>

3

*IV v. Vacaville Unified Sch. Dist.,*

4

No. 2:19-cv-00273-KJM-DB, 2020 U.S. Dist. LEXIS 28474, at *26-27

5

(E.D. Cal. Feb. 19, 2020) ......................................................................................... 18

6

*Albino v. Baca*,

7

747 F.3d 1162 (9th Cir. 2014)........................................................................................ 7

8

9

*Annamaria Mv. Napa Valley Unified Sch. Dist.,*

10

No. C 03-0101 VRW, 2006 WL 1525733, at *5 (N.D. Cal. May 30, 2006) ................... 16

11

*Bell Atl. Corp. v. Twombly*,

12

550 U.S. 544, 555 (2007). ................................................................................. 6

13

*Brennon B. v. Superior Court of Contra Costa County,*

14

57 Cal. App. 5th 367, 389 (2020) ................................................................ 16, 17

15

*Cahill v. Liberty Mut. Ins. Co.*,

16

80 F.3d 336, 337-38 (9th Cir. 1996) ....................................................................... 6

17

*City of Simi Valley v. Superior Court,*

(2003) 111 Cal.App.4th 1077 (4 Cal.Rptr.3d 468)  ........................................ 17

18

19

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,

911 F.2d 242, 247 (9th Cir. 1990)............................................................................. 6

20

21

*D.K. v. Solano Cnty. Office of Educ.*,

667 F. Supp. 2d 1184, 1193 (E.D. Cal. 2009)................................................  15

22

*Doe v. Arizona Dept. of Educ.*,

111 F.3d 678, 683-684 (9th Cir. 1997) ........................................................ 8, 9

23

24

*Duvall v. Cnty. of Kitsap,*

206 F.3d 114, 1135, 1139 (9th Cir. 2002)................................................ 9, 15

25

*E.J v. San Carlos Elem. Sch. Dist.*,

26

803 F. Supp. 2d 1024, 1028 n. 4 (N.D. Cal. 2011) ........................................ 5

27

*Fry v. Napoleon Cmty. Sch.*, _U.S._;

137 S. Ct. 743, 753-56; 197 L. Ed. 2d 46, 59-63 (2017)  ............................... 7-9

28

ii

*Lentini v. Calif. Ctr. for the Arts*,
   370 F.3d 837, 847 (9th Cir. 2004)...................................................................................... 17

*Long v. Valentino*,
   (1989) 216 Cal.App.3d 1287, 1296-98 ............................................................................. 18

*Mack v. South Bay Beer Distributors, Inc.*,
   798 F.2d 1279, 1282 (9th Cir. 1986)................................................................................... 6

*Marder v. Lopez*,
   450 F.3d 445, 448 (9th Cir. 2006)...................................................................................... 6

*Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*,
   No. 2:11-cv-3471-KJM-AC, 2013 WL 1326301, at *9 (E.D. Cal. Mar. 26, 2013)............ 9

*Monteiro v. Tempe Union High Sch. Dist.*,
   158 F.3d 1022, 1034 (9th Cir. 1998).................................................................................. 15

*Payne v. Peninsula Sch. Dist.*,
   653 F.3d 863, 871-74, 877, 880 (9th Circ. 2011) ) ........................................................... 7

*Shoemaker v. Myers*,
   (1992) 2 Cal.App.4th 1407, 1426 (4 Cal.Rptr.2d 203) .................................................... 10

*Smith v. Tobinworld*,
   No. 16-CV-01676-RS, 2016 U.S. Dist. LEXIS 83960, at *8
   (N.D. Cal. June 28, 2016) ................................................................................................. 18

*Turner v. State of California*,
   (1991) 232 Cal.App.3d 883, 888 (284 Cal.Rptr. 349) ..................................................... 10

*Winarto v. Toshiba America Electronics Components, Inc.*,
   (9th Cir. 2001) 274 F.3d 1276, 1289-90 .......................................................................... 18

*Wormuth v. Lammersville Union Sch. Dist.*,
   305 F. Supp. 3d 1108, 1126-27 (E.D. Cal. 2018.............................................................. 15

*Zukle v. Regents of the Univ of Cal.*,
   166 F.3d 1040, 1045 n. 11 (9th Cir. 1999)....................................................................... 11

## **RULES**

Federal Rules of Civil Procedure
   Rule 12(b)(6).......................................................................................................................... 6
   Rules 12(e) and 12(f) ............................................................................................................ 2
   Rule 20 ................................................................................................................................. 20

iii

California Civil Code
        Cal. Civ. Code § 51; 51(b), 51(f), 51.7 and 52.1 ...................................................... 5, 16-18

## **OTHER**

*California Education Code § 220* ..................................................................................... 1

20 U.S.C. § 1400, 1401(3), 1401 (9), 1412(a)(ll) (A),1415 ...................................... 2, 4, 5, 6, 7, 12

28 U.S.C. § 12132 ................................................................................................. 11

29 U.S.C. § 794 ............................................................................................... 5, 11

42 U.S.C. § 12132 and (6) ......................................................................................... 5

## I. INTRODUCTION

Plaintiffs, T.V.M. and J.V.M., have disabilities as defined in 20 USD 1401(3), and were persons who, under the Unruh Act, have a mental disability as defined in Sections 12926 and 12926.1 of the Government Code and who, by and through their *guardian ad litem* and adoptive mother, Gloria, bring this action alleging that they were harmed by the unlawful use of restraints while students in non-public schools ("NPS"), Guiding Hands School ("GHS") and Point Quest, Inc. ("PQI"). Both Plaintiffs were placed at the nonpublic school, GHS, in 2018. These students were placed at GHS and later at PQI pursuant to their Individualized Education Plans ("IEP'). NPS are certified by the CDE to provide education and specialized services to public school children with disabilities pursuant to a Master Contract with Local Educational Agency ("LEA"). CDE was, at all times herein, acting as an arm of the state. The CDE had been repeatedly informed by the U.S. Department of Education ("DOE") that physical restraints were being used disproportionately and harmfully against children with disabilities. (Case No. 2:20-cv-00635-TLN-KJN Request for Judicial Notice ("RJN"), Exs. 1-4.) The CDE had been repeatedly informed that these restraints posed serious risk to these disabled students' physical and emotional health, including even the risk of death. (Case No. 2:20-cv-00635-TLN-KJN RJN, Ex. 1.) Yet, despite this warning, CDE allowed GHS and PQI to continue overuse of such restraints for a lengthy period of time, further elevating the already-elevated risk of harm to the defenseless, disabled students entrusted in the CDE's care.

The CDE well knew of the use of prone restraints by GHS. (Case No. 2:20-cv-00635-TLN-KJN RJN, Exs. 5 and 6.) Both students were restrained repeatedly by GHS staff. GHS used restraints against Plaintiff children frequently, for long periods of time that were longer than necessary and with excessive force. A prone restraint was used on both Plaintiff children in which the children were placed face down on the floor with one or more adults applying force from above to keep the children's bodies immobile. SAC, pp 109-125. CDE ignored its legal duties to supervise, properly investigate complaints and monitor and prevent the use of prone restraints.

After Plaintiffs' arrivals at GHS in 2018, GHS offered the parents a copy of their parent/teacher handbook in which it was indicated that they had a system of "positive" behavioral intervention and support. The handbook also indicated that Guiding Hands would "customize" the system to support student outcomes and "interact with students in a way that promotes social proficiency." The handbook assured parents that the adult behavior to be utilized when correcting a child would be "calm," "brief" and "respectful."

**The CDE has mandatory oversight of all schools within the state and is responsible for**

- 1 -

**ensuring statewide compliance with state and federal laws within its educational system**.  20 U.S.C. § 1412(a)(ll) and Section V.B *supra*.

## II. PROCEDURAL HISTORY

<u>Related Cases</u>

Pursuant to Defendants' Notice of Related Case [Doc. 3],

The present action appears to be related to a pending action, *Langley, et al. v. Guiding Hands, et al*., Case No. Case No. 2:20-cv-00635-TLN-KJN. The Plaintiffs in Marques are represented by the same attorneys that represent the different Plaintiffs in Langley. In both cases, Plaintiff students allege they were improperly restrained at Guiding Hands School, and seek to assign liability to multiple defendants including, among others, Guiding Hands, their respective school districts, and the California Department of Education. Given that Langley has been pending in Judge Nunley's courtroom since 2020, there may be savings of judicial effort and economies to be gained by having both cases heard by Judge Nunley.

Plaintiffs were originally parties to a complaint filed with other Plaintiff students against the same subject defendants in the El Dorado County Superior Court on November 7, 2019 (PC20190595).  On November 26, 2019, Plaintiffs in that matter filed their first amended complaint as of right, before any responsive pleading was filed.  Counsel met and conferred, and the parties agreed that Plaintiffs would file a second amended complaint.  Prior to Plaintiffs filing a second amended complaint, Defendants removed the case to Eastern District of California on March 23, 2020.  (Case No. 2:20-cv-00635-TLN-KJN, Doc. 1-1.)  On March 27, 2020, the parties filed a stipulation, granted in part by the Court on April 7, 2020, extending the deadlines for Defendants' responsive pleadings and permitting Plaintiffs to file their Second Amended Complaint.  (Case No. 2:20-cv-00635-TLN-KJN, Nos. 6, 10.)   Plaintiffs' counsel filed the finalized version of their Second Amended Complaint on May 3, 2020.  (Case No. 2:20-cv-00635-TLN-KJN, No. 12.) Defendants filed thirteen motions in response to the SAC, including motions to dismiss, motions to strike and for a more definite statement pursuant to Rules 12(e) and 12(f).  In response to Defense counsel's arguments, Plaintiffs' counsel agreed to a stipulated dismissal without prejudice intent on filing this separate action.

Plaintiffs filed this action in the El Dorado County Superior Court on August 27, 2020 (PC20200429).  On February 23, 2021, Plaintiffs filed their first amended complaint as of right, before any responsive pleading was filed.  On January 25, 2022, Defendant CDE removed this case to this Court.  Counsel met and conferred, and the parties agreed that Plaintiffs would file a second amended complaint.  Plaintiffs' counsel filed the finalized version of their Second Amended Complaint ("SAC") on January 28, 2022 [Doc. 4-1].  Defendant CDE's counsel filed their Motion

to Dismiss ("CDE MTD") on January 31, 2022 [Doc. 7].

**III.     FACTUAL ALLEGATIONS**

**A.     Summary of Facts and SAC.**

Plaintiff Students are children with disabilities, including developmental, social and emotional disabilities.  Their local educational agencies ("LEAs") placed them at Guiding Hands School, Inc. ("GHS") pursuant to their Individualized Education Plans ("IEPs").  GHS was a nonpublic school (''NPS") certified by the California Department of Education ("CDE") to provide education and specialized services to public school children with disabilities pursuant to a Master Contract with the LEA.  In return, GHS received a portion of the LEA's state and federal special education funding.  Nonpublic schools such as GHS act as arms of the state and its LEAs in discharging their duties of providing a public education, including special education services, to students in California.  Cal. Ed. 13, Code 8 § 56365.

For more than a decade, the California Department of Education ("CDE"), school districts, county offices of education and Special Education Plan Areas ("SELPAs") have known that using restraints on students, particularly in response to predictable disability-related behavior, carries serious risks for the children's physical and emotional health.  There have been many reports of students with behavioral challenges dying or sustaining serious injuries due to the abusive use of restraint systems.  Despite this knowledge, nonpublic schools like Defendant CDE allowed GHS and its staff to use such restraints frequently, and for extended periods of time, in response to predictable behaviors that did not constitute an immediate or serious threat to the student or to others, on students whose particular disabilities elevated the risk of using restraints, and with excessive force.  They could do so because the CDE, its State Superintendent of Public Instruction ("SSPI"), and the LEA Defendants abdicated their responsibilities to monitor and supervise GHS in order to ensure its compliance with state and federal laws prohibiting discrimination and the improper use of physical restraints.  The CDE continued to certify GHS, and failed to investigate, and the LEA Defendants continued to contract with and place their disabled students in the school.

The CDE had been repeatedly informed by the U.S. Department of Education ("DOE") that restraints were being used disproportionately against children with disabilities.  Moreover, the DOE had warned state education officials that restraints were being improperly applied and posed serious risks to students' physical and emotional health, including the risk of death.  Yet nonpublic schools like GHS continued to use such restraints.  The CDE and SSPI continue to certify nonpublic schools such as GHS, and have failed to execute their duties to monitor and supervise nonpublic schools

and their restraint use.  These restraints included prone restraints, in which the child is placed face down on the floor with one or more adults applying force from above to keep the child's body immobile - frequently lasting for over an hour.  Some students were restrained weekly, sometimes multiple times a day. GHS's use of restraints was so excessive in frequency, duration, force and purpose that any monitoring official who observed the program for more than an hour would realize that the school and its staff had exceeded the legal bounds for emergency interventions and were deliberately physically abusing their students.  Sadly, the CDE ignored its legal duties to supervise and monitor the GHS, and harm to students was rampant.  Forced into action by the death of another student, Max Benson, ("the Max Benson case") the CDE finally conducted an investigation of GHS and revoked its nonpublic school credential.  However, after GHS was closed it was, allegedly, sold to Defendant PQI whose staff continued use of such dangerous restraints.

Under state law implementing the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*., as discussed more fully below, a student with a disability can be served by an NPS after there has been the adoption of an Individualized Education Program (IEP) that is agreed upon by the parent and LEA that is responsible for serving the student. Cal. Educ. Code§§ 56034, 56365(a).  While the CDE is not a party to the IEP process, as they often point out as the basis for avoiding liability, the CDE was charged with certifying NPSs, pursuant to master contracts and individual service agreements between the NPSs and the students' responsible LEAs.

Plaintiffs T.V.M. and J.V.M. were students with disabilities as defined in the IDEA. 20 U.S.C. § 1401(3).  They each had IEPs that described their significant behavioral needs and included Behavior Intervention Plans (BIPs) to address these needs.  They attended GHS and PQI, T.V.M. attended GHS from August 8, 2018, through December 2018.  T.V.M. was restrained with prone restraints at GHS on eight occasions between September 5, 2018, and November 19, 2018.  At GHS, T.V.M. was assaulted by a driver, on one occasion chipping a tooth, and was prevented from eating.  T.V.M. attended Point Quest until October 2019, when he was restrained and withdrew from school.

J.V.M. attended GHS from February 22, 2018, through December 2018.  J.V.M. was restrained at GHS on three occasions between February 26, 2018, and October 10, 2018.

The CDE knew that restraints could be harmful to students' emotional and physical health, but failed to properly monitor NPSs' use of restraints, and continued to certify the NPSs to provide services under the IDEA.  As a result, Plaintiffs have suffered emotional and physical injuries.

The SAC asserts six causes of action against the CDE, alleging violation of the following

- 4 -

statutes, respectively: (1) The First Cause of Action under Cal. Civ. Code§ 51 (Unruh Act); (2) the Second Cause of Action under Cal. Civ. Code§ 51.7 (Ralph Act); (3) the Third Cause of Action under Cal. Civ. Code§ 52.1 (Bane Act); (4) the Fourth Cause of Action under Cal. Educ. Code§§ 200,201,220 and 260; (5) the Fourteenth Cause of Action under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 and (6) the Fifteenth Cause of Action under Section 504 of the 22 Rehabilitation Act of 1973, 29 U.S.C. § 794.

**B.    Background Regarding CDE.**

Under the IDEA, students with disabilities have the right to a free appropriate public education (FAPE) including special education and related services that are described in an IEP developed by the LEA and the parent.  20 U.S.C. §§ 1401(9), (29); 1414(d); Cal. Educ. Code§§ 56000(a), 56040(a); 56345.  Pursuant to the IDEA, the CDE is a state educational agency (SEA) with supervisory responsibility for the overall provision of special education services.  20 U.S.C. §§ 1412(a)(ll)(A), 1401(32).  California elected to participate in the IDEA, adopted a state plan, and enacted a series of implementing statutes and regulations.  Cal. Educ. Code § 56000, et seq.; Cal. Code Regs. tit. 5, § 3000, et seq.; *see*, e.g., *E.J v. San Carlos Elem. Sch. Dist.*, 803 F. Supp. 2d 1024, 1028 n. 4 (N.D. Cal. 2011) (Cal. Educ. Code§ 56000 et seq. implements the IDEA).  A continuum of alternative placements must be available. 34 C.F.R. § 300.115. One option on the continuum is NPS services.  Cal. Educ. Code§ 5636l(e).  An NPS is a private nonsectarian school that enrolls disabled students pursuant to an IEP and is certified by the CDE. Cal. Educ. Code§ 56034; Cal. Educ. Code§ 56366.1; Cal. Code Regs. tit. 5, § 3060.  An LEA may only place a student in an NPS when there is no appropriate public education program available.  Cal. Educ. Code§ 56365(a).  Accordingly, NPSs typically serve students with significant special needs, including significant emotional and behavioral needs.

The CDE exercises certain ongoing oversight of the NPSs it certifies. Cal. Educ.  Code § 56366.1; Calif. Assn. of Private Special Education Schools, 141 Cal. App. 4th 360, 369-370 (2006).  The CDE annually reviews the NPS' certification, conducts investigations and issues corrective actions "where appropriate," and monitors on a three-year cycle (self-review in Year 1, onsite review in Year 2, and a follow-up visit in Year 3).  Cal. Educ. Code§§ 56366. l(h), (i), (j).  The CDE has the power to revoke such certification, as it did in the case too late with GHS.  CDE attempts to avoid liability of its abject failures because they claim that a parent who has a dispute with the LEA regarding her student's program parent must request an administrative "due process" hearing.  20 U.S.C. §§ 1415(b)(6)(A), (f)(l)(A); Cal. Educ. Code § 5650l(a) and that the proper

respondent at OAH is the LEA responsible for educating the student. Cal. Educ. Code§§ 5650l(a), 56502(d)(2).  However, this is case does not concern students that have a mere dispute regarding their student programs.  This involves multiple claims and events of abuse, not a mere issue with their student plan.

## IV.    LEGAL STANDARD ON MOTION TO DISMISS

The Court must accept as true all allegations of material fact and construe them in the light most favorable to the plaintiff on a Rule 12(b)(6) motion.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The complaint need not provide detailed factual allegations but must provide the factual and legal basis for the plaintiffs "entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,555 (2007).  The allegations should be sufficient to demonstrate the plaintiffs right to relief on more than a speculative basis.  *Id*. Although the Court generally limits its review on a Rule 12(b)(6) motion to the contents of the complaint, it "may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment."  *Mack v. South Bay Beer Distributors, Inc.*,. 798 F.2d 1279, 1282 (9th Cir. 1986).  The court may also "consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the claim; and (3) no party questions its authenticity."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Finally, if the court grants the motion, it should grant plaintiffs leave to amend ''unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N California Collection Serv. Inc.*, 911 F.2d 242,247 (9th Cir. 1990).

## V.    ARGUMENT

### A.    Plaintiffs Do Not Need to Exhaust Administrative Remedies.

Defendants' argument that Plaintiffs cannot bring their ADA or Section 504 claims because they did not exhaust their administrative remedies under the Individuals with Disabilities in Education Act ("IDEA") completely ignores the IDEA's express language on exhaustion and the controlling cases in the U.S. Supreme Court and the Ninth Circuit. Exhaustion is not required every time one files a lawsuit under the ADA or Section 504, even if the claim arose in the context of educating children with disabilities. Under 20 U.S.C. § 1415(1):

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], Title V of the Rehabilitation Act [including §504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].  20

- 6 -

1  U.S.C. § 1415(1).

2      Under Ninth Circuit and U.S. Supreme Court precedent, exhaustion is not required here.

3  *Payne v. Peninsula Sch. Dist.,* 653 F.3d 863, 871-74 (9th Circ. 2011), *en bane,* overruled on other

4  grounds by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014*); Fry v. Napoleon Cmty. Sch.*, _U.S._;

5  137 S. Ct. 743, 753-56; 197 L. Ed. 2d 46, 59-63 (2017).

6      [T]he IDEA's exhaustion provision applies only in cases where the relief sought by a
   plaintiff in the pleadings is available under the IDEA. Non-IDEA claims that do not seek
7      relief available under the IDEA are not subject to the exhaustion requirement, even if they
   allege injuries that could conceivably have been redressed by the IDEA.  Payne, 653 F.3d
8      at 871 (emphasis added).

9      Plaintiffs here seek damages for physical and emotional abuse they suffered as a result of

10  the CDE's deliberate indifference to the discrimination and abuse disabled children were being

11  subjected to at nonpublic schools such as GHA throughout California.  Such damages are not

12  available under the IDEA. *Blanchard v. Morton Sch. Dist*., 509 F.3d 934,936 (9th Cir. 2014), cert.

13  denied, 552 U.S. 1231 (2008).

14      Nothing in the IDEA protects a school from non-IDEA liability simply because it was
   making a good-faith attempt to educate its disabled students. If the school's conduct
15      constituted a violation of laws other than the IDEA, a plaintiff is entitled to hold the school
   responsible under those other laws.  *Payne*, 653 F.3d at 877.

16      The Ninth Circuit rejected arguments similar to those made here in *Payne*, which involved

17  a Section 1983 claim by a special education student who was placed in a "time-out" room when he

18  became "overly stimulated."  *Payne*, 653 F.3d at 880.

19      The claim asserted here - for knowing and intentional infliction of excessive force - is
   cognizable under the Fourth Amendment and exists separate and apart from the denial of a
20      FAPE, irrespective of the fact that the alleged excessive punishment took place in a special
   education classroom. Although we would not doubt, for example, that an unconstitutional
21      beating might interfere with a student enjoying the fruits of a FAPE, the resulting excessive
   force claim is not, for that reason alone, a claim that must be brought under the IDEA.  *Id*.
22

23      The U.S. Supreme Court similarly reasoned that claims alleging excessive force against

24  special education students do not require exhaustion of administrative remedies despite the fact that

25  the abuse occurred in the context of the student's education.  *Fry*, 137 S. Ct. at 756 n. 9.

26      The U.S. Supreme Court elaborated on the exhaustion requirement in Fry, finding that

27  where the remedy sought is not for the denial of a Free and Appropriate Public Education, the IDEA

   cannot provide the relief sought and exhaustion is not required.  *Fry*, 137 S. Ct. at 754.

28      And that is true even when the suit arises directly from a school's treatment of a child with

- 7 -

a disability-and so could be said to relate in some way to her education. A school's conduct toward such a child-say, some refusal to make an accommodation-might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA. A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to §1415(l)'s exhaustion rule because, once again, the only "relief" the IDEA makes "available" is relief for the denial of a FAPE. *Fry*, 137 S. Ct. at 754-55.

As such, the Court must examine the "substance" or "gravamen" of the Plaintiffs' complaint to determine not what relief they could have sought but what relief they are actually seeking. *Id.* at 755. Plaintiffs seek monetary damages for disability discrimination and physical assaults, and the IDEA does not provide a legal remedy for such harm. SAC, ¶¶ 12-13. Moreover, applying the Fry Court's analysis, the conduct alleged under the SAC would be actionable even if it had occurred outside of the educational system. *Fry*, 137 S. Ct. at 756. Similarly, an adult subjected to the same conduct would have a cause of action against Defendants. *Id.*

Defendant argues that IDEA exhaustion is required because the SAC alleges violations of state laws implementing the IDEA, such as Cal. Ed. Code§ 56520 et. seq. Yet under *Fry*, this Court must look at the gravamen of the complaint, not mere labels. Fry, 137 S. Ct. at 755. Plaintiffs invoke the provisions of the California Education Code to demonstrate the CDE's statutory duty to oversee nonpublic schools, supervise and monitor the use of physical interventions on students with disabilities and investigate allegations of abuse, responsibilities which - had they been executed properly and with concern for the rights of disabled children to be free from discrimination and physical harm - would have prevented the injuries and death that occurred in this case.

**B.** **Exceptions to Exhaustion Apply Here.**

The exceptions include: (1) it would be futile to go to OAH; (2) the educational agency has adopted a policy or pursued a practice of general applicability that is contrary to law; or (3) it is improbable that adequate relief can be obtained at OAH. *Doe v. Arizona Dept. of Educ.*, 111 F.3d 678, 683-684 (9th Cir. 1997).

Even in cases alleging a violation of the IDEA and denial of a FAPE, courts will excuse the exhaustion requirement if seeking administrative relief is futile or unlikely to provide adequate

relief, or if the complaint alleges an administrative practice or policy that violates the law. *Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997) (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)); *see also Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-cv-3471-KJM-AC, 2013 WL 1326301, at *9 (E.D. Cal. Mar. 26, 2013) (administrative exhaustion of lDEA claims not required for futility and because the "plaintiffs are alleging the CRP process itself is broken as part of their failure to investigate claims"). Administrative hearings would not address the systemic failures to act alleged here.  Plaintiffs complain not of a single improper restraint but a policy and practice of disciplining students with excessive and harmful restraints of which the CDE was aware and/or to which it was deliberately indifferent.

Exhaustion of the IDEA's administrative procedures is unnecessary where the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee of a FAPE. *Fry v. Napoleon Community Schools*, 137 S.C.t 743 (2017).

CDE states in its motion that "This court would benefit from the development of an administrative record as to whether the responsible LEA failed to properly implement each student's IEP, provide appropriate behavioral supports, and follow state special education law circumscribing the use of restraints in each instance in which a restraint was applied, for each individual student." *Id*., at p. 17.  However, this should have been a part of CDE's inadequate investigation and any accompanying record - and only supports Plaintiffs claims against it. It is a failure of CDE to not already have such facts in its possession. Contrary to CDE's assertion, an OAH hearing could not address the gravamen of Plaintiffs' complaint, and it is improbable that adequate relief could be obtained at OAH.  *Doe v. Arizona Dept of Educ*., 111 F.3d 67, 683-684 (9th Cir. 1997).

As Defendants' exhaustion argument regarding Plaintiffs' federal claims fails, it follows that exhaustion of administrative remedies under the IDEA was not required before Plaintiffs brought their state law claims. Regardless, IDEA exhaustion requirements do not apply to state law claims. State Claims (COAs 1 through 4).

**C.    Plaintiffs Have Complied With the Government Tort Claims Act**

In this case, the CDE (via its chief officer, the SSPI) failed to discharge multiple interlocking mandatory duties - to monitor and supervise the implementation of state laws prohibiting the improper use of restraints (Cal. Ed. Code§ 56520 et. seq.); to conduct ongoing onsite reviews and monitor nonpublic schools it had certified; and to investigate and conduct an unannounced onsite investigation when it has "substantial reason to believe that there is an

- 9 -

immediate danger to the health, safety or welfare of a child. Cal. Ed. Code§§ 56521(b) and 56366.l(a), (e)(l), (i)(l) and O)." CDE did not exercise reasonable diligence in discharging its mandatory duty of supervision and monitoring over GHS in particular or over nonpublic schools more broadly.  It is clear that these duties - particularly those spelled out in sections 56521(b) and 56366.1(i)(l) - were meant to protect students such as the Plaintiffs from the risk of physical and emotional injuries and/or certainly death. Moreover, Plaintiffs have alleged that Defendant's failure to discharge its duties of supervision and monitoring led to the injuries suffered by Plaintiffs here.

Plaintiffs allege compliance with the Government Tort Claims Act (GTCA).  On January 28, 2022, Plaintiffs filed a "Notice of Errata" attaching Exhibit A. Doc. 4 and 4-1.  CDE claims the Tort Claim as to the CDE has multiple Defects and therefore should be invalidated.  This is based on CDE's failure to fully disclose to this court that Point Quest is a successor of GHS.

CDE claims the tort claim is explicitly limited to incidents that occurred at Point Quest, and does not include any incidents that occurred at Guiding Hands. Dco. 7 at p. 19.  CDE omits important information that, as a successor, Point Quest took over Guiding Hands School, took on its employees and students, and therefore notice to Point Quest is valid, sufficient and proper. Further, they cherry picked five former Guiding Hands employees to continue on.  *See* "A new school opens at El Dorado Hill site where boy was restrained and later died," Sacramento Bee, April 19, 2019.  "Point Quest carefully retrained and re-cultured the returning teachers in how to deal with students, Tollestrup said." *Id*.  "Tollestrup said the most notable difference between Guiding Hands and Point Quest schools is how and when they restrain students."  This demonstrates that Point Quest had notice of Plaintiffs' claims as successor of GHS and that CDE clearly had proper notice pursuant to the tort claims notice issued.

The Tort Claim alleges as to the CDE that it "negligently delegated this duty to *Point Quest School* without proper assessment, inspection, oversight and monitoring." *See* Doc. 4-1, p. 68 (emphasis in italics supplied.)  This is sufficient notice to CDE as a claim need not contain the detail and specificity required of a pleading, but need only "fairly describe what [the] entity is alleged to have done." (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1426 [ 4 Cal.Rptr.2d 203]; *Turner v. State of California* (1991) 232 Cal.App.3d 883, 888 [ 284 Cal.Rptr. 349].) As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions (*Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 225 [ 267 Cal.Rptr. 13]), the claims statute "should not be applied to snare the unwary where its purpose has been satisfied" (*Elias v. San Bernardino County Flood Control Dist.* (1977) 68

- 10 -

Cal.App.3d 70, 74 [ 135 Cal.Rptr. 621]); *See Stockett v. Associates of Cal. Water Agencies Jt. Powers Ins. Authority*, 34 Cal. 4th 441, 446-447 (2004). That clearly occurred as such claims were investigated based on said tort claims, evaluated and as a consequence, GHS was closed and Point Quest School took over. The claim need not specify each particular act or omission later proven to have caused the injury. *Blair v. Superior Court, supra*, 218 Cal.App.3d at p. 225. In comparing claim and complaint, "we are mindful that `[s]o long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits.'" (*Smith v. County of Los Angeles, supra*, 214 Cal.App.3d at p. 280, quoting *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 123 [ 113 Cal.Rptr. 102, 520 P.2d 726].) If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted.

**D.      Plaintiffs Plausibly Allege the Elements of a Cause of Action For Their Claims.**

**1.      Plaintiffs Allege Viable Claims Under the ADA and Section 504**

Title II of the ADA prohibits governmental entities from denying persons with disabilities the benefits of its programs, services or activities. 28 U.S.C. § 12132. Section 504 of the Rehabilitation Act of 1973 ("Section 504") applies this same prohibition to entities receiving federal financial assistance. 29 U.S.C. § 794; 34 C.F.R. pt. 104. As there is no dispute that the CDE receives federal financial assistance and is a governmental entity, the analysis under both statutes is the same. *Duvall v. Cnty. of Kitsap*, 206 F.3d 114, 1135 (9th Cir. 2002); *Zukle v. Regents of the Univ of Cal.*, 166 F.3d 1040, 1045 n. 11 (9th Cir. 1999).

To state a claim for disability discrimination, a plaintiff must allege that: 1) she is an individual with a disability; 2) she is "otherwise qualified" to participate in or receive the program's services, programs or activities; and 3) she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or otherwise discriminated against by the public entity because of her disability. *Zukle*, 166 F.3d at 1045. To obtain damages, a plaintiff must demonstrate either intentional discrimination or deliberate indifference.

Plaintiffs are qualified individuals with disabilities. Defendants argue that they have not adequately alleged discrimination or deliberate indifference by the CDE. The ADA and Section 504 are violated not only by outright discrimination but also when a state entity engages in "forms of discrimination which deny disabled persons public services disproportionately due to their disability." *Crowder v. Kitagawal* 81 F. 3d 1480, 1483 (9th Cir. 1996); *see also, Mark H*, 513 F.3d at 937. The ADA and Section 504 prohibit governmental agencies from denying persons with

- 11 -

disabilities from "the benefits" of their programs. *Id*. at 937. These statutes require more than just some access to governmental services; they require "meaningful access". *Id*. Both statutes require that the state make reasonable modifications to its policies and practices when "necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access to a benefit because of their disability." *Id*. at 937-38 (collecting cases). Additionally, Title II states that:

> A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration-
> (i) That have the effect of subjecting qualified individuals with disabilities to    discrimination on the basis of disability;
> (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or
> (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 35 C.F.R. § 35.130(b)(3); *see* also 28 C.F.R. § 41.51(b)(3)(i)-(iii) & 45 C.F.R. § 84.4(b)(4)(i)- (iii) (similar regulations implementing Rehabilitation Act).

Nor may a public entity "administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability ... " 35 C.F.R. § 35.130(b)(6). Recipients of federal financial assistance may not "[a]id or perpetuate discrimination against a qualified handicapped person by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipients program or activity." 28 C.F.R. § 41.51(b)(1)(5); 45 C.F.R. § 84.4(b)(l)(v).

The CDE's failure to make reasonable modifications in its policies and practices in performing its duties of oversight, investigation, supervision and enforcement of nonpublic schools constitutes disability discrimination under the ADA and Section 504. The CDE has mandatory oversight of all schools within the state and is responsible for ensuring statewide compliance with state and federal laws within its educational system. 20 U.S.C. § 1412(a)(l 1) and Section V.B *supra*. The state's decision to "empower[] districts" in the provision of public education did not transfer its ultimate authority and responsibility to ensure that such education remains "open on equal terms to all." *Sato v. Orange Cnty. Dep't of Educ.*I 861 F.3d 923, 932-933 (9th Cir. 2017). In the context of providing a special education to students with disabilities, LEAs may contract with nonpublic schools to provide such education where the student needs services not available in the LEA. Cal. Ed. Code§ 56365(a) and (d). However, these schools must be certified by the state and provide "assurances necessary to comply with all applicable federal, state, and local laws",

- 12 -

including the ADA and Section 504. Cal. Ed. Code§ 56366.l(a)(5).  The state must annually review the nonpublic school's certification and conduct ongoing onsite reviews at least every three years or, in the case of conditional certification or the receipt of a formal complaint against the school, annually. Cal. Ed. Code § 56366.1(e)(1) and (h).

The CDE "shall conduct an investigation of a nonpublic, nonsectarian school or agency onsite at any time without prior notice if there is substantial reason to believe that there is an immediate danger to the health, safety, or welfare of a child." Cal. Ed. Code § 56366.1(i)(l).

Moreover, the SSPI must monitor and supervise the use of restraints and other "behavioral interventions" in nonpublic schools. Cal. Ed. Code § 56521(b).  The CDE abdicated its monitoring, investigation and enforcement duties with regard to GHS. Moreover, in light of repeated notifications from the U.S. Department of Education regarding the disproportionate use of restraints on children with disabilities and their tragic outcomes, the CDE's failure to make reasonable modifications to its policies and practices regarding certification, monitoring, supervision, and investigation of nonpublic schools constituted disability discrimination under the ADA and Section 504.

The CDE knew or should have known that: students with disabilities were being restrained frequently and for long periods of time; the types of restraints being used in California schools were dangerous and have resulted in serious injury to and death of students with disabilities in response to manifestation behavior; and the particular disabilities of the children against whom these restraints are used make the restraints even more dangerous.

On July 31, 2009, then U.S. Secretary of Education, Arne Duncan, sent a letter to the chief state school officers informing them of congressional testimony from the Government Accountability Office ("GAO") about "the abusive and potentially deadly misapplication of seclusion and restraint techniques in schools." RJN, Ex. 1. Duncan urged "each State to review its current policies and guidelines regarding the use of restraints and seclusion in schools to ensure every student is safe and protected, and if appropriate, develop or revise its policies and guidelines." *Id*. The GAO found restraints and other discipline were disproportionately used on children with disabilities, particularly those with disabilities that the Plaintiff Students have. RJN, Ex. 2 at 7-8. In 2012, the U.S. Department of Education ("DOE") issued a resource guide recommending fifteen recommended policies and practices that states and LEAs should implement to protect children from the dangers of restraints. RJN, Ex. 3 at Appendix B.

Additionally, the U.S. Department of Justice, Office of Civil Rights issued a Dear Colleague

- 13 -

Letter on Restraint and Seclusion of Students with Disabilities on December 28, 2016, notifying educational agencies that students with disabilities were being restrained at a much higher rate than other students. RJG, Ex. 4.  In the letter, OCR noted that federal law, including the ADA and Section 504, significantly limits the use of restraints in public school districts.

According to [OCR's Civil Rights Data Collection], during the 2013-14 school year, students with disabilities were subjected to mechanical and physical restraint and seclusion at rates that far exceeded those of other students.  Specifically, students with disabilities served by the Individuals with Disabilities Education Act (IDEA) represented 12% of students enrolled in public schools nationally, but 67% of the students who were subjected to restraint or seclusion in school. Based on data reported to OCR, approximately 100,000 students were placed in seclusion or involuntary confinement or were physically restrained at school to immobilize them or reduce their ability to move freely, including more than 69,000 students with disabilities served by the IDEA.

Data disparity alone does not prove discrimination.  The existence of a disparity, however, does raise a question regarding whether school districts are imposing restraint or seclusion in discriminatory ways.  *Id* at 2. In response to these repeated communications from the DOE, the CDE took no action.

Pursuant to an amendment to state law and the repeal of Cal. Code Regs. Tit. 5, §3052(i)(9), schools were no longer required to provide Behavioral Emergency Reports to LEAs as of 2013. Cal. Ed. Code § 56520, *et seq*.  Although that was a legislative decision, the CDE did not implement other procedures or practices to enable it to monitor a dangerous practice that was disproportionately impacting students with disabilities.  The CDE continued to certify GHS and failed to monitor or investigate its use of restraints, despite its statutory duty to do so and its knowledge of their disproportionate use on children with disabilities in California.

The CDE and the LEAs knew that unlawful restraints were being used at GHS on children with disabilities for predictable behavior associated with their disabilities.  At least one compliance complaint was filed with the CDE alleging improper use of restraints at GHS in the month preceding Max' Benson's death.  RJN, Exs. 5, 6.3 California Ed. Code § 56366.1(i)(l) requires the CDE to conduct an onsite investigation of a nonpublic school without prior notice "if there is substantial reason to believe that there is an immediate danger to the health, safety, or welfare of a child."  In response to the compliance complaint Plaintiff Stark in the Max Benson case filed with the CDE on November 6, 2018, alleging that GHS improperly restrained and injured her 9-year-old son at least twice in two months, the CDE did not immediately conduct an onsite visit.  RJN,

- 14 -

Ex. 5.  In fact, it did not visit GHS until more than three weeks later, on November 30, 2018, and only in response to the fact that Max Benson was restrained and killed by GHS staff. *Id.*

The CDE directly and through its certification of GHS used "criteria or methods of administration" that: a) "had the effect of subjecting" plaintiffs to disability discrimination; b) "defeated and/or substantially impaired the objectives" of providing an appropriate education to Plaintiffs; and c) perpetuated the discrimination of the LEAs in violation of 35 C.F.R. § 1 130(b)(3); 28 C.F.R. § 41.51(b); 45 C.F.R. § 84.4(b)(4)(i)-(iii). It "administer[ed] a licensing or certification program in a manner that subject[ed]" plaintiffs to discrimination on the basis of their disabilities, 35 C.F.R. § 35.130(b)(6); and aided and perpetuated discrimination against students with disabilities by providing significant assistance to Defendants GHS and the LEAs, which discriminate against persons with disabilities. 28 C.F.R. § 41.51(b)(1)(5); 45 C.F.R. §84.4(b)(1)(v). Additionally, DOE communications, reports, and publicized deaths and injuries of students who were restrained made it clear that the CDE's policies and practices for monitoring and preventing their improper use were not working and needed to be modified.

Plaintiffs have pleaded sufficient facts to demonstrate the CDE's deliberate indifference to the disproportionate restraints and subsequent harm children with disabilities were being subjected to. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Duvall* F.3d at 1139.  Courts in this Circuit have found that an educational agency's failure to investigate known or suspected harassment or to make reasonable modifications to its policies and procedures in order to stop discrimination may constitute deliberate indifference. *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1135-36 (9th Cir. 2003) (failure to investigate reported harassment or take effective measures to stop discrimination could constitute deliberate indifference under Section 1983); *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1126-27 (E.D. Cal. 2018) (plaintiff can prove disability discrimination under Section 504 by showing that bullying he endured was substantially likely to infringe upon his right to a free appropriate public education and the school district did not provide reasonable accommodations to diminish that likelihood); *D.K. v. Solano Cnty. Office of Educ.*, 667 F. Supp. 2d 1184, 1193 (E.D. Cal. 2009) (denying motion to dismiss ADA and Section 504 claims for damages where plaintiff alleged that school district employees "knew or should have known of the abuse and failed to report it or end it."); *Monteiro v. Tempe Union High Sch. Dist.,* 158 F.3d 1022, 1034 (9th Cir. 1998) ("Once on notice of the problem, a school district 'has a legal duty to take reasonable steps to eliminate' a racially hostile

- 15 -

environment.  Under this standard, the district is liable for its failure to act if the need for intervention was so obvious, or if inaction was so likely to result in discrimination, that 'it can be said to have been deliberately indifferent to the need.'") (internal citations omitted); *Annamaria Mv. Napa Valley Unified Sch. Dist.,* No. C 03-0101 VRW, 2006 WL 1525733, at *5 (N.D. Cal. May 30, 2006) (student adequately alleged deliberate indifference where district knew its response to discrimination was ineffectual and waited too long to act decisively to end the harassment).

The CDE has known for more than a decade that children with disabilities were being disproportionately restrained and that such restraints carried a high risk of injury and death.  RJN, Exs. 1-4.  Yet it did not modify its policies and practices to investigate, monitor or eliminate the abusive use of restraints at nonpublic schools such as GHS.  Similarly, the CDE had a duty to train or ensure training of LEA or NPS staff to monitor, recognize, report and respond to improper use of restraints.  Here, "there was an obvious need for training and ...the discrimination the plaintiffs faced was a highly predictable consequence of the defendants not providing that training." *Flores*, 324 F.3d at 1136, citing *Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432,439 n. 4 (9th Cir. 1997).

The SAC sufficiently alleges the CDE's knowledge of and deliberate indifference to the widespread and disproportionate use of dangerous restraints on students with disabilities, as well as its knowledge that its current investigation, oversight, and training policies and practices were deficient in preventing such abuse. If the Court disagrees, plaintiffs request that the Court grant Plaintiffs leave to amend their complaint.  State claims (COA 1 through 4).

### 2.      State Claims (COA 1 through 4).

### First Cause of Action Under the Unruh Act

CDE points to *Brennon B. v. Superior Court of Contra Costa County*, 57 Cal. App. 5th 367, 389 (2020), review granted and request for de-publication denied, 275 Cal. Rptr. 3d 232 (2021),  to argue that CDE is not governed by the Unruh Act. California's First District Court of Appeals held that public school districts are not business establishments under the Act.

The general policy embodied in the Unruh Act,  [Civil Code] section 51 can be traced to the early common law doctrine that required a few, particularly vital, public enterprises to serve all members of the public without arbitrary discrimination. (*See* generally, *Tobriner & Grodin*, The Individual and the Public Service Enterprise in the New Industrial State (1967) 55 Cal.L.Rev. 1247, 1250 [(Tobriner & Grodin)].) The Unruh Act prohibits discrimination based on disability in "business establishments." Cal. Civ. Code § 51(b).  While *Brennon B. v. Superior Court of Contra Costa County*, 57 Cal. App. 5th 367, 389 (2020), review granted and request for de-publication

- 16 -

denied, 275 Cal. Rptr. 3d 232 (2021), held that public school districts are <u>not</u> business establishments under the Act, as *Brennon B*. focused only on one type of entity established under state law, *i.e.*, school districts. *See Id*. 372, 379, 388.

CDE admits that there is no California Supreme Court authority directly on point. *Id*., at 23. *Brennon B*. is citable only for persuasive authority.  "The California Department of Education's stated mission is to ensure a "world-class education for all students, from early childhood to adulthood." Toward that end, "the department generates information and reports on educational demographics and statistics, school performance, student testing and records, and funding opportunities."   Such activities fall within the definition of a business, and, therefore, the Unruh Act is applicable to CDE.  And, "a violation of the ADA is, *per se*, a violation of the Unruh Act." *Lentini v. Calif. Ctr. for the Arts*, 370 F.3d 837, 847 (9th Cir. 2004); Cal. Civ. Code § 51(f).  Because Plaintiffs' ADA claim is valid, so also is their Unruh Act claim. The California Supreme Court has not addressed the question of whether the CDE is a "business" pursuant to the Unruh Act but has held that the term should be construed "in the broadest sense reasonably possible." *Ibister v. Boys' Club of Santa Cruz, Inc*., 40 Cal. 3d 72, 78 (1985).

Plaintiffs allege their claims under Cal. Civ. Code §§ 51.7 and 52.1 is against CDE. Civil Code § 51.7 (the Ralph Act), which prohibits violence or "intimidation by threat of violence" against persons based on disability. Civil Code § 52.1 (the Bane Act) prohibits interference by threat, intimidation or coercion with one's exercise or enjoyment of rights under state or federal law.

### Second Cause of Action Under the Ralph Act

The Ralph Act prohibits violence or intimidation by threat of violence against a person because of disability. Cal. Civ. Code § 51.7(b)(1). Civil Code section 51, subdivision (b) provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Italics added.).

The CDE was complicit in interfering with and denying full and equal access to Plaintiffs of their education and allowed Plaintiffs to experience violence and the threat of violence on multiple occasions based on their disability.  The word "interferes" as used in the Bane Act means "violates." (*See Jones, supra*, 17 Cal.4th at p. 338 [California Supreme Court equates "interfere" with "violate"]; *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077 [ 4 Cal.Rptr.3d

- 17 -

468] [same].) Similar to the Bane Act, the Ralph Act does not define any of the three operative words "violence," "intimidation" or "threat." Words alone can violate the Ralph Act. *See Long v. Valentino* (1989) 216 Cal.App.3d 1287, 1296-98. The appropriate standard to determine whether the threatened violence was intimidating is "would a reasonable person, standing in the shoes of the plaintiff, have been intimidated by the actions of the defendant and have perceived a threat of violence?" *Winarto v. Toshiba America Electronics Components, Inc.* (9th Cir. 2001) 274 F.3d 1276, 1289-90.

### Third Cause of Action Under the Bane Act

The Bane Act prohibits interference or attempted interference by threat, intimidation or coercion with an individual's exercise or enjoyment of federal or state constitutional or statutory rights. Cal. Civ. Code§ 52.l(b).  The essence of a Bane Act claim is that the defendant, by the specified improper means (*i.e.,* "threats, intimidation or coercion"), tried to or prevented the plaintiff from doing something he/she had the right to do under the law or to force the plaintiff to do something that he/she was not required to do under the law. (*Jones, supra*, 17 Cal.4th at p. 334.)

The CDE interfered or attempted to interfere with Plaintiffs' rights. It does not matter that the CDE never had physical contact with T.V.M. or J.V.M. Plaintiffs allege their claims under Cal. Civ. Code §§ 51.7 and 52.1 against CDE, not the individual Defendants. Civil Code § 51.7 (Ralph Act), prohibits violence or "intimidation by threat of violence" against persons based on disability. Civil Code § 52.1 (Bane Act) prohibits interference by threat, intimidation or coercion with one's exercise or enjoyment of rights under state/federal law. California law permits *respondeat superior* liability for Ralph and Bane Act violations. *I.V. v. Vacaville Unified Sch. Dist.*, No. 2:19-cv-00273-KJM-DB, 2020 U.S. Dist. LEXIS 28474, at *17 (E.D. Cal. Feb. 20, 2020); *Beliveau v. Caras*, 873 F. Supp. 1393, 1401(C.D. Cal. 1995). Defendants are vicariously liable for GHS's acts, which constitute violations of those statutes. *Wagon*, 2019 U.S. Dist. LEXIS 105387, at **13-14, 19.

### Fourth Cause of Action Under Cal. Educ. Code §220

Section 220 prohibits discrimination on the basis of disability in educational programs that receive or benefit from state financial assistance. Cal. Ed. Code § 220. A claim under section 220 must allege the following: 1) "severe, pervasive and offensive" harassment or abuse on the basis of one's disability which effectively deprived the student of equal access to the educational benefits and opportunities of the program*." Smith v. Tobinworld*, No. 16-CV-01676-RS, 2016 U.S. Dist. LEXIS 83960, at *8 (N.D. Cal. June 28, 2016); and 2) the Defendant had "actual knowledge" of the abuse acted with "deliberate indifference" in the face of that knowledge. *IV v. Vacaville Unified*

- 18 -

*Sch. Dist.*, No. 2:19-cv-00273-KJM-DB 2020 U.S. Dist. LEXIS 28474, at *26-27 (E.D. Cal. Feb. 19, 2020). Here, Defendant CDE had actual knowledge of the dangerous restraints to which students with disabilities, such as the plaintiff children herein, were being subjected to at a disproportionate rate in California. Moreover, CDE had received at least one compliance complaint alleging the repeated and improper use of restraints resulting in injuries to a GHS student in the month prior to Max Benson's death. TAC, para. 140. Yet, it acted with deliberate indifference to the clear ineffectiveness of its policies and practices for monitoring and enforcing prohibitions limiting restraint use. And in the face of an allegation of the use of illegal restraints at GHS, it did not conduct a visit of GHS for over three weeks, and only then because another student had been restrained and killed. TAC, para. 163. Plaintiffs have adequately alleged a violation of Cal. Ed. Code §220. IDEA exhaustion is not necessary.

**E.     CDE's Argument to Sever Should Be Denied.**

CDE requests severance only in the alternative by stating, "In the event that the motion is not granted in its entirety, the court should sever Plaintiff's claims against Guiding Hands School and Point Quest as to the CDE," citing Fed. R. Civl. P. 21.

The SAC identifies claims against Guiding Hands School and Point Quest. As noted above, as to T.V.M., multiple restraints were applied at Guiding Hands School, and one restraint at GHS' successor, Point Quest.

Further, the SAC alleges that another student died after a restraint at Guiding Hands School in November 2018. All such claims involve the same defendants and the same acts.

Defendant makes little argument or justification for severance because Defendant knows that these Plaintiffs deserve to stay together in this case. Throughout the years, this Defendant has managed to drown out so many individual voices of so many California parents and injured children, often by separating and isolating these parental voices so they cannot be heard, or by keeping these families in the dark altogether concerning the abuses being wrought on their children in schools where they were falsely portrayed to be safe. These parents and children are represented here, in this case, now screaming for this Defendant and this Court to hear them, banded together for the greater public good, to finally bring to light and accountability the true macrocosm of the abusive mistreatment of our disabled and defenseless children throughout the State of California.

Federal Rule of Civil Procedure 20(a)(l) permits persons to join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

- 19 -

(2) Defendants.  Persons ... may be joined in one action as defendants if:
(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.

Rule 20 allows:
plaintiff to join tortfeasors
plaintiff to join defendants who are or may be liable in the alternative permits multiple plaintiffs to join together in one suit.

With respect to Title VII, courts have found that the discriminatory character of a defendant's conduct is basic to the class, and the fact that the individual class members may have suffered different effects from the alleged discrimination is immaterial for the purposes of the prerequisite.  *Mosley v. General Motors Corporation* (page 24; 8th Circuit) [497 F. 2d 1330, Ct. App., 8th Cir. 1974].  All 'logically related' events [dangerous application of physical restraints to disabled children] entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.  *Id.* The difficulties of ultimately determining damages to various plaintiffs are not so overwhelming as to require severance; and, if appropriate, separate trials can be granted on damages after the determination of common questions.  *Id.*

CDE fails to acknowledge that a liberal approach to joinder has been adopted to allow plaintiffs to consolidate claims and parties in single actions in order to promote judicial economy and avoid unnecessary, multiple lawsuits.  *See United Mine Workers of Am. Gibbs*, 383 U.S. 715, 724 (1966).  The purpose of Rule 20 "is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Stephens*, 807 F. Supp. 2d at 381 (citing *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983)).

The claims brought by Plaintiffs are logically related.  Both were placed at GHS in 2018. Both were injured by improper use of illegal restraints, arising out of a similar series of occurrences.

The injuries suffered by these children were all foreseeable and were perpetrated in the same manner, and all of the injuries were related directly to the use of prone restraints pursuant to the tacit and/or explicit approval of CDE.

In summary, fundamental fairness requires a denial of the request for the severance of Plaintiffs' claims against Guiding Hands School and Point Quest as to the CDE.

**CONCLUSION**

**WHEREFORE** Plaintiffs respectfully request that CDE's motion to dismiss the SAC and to sever be denied.

- 20 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

 /s/  Merit Bennett

Merit Bennett, *PHV Co-Counsel for Plaintiffs*

- 21 -

Seth L. Goldstein, S.B.N. 176882
slglawoffice@gmail.com
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone (831) 372 9511
Fax (831) 372 9611
Lead-Counsel for Plaintiffs

Merit Bennett, *Pro Hac Vice*
mb@thebennettlawgroup.com
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836
Co-Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LOUIE MARQUES, et al.,

        Plaintiffs,

   v.

GUIDING HANDS SCHOOL, Inc., et al.,

        Defendants.

**Case No. 2:22-cv-00150-TLN-KJN**

**CERTIFICATE OF SERVICE;
PLAINTIFFS OPPOSITION TO
DEFENDANT CALIFORNIA
DEPARTMENT OF EDUCATION
MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT AND
TO SEVER**

**DATE: March 10. 2022**

**TIME: 2:00 pm**

**Judge: Hon. Troy L. Nunley**

**Trial Date:  Not Set**

**CERTIFICATE OF SERVICE**

1

1        I am admitted to practice *pro hac vice* in County of Monterey, State of California.

2        I am over the age of eighteen (18) years and not a party to the within action.  My business

3    address is 460 St. Michael's Drive, Suite, 703, Santa Fe, New Mexico 87505.

4        I hereby certify that on this 24 day of February 2022, we filed the foregoing pleading

5    electronically through the CM/ECF system, which notified the following counsel of record serving

6    the same on the parties to this action by electronic service, as addressed as follows:

7            Leonard Bruce Garfinkel: lgarfinkel@cde.ca.gov

8        [ X ]  (BY ELECTRONIC SERVICE)

9        I declare under penalty of perjury under the laws of the State of California that the foregoing

10   is true and correct and that this declaration was executed on February 24, 2022, at Santa Fe, New

11   Mexico.

12                                        */s/ Merit Bennett*
                                   Merit Bennett, Attorney at Law

- 2 -

Seth L. Goldstein, S.B.N. 176882
slglawoffice@gmail.com
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone (831) 372 9511
Fax (831) 372 9611
Lead-Counsel for Plaintiffs

Merit Bennett, *Pro Hac Vice*
mb@thebennettlawgroup.com
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836
Co-Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LOUIE MARQUES, et al.,

Plaintiffs,

v.

GUIDING HANDS SCHOOL, Inc., et al.,

Defendants.

**Case No. 2:22-cv-00150-TLN-KJN**

**DECLARATION OF MERIT BENNETT IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO SEVER**

**DATE: March 10. 2022**

**TIME: 2:00 pm**

**Judge: Hon. Troy L. Nunley**

**Trial Date:  Not Set**

**DECLARATION OF MERIT BENNETT IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO SEVER**

- 1 -

I, Merit Bennett, hereby declare as follows:

1.     I am an attorney admitted to practice *pro hac vice* in County of Monterey, State of California

2.     I am co-counsel of records for the Plaintiffs herein.

3.     I have personal knowledge as to the facts set forth above and for those that are not personally known to me, they are offered on information and belief from supporting documentation.

4.     This declaration is made in support of said Plaintiffs' Opposition to Defendant California Department of Education's Motion to Dismiss Plaintiffs' Second Amended Complaint and to Sever.

5.     Plaintiffs' counsel firmly believe they have sufficiently pled facts against the Defendant CDE on all claims and that said claims will survive the pending motion to dismiss.

6.     Plaintiffs' counsel firmly believe they have sufficiently pled commonality that will survive the pending motion to sever.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on February 24, 2022, at Santa Fe, New Mexico.

DATED:  February 24, 2022.


                                                   /s/ *Merit Bennett*
                                                  Merit Bennett, Attorney at Law

2