Seth L. Goldstein, S.B.N. 176882
2100 Garden Road, Suite H-8
Monterey, California, 93940
Telephone (831) 372 9511
Fax (831) 372 9611
Lead-Counsel for Plaintiffs

Merit Bennett, *Pro Hac Vice*
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836
Co-Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIE MARQUES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GUIDING HANDS SCHOOL, Inc., et al.,<br><br>Defendants. | **Case No. 2:22-cv-00150-TLN-KJN**<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT ROCKLIN UNIFIED SCHOOL DISTRICT, KRISTI GERGERSEN, TROY TICKLE, KRISTAIN ROYER AND BETH DAVIDSON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**DATE: N/A**<br><br>**TIME: N/A**<br><br>**Judge: Hon. Troy L. Nunley**<br><br>**Trial Date: Not Set** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS ROCKLINE UNIFIED SCHOOL DISTRICT, KRISTI GERGERSEN, TROY TICKLE, KRISTAIN ROYER AND BETH DAVIDSON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1
2

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................... 3

II.     Laws Regarding Restraints and Behavioral Interventions ................................ 4

III.    Legal Standard ............................................................................................ 5

IV.     Argument ................................................................................................... 6

        A.      ALL INVOLVED DEFENDANTS WERE STATE ACTORS ........................... 3

        B.      STATE LAW CLAIMS ARE NOT BARRED, AS PLAINTIFFS
                COMPLIED WITH THE CALIFORNIA GOVERNMENT
                CLAIMS ACT ............................................................................ 5

        C.      PALINTIFFS HAVE ALLEGED VALID CAUSES OF ACTION
                UNDER THE UNRUH, RALPH AND BANE ACTS ........................... 9

        D.      PLAINTIFFS HAVE ALLEGED VALID CLAIMS UNDER
                CAL. ED. CODE §§200, 201, 220 & 260 ...................................... 11

        E.      PLAINTIFFS HAVE ALLEGED VALID COMMON LAW
                CAUSES OF ACTION ................................................................. 12

        F.      PLAINTIFFS ALLEGE VALID ADA AND SECTION 504
                CLAIMS .................................................................................... 15

        G.      EXCESSIVE FORCE STATES A CAUSE OF ACTION FOR
                WHICH RELIEF CAN BE GRANTED ............................................ 18

VII.    CONCLUSION ............................................................................................ 20

CERTIFICATE OF SERVICE ........................................................................ 21(1-2)

DECLARATION OF MERIT BENNETT ...................................................... 23(1-2)

i

1

**TABLE OF AUTHORITES**

2

<u>**CASES**</u>

3

*Addison v. State,*

4

    21 Cal.3d 313, 320-21 (1978) ......................................................................... 6

5

*Albino v. Baca,*

6

    747 F.3d 1162 (9th Cir. 2014)...................................................................... 17

7

*Bananno v. Thomas,*

    309 F. 2d 320, 322 (9th Cir. 1962)................................................................. 3

8

*Bell Atl. Corp. v. Twombly,*

9

    *550 U.S. 544, 570 (2007*) ............................................................................ 2

10

*Blair v. Superior Court,*

11

    218 Cal.App.3d 221, 225 (Cal. Ct. App. 1990) ............................................ 8

12

*Blanchard v. Morton Sch. Dist.,*

13

    509 F.3d 934, 936 (9th Cir. 2014), cert. denied, 552 U.S. 1231 (2008).......................... 17

14

*Blankenhorn v. City Of Orange,*

    485 F.3d 463, 481, (9th Cir. 2007)................................................... 19, 20

15

*Beliveau v. Caras,*

16

    *873 F. Supp. 1393, 1401(C.D. Cal. 1995)* ................................................ 11

17

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*

18

    531 U.S. 288, 295 (2001).............................................................................. 3

19

*C.A. v. Williams S. Hart Union High Sch. Dist.,*

    53 Cal. 4th 861, 879 (2012) ................................................................. 13, 14

20

*Cahill v. Liberty Mut. Ins. Co.,*

21

    80 F.3d 336, 337-38 (9th Cir. 1996) .......................................................... 2

22

*Carlsen v. Koivumaki,*

23

    227 Cal.App.4th 879, 890 (2014*)* .............................................................. 13

24

*CB. v. Sonora School Dist.,*

25

    691 F. Supp. 2d 1170, 1186 (E.D. Cal. 2010)............................................ 15

26

*Cervantes v. J.C. Penny Co.,*

    *24 Cal. 3d 579, 593 (1979)* .............................................................. 6, 7, 15

27

*City of Simi Valley v. Superior Court,*

28

    111 Cal.App.4th 1077 (Cal. Ct. App. 2003) ............................................. 10

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.,*
    911 F.2d 242, 247 (9th Cir. 1990)...................................................................................... 3

*Curtis T. v. County of Los Angeles,*
    123 Cal.App.4th 1405, 1420 (2004)..................................................................................... 6

*Doe, ex rel. Brockhuis v. Ariz. Dep't of Educ.,*
    111 F.3d 678, 681 (9th Cir. 1997)...................................................................................... 18

*Duvall v. Cnty. of Kitsap,*
    260 F.3d 1124, 1138 (9th Cir. 2001).................................................................................. 16

*Easton v. Sutter Coast Hosp.,*
    80 Cal.App.4th 485,496 (2000).......................................................................................... 15

*Elias v. San Bernardino County Flood Control Dist.,*
    68 Cal.App.3d 70, 74 (Cal. Ct. App. 1977) ........................................................................ 7

*Fry, ex rel. E.F. v. Napoleon Cmty. Schs.,*
    137 S. Ct. 743 (2017) ............................................................................................. 3, 17, 18

*Garcia v. City of Merced,*
    637 F.Supp.2d 731, 748 (E.D. Cal. 2008) ......................................................................... 13

*Harris v. Capital Growth Investors XIV,*
    52 Cal.3d 1142 (Cal. 1991)................................................................................................ 10

*Hughes v. Pair,*
    46 Cal. 4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009) ................................. 14

*Ibister v. Boys' Club of Santa Cruz, Inc.,*
    40 Cal. 3d 72, 78 (1985) ...................................................................................................... 9

*I.V. v. Vacaville Unified Sch. Dist.,*
    No. 2:19-cv-00273-KJM-DB (E.D. Cal. Feb. 19, 2020)................................................... 11

*Jones v. Kmart Corp.,*
    17 Cal.4th 329 (Cal. 1998)........................................................................................... 10, 19

*J.M. v. Huntington Beach Union High Sch. Dist.,*
    2 Cal. 5th 648, 657 (2017) .................................................................................................. 6

*K.J., 172 Cal. App. 4th at 1233*.................................................................................................. 6

*Kirtley v. Rainey, 326 F.3d 1088,*
    1093 (9th Cir. 2003).......................................................................................................... 3, 5

iii

*Lentini v. Calif. Ctr. for the Arts,*
        370 F.3d 837, 847 (9th Cir. 2004) ............................................................. 9

*Long v. Valentino,*
        216 Cal.App.3d 1287 (Cal. Ct. App. 1989) ............................................. 10

*Mack v. South Bay Beer Distributors, Inc.,*
        798 F.2d 1279, 1282 (9th Cir. 1986) ........................................................ 2

*Marder v. Lopez,*
        450 F.3d 445, 448 (9th Cir. 2006) ............................................................ 3

*Mark H. v. Hamamoto,*
        620 F.3d 1090, 1097 (9th Cir. 2010) ...................................................... 16

*Monell v. Department of Social Services,*
        43 U.S. 658 (1978) ................................................................................. 20

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
        521 F.3d 1097, 1104 (9th Cir. 2008) ........................................................ 2

*Minsky v. City of Los Angeles,*
        11 Cal.3d 113 (Cal. 1974) ........................................................................ 8

*Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Educ.,*
        No. 2:11-cv-3471-KJM-AC (E.D. Cal. Mar. 29, 2013) .......................... 18

*OSU Student Alliance v. Ray,*
        699 F.3d 1053, 1069 (9th Cir. 2012) ...................................................... 19

*Payne v. Peninsula Sch. Dist.,*
        653 F.3d 863, 871-74 (9th Circ. 2011) .............................................. 16, 17

*Penbaur v. City of Cinncinati,*
        45 U.S. 469, 481 (1986) ......................................................................... 20

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.,*
        479 F.3d 1175, 1180 (9th Cir. 2007) ...................................................... 19

*Scofield v. Critical Air Medicine, Inc.,*
        45 Cal.App.4th 990, 1001 (1996) ........................................................... 14

*Shaw v. Cnty. of Santa Cruz,*
        170 Cal.App.4th 229, 251, fn. 24 (2008) .................................................. 7

*Shoemaker v. Myers,*
        2 Cal.App.4th 1407 (Cal. Ct. App. 1992) ................................................. 7

iv

*Smith v. County of Los Angeles,*

    214 Cal.App.3d 266 (Cal. Ct. App. 1989) ........................................................ 8

*Smith v. Tobinworld,*

    No. 16-cv-01676-RS (N.D. Cal. June 28, 2016).............................................. 11

*Stockett v. Associates of Cal. Water Agencies Jt. Powers Ins. Authority,*

    34 Cal. 4th 441, 446-447 (2004)............................................................... 7, 15

*Symonds v. Mercury Savings & Loan Assn.,*

    225 Cal. App. 3d 1458, 1469 (1990)............................................................ 15

*Taylor v. Oakland Scavenger Co.,*

    17 Cal.2d 594 (Cal. 1941) ............................................................................. 8

*Turner v. State of California,*

    232 Cal.App.3d 883, 888 (Cal. Ct. App. 1991) .............................................. 7

*Wagon v. Rocklin Unified Sch. Dist.,*

    No. 2:17-cv-01666-TLN-KJN (E.D. Cal. June 21, 2019).......................... 11, 16

*Webb v. Sloan,*

    330 Fed. 3d 1158, 1164 ............................................................................... 20

*Winarto v. Toshiba Am. Electronics Components,*

    274 F.3d 1276 (9th Cir. 2001)...................................................................... 10

*Vess v. Ciba-Geigy Corp. USA,*

    317 F.3d 1097, 1106 (9th Cir. 2003)............................................................ 14

*Zukle v. Regents of the Univ of Cal.,*

    166 F.3d 1040, 1045 n. 11 (9th Cir. 1999)............................................... 15, 16

v

1

## **RULES**

2

Federal Rules of Civil Procedure

3

    12(b)(6) ....................................................................................................................... 2

4

California Civil Code

    Cal. Civ. Code § 51 and 52. ................................................................................. 9, 10

5

## **OTHER**

6

California Code of Regulations

7

    5 C.C.R. § 4902............................................................................................................ 4, 9

    5 C.C.R. § 4960............................................................................................................ 4, 9

8

California Education Code

9

    Cal. Ed. Code § 44807 ................................................................................................. 14

    Cal. Ed. Code § 49001. ................................................................................................. 1

    Cal. Ed. Code § 56040 ................................................................................................... 3

    Cal. Ed. Code § 56195. ............................................................................................ 4, 13

    Cal. Ed. Code § 56205 ............................................................................................. 4, 13

    Cal. Ed. Code § 56342 ............................................................................................... 3, 8

    Cal. Ed. Code § 56344 ................................................................................................... 3

    Cal. Ed. Code § 56360 ............................................................................................. 8, 13

    Cal. Ed. Code § 56361 ............................................................................................. 8, 13

    Cal. Ed. Code § 56365 ........................................................................................ 8, 9, 13

    Cal. Ed. Code § 56366 ................................................................................ 3, 7, 8, 9, 13

    Cal. Ed. Code § 56520 ............................................................................................... 1, 7

    Cal. Ed. Code § 56521 ............................................................................................ 1, 2, 7

    Cal. Ed. Code § 56523 ................................................................................................... 2

20 U.S.C. § 1400, 1401, 1411-1413, 1415............................................... 6, 8, 11, 16, 18

28 U.S.C.  § 12132 ........................................................................................................ 15

29 U.S.C. § 794............................................................................................................... 15

42 U.S.C. § 198............................................................................................................ 3, 18

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs do not recount the background facts of the instant case as they are set forth fully in Plaintiffs operative Second Amended Complaint ("SAC") on January 28, 2022 (*See* ECF No. 4-1).

## II.     LAWS REGARDING RESTRAINTS AND BEHAVIORAL INTERVENTIONS

California prohibits corporal punishment in public schools. Cal. Educ. Code § 49001(b). The Educational Code defines "corporal punishment" as "the willful infliction of, or willfully causing the infliction of, physical pain on a pupil." Cal. Educ. Code § 49001(a). Exempted from the definition is "[a]n amount of force that is reasonable and necessary for a person employed by or engaged in a public school to quell a disturbance threatening physical injury to persons or damage to property, for purposes of self–defense, or to obtain possession of weapons or other dangerous objects within the control of the pupil." *Id.* The California legislature has enacted laws encouraging positive behavioral interventions and placing restrictions on "behavioral interventions" that involve the use of physical force on children "with exceptional needs," including in nonpublic schools. Cal. Ed. Code § 56520, *et. seq.*; Cal. Ed. Code § 56521(a).3

"Emergency interventions may only be used to control unpredictable, spontaneous behavior that poses clear and present danger of serious physical harm to the individual with exceptional needs, or others, and that cannot be immediately prevented by a response less restrictive . . ." Cal. Ed. Code § 56521.1(a). The statute prohibits using "emergency interventions:" a) as a substitute for the positive interventions outlined in a student's behavioral intervention plan; b) "for longer than is necessary to contain the behavior;" c) that employ the use of prone restraints by staff who have not been trained in those procedures; and d) that exert "[a]n amount of force that exceeds that which is reasonable and necessary under the circumstances." Cal. Ed. Code § 56521.1(b)-(d). The law requires that school officials notify the child's parents or guardians within one school day if an emergency intervention is used and complete a "behavioral emergency report" ("BER"). Cal. Ed. Code § 56521.1(e). The purpose of BERs is "[t]o prevent emergency interventions from being used in lieu of planned, systematic behavioral interventions," and they must be "immediately be forwarded to, and reviewed by, a designated responsible administrator." Cal. Ed. Code § 56521.1(e) and (f). When the child has a "positive behavioral intervention plan," the law requires an IEP team meeting within two days to determine whether the plan should be modified. Cal. Ed. Code § 56521.1(h).

Under Cal. Ed. Code § 56521.2, neither Local Plan Areas (LEAs) nor nonpublic schools may "authorize, order, consent to, or pay for" interventions that, among other prohibitions: 1) are designed or likely to cause physical pain; 2) deny adequate "physical comfort, or access to bathroom facilities;" 3) are designed, used or likely to subject the student to "verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma;" or 4) except as a limited measure, use prone restraints. Cal. Ed. Code § 56521.2(a)(1)(3)(4) and (5). Although the law directs the SSPI to monitor and supervise the implementation of these laws (Cal. Ed. Code § 56521(b)), LEAs have an independent duty of implementation. Cal. Ed. Code § 56523(b) (laws "shall be implemented by local educational agencies without the development by the Superintendent and adoption by the state board of any additional regulations."). Compliance with these laws is a condition of receiving federal funding for special education. § 56523(d).

## III.    LEGAL STANDARD

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id*. at 555.

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may bring a motion to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

The complaint need not provide detailed factual allegations but must provide the factual and legal basis for the plaintiff's "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations should be sufficient to demonstrate the plaintiff's right to relief on more than a speculative basis. *Id.* Although the Court generally limits its review on a Rule 12(b)(6) motion to the contents of the complaint, it "may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). The court may also "consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to

- 2 -

the document; (2) the document is central to the claim; and (3) no party questions its authenticity." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Finally, if the court grants the motion, it should grant plaintiffs leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990), quoting *Bananno v. Thomas* 309 F. 2d 320, 322 (9th Cir. 1962).

## IV.   ARGUMENT

### A.   ALL INVOLVED DEFENDANTS WERE STATE ACTORS

All ROCKLIN and SELPA employees were acting in their official capacities under the color of state law.  They all failed to do things they were mandated to do and abdicated their responsibilities under the laws cited herein that required them to protect, and not discriminate against, Plaintiffs.

There are sufficient facts to support a plausible allegation of state action under the joint action and government nexus tests.  (*See also* 42 U.S.C., Section 1983)  The joint action test "considers whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity.  This occurs when the state knowingly accepts the benefits derived from the unconstitutional behavior." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003).  The government nexus test considers "whether 'there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'" *Id*., at 1095, *quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

**Defendants Were Sufficiently Integrally Involved to Incur Liability**

State law guarantees free special education instruction and services to all qualifying children.  Cal. Ed. Code § 56040(a).  This responsibility falls on the LEA in which the student resides.  Cal. Ed. Code § 56344(c).  An LEA may place a child in a non-public school (NPS) only after conducting an IEP meeting to determine that the placement is appropriate.  Cal. Ed. Code § 56342.1.  The LEA and the NPS must enter into a Master Contract which includes an individual services agreement for each student placed at the NPS.  Cal. Ed. Code § 56366(a)(2)(A). "The master contract shall include a description of the process being utilized by the local educational agency to oversee and evaluate placements in nonpublic, nonsectarian schools, as required by federal law. . . ." Cal. Ed. Code § 56366(a)(2)(B).  Nonpublic schools are a program of the LEA,

RESPONSE IN OPPOSITION TO DEFENDANT ROCKLIN ET. AL.

and as such, the LEA is responsible for ensuring their compliance with special education and anti-discrimination laws.  5 C.C.R. § 4902. Under the California Code of Regulations:

> Each school district and county office of education shall have primary responsibility to ensure that its programs and activities are available to all persons without regard to . . . mental or physical disability. Each local agency shall investigate complaints of unlawful discrimination in its programs or activities. 5 C.C.R. § 4960(a).

Defendant SELPA is a single-district Special Education Local Plan Area ("SELPA") pursuant to Cal. Ed. Code § 56195.1(a).  SELPAs must ensure that they have "policies, procedures, and programs that are consistent with state laws, regulations, and policies governing" special education and compliance with the IDEA, the ADA, and Section 504.  Cal. Ed. Code § 56205(a). The SELPA's local plan must include a description of how it will "oversee and evaluate placements in nonpublic, nonsectarian schools and the method of ensuring that all requirements of each pupil's individualized education program are being met . . . . " Cal. Ed. Code § 56205(c).

The SELPA and its director and employees were responsible for administering the Plan and assuring that the SELPA was in compliance with all laws and regulations, as well as coordinating review of the SELPA Plan's programs, evaluating the Plan's effectiveness and evaluating the effectiveness of the Plan's accountability methods, ensuring a coordinated system of data collection and management, assuring of full educational opportunity and administering the allocation of state and federal funds.  Id.  The SELPA Director is also responsible for compliance with Cal. Ed. Code § 56195.7(c)(6), which requires LEAs to provide ongoing review of the SELPA's programs and procedures, as well as a method for correcting identified problems.  *Id.*  (TAC, ¶¶296, 297, 432, 485)

SELPA had a duty to ensure that the SELPA's programs - including a nonpublic school in which it had placed a District student - were complying with state and federal special education and anti-discrimination laws. (*Id.*, TAC, ¶¶432, 485, 491)

Plaintiffs have alleged significant interdependence between the LEAs and GHS/PQ in their actions and omissions giving rise to Plaintiffs' claims.  Defendant LEAs received state and federal financial assistance to provide educational services to children with disabilities.

**GHS/PQ Had a Master Contract With Defendants.**

The Complaint alleges joint activity between GHS/PQ, its staff and the public-school districts and the SELPAs that placed and left their special education students there.  Because it was a mutually beneficial relationship, these Defendants made a joint decision to place and keep students in that environment and to allow them to be restrained repeatedly and excessively for

- 4 -

predictable, disability-related behavior that did not pose a danger to the safety of the student or to others.   Here, the LEAs "knowingly accept[ed] the benefits derived from [GHS/PQ's] unconstitutional behavior."  *Kirtley*, 326 F.3d at 1093.  The allegations also demonstrate "a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself."  *Id*., at 1095.

Therefore, all involved were state actors.

**B.   STATE LAW CLAIMS ARE NOT BARRED, AS PLAINTIFFS COMPLIED WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT**

Jordan and Thomas each filed a tort claim with Defendants Rockland and SELPA on March 24, 2020, alleging violations of numerous federal and state statutes and state common law, the filling reflecting the last "date of incident" to be October 28, 2019.

Absent special circumstances, under California law, the accrual date on a claim for continuing abuse and harassment is the date of the last incident of abuse, and Plaintiffs' causes of action did not accrue until they learned of the facts giving rise to their claims.  Based on information and belief, as stated in a May 8, 2020, (the same date that Defendant Rocklin rejected Plaintiffs Claims (*See* RJN 23-2, Ex. 8)) letter from Defendant Rocklin to Plaintiff: "On October 1, 2019, … Point Quest sent [Rocklin Unified School] District a 20-day notice, indicating that it planned to terminate [Plaintiffs'] enrollment…"   "This Notice stated that Point Quest would continue to provide educational services until October 28, 2019."  Defendants' May 8, 2020, correspondence not only specifically sets forth the dates of enrollment, throughout which the subject harm was inflicted, but also demonstrates the retaliation to which Plaintiffs were subjected following the filing of their March 2020, Notices of Tort Claims.  Regardless, Plaintiffs have complied with the six-months rule.

Further, the October 1, 2019, twenty-day notices of termination of enrollment cite Plaintiff children's absences to be the reason for their termination of enrollment, when, in fact, said absences were caused by Plaintiffs' fear of the infliction of further harm, which fear remained unresolved and subsequently resulted in the filing of the Notices of Tort Claims which are the subject of this action.

1

### 1.   Delayed Discovery

Moreover, "[u]nder the delayed discovery doctrine, the cause of action does not accrue until the claimant learns of or has reason to discover the facts upon which the action is based." *K.J.*, 172 Cal. App. 4th at 1233.  California courts regularly apply this rule to determine the accrual date of causes of action involving conduct—such as child abuse—that is difficult to detect. *Curtis T. v. County of Los Angeles*,123 Cal.App.4th 1405, 1420 (2004).  When the CDE finally conducted and completed its long-overdue investigation of GHS, it found that GHS had violated several laws regarding behavioral interventions. SAC, ¶389.  Moreover, it was not until after Max Benson's death on November 30, 2018, that other parents, including those of Plaintiffs, learned from the media of the school's frequent, ongoing and aggressive use of restraints against many of its students.  SAC, ¶7.  Only then could parents of Plaintiffs have even begun to become aware of CDE's systemic and ongoing failures to investigate, regulate and monitor GHS, including the facts giving rise to CDE's liability here.  SAC, ¶¶ 7, 104-106, 113-114, 118-120.

One of the "[t]wo common themes run[ning] through the cases applying the discovery rule of accrual" is that "the rule is applied to types of actions in which it will generally be difficult for plaintiffs to immediately detect or comprehend the breach or the resulting injuries. … Even when the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend."

*Curtis T.*, 123 Cal. App. 4th at 1420.  *Curtis T.* involved a minor child who was abused from five to eight years old while in foster care and did not present a tort claim to the County until more than four years after the date of the last abuse.  *Id.,* at 1412.  The court found that if the plaintiff could truthfully amend his complaint and allege that he could not comprehend that what had happened to him was wrong until his mother learned of the molestation many years later, the delayed discovery rule should apply. *Id.,* at 1423.  This case involves a minor who was repeatedly physically abused by school staff in a nonpublic school over which the Defendants had monitoring, investigatory, and supervisory powers and duties.

### 2.   Equitable Tolling

The equitable tolling doctrine applies to the tort claim presentation requirement. *Addison v. State*, 21 Cal.3d 313, 320-21 (1978); *J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal. 5th 648, 657 (2017).  Plaintiffs meet the test articulated in *Cervantes*: 1) the Defendants received timely notice of the alleged violations when 2) there was no prejudice to the Defendants in gathering evidence for responding to the tort claim, as the CDE had already conducted an investigation into

the restraints and physical interventions between Sept. 10 and Nov. 29, 2018; and 3) Plaintiffs demonstrated good faith and reasonable conduct when they presented their tort claim to Defendants. *Cervantes v. J.C. Penny Co., 24 Cal. 3d 579, 593 (1979)*.

Even if this Court were to decide that claims for abuse are barred under Cal. Gov't Code § 911.2(a), those incidents nonetheless constitute evidence of the state defendants' liability for such abuse and should therefore not be struck from the complaint. *Shaw v. Cnty. of Santa Cruz*, 170 Cal.App.4th 229, 251, fn. 24 (2008).

In this case, Defendants failed to discharge multiple interlocking mandatory duties - to monitor and supervise the implementation of state laws prohibiting the improper use of restraints (Cal. Ed. Code§ 56520, *et. seq.*); to conduct ongoing onsite reviews and monitor nonpublic schools it had certified; and to investigate and conduct an unannounced onsite investigation when it has "substantial reason to believe that there is an immediate danger to the health, safety or welfare of a child. Cal. Ed. Code§§ 56521(b) and 56366.l(a), (e)(l), (i)(l) and O)." Defendants did not exercise reasonable diligence in discharging its mandatory duty of supervision and monitoring over GHS/PQ in particular or over nonpublic schools more broadly.  It is clear that these duties - particularly those spelled out in sections 56521(b) and 56366.1(i)(l) - were meant to protect students such as the Plaintiffs from the risk of physical and emotional injuries and/or certainly death. Moreover, Plaintiffs have alleged that Defendants' failure to discharge their duties of supervision and monitoring led to the injuries suffered by Plaintiffs.

Plaintiffs complied with the Government Tort Claims Act (GTCA).  On January 28, 2022, Plaintiffs filed a "Notice of Errata" attaching Exhibit A. Doc. 4 and 4-1.  Point Quest is a successor of GHS. As a successor, Point Quest took over Guiding Hands School, took on its employees and students, and therefore notice to Point Quest is valid, sufficient and proper.

This notice to Defendants of a claim need not contain the detail and specificity required of a pleading, but need only "fairly describe what [the] entity is alleged to have done." (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1426 [ 4 Cal.Rptr.2d 203]; *Turner v. State of California* (1991) 232 Cal.App.3d 883, 888 [284 Cal.Rptr. 349].) As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions (*Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 225 [ 267 Cal.Rptr. 13]), the claims statute "should not be applied to snare the unwary where its purpose has been satisfied" (*Elias v. San Bernardino County Flood Control Dist*. (1977) 68 Cal.App.3d 70, 74 [ 135 Cal.Rptr. 621]); *See Stockett v. Associates of Cal. Water Agencies Jt. Powers Ins. Authority,* 34 Cal. 4th 441,

446-447 (2004).  That clearly occurred, as such claims were investigated and evaluated based on said tort claims, and, as a consequence, GHS was closed and Point Quest School took over.  The claim need not specify each particular act or omission later proven to have caused the injury.  *Blair v. Superior Court*, *supra*, 218 Cal.App.3d at p. 225.  In comparing the claims and the complaint, "we are mindful that `[s]o long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits.'" (*Smith v. County of Los Angeles, supra*, 214 Cal.App.3d at p. 280, *quoting Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 123 [ 113 Cal.Rptr. 102, 520 P.2d 726].)  If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted.

      **3.**        **Defendants are Vicariously Liable to Plaintiffs**

      Because they were a party to the contracted services provided to Plaintiffs, these defendants are vicariously liable for the harm that came to Plaintiffs.  If an individual or corporation undertakes to carry on an activity involving possible danger to the public and its citizens under a license or franchise granted by public authority, subject to certain obligations or liabilities imposed by the public authority, these liabilities may not be evaded by delegating performance to an independent contractor. (*Taylor v. Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 603-605) Every wrongful act committed by GHS/PQ against Plaintiffs may be imputed to Defendants because of the contractual relationship they had with and the nondelegable duties they owed to Plaintiffs and their families.

      As required under California law, nonpublic schools ("NPS") are part of the continuum of services that local educational agencies must make available to students. Cal. Ed. Code §§ 56360, 56361(e), 56365(a). If the LEA does not have the appropriate services or setting for a child who qualifies for special education, the LEA may contract with and pay a nonpublic school to provide such services in exchange for state and federal education funds. Cal. Ed. Code §§ 56365(a)-(d), 56366; 20 U.S.C. §§ 1411-1413. (*Stacia Langley, et al., v. Guiding Hands School, Inc., et al.*, Case 2:20-cv-00635-TLN-KJN, TAC, ¶93.)

      An LEA may place a child in a nonpublic school (NPS) only after it has determined that the placement is appropriate and, after placement, must regularly evaluate the student's progress and continuing suitability of the NPS placement. Cal. Ed. Code §§ 56342.1 and 56366(a)(2)(B). (*Id.* TAC, ¶94.)

      A student placed in an NPS pursuant to Cal. Ed. Code §§ 56365 "will be deemed to be enrolled in public schools" for the purpose of state and federal funding, and the LEA shall pay the

- 8 -

NPS "the full amount of the tuition for individuals with exceptional needs that are enrolled in programs provided by the" nonpublic school. Cal. Ed. Code § 56365(b) and (d). (*Id.* TAC, ¶95.)

An LEA placing a student in a nonpublic school pursuant to the student's IEP must have a Master Contract with that NPS. Cal. Ed. Code §§ 56365(a); 56366. The Master Contract must include an individual services agreement for each student placed at the NPS and "a description of the process being utilized by the local educational agency to oversee and evaluate placements in nonpublic, nonsectarian schools, as required by federal law. . . ." Cal. Ed. Code § 56366(a)(2). An LEA may enter a master contract only with a NPS that the LEA has certified as "meeting those standards relating to the required special education and specified related services and facilities for individuals with exceptional needs." Cal. Ed. Code § 56366(d). (*Id.* TAC, ¶96.) Nonpublic schools are a program of the LEA, and as such, the LEA is responsible for ensuring their compliance with special education and anti-discrimination laws. Cal. Ed. Code §56366(d); 5 C.C.R. § 4902. Under the California Code of Regulations: "Each school district and county office of education shall have primary responsibility to ensure that its programs and activities are available to all persons without regard to ... mental or physical disability. Each local agency shall investigate complaints of unlawful discrimination in its programs or activities." 5 C.C.R. § 4960(a). (*Id.* TAC, ¶97.)

Plaintiffs allege on information and belief that when the LEA Defendants placed the Plaintiff Students at GHS/PQ via their IEPs, each Plaintiff Student's SELPA and/or school district had a Master Contract with GHS/PQ to provide educational services in exchange for federal and state special education funds, as required by law. The LEA Defendants and GHS/PQ also entered into an Individual Services Agreement for each of the Plaintiff Students placed at GHS/PQ via their IEP. (*Id.* TAC, ¶98.)

### C.    PALINTIFFS HAVE ALLEGED VALID CAUSES OF ACTION UNDER THE UNRUH, RALPH AND BANE ACTS

"A violation of the ADA is, *per se*, a violation of the Unruh Act." *Lentini v. Calif. Ctr. for the Arts*, 370 F.3d 837, 847 (9th Cir. 2004); Cal. Civ. Code § 51(f). Because Plaintiffs' ADA claims are valid, so also are their Unruh Act claims. A "business" pursuant to the Unruh Act should be construed "in the broadest sense reasonably possible." *Ibister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 78 (1985).

Plaintiffs allege their claims under Cal. Civ. Code §§ 51.7 (the Ralph Act), and 52.1(the Bane Act), which prohibits violence or "intimidation by threat of violence" against persons based

on disability and prohibits by threat, intimidation or coercion with one's exercise or enjoyment of rights under state or federal law.

"A plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination ... in violation of the terms of the Act." *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1175. In order to state a cause of action under the Unruh Act, intentional discrimination in the form of willful, affirmative conduct must be alleged. (Id)

Plaintiffs do allege that these Defendants have engaged in conduct reflecting intentional discrimination toward disabled Plaintiff children.

The Ralph Act prohibits violence or intimidation by threat of violence against a person because of disability. Cal. Civ. Code § 51.7(b)(1). Civil Code section 51, subdivision (b) provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Italics added.)

Defendants were complicit in interfering with and denying full and equal access to Plaintiffs of their education and allowed Plaintiffs to experience violence and the threat of violence on multiple occasions because of their disability. The word "interferes" as used in the Bane Act means "violates." (*See Jones*, *supra*, 17 Cal.4th at p. 338 [California Supreme Court equates "interfere" with "violate"]; *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077 [ 4 Cal.Rptr.3d 468] [same].) Similar to the Bane Act, the Ralph Act does not define any of the three operative words "violence," "intimidation" or "threat." Words alone can violate the Ralph Act. *See Long v. Valentino* (1989) 216 Cal.App.3d 1287, 1296-98. The appropriate standard to determine whether the threatened violence was intimidating is, "Would a reasonable person, standing in the shoes of the plaintiff, have been intimidated by the actions of the defendant and have perceived a threat of violence?" *Winarto v. Toshiba America Electronics Components, Inc*. (9th Cir. 2001) 274 F.3d 1276, 1289-90.

The Bane Act prohibits interference or attempted interference by threat, intimidation or coercion with an individual's exercise or enjoyment of federal or state constitutional or statutory rights. Cal. Civ. Code§ 52.l(b). The essence of a Bane Act claim is that the defendant, by the specified improper means (*i.e.*, "threats, intimidation or coercion"), tried to or prevented the plaintiff from doing something he/she had the right to do under the law or to force the plaintiff to do something that he/she was not required to do under the law. (*Jones*, *supra*, 17 Cal.4th at p. 334.)

- 10 -

1   Defendants interfered or attempted to interfere with Plaintiffs' rights.  It does not matter

2   that the Defendants never had physical contact with T.V.M. or J.V.M.  Civil Code § 51.7 (Ralph

3   Act) prohibits violence or "intimidation by threat of violence" against persons based on disability.

4   Civil Code § 52.1 (Bane Act) prohibits interference by threat, intimidation or coercion with one's

5   exercise or enjoyment of rights under state/federal law. California law permits *respondeat superior*

6   liability for Ralph and Bane Act violations.  *I.V. v. Vacaville Unified Sch. Dist.*, No. 2:19-cv-00273-

7   KJM-DB, 2020 U.S. Dist. LEXIS 28474, at *17 (E.D. Cal. Feb. 20, 2020); *Beliveau v. Caras*, 873

8   F. Supp. 1393, 1401(C.D. Cal. 1995).  Due to Defendants' contractual relationship with GHS/PQ,

9   they vicariously liable for the acts committed, which constitute violations of these statutes. *Wagon*,

10   2019 U.S. Dist. LEXIS 105387, at **13-14, 19.

### D.   PLAINTIFFS HAVE ALLEGED VALID CLAIMS UNDER THE CAL. ED. CODE §§200, 201, 220 & 260

11   The Fourth Cause of Action alleges violations of California Education Code Sections 200,

12   201, 220 and 260, based on the assertion that defendants discriminated against the Plaintiff children

13   because of their disability by subjecting them to physical and emotional abuse.

14   For reference, Ed. Code §200 provides as follows:

15   It is the policy of the State of California to afford all persons in public schools,
     regardless of their disability, gender, gender identity, gender expression, nationality, race
16   or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the
     definition of hate crimes set forth in Section 422.55 of the Penal Code, including
17   immigration status, equal rights, and opportunities in the educational institutions of the
     state. The purpose of this chapter is to prohibit acts that are contrary to that policy and to
18   provide remedies therefor.

19   Section 201, in pertinent part, states:

20   (a)   All pupils have the right to participate fully in the educational process, free
21   from discrimination and harassment …
     (f) It is the intent of the Legislature that each public school undertake educational
22   activities to counter discriminatory incidents on school grounds and, within constitutional
     bounds, to minimize and eliminate a hostile environment on school grounds that impairs
23   the access of pupils to equal educational opportunity.

24   Section 220 prohibits discrimination on the basis of disability in educational programs that

25   receive or benefit from state financial assistance. Cal. Ed. Code § 220.  A claim under section 220

26   must allege the following: 1) "severe, pervasive and offensive" harassment or abuse on the basis of

27   one's disability which effectively deprived the student of equal access to the educational benefits

28   and opportunities of the program."  *Smith v. Tobinworld*, No. 16-CV-01676-RS, 2016 U.S. Dist.

- 11 -

LEXIS 83960, at *8 (N.D. Cal. June 28, 2016); and 2) the Defendant had "actual knowledge" of the abuse acted with "deliberate indifference" in the face of that knowledge. *IV v. Vacaville Unified Sch. Dist.*, No. 2:19-cv-00273-KJM-DB 2020 U.S. Dist. LEXIS 28474, at *26-27 (E.D. Cal. Feb. 19, 2020).

Here, Defendants had actual knowledge of the dangerous restraints to which students with disabilities, such as the plaintiff children herein, were being subjected to at a disproportionate rate in California.  Moreover, Defendants had received at least one compliance complaint alleging the repeated and improper use of restraints resulting in injuries to a GHS student. Yet, it acted with deliberate indifference to the clear ineffectiveness of its policies and practices for monitoring and enforcing prohibitions limiting restraint use.  And, in the face of an allegation of the use of illegal restraints at GHS, it did not conduct a visit of GHS for over three weeks, and only then because another student had been restrained and killed.  Therefore, Plaintiffs have adequately alleged a violation of Cal. Ed. Code §220. IDEA exhaustion is not necessary.

Section 260 states:

> The governing board of a school district shall have the primary responsibility for ensuring that school district programs and activities are free from discrimination based on age and the characteristics listed in Section 220 and for monitoring compliance with any and all rules and regulations promulgated pursuant to Section 11138 of the Government Code.

This claim should not be dismissed because Defendants have acted with deliberate indifference in the face of actual knowledge of harassment or discrimination based on a disability. (*Donovan, supra*, at 579.)

### E.    PLAINTIFFS HAVE ALLEGED VALID COMMON LAW CAUSES OF ACTION

Similarly, **Plaintiffs have alleged valid claims for battery, assault, intentional infliction of emotional distress, false imprisonment, negligence, negligence *per se* and wrongful death, based on the misconduct of GHS/PQ, for which Defendants are all jointly and severally vicariously liable.**

Additionally, as noted above, **Defendants had responsibilities under the law and the Plan**, including: ensuring equal access to the programs and services for the special education students for whom the SELPA Administrator was receiving state and federal special education funds; monitoring the appropriate use of those funds; entering into Master Contracts with nonpublic schools, reviewing and monitoring those contracts, issuing and monitoring compliance assurances

- 12 -

for those contracts and maintaining updated contracts.  Cal. Ed. Code §§ 56195; 56195.1(c); 56195.7(a) and (c)(6); 56195.8(a) and (b)(1); 56205(a)(5), (11) and (12)(D), and (c); 56360; 56361(e); 56365(a) and (d); 56366(a)(2)(B).  **Defendants breached all of these duties owed to Plaintiffs.**  As the intended beneficiary of the federal and state education funding the SELPA was receiving on their behalf, Plaintiffs were also the intended beneficiary of these statutory and SELPA plan duties.  Their purpose was to guarantee that administrators of special education funding were to ensure that the funding was being used to provide safe, monitored special education services and programs to the students that qualify for them.  It was not a discretionary function of the SELPA to receive special education funding for a student and then subject the student to the hazards of an unapproved, unmonitored program.

**Plaintiffs have adequately alleged a claim for negligent supervision.**  The California Supreme Court has held that a school district may be vicariously liable for the negligence of administrators in "hiring, supervising and retaining a school employee" who abuses a student.  *C.A. v. Williams S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 879 (2012). This reasoning applies equally to an independent contractor who has taken on the nondelegable duties of a SELPA to provide special education to students for which it receives state and federal funding.

**The breach of Defendants' duties owed to Plaintiffs caused foreseeable injuries to Max and to his parents**.  Had Defendants ensured that Max was in a safe, approved placement with monitoring and oversight, Max would not have been at GHS to be restrained and killed by its staff.

As explained above, Defendants are vicariously liable for the conduct of GHS/PQ and its staff.  **Plaintiffs have alleged the elements of a civil battery claim**: 1) an intentional act that resulted in harmful contact or touching of the plaintiff; 2) lack of consent by the plaintiff; and 3) injury or damage to the plaintiff.  SAC, ¶¶86-125 and 165-183; *Garcia v. City of Merced*, 637 F.Supp.2d 731, 748 (E.D. Cal. 2008).  Defendants' argument that the elements are not satisfied because Defendants "consented" to the "touching" is nonsensical.

**Plaintiffs have alleged a valid assault claim**:  1) GHS/PQ and its staff acted with the intent to cause harmful or offensive contact; 2) Plaintiff reasonably believed he was about to be touched in a harmful or offensive manner; 3) Plaintiff did not consent; 4) Plaintiff was harmed; and 5) Defendants' conduct was a substantial factor in causing that harm.  SAC, ¶¶86-125 and 165-183; *Carlsen v. Koivumaki*, 227 Cal.App.4th 879, 890 (2014).

**Plaintiffs have adequately alleged a claim for intentional infliction of emotional distress**:  1) extreme and outrageous conduct intended to cause distress or with reckless disregard

of the probability of causing distress; or reckless disregard of the probability of causing, emotional distress; (2) severe or extreme emotional distress and (3) causation. SAC, ¶¶86-125 and 184-192; *Hughes v. Pair*, 46 Cal. 4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009).

**Plaintiffs have alleged a valid claim for false imprisonment**—the nonconsensual, unlawful, intentional confinement of Plaintiffs, for an appreciable length of time. SAC, ¶¶86-125 and 193,199. *Scofield v. Critical Air Medicine, Inc.*, 45 Cal.App.4th 990, 1001 (1996).

**Plaintiffs have adequately alleged negligence**.  As noted above, schools and school districts owe a special duty to their students.  Plaintiffs have alleged that Defendants violated that duty to the Plaintiff Students in myriad ways, described above, and at Paragraph 623.a-z.  These include, but are not limited to, the failure to develop effective procedures governing emergency interventions, to properly train or provide oversight in such interventions, or to provide positive behavioral supports that are less restrictive.  *Id.*  The breach of these duties caused foreseeable injuries to Plaintiffs.

**A claim for negligence** *per se* must allege that: "(1) a defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence the enactment was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute was intended to protect."  *Smith v. Tobinworld*, No. 16-cv-01676-RS, 2016 U.S. Dist. LEXIS 83960, at *28-29 (N.D. Cal. June 28, 2016).  In addition to the causes of action based on statute successfully alleged by Plaintiffs, they have also alleged violations of numerous California statutes regarding corporal punishment, "emergency interventions", and mandated reporting.  These statutes were unquestionably designed to protect Plaintiffs from the injuries they sustained.

**Plaintiffs have adequately alleged a claim for negligent supervision.**  The California Supreme Court has held that a school district may be vicariously liable for the negligence of administrators in "hiring, supervising and retaining a school employee" who abuses a student.  *C.A. v. Williams S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 879 (2012). This reasoning applies equally to an independent contractor who has taken on the District's non-delegable duties. Defendants critique Plaintiffs for referencing Cal. Ed. Code § 44807, as that the statute refers to supervision of student behavior.  However, the *C.A. v. Williams* court quoted that statute in the analysis that led to its concluding that vicarious liability exists.  53 Cal. 4th at 869.

**Plaintiffs have met the pleading requirements of Rule 9(b) for their fraud claim**. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (plaintiffs must allege the "who,

- 14 -

what, when, where, and how" of defendants' misconduct) (citation omitted)).  Plaintiff also alleges that on that same date, GHS/PQ and the LEA represented that GHS/PQ would not discriminate against students based on their disabilities, would use Positive Behavior Interventions and Supports to correct inappropriate behavior, and would only impose restraints if the child was a danger to himself or others.  SAC, ¶ 661.

A plaintiff may allege different theories for recovery than those alleged in her tort claim, so long as the new claim is not based on an entirely different set of facts.  *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447-450 (2004).

**Plaintiffs have adequately stated a claim for false imprisonment**:

The elements of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." (*Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485,496 (2000); *CB. v. Sonora School Dist.*, 691 F. Supp. 2d 1170, 1186 (E.D. Cal. 2010))

It is clear that the Plaintiffs were falsely imprisoned and this tort can be vicariously applied to Defendants, as well as Defendants knew or should have known of the outrageous conduct.

**Plaintiffs have adequately stated a claim for intentional infliction of emotional distress**. In order to state a claim for intentional infliction of emotional distress. Plaintiffs must allege conduct beyond all bounds of decency.

Ordinary, rude or insulting behavior is not enough. *Cervantes v. J.C. Penny Co.*, 24 Cal. 3d 579, 593 (1979). Plaintiffs contend that the acts, failures, and omissions by Defendant constitutes outrageous behavior. The issue of whether Defendants' acts or omissions constituted outrageous conduct is a question of fact, to be resolved by a fact-finder. *Symonds v. Mercury Savings & Loan Assn.*, 225 Cal. App. 3d 1458, 1469 (1990). In this motion, this Court construes the allegations in a light most favorable to Plaintiffs.

Therefore, the Court assumes that the behavior by Defendants was outrageous conduct to satisfy this element.

### F.     PLAINTIFFS ALLEGE VALID ADA AND SECTION 504 CLAIMS

Title II of the ADA prohibits governmental entities from denying persons with disabilities the benefits of its programs, services or activities.  28 U.S.C. § 12132.  Section 504 applies this same prohibition to entities that receive federal financial assistance.  29 U.S.C. § 794; 34 C.F.R. pt. 104.  As Defendants do not dispute that they receive federal financial assistance and are public entities, the analysis under both statutes is the same.  *Zukle v. Regents of the Univ of Cal.*, 166 F.3d 1040, 1045 n. 11 (9th Cir. 1999).

- 15 -

To state a claim, a plaintiff must allege that: 1) she is an individual with a disability as defined by the Act; 2) she is "otherwise qualified" to participate in or receive the program's services, programs or activities; and 3) she was excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against because of her disability. *Zukle*, 166 F.3d at 1045. Defendant's deliberate indifference is required to obtain damages. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

Plaintiff children are qualified individuals with disabilities. SAC, ¶ 27. They were subjected to excessive and harmful restraints in response to disability-related behaviors, which is sufficient to plead disability-based discrimination under the ADA and Section 504. SAC, ¶¶86-125; *Wagon v. Rocklin Unified Sch. Dist*., No. 2:17-cv-01666-TLN-KJN, 2019 U.S. Dist. LEXIS 105387, at **13-14. Plaintiffs allege that Defendants are vicariously liable for the actions of their independent contractor GHS/PQ. SAC, ¶¶86-125. "A plaintiff need only allege that the perpetrator of the alleged abuse was deliberately indifferent to her rights if a public entity is liable in *respondeat superior* for the perpetrator's actions. . . . Thus, awareness is not a requisite factor in finding an entity liable if there is vicarious liability." *Id.*, at *15. Moreover, as explained in section ¶¶298-309, the Defendant officials were deliberately indifferent to the discriminatory abuse to which Plaintiffs were subjected.

Defendants' argument that Plaintiffs cannot bring their ADA or Section 504 claims because they did not exhaust their administrative remedies under the Individuals with Disabilities in Education Act ("IDEA") completely ignores the IDEA's express language on exhaustion and the controlling cases in the U.S. Supreme Court and the Ninth Circuit. Exhaustion is not required every time one files a lawsuit under the ADA or Section 504, even if the claim arose in the context of educating children with disabilities. Under 20 U.S.C. § 1415(l):

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], Title V of the Rehabilitation Act [including §504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]. 20 U.S.C. § 1415(l).

Under Ninth Circuit and U.S. Supreme Court precedent, exhaustion is not required here. *Payne v. Peninsula Sch. Dist*., 653 F.3d 863, 871-74 (9th Circ. 2011), *en banc*, overruled on other

- 16 -

grounds by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014); *Fry, ex rel. E.F. v. Napoleon Cmty. Schs.,* 137 S. Ct. 743 (2017).

[T]he IDEA's exhaustion provision applies only in cases where the relief sought by a plaintiff in the pleadings is available under the IDEA. Non-IDEA claims that do not seek relief available under the IDEA are not subject to the exhaustion requirement, even if they allege injuries that could conceivably have been redressed by the IDEA. *Payne*, 653 F.3d at 871 (emphasis added).

Plaintiffs seek damages for physical and emotional injuries suffered due to Defendants' deliberate indifference to discrimination and abuse disabled children were being subjected to at the nonpublic school at which Defendants placed them.  Such damages are not available under the IDEA.  *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 936 (9th Cir. 2014), cert. denied, 552 U.S. 1231 (2008).

Nothing in the IDEA protects a school from non-IDEA liability simply because it was making a good-faith attempt to educate its disabled students. If the school's conduct constituted a violation of laws other than the IDEA, a plaintiff is entitled to hold the school responsible under those other laws. *Payne*, 653 F.3d at 877.  The Ninth Circuit rejected arguments similar to those made here in *Payne*, which involved a Section 1983 claim by a special education student who was placed in a "time-out" room when he became "overly stimulated."  *Payne*, 653 F.3d at 880.

The claim asserted here — for knowing and intentional infliction of excessive force — is cognizable under the Fourth Amendment and exists separate and apart from the denial of a FAPE, irrespective of the fact that the alleged excessive punishment took place in a special education classroom.  Although we would not doubt, for example, that an unconstitutional beating might interfere with a student enjoying the fruits of a FAPE, the resulting excessive force claim is not, for that reason alone, a claim that must be brought under the IDEA. *Id.* (internal citations omitted). The U.S. Supreme Court similarly reasoned that claims alleging excessive force against special education students do not require exhaustion of administrative remedies despite the fact that the abuse occurred in the context of the student's education.  *Fry, ex rel. E.F. v. Napoleon Cmty. Schs.,* 137 S. Ct. 743 (2017).

The U.S. Supreme Court elaborated on the exhaustion requirement in *Fry*, finding that where the remedy sought is not for the denial of a Free and Appropriate Public Education, the IDEA cannot provide the relief sought and exhaustion is not required.  *Fry*, 137 S. Ct. at 754.

- 17 -

And that is true even when the suit arises directly from a school's treatment of a child with a disability—and so could be said to relate in some way to her education. A school's conduct toward such a child—say, some refusal to make an accommodation—might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA. A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to §1415(l)'s exhaustion rule because, once again, the only "relief" the IDEA makes "available" is relief for the denial of a FAPE. *Fry*, 137 S. Ct. at 754-55.  As such, the Court must examine the "substance" or "gravamen" of the Plaintiffs' complaint to determine not what relief they could have sought but what relief they are actually seeking. *Id.* at 755.  Plaintiffs seek monetary damages for disability discrimination and physical assaults that harmed them physically and emotionally, and the IDEA does not provide a legal remedy for such harm.  Moreover, applying the *Fry* Court's analysis, the conduct alleged under the SAC would be actionable even if it had occurred outside of the educational system. *Fry*, 137 S. Ct. at 756.  Similarly, an adult subjected to the same conduct would have a cause of action against Defendants. *Id.*

Even in cases alleging a violation of the IDEA and denial of a FAPE, courts will excuse the exhaustion requirement if seeking administrative relief is futile or unlikely to provide adequate relief, or if the complaint alleges an administrative practice or policy that violates the law. *Doe, ex rel. Brockhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997); *see also Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-cv-3471-KJM-AC, 2013 WL 1326301, at *9 (E.D. Cal. Mar. 26, 2013) (administrative exhaustion of IDEA claims not required for futility and because the "plaintiffs are alleging the CRP process itself is broken as part of their failure to investigate claims"). Administrative hearings would not address the systemic failures to act alleged here.  Plaintiffs complain not of a single improper restraint but a policy and practice of disciplining students with excessive and harmful restraints to which Defendants reacted with deliberate indifference.

## G.   EXCESSIVE FORCE STATES A CAUSE OF ACTION FOR WHICH RELIEF CAN BE GRANTED

The Sixteenth Cause of Action is brought under 42 U.S.C. §1983 for excessive force in violation of the Fourth Amendment based upon the use of illegal physical restraints upon the plaintiffs by GHS and PQ staff. Section 1983 creates liability for "[e]very person who, under color of state law deprives "any citizen ... or other person" of his or her "rights, privileges, or immunities" secured by the United States Constitution or other federal law. (42 U.S.C. § 1983.) To

- 18 -

establish liability for a cause of action under Section 1983, a plaintiff must show the defendant, acting under color of state law, personally participated in the alleged deprivation of federal constitutional or statutory rights. (*Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The plaintiff must allege the defendant, through his or her own individual actions, violated those rights. (*OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012))

**A school official's use of excessive force against a student violates the student's constitutional rights.** *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1180 (9th Cir. 2007). *Preschooler II* speaks directly to the liability of supervisory officials.

It has long been clearly established that "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Preschooler II*, at 1183. It has been held that a person "subjects" another to the deprivation of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Id.* The requisite causal connection may be established when an official sets in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." *Id.*

The alleged acts and omissions on the part of these School Officials, if proven true, establish that they are liable for the violation of Plaintiffs' clearly established constitutional rights because they demonstrated disregard of their responsibilities in hiring, training, supervising, disciplining, reporting and preventing abuses of students committed by school staff. A reasonable special education school official would know that a teacher's abusive acts, and the failure of other special education officials to address that misconduct, are grounds for liability. *Preschooler II*, 479 F.3d at 1183.

Here Defendants' inaction was a tacit authorization of the ongoing misconduct perpetrated against Plaintiffs.

"Authorizing" can be interpreted as "ordering" under these circumstances where the controlling individuals were directing staff how to deal with Plaintiffs by way of the distorted Behavioral Intervention Plans and IEPs they created. *Blankenhorn v. City Of Orange*, 485 F.3d 463, 481 (9th Cir. 2007).

- 19 -

'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation.' ... [it] require[s] some fundamental involvement in the conduct that ... caused the violation ...  (holding that every officer who provided armed backup for another officer who ...[violated one's rights]...could be held liable for that use of excessive force because ...[]...'every officer was aware of the decision to [do the act and], **did not object to it**, and participated in the ... operation knowing the [device] was to be deployed'). Emphasis added. (*Blankenhorn v. City of Orange* (9th Cir. 2007) 485 F.3d 463, 492 fn12)

Therefore, Defendants had fundamental involvement in authorizing and implementing the Fourth Amendment violations.

SELPA's authority implied their authorization by their failure to intercede or object to the procedures utilized at GHS/PQ, as its supervised, and they both set the policy and custom condoning such practices. *Monell v. Department of Social Services*, 43 U.S. 658 (1978).

The engagement of a longstanding violating practice is sufficient to establish a violation of Sec. 1983. *Webb v. Sloan*, 330 Fed. 3d 1158, 1164.  Plaintiffs were subjected to numerous restraints during their time at GHS/PQ.

Were it even a single event, provided it was a policy and practice set in place by a decision maker condoning the discriminatory practice, it would qualify under Sec. 1983. ....'an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.' ..[].. liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. *Penbaur v. City of Cinncinati*, 45 U.S. 469, 481 (1986).

## V.    CONCLUSION

**WHEREFORE** For the reasons stated above, Plaintiffs respectfully request that this Court deny Defendants' requests to dismiss all claims or, in the alternative, that the Plaintiffs may amend their complaint - and for such other relief as the Court deems just and proper, consistent with the facts and circumstances alleged in the SAC.

Respectfully submitted,


 /s/  Merit Bennett
Merit Bennett, *PHV Co-Counsel for Plaintiffs*

- 20 -

1   Seth L. Goldstein, S.B.N. 176882        Merit Bennett, *Pro Hac Vice*
    slglawoffice@gmail.com                  mb@thebennettlawgroup.com
2   2100 Garden Road, Suite H-8             460 St. Michael's Drive, Suite 703
    Monterey, California, 93940             Santa Fe, New Mexico 87505
3   Telephone (831) 372 9511                Telephone: (505) 983-9834
    Fax (831) 372 9611                      Fax: (505) 983-9836
4   Lead-Counsel for Plaintiffs             Co-Counsel for Plaintiffs

5

6                          UNITED STATES DISTRICT COURT

7                        EASTERN DISTRICT OF CALIFORNIA

8

9   LOUIE MARQUES, et al.,                  **Case No. 2:22-cv-00150-TLN-KJN**

10            Plaintiffs,                    **RESPONSE IN OPPOSITION TO**
                                             **DEFENDANT ROCKLINE UNIFIED**
11       v.                                  **SCHOOL DISTRICT, KRISTI**
                                             **GERGERSEN, TROY TICKLE, KRISTAIN**
12  GUIDING HANDS SCHOOL, Inc., et al.,      **ROYER AND BETH DAVIDSONS'**
                                             **MOTION TO DISMISS SECOND**
13                                           **AMENDED COMPLAINT**

14            Defendants.                    **DATE: N/A**

15                                           **TIME: N/A**

16

17                                           **Judge: Hon. Troy L. Nunley**

18
                                             **Trial Date:  Not Set**
19

20

21

22                             **CERTIFICATE OF SERVICE**

23

24

25

26

27

28

                                    1

1     I am admitted to practice *pro hac vice* in County of Monterey, State of California.

2     I am over the age of eighteen (18) years and not a party to the within action.  My business

3   address is 460 St. Michael's Drive, Suite, 703, Santa Fe, New Mexico 87505.

4     I hereby certify that on this 22nd day of 2022, we filed the foregoing pleading electronically

5   through the CM/ECF system, which notified the following counsel of record serving the same on

6   the parties to this action by electronic service, as addressed as follows:

7          Carol A. Wieckowski, carolw@ewwsllp.com

8          Leonard Bruce Garfinkel: lgarfinkel@cde.ca.gov

9     [ X ]  (BY ELECTRONIC SERVICE)

10    I declare under penalty of perjury under the laws of the State of California that the foregoing

11   is true and correct and that this declaration was executed on July 22, 2022, at Santa Fe, New

12   Mexico.

13                                             /s/ *Merit Bennett*
                                              Merit Bennett, Attorney at Law
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE IN OPPOSITION TO DEFENDANT ROCKLIN ET. AL.

1    Seth L. Goldstein, S.B.N. 176882
slglawoffice@gmail.com
2    2100 Garden Road, Suite H-8
Monterey, California, 93940
3    Telephone (831) 372 9511
Fax (831) 372 9611
4    Lead-Counsel for Plaintiffs

Merit Bennett, *Pro Hac Vice*
mb@thebennettlawgroup.com
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Telephone: (505) 983-9834
Fax: (505) 983-9836
Co-Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIE MARQUES, et al., | **Case No. 2:22-cv-00150-TLN-KJN** |
| Plaintiffs, | **DECLARATION OF MERIT BENNETT INSUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT ROCKLINE UNIFIED SCHOOL DISTRICT, KRISTI GERGERSEN, TROY TICKLE, KRISTAIN ROYER AND BETH DAVIDSONS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| GUIDING HANDS SCHOOL, Inc., et al., | |
| Defendants. | **DATE: March 10. 2022** |
| | **TIME: N/A** |
| | **Judge: N/A** |
| | **Trial Date:  Not Set** |

**DECLARATION OF MERIT BENNETT IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT ROCKLINE UNIFIED SCHOOL DISTRICT, KRISTI GERGERSEN, TROY TICKLE, KRISTAIN ROYER AND BETH DAVIDSON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

- 1 -

I, Merit Bennett, hereby declare as follows:

1.      I am an attorney admitted to practice *pro hac vice* in County of Monterey, State of California

2.      I am co-counsel of records for the Plaintiffs herein.

3.      I have personal knowledge as to the facts set forth above and for those that are not personally known to me, they are offered on information and belief from supporting documentation.

4.      This declaration is made in support of said Plaintiffs' Response In Opposition To Defendant Rocklin Unified School District, Kristi Gergersen, Troy Tickle, Kristain Royer and Beth Davidson's Motion To Dismiss Second Amended Complaint.

5.      Plaintiffs' counsel apologies for the inadvertent oversight with regards to the application for the recently amended rules but nevertheless maintains that no prejudice have to come any party as a result of said Plaintiffs' delayed filing of opposition and therefore requests sanctions for said violation of the rules be waived.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on July 22, 2022, at Santa Fe, New Mexico.

DATED:  July 22, 2022.

                                       */s/ Merit Bennett*
                                    Merit Bennett, Attorney at Law

2